IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, and JANE DOE,**<br><br>*Plaintiffs, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendants.* | Hon. Landya B. McCafferty, U.S.D.J.<br><br>CASE NO. 1:18-cv-01070 |

## ELECTRONIC DISCOVERY PROTOCOL

### I. PURPOSE

1. This Order will govern the discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure (hereinafter "FRCP"), the Local Rules for the District of New Hampshire, and any other applicable orders and rules.

### II. COOPERATION

2. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the action.

3. **Custodians.** The parties agree to meet and confer to identify all custodians who may possess potentially responsive ESI.

4. **Data Sources.** The parties agree to meet and confer to identify custodial and non-custodial data sources (including but not limited to personal email accounts, e.g. Gmail) which may contain potentially responsive ESI and to discuss appropriate date ranges for any search or production.

5.  **Backup and Archiving Systems**. Dartmouth has advised Plaintiffs that Dartmouth data, including email accounts, that are only available on "backup media" are not reasonably accessible and therefore will not be searched in connection with discovery. Dartmouth agrees to meet and confer with Plaintiffs regarding what materials constitute "back up media" and whether such materials are reasonably accessible. If the parties cannot agree on what materials are reasonably accessible by Dartmouth, Plaintiffs expressly reserve the right to seek the Court's resolution on the issue. At the request of any party, the parties agree to disclose and/or to meet and confer regarding the methodology and technology to be used to identify and review responsive ESI at any point in the e-discovery lifecycle, including, to the extent applicable, the use of Boolean key word searches, predictive coding, technology-assisted-review ("TAR"), the handling of any unsearchable ESI, and the handling of potentially responsive ESI contained in databases or stored in or by applications in an aggregated or structured form.

### III. IDENTIFICATION AND REVIEW OF RESPONSIVE ESI

6.  Each party is responsible for meeting its obligation under the Federal Rules of Civil Procedure, the Local Rules for the District of New Hampshire, and any other applicable orders and rules, to identify and produce reasonably accessible and relevant ESI that is responsive to an opposing party's request for the production of documents, subject to any objections thereto (hereinafter, "Responsive Documents").

7.  **Boolean Keyword Searches**. If Boolean keyword searches are to be performed by a producing party, the parties will meet and confer regarding proposed search criteria (e.g., "search terms"). The producing party shall run the proposed search terms and, to the extent feasible, provide a report showing (i) the number of documents in the document collection against which the search was conducted, (ii) the "hit count" of the raw number of documents identified per search

term, and (iii) the total number of unique documents with hits across all search terms and documents within families containing such unique documents (e.g., the review universe if all terms were to be accepted and reviewed). The parties envision an iterative process whereby counsel for the producing party and appropriate ESI liaisons will together review the report of the results of initial searches, and, in good faith, tailor the use of search strings so as to effectively identify relevant and potentially responsive material. Once the search terms are tailored and the relevant and potentially responsive material has been identified, the producing party may produce all documents thereby identified or may conduct a further document-by-document attorney review in order to produce all Responsive Documents identified therein. Nothing in this paragraph shall be understood to (i) relieve a producing party of its obligation to produce or specify the basis for exclusion of all Responsive Documents; (ii) relieve a producing party of its obligation to supplement such production as appropriate throughout the discovery period in response to requests from the non-producing party; (iii) require a producing party to produce or identify documents that have been requested, but to which the producing party has asserted an objection that has not been overruled by the Court; or (iv) relieve a producing party of its obligations under FRCP 34(b)(2)(C).

8. **Predictive Coding or TAR**. If predictive coding or TAR is to be utilized, the parties will confer regarding the protocol to be followed.

9. **Issue Resolution.** The parties will meet and confer to address any issues (including under or over inclusiveness of the results from application of the search terms, predictive coding, or TAR) arising during the identification and review process. If the parties cannot reach agreement on such an issue, either party may present the dispute to the Court for resolution.

10. **Known Responsive Documents.** All documents known to be responsive to the parties' requests for production of documents (subject to any objections thereto), which fall within

the parameters to which the parties have agreed or the Court has set (i.e., with respect to subject matter, date range, etc.), must be produced or, if privileged, identified on the privilege log, regardless of whether or not they contain search terms or have been classified as responsive via predictive coding or TAR. Pursuant to Paragraphs 6 and 7, above, all documents identified by keyword searches must be produced unless the producing party determines, based on a document-by-document attorney review, that they are not Responsive Documents.

## IV. ESI PROCESSING

11. **Password Protected Files.** The parties agree to utilize commercially reasonable efforts to open password-protected or encrypted files, including commercially accessible software, when appropriate and feasible.

12. **Unprocessable Files.** The parties agree to identify (i) any file types which cannot be processed to extract ESI, (ii) any files of those types, and (iii) any files identified as unprocessable by the party's ESI processing software.

13. **Global De-Duplication**. A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate responsive Documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) within and across custodians, provided that searchable custodial metadata is preserved, extracted and furnished in a "Duplicate Custodian" field sufficient for the receiving party to identify each custodian of a particular document that was eliminated through de-duplication. The fields upon which the Hash Values of emails are calculated shall be disclosed by the producing party. For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only e-mail messages in which the parent document and all attachments are exactly the same will be considered duplicates. For Documents, prior drafts of documents will not be

considered duplicates. The Custodian, FilePath and EmailFolder will be produced for all available copies of a responsive document, and included in the respective CUSTODIAN(S), FILEPATH(S) and EMAIL_FOLDER(S) fields in the production Load File. In addition, if the e-mail files were collected directly from the MS Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files unless only the .ost file version is available.

V.      **PRODUCTION FORMATS**

14.     **Overview.** Documents shall be produced as TIFF images, accompanied by load files for internal and external metadata in Concordance .dat file format, and for images in IPRO .lpt format or .OPT format, extracted or OCR'ed text in .txt files, and, as specified, native files.

15.     **TIFF Images.** A TIFF image converted from native file shall be produced as follows:

   a)   All images shall be group 4 black and white TIFF files named according to Bates number (although an image may be produced in color if useful to understand its content);

   b)   Hidden content, tracked changes or edits, comments, and other similar information viewable within the native file shall also be imaged so that such content is viewable on the image;

   c)   Bates numbers and confidentiality designations shall be branded to the images so that the numbers and designations print;

   d)   If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production;

   e)   Images shall be single page TIFFs (one TIFF file for each page); and

   f)   Each TIFF image should be assigned a Bates number that is unique and maintains a constant length across the entire document production (i.e., padded to the same number of characters).

16.     **Native Files.** The parties agree that select files will be produced in their native file format (see list of file types below). In the event a document is produced in native file format, files

shall be named either with a sequential Bates number followed by the file extension or with a sequential Bates number followed by the Confidentiality designation, if applicable, and the file extension, as discussed in paragraph F below. Additionally, native files will be produced with a placeholder TIFF image. Each TIFF placeholder will contain language indicating that the document is being produced as a native file.

      a. *Native Production.* Microsoft Access databases, Excel files, .CSV files, other similar databases and spreadsheet files, presentation (e.g., PowerPoint) files, and audio or video media files, shall be produced in native format. To the extent that a party obtains through discovery a file or document that it believes is not adequately represented in an image file format, the receiving party may request that file or document by bates number be produced as a native file, the production of which may not unreasonably be withheld and thus produced within fourteen (14) days of the request unless the volume is too large, at which time the producing party will notify the requesting party of the necessary turn-around time to complete the request.

      b. *Redaction of Native Files.* If a producing party wishes to redact material from a file that it would otherwise produce as a native file, it shall do so by converting that file to a TIFF image and producing it in redacted form along with OCR text that reflects such redactions, or if such conversion renders or will render the document reasonably unusable, by producing the file in such other reasonably usable form as may be agreed upon by the respective parties, including, but not limited to native file redaction.

17. **Database Records.** Databases shall be produced in native format. To the extent this production format is not feasible or causes the producing party undue burden, the parties agree to meet and confer to discuss a different form of production. If agreement cannot be reached, the parties may submit any issues to the Court for resolution. Nothing in this paragraph shall prevent the parties from agreeing upon alternative methods for producing data from databases.

18. **Extracted or OCR Text.** To the extent available, Extracted Text will be provided for all documents which exist in electronic form. OCR will be provided for all documents for which Extracted Text is not available (e.g. image files, scanned documents to the extent the producing party OCR's the file for their own benefit, redacted files, etc.). The OCR or Extracted Text files will be produced on a document level as .TXT files, with the Text filename matching the Bates number applied to the corresponding native file followed by .TXT. Text files will be located in a separate directory from the native files named "Text."

19. **Branding**

    a. Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

    b. Electronic data produced in discovery may be labeled with confidentiality designations. In the case of *.tiff images, confidentiality legends shall be "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. For materials produced in native format, the producing party shall supply fielded data identifying the confidential treatment

of each document designated for confidentiality or shall name the file with the Bates number followed by the confidentiality designation and the file extension. A failure to make a designation through fielded data or a naming of the file may be corrected by notifying the other side of the mistaken designations of confidential materials.

20. **Metadata and Other Fields.** Each of the metadata and coding fields set forth in Exhibit A that is available at the time of collection and can be extracted or preserved shall be produced for that document, unless the document has been redacted. The same metadata fields shall be produced for a redacted document except that fields may be redacted to the extent that they contain redactable data.

21. **Encrypted Productions.** If a Producing Party encrypts or "locks" a production, the producing party shall send, under separate correspondence, an explanation of how to decrypt the files.

## VI. DOCUMENTS PROTECTED FROM DISCOVERY

22. Pursuant to Federal Rule of Civil Procedure 502(d), neither the attorney-client privilege nor the work product protection is waived by disclosure connected with this litigation. The production of privileged or work product protected documents, electronically stored information, or other information is not a waiver of the privilege or protection in this case or in any other federal or state proceeding. If any privileged or work product protected documents are produced, the receiving party shall, at the request of the producing party, promptly return such documents (and all copies thereof), including all later created excerpts, summaries, compilations, and other documents or records that include, communicate or reveal the information claimed to be privileged or protected. A Receiving Party who receives a document that it knows or reasonably

should know is privileged shall notify the Producing Party. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

## VII. PRIVILEGE LOG

23. The parties agree that the following documents need not be included on a privilege log:[1]

    a) Confidential communications between a party (including any class member) and his/her outside counsel or between Dartmouth and the Office of General Counsel concerning the investigation, preparation, prosecution or defense of this action, the lawsuit filed on November 15, 2018 in the District of New Hampshire (Case No. 1:18-cv-01070-LM).

    b) Confidential work product created by or for the Parties' outside counsel or by Dartmouth's Office of General Counsel during the investigation, preparation, prosecution, or defense of this Matter; and

    c) Internal communications within a law firm or between a Party's co-counsel, including but not limited to such communications between Dartmouth's outside counsel and Dartmouth's Office of General Counsel.

## VIII. MISCELLANEOUS PROVISIONS

24. **Objections Preserved.** Nothing in this protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

25. **No Effect on Cost Shifting.** Nothing in this Agreement shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents or ESI.

## IX. MODIFICATION

---

[1] Dartmouth's "outside counsel" is defined as Choate Hall & Stewart LLP and McLane Middleton Professional Association.

26. This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

Dated:  March 1, 2019

By: */s/ Deborah K. Marcuse*
Deborah K. Marcuse (admitted *pro hac vice*)
Steven J. Kelley (admitted *pro hac vice*)
Austin L. Webbert (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
400 Pratt Street, 8th Floor
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com
skelly@sanfordheisler.com
awebbert@sanfordheisler.com

David W. Sanford (admitted *pro hac vice*)
Nicole E. Wiitala (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
nwiitala@sanfordheisler.com

Charles G. Douglas, III (NH Bar #669)
**DOUGLAS, LEONARD & GARVEY, P.C.**
14 South Street, Suite 5
Concord, NH 03301
Telephone: (603) 224-1988
Fax: (603) 229-1988
chuck@nhlawoffice.com

*Attorneys for Plaintiffs and the Proposed Class*

Dated:  March 1, 2019

By: */s/ Joan A. Lukey*
Joan A. Lukey (N.H. Bar. ID #16246)
Justin J. Wolosz (admitted *pro hac vice*)
Lyndsey M. Kruzer (admitted *pro hac vice*)
**CHOATE HALL & STEWART LLP**
Two International Place
Boston, MA 02111
(617) 248-4949
joan.lukey@choate.com
jwolosz@choate.com
lkruzer@choate.com

*Attorneys for Defendant*

**SO ORDERED.**

Dated: ___March 4, 2019___
    **Concord, NH**

_____
**JUDGE LANDYA B. MCCAFFERTY**
Chief Judge

## **Exhibit A**

| Field | Definition | Doc |
|---|---|---|
| SOURCE | Name of party producing the document | All |
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.* | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | End Bates Number (production number) | All |
| PGCOUNT | Number of pages in the document | All |
| FILESIZE | File Size | All |
| APPLICAT | Commonly associated application for the specified file type. | All |
| FILEPATH | Original file/path of the location where the item resided at the time of preservation. This should include location, file name, and file source extension. | Edocs |
| NATIVEFILELINK | File path for documents provided in native format only | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| EMAILFOLDER | Folder location of the e-mail within the PST/OST | E-mail |
| FROM | Sender | E-mail |

| TO | Recipient | E-mail |
|---|---|---|
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| PARENTBATES | BEGBATES number for the parent e-mail of a family (will not be populated for documents that are not part of a family) | E-mail |
| ATTACHBATES | Bates number from the first page of each attachment | E-mail |
| BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail) | E-mail |
| ENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | E-mail |
| ATTACHCOUNT | Number of attachments to an e-mail | E-mail |
| DATESENT (mm/dd/yyyy hhmm:ss AM) | Date Sent | E-mail |
| DATERCVD (mm/dd/yyyy) | Date Received | E-mail |
| E-MAILDATSORT (mrn/dd/yyyy) | Sent Date of the parent e-mail (physically top e-mail in a chain) | E-mail |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system data |
| HASHVALUE | MD5 hash value for Edocs, e-attachments and e-mail, computed at the time of processing | All |
| TITLE | Internal document property | Edocs |
| AUTHOR | Creator of a document | Edocs |
| DATECRTD (mrn/dd/yyyy | Creation Date | Edocs |

| | | |
|---|---|---|
| hh:mm:ss AM) | | |
| LASTMODD (mrn/dd/yyyy hh:mm:ss AM) | Last Modified Date | Edocs |
| LASTMODBY | Last Modified By | Edocs |
| DocumentType | Descriptor for the type of document: **"E-document"** for electronic documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for hard copy physical documents that have been scanned and converted to an electronic image. | All |
| Importance | High Importance - indicates Priority E-mail message. | E-mail |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for un-redacted documents. | All |
| ProdVol | Name of media that data was produced on. | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| Duplicate Custodian | Identifies each custodian of a particular document whose copy of that document was eliminated through the de-duplication. | All |