# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **KRISTINA RAPUANO et al.,** *Plaintiffs, on behalf of themselves and all others similarly situated,* <br><br> v. <br><br> **TRUSTEES OF DARTMOUTH COLLEGE,** *Defendants.* | CIVIL ACTION NO. 1:18-cv-01070-LM |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTIONS TO PROCEED UNDER PSEUDONYM [ECF No. 29 & 30]**

Through its recently filed Opposition, Dartmouth moves to publicly "out" two pseudonymous Plaintiffs who joined this case to seek redress for the sexually hostile environment to which they were subjected as Dartmouth students. Both Plaintiffs allege that the institutional environment created by Dartmouth permitted prominent male professors to subject them to ongoing sexual harassment and sexual assault. Courts have long allowed sexual assault survivors to bring legal claims under pseudonyms, recognizing that without this accommodation, fear of additional embarrassment, humiliation, emotional distress, and retaliation would prevent many survivors from coming forward. For their part, many educational institutions facing Title IX and other actions have chosen to defend themselves without challenging plaintiff pseudonymity. Dartmouth's Objection is a striking departure for a liberal, Ivy League institution that touts itself as being "at the forefront of public conversations on women, gender, and sexuality issues."

In support of its position, Dartmouth presents three arguments, all of which are unavailing. First, Dartmouth argues that being sexually assaulted by professors is simply not "exceptional" enough to warrant plaintiff pseudonymity. Fortunately, courts are not so callous. Rather, numerous courts have recognized that sexual assault is precisely the type of "personal and confidential"

matter that may warrant pseudonymous status. Jane Does 2 and 3 have demonstrated that granting Dartmouth's demand to publicly "out" them would result in just the sort of substantial harm that courts routinely recognize as justifying proceeding pseudonymously. Second, Defendant, an institutional actor with a multi-billion-dollar endowment, claims that allowing its two former students to litigate under pseudonyms would be overly "burdensome," "confusing" and "fundamentally unfair." This attempt to characterize Dartmouth as the true victim in this case is a strange perversion of "fairness" that contravenes well-settled principles of law. Finally, Dartmouth claims that permitting Jane Does 2 and 3 to take refuge in pseudonymity, even at this early stage of the case, would rob it of its ability to defend itself. As Plaintiffs have communicated to Dartmouth's counsel on numerous occasions, such concerns may be properly addressed in the form of a stipulated protective order governing how confidential information is handled in discovery.

In short, at this time, neither the governing law nor the facts in this case require this Court to strip Jane Does 2 and 3 of the protections they seek in order to permit Dartmouth to fully and fairly litigate its position.

**I.   COURTS STRONGLY FAVOR PROTECTING SEXUAL VIOLENCE SURVIVORS BY USING PSEUDONYMS**

Jane Does 2 and 3 have both suffered severe acts of sexual violence and non-consensual sexual encounters.[1] Dartmouth effectively ignores this, conceding only that "some" of the

---

[1] *See* Dkt. 28 ¶¶ 291-292 ("Whalen insisted on following Jane Doe 2 inside, ignoring her when she instructed him to leave. Once inside the apartment, Whalen initiated sexual activity with her. Jane Doe 2 asked Whalen to leave her house, telling him that she was going to be sick from alcohol. Whalen did not leave her apartment, claiming that he needed to 'help her get into bed' and undressing her. At one point, Whalen told her: 'Don't worry, we're not going to have sex.' Jane Doe 2 replied, 'of course not—I can't even walk.' Whalen nonetheless forced himself on Jane Doe 2 and engaged in nonconsensual intercourse with her. In the following months after sexually assaulting Jane Doe 2, Whalen repeatedly demanded to know if she had told anyone and warned her that he would 'lose everything' if she told anyone.") and ¶ 309 ("[Kelley] continuously bought drinks for Jane Doe 3 until she was intoxicated to the point of slipping in and out of consciousness

2

allegations contain "personal and sensitive matters," but nonetheless maintaining that this is "not necessarily sufficient" to permit plaintiffs to proceed under pseudonyms. (Opp. at 6.) This is contrary to well-established case law holding that **"courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault on the basis that they concern highly sensitive and personal subjects."** *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49 (D.D.C. 2019); *Doe v. Cabrera*, 307 F.R.D. 1, 5-6 (D.D.C. 2014) (allowing sexual assault plaintiff to use pseudonym: "[t]he plaintiff's privacy interests go beyond avoiding embarrassment and criticism . . . this case is one of a 'sensitive and highly personal nature'") *E.E.O.C. v. Spoa, LLC*, No. CIV. CCB-13-1615, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (finding "sexual assault" to be "a highly sensitive and personal matter"); *Doe v. De Amigos, LLC*, No. CV 11-1755 (ABJ), 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) ("Courts have granted anonymity to protect against disclosure of a wide range of issues involving matters of the utmost intimacy, including sexual assault.") (citing cases).

Dartmouth also ignores that forcing Jane Does 2 and 3 to publicly identify themselves will result in severe emotional distress and interfere with their ability to process, cope with, and recover from their experiences. *See* Dkt. 31 (Douglas Decl.) ¶ 5; *see also* Ex. A (Jane Doe 2 Decl.); Ex. B (Jane Doe 3 Decl.). Both Jane Doe 2 and Jane Doe 3 have already experienced extreme emotional distress ranging from depression to suicidal thoughts.[2] These symptoms are likely to be exacerbated if Dartmouth is permitted to "out" them at this time, a factor weighing strongly in

---

. . . Kelley then separated Jane Doe 3 from the group and led her back to his hotel and initiated sexual activity with her for the first time.")

[2] *See* Dkt. 31 (Douglas Decl.) ¶ 5; *see also* Dkt. 28 at ¶ 306 (Jane Doe 2 "experienced extreme depression and was consumed by suicidal thoughts," "became socially isolated and withdrawn," and suffered from "insomnia, loss of appetite, nausea, amenorrhea, and hypervigilance") and ¶ 323 (Jane Doe 3 became "withdr[awn]," "socially isolated," and "depressed, anxious, and demoralized.").

favor of anonymity, particularly at this stage of litigation. *See Doe v. Rutgers*, No. 2:18-CV-12952-KM-CLW, 2019 WL 1967021, at *3 (D.N.J. Apr. 30, 2019); *see also Cabrera*, 307 F.R.D. at 7 (potential that public disclosure will "exacerbate any psychological issues the plaintiff[s] [are] currently experiencing" is a "grave concern" favoring anonymity).

Forcing Jane Does 2 and 3 to reveal their names publicly at this time "would risk undermining the psychological treatment [they have] already undergone since the alleged incident and potentially retard the progress [they have] made." *Cabrera*, 307 F.R.D. at 6 (allowing plaintiff to proceed pseudonymously and finding public disclosure of plaintiff's identity "very likely to result in psychological trauma"); *see also* Ex. A, Ex. B. Jane Does 2 and 3 also fear that public identification may result in reputational and career damage. *Id*. This Court has recognized anonymity is favored when public disclosure will "subject [plaintiffs] to reputational damage and will impair [their] future educational and career prospects." *Doe v. Trustees of Dartmouth Coll.* ("*Dartmouth I*"), No. 18-CV-040-LM, 2018 WL 2048385, at *5 (D.N.H. May 2, 2018).[3]

## II.   THE REMAINING *MEGLESS* FACTORS WEIGH IN FAVOR OF ANONYMITY

The Court has already ruled in this case "that the balance of [*Megless*] factors weighs heavily in favor of a pseudonym" for Jane Doe 1. (*See* Nov. 30, 2018, Endorsed Order Granting Motion for Leave to Proceed Under Pseudonym.) Dartmouth does not explain why the Court's

---

[3] These risks of amplified emotional distress and reputational damage are "only exacerbated in the Internet age, which can provide additional channels for harassment." *Dartmouth I*, 2018 WL 2048385, at *5; *see also George Washington*, 369 F. Supp. at 49 ("[T]he Court agrees that [p]ublic disclosure of [the p]laintiffs' private identities will compound and exacerbate the psychological trauma they have already suffered, especially in the age of the internet.") (citations and quotation marks omitted); *Cabrera*, 307 F.R.D. at 7 ("Having the plaintiff's name in the public domain, *especially in the Internet age*, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case."); *accord Colgate Univ.*, 2016 WL 1448829, at *2 ("[C]ases stemming from investigations of sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both the plaintiffs in these cases and their accusers.").

recent balancing in this same case should be disturbed now. It also fails to explain why its own position has changed, a suspect inconsistency that haunts its Opposition. Particularly puzzling are Dartmouth's arguments focusing on the class representative status of Jane Doe 2 and Jane Doe 3, arguments that are both entirely premature at this early stage of the case, and strangely inconsistent inasmuch as they were not levied to attack the pseudonym status of Jane Doe 1, also a proposed class representative. Setting aside these premature arguments concerning class certification, which are addressed below (*infra* Section III), Dartmouth essentially concedes that the first, fourth, fifth, sixth, and eighth *Megless* factors are satisfied here. (*See* Opp. at 6-9.) For the reasons discussed above, the second factor easily weighs in Plaintiffs' favor. *See supra* Section I.

Dartmouth challenges the third factor by suggesting that denying Jane Does 2 and 3 the right to proceed pseudonymously will not deter participation because *some* Plaintiffs have already chosen to litigate using their real names. (Opp. at 7.) Importantly, this factor evaluates whether public disclosure of a plaintiff's identity will deter **other similarly situated litigants** from litigating their claims; indeed, this Court has acknowledged that "there is authority for the proposition that precluding pseudonymous litigation in college disciplinary cases may have a chilling effect ***on future plaintiffs who seek to challenge the adequacy of the process***." *Dartmouth I*, 2018 WL 2048385, at *6 (emphasis added).[4] There "is a recognized public interest in ensuring that victims of sexual assault can vindicate their claims and that the fear of public humiliation does not discourage these plaintiffs." *Rutgers*, 2019 WL 1967021, at *3 (citing and quoting *Doe v.*

---

[4] *See also George Washington*, 369 F. Supp. at 49 (recognizing the "strong [public] interest in protecting the identities of sexual assault victims so that ***other victims*** will not be deterred from reporting such crimes."); *De Amigos*, WL 13047579, at *2 (same); *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (same); *Evans*, 202 F.R.D. at 176 (the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights").

5

*Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001)). The third factor thus weighs in Plaintiffs' favor where, as here, a victory for Dartmouth threatens to chill other survivors from coming forward by suggesting that the accommodation of pseudonymous litigation is unavailable to them.

The seventh factor is satisfied where, as here, six Plaintiffs have chosen to litigate under their full names. *See Dep't of Fair Employment & Hous. v. Law Sch. Admission Council, Inc.*, No. C-12-1830 EMC, 2012 WL 3583023, at *4 (N.D. Cal. Aug. 20, 2012) (determining that when 3 of 17 complainants used pseudonyms, the remaining publicly identified plaintiffs "substantially satisfied the public's interest in open judicial proceedings").

### III. ANY POTENTIAL CLASS CERTIFICATION ISSUES ARE PREMATURE AT THIS STAGE, AND COURTS TRADITIONALLY PERMIT PSEUDONYM USE BY CLASS REPRESENTATIVES

This argument is, to say the least, premature: Plaintiffs' class certification papers are due January 31, 2020. Accordingly, the question of whether Jane Does 2 and 3 are adequate class representatives will not be ripe for at least nine months. Indeed, written discovery in this matter has barely commenced. Dartmouth fails to articulate why the use of pseudonyms for Jane Doe 2 and Jane Doe 3 has, at this early stage of discovery, suddenly become a pressing issue where class certification is concerned. By comparison, Dartmouth's filed response to Jane Doe 1's motion to proceed under pseudonym (Dkt. 9) anticipated a potential future issue with class certification while finding in that possibility no present basis to oppose proceeding pseudonymously.

Dartmouth's argument is also unlikely to withstand scrutiny at the class certification stage, where courts have repeatedly allowed class representatives to proceed under pseudonyms.[5] *See*

---

[5] Defendants incorrectly claim (Opp. at 8-9) that the plaintiffs in *Jane Doe 1, et al. v. Morrison & Foerster LLP* were denied permission to proceed under pseudonyms; in that case, all seven of the plaintiffs were, in fact, permitted to proceed pseudonymously, without any objection by Defendant, a global law firm. Amended Minute Entry, *Doe 1 v. Morrison & Foerster LLP*, No. 3:18-cv-02542-JSC (N.D. Cal. April 18, 2019), ECF No. 78.

*Doe v. Hale Hosp.*, 500 F.2d 144 (1st Cir. 1974) (affirming a district court decision that granted class action status and permitted all seven class representatives to use pseudonyms); *Doe v. Mundy*, 514 F.2d 1179, 1182 (7th Cir. 1975) (dismissing as "without merit," Rule 23(a) adequacy and typicality challenges to two class representatives, one of whom used a pseudonym: "[P]laintiff's anonymity does not weaken her ability to represent the class: an anonymous plaintiff, Jane Roe, maintained a class action in *Roe v. Wade* . . . .") (citation omitted).[6]

Dartmouth's reliance on *In re Ashley Madison Customer Data Sec. Breach Litig.*, No. 2669, 2016 WL 1366616 (E.D. Mo. Apr. 6, 2016), a multi-district action stemming from a data breach, is inapposite here. In that case, the court found that the privacy interests of 42 consumer plaintiffs seeking to proceed pseudonymously were "not as pronounced" because, in part, their identities, along with other sensitive information, **had already been made public** as a result of the data breach in question. *Id*. at *3. This case is distinguishable in every meaningful register, involving two Plaintiffs who have been subjected to egregious harm but not yet publicly exposed. The other cases Dartmouth cites are likewise inapposite.[7] None should induce this Court to entertain Dartmouth's premature challenge to the use of pseudonyms by Jane Does 2 and 3.

---

[6] *See also, e.g.*, *Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015) (granting pseudonymity to plaintiffs in putative class action); *Law Sch. Admission Council, Inc.*, 2012 WL 3583023 (same); *Doe v. The New Ritz, Inc.*, No. CV RDB-14-2367, 2016 WL 454940 (D. Md. Feb. 5, 2016) (same); *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) (same); *Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 328 n.1, 332–34 (D. Conn. 2001) (granting class certification with anonymous lead plaintiffs); *Roe v. Operation Rescue*, 123 F.R.D. 500, 501 (E.D. Pa. 1988) (same); *Doe v. United States*, 44 F. App'x 499, 500 (Fed. Cir. 2002) (describing overtime class action as including 30 pseudonymous class representatives); Final Approval of Class Action Settlement, *Beckett v. Aetna, Inc.*, No. 2:17-CV-03864-JS (E.D. Pa. Oct. 18, 2016), ECF. No. 72 (granting certification in $17 million settlement class and appointing 37 class representatives using pseudonyms).

[7] For example, *Doe v. Compact Info. Sys., Inc.*, 2015 WL 11022761, at *6 (N.D. Tex. Jan. 26, 2015) did not involve any allegations of sexual assault/harassment, but instead asserted claims under federal and state driver privacy protection acts. *id.* at *4 ("Plaintiff's lawsuit deals with the alleged use, re-disclosure, and re-sale of identifying information, such as her name, address, and

7

## IV. DARTMOUTH'S ALLEGED CONFUSION AND ITS DISPLEASURE WITH THE PUBLIC PLAINTIFFS' FREE SPEECH FAILS TO SHOW ACTUAL PREJUDICE

Dartmouth claims that it is prejudiced because its ability to conduct third-party discovery would be restricted by the pseudonymous status of Jane Does 2 and 3. (Opp. at 10-11.) Courts routinely reject this argument where, as here, the defendant is aware of the plaintiffs' identities. *See De Amigos*, 2012 WL 13047579, at *3 ("Defendant argues that plaintiff's use of a pseudonym would cause unfairness because defendant would be unable to adequately conduct third party discovery if plaintiff's identity could not be revealed. The Court finds any unfairness to defendant would be minimal. Plaintiff has already disclosed her identity to defendant[.]") (citation omitted); *see also George Washington*, 369 F. Supp. at 49 (D.D.C. 2019) (rejecting defendant's argument that they would be prejudiced because they were "limited in using [the p]laintiffs' actual names in third-party subpoenas, depositions, and interviews" and holding: "[T]his is nothing more than conjecture at best.") (quoting *Cabrera*, 307 F.R.D. at 8)); *Doe v. Colgate Univ.*, No. 515CV1069LEKDEP, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly.").

Any legitimate concerns Dartmouth may have in this regard do not require throwing the baby out with the proverbial bath water, but rather may be addressed by a stipulated protective order governing the use of confidential information by all parties in the discovery process. *See Doe*

---

vehicle information. She does not seek redress against her alleged abuser for the abuse . . . Plaintiff does not contend, and it does not appear, that she would be compelled to disclose or re-live the details of her abuse as a result of prosecuting this lawsuit."). Likewise, *Michael v. Bloomberg L.P.*, 2015 WL 585592 (S.D.N.Y. Feb. 11, 2015) was a wage and hour case that merely mentioned, without allegations of emotional harm, that a class representative's pseudonym may prevent potential class members from evaluating his adequacy. And in *Nazih v. Cafe Istanbul of Columbus, LLC*, 2018 WL 4334613 (S.D. Ohio Sept. 11, 2018), the court **permitted** opt-in plaintiffs to proceed pseudonymously, only requiring them to disclose their identities to defendants, which Plaintiffs in the instant case have already done.

*No. 2 v. Kolko*, 242 F.R.D. at 198-99 (granting motion for a protective order that facilitated the defendant's ability to conduct discovery with a Jane Doe plaintiff); *Cabrera*, 307 F.R.D. at 8 ("Moreover, the plaintiff has not sought to impose any limitation on the defendant's ability to conduct whatever discovery he deems necessary (given the appropriate protective orders governing the use and dissemination of identifying information)—the plaintiff seeks only to protect against public disclosure of her name and address.") (alterations and citation omitted). Stipulated protective orders are routinely fashioned to permit defendants to conduct any necessary discovery or investigation without publicly revealing an anonymous plaintiff's identity. After several telephone conferences to meet and confer, Plaintiffs provided Dartmouth with a draft protective order incorporating this Court's form stipulated protective order on April 19, 2019. As of the time of this filing, Dartmouth has not responded to Plaintiffs' draft.

Dartmouth's accusation that the Plaintiffs have used "publicity as a sword" is unconvincing where, as here, Dartmouth has not shied from defending itself and its conduct in the media and through public statements.[8] *Cf. Law Sch. Admission Council, Inc.*, 2012 WL 3583023, at *5 (no significant showing of prejudice where three of seventeen plaintiffs would use pseudonyms, given the option of "an appropriately framed protective order" and that defendant "should be more than able to defend itself in the press."). In addition, Dartmouth acknowledges that none of the Jane

---

[8] *E.g.*, Nicole Chavez & Erica Hill, *Dartmouth says officials were not aware of sexual misconduct until allegations surfaced in 2017*, CNN (Jan. 16, 2019), https://www.cnn.com/2019/01/16/us/dartmouth-title-ix-lawsuit-response/index.html; Todd Feathers, *Dartmouth praises women suing for $70m, but denies it did nothing to stop sexual harassment and abuse*, UNION LEADER (Jan. 16, 2019), https://www.unionleader.com/news/courts/dartmouth-praises-women-suing-for-m-but-denies-it-did/article_a19f4251-c2c6-56cb-b249-924d0e01371e.html; Dartmouth Office of Communications, *Dartmouth Files Lawsuit Answer in Federal Court*, DARTMOUTH NEWS (Jan. 15, 2019), https://news.dartmouth.edu/news/2019/01/dartmouth-files-lawsuit-answer-federal-court

9

Doe Plaintiffs have made statements to the media, nor have they been publicly identified. Dartmouth cites no authority that even suggests that public statements by a plaintiff should impact the analysis of whether another plaintiff, one who was not even a party at the time the statements were made, should be permitted to proceed anonymously. Here, again, Dartmouth's decision to attack the pseudonymity of Jane Does 2 and 3, but not that of Jane Doe 1, seems oddly inconsistent.

Dartmouth's position that the use of pseudonyms for three Jane Doe Plaintiffs will be "vague," "confusing," and make it difficult for this Court, counsel, and witnesses to "keep each of the nine Plaintiffs straight" barely warrants a response. (Opp. at 4, 10-11.) Plaintiffs are confident that this Court and all relevant persons can distinguish between the individuals identified, respectively, as Jane Doe 1, Jane Doe 2, and Jane Doe 3. Indeed, in one case cited by Dartmouth to support its position, the parties and the Court have managed to distinguish successfully between no fewer than 7 pseudonymous Named Plaintiffs. *See supra,* n.5.

In this case, where both pseudonymous plaintiffs present claims of sexual harassment and assault, the sensitive and personal nature of the allegations and the likelihood that exposure will substantially harm the Jane Does override any prejudice concerns asserted by Dartmouth. *Colgate Univ.*, 2016 WL 1448829, at *3 ("the Court finds that the recent increase in media attention focused on the epidemic of sexual assaults on college campuses negates any resulting prejudice Defendants would incur if Plaintiff were allowed to proceed anonymously."); *Cabrera*, 307 F.R.D. at 8 ("Courts generally find little to no risk of unfairness to an accused defendant in sexual assault cases where discovery does not appear to be inhibited by the plaintiff's desire to proceed anonymously.") (citing cases). If Dartmouth's Opposition can prevail here based on generalized complaints about "unfairness," it will vitiate well-settled principles designed to allow survivors like Jane Does 2 and 3 to vindicate their rights without needlessly enduring additional trauma.

Dated:  May 21, 2019                                        Respectfully submitted,

*/s/ Deborah K. Marcuse*
Deborah K. Marcuse (admitted *pro hac vice*)
Steven J. Kelley (admitted *pro hac vice*)
Austin L. Webbert (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com
skelly@sanfordheisler.com
awebbert@sanfordheisler.com

David W. Sanford (admitted *pro hac vice*)
Nicole E. Wiitala (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
nwiitala@sanfordheisler.com

*-- and --*

Charles G. Douglas, III (NH Bar #669)
**DOUGLAS, LEONARD & GARVEY, P.C.**
14 South Street, Suite 5
Concord, NH 03301
Telephone: (603) 224-1988
Fax: (603) 229-1988
chuck@nhlawoffice.com

*Attorneys for Plaintiffs and the Proposed Class*

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **KRISTINA RAPUANO *et al.*, on behalf of themselves and all others similarly situated,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendants.* | **CASE NO. 1:18-cv-01070-LM** |

**DECLARATION OF JANE DOE 2 IN SUPPORT OF
MOTIONS TO PROCEED UNDER PSEUDONYM [ECF No. 29 & 30]**

I, Jane Doe 2, declare as follows:

1. I make this Declaration based upon personal knowledge.

2. I am over 21 years of age and fully competent to make this Declaration. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3. I am a Plaintiff in the above-captioned action.

4. To my knowledge, my name has not been publicly revealed in connection with this lawsuit. I have never spoken with any member of the news media in connection with my allegations or this case. To my knowledge, I have never been publicly identified in any news coverage.

5. My allegations in the First Amended Complaint contain graphic details about the sexual assault and sexual harassment to which I was subjected by my professor while a student and employee at Dartmouth. I was very young when these actions occurred, and it is important to me that these sensitive and personal details remain private. I have shared the intimate details of the sexual assault with only a few close friends and family members, and my attorneys. I have sought support from therapists. I have told no one else what happened to me.

6. Because of my experiences at Dartmouth, I became extremely depressed and socially withdrawn from my friends and family. I was consumed by suicidal thoughts and contemplated suicide on numerous occasions.

7. I continue to suffer from the lasting effects of trauma, which drove me to seek a different career path in a different field. However, I have made significant progress in moving forward. I now have a full-time job and career.

8. I have taken comfort in the fact that this Court can allow me to join this lawsuit using a pseudonym.

9. When I learned that Dartmouth had filed an opposition to my use of a pseudonym, I suffered from severe anxiety and stress due to the terror of being publicly identified. Since then, I have experienced severe emotional distress. Recently, when a work supervisor asked me how I was doing, I became tearful and felt panicked. The thought of intimate details regarding my sexual history and emotional state being revealed to my coworkers, friends, family, patients, and the media fills me with great fear and anxiety. I fear that being publicly identified will have significant negative consequences for these individuals and my relationships to them, especially about my significant other and family. My fears are only magnified by the fact that bloggers and social media users will probably engage in hateful comments and discussions regarding my claims. I am certain that I will suffer severe emotional distress and an overall worsening of my physical and psychological health if forced to reveal my identity at this point.

10. I am so afraid of the consequences of being publicly identified that I do not think I will move forward if I am forced to publicly identify myself. I know that facing public identification will interfere with my emotional and physical well-being and interfere with my ability to process, cope with, and recover from my experiences at Dartmouth.

11. I also fear that publicly identifying myself will result in retaliation and reputational harm. Because of the nature of my current profession, I am afraid that publicly identifying myself in connection with this lawsuit will negatively affect my career. In particular, I fear that the stigma of public identification will harm my doctor-patient relationships as well as relationships with colleagues and supervisors.

12. Beside the great distress and panic it has caused me, Dartmouth's objection to the use of pseudonyms has deepened the sense of disappointment and betrayal I feel because of Dartmouth's actions. It feels like Dartmouth has adopted this bullying stance as a scare-tactic to try to intimidate me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge and belief.

Dated: May 21, 2019

*/s/ Jane Doe 2*
Jane Doe 2

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **KRISTINA RAPUANO *et al.*, on behalf of themselves and all others similarly situated,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendants.* | **CASE NO. 1:18-cv-01070-LM** |

## DECLARATION OF JANE DOE 3 IN SUPPORT OF
## MOTIONS TO PROCEED UNDER PSEUDONYM [ECF No. 29 & 30]

I, Jane Doe 3, declare as follows:

1. I make this Declaration based upon personal knowledge.

2. I am over 21 years of age and fully competent to make this Declaration. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3. I am a Plaintiff in the above-captioned action.

4. To my knowledge, my name has not been publicly revealed in connection with this lawsuit and I have never been publicly identified in any news coverage. I have never spoken with any member of the news media in connection with my allegations or this case.

5. My allegations in the First Amended Complaint contain graphic details about the sexual assault and sexual harassment to which I was subjected by my professor while a student at Dartmouth. It is very important to me that these sensitive and personal details remain private. I have not shared the intimate details of my experiences with anyone except for a few close friends and family members, my attorneys, and my therapists.

6. The trauma I experienced at Dartmouth had lasting effects on my emotional and physical health. I became socially withdrawn and developed depression. I experienced issues with

disordered eating and I have had difficulties working with male colleagues due to concerns that they are judging me on my appearance rather than my science. In my years since leaving Dartmouth, contact from the former professors named in the lawsuit triggered immediate anxiety.

7. I ultimately transitioned to a different area of research and sought out female mentors due to the fears I developed as a result of the abuse I experienced while at Dartmouth. I have made significant progress in my recovery, and I now have a successful career. I continue to struggle with emotional distress over the treatment I received while at Dartmouth, as pains I endured are very much a part of me. I regularly experience intrusive thoughts related to my experiences and at times have even feared for my life and the well-being of my family.

8. I was initially afraid to come forward because of the harm doing so could have on my emotional state and professional career. However, I was comforted by the fact that this Court allowed Jane Doe 1 to join the lawsuit under a pseudonym, and I decided to come forward myself in the same manner.

9. When I learned that Dartmouth had filed an opposition to my use of a pseudonym, I suffered from severe anxiety and stress. I am terrified by the thought of intimate details regarding my sexual history and emotional state being revealed to my colleagues, friends, family, and the media. I feel especially vulnerable in light of the public coverage this case has received, both from media outlets and social media users. I am certain that I will suffer severe emotional distress and an overall worsening of my physical and psychological health if forced to reveal my identity at this point.

10. I do not believe that I will move forward as a Plaintiff in this lawsuit if I am forced to publicly identify myself. I know that public identification will exponentially increase my emotional distress and set me back in my ability to recover from my experiences.

11.     I also fear that I will suffer reputational harm if I am forced to publicly identify myself. The career I have today was built on work I carried out at Dartmouth. Since the three former professors named in this lawsuit were my direct advisors and mentors, they served as references for me on multiple grant submissions and in my application for a position at my current institution. It is a significant worry that others, including current colleagues, collaborators, and funding agencies, will change their view of me as a strong and capable scientist upon learning of my past, the details of the environment in which I studied, and the opinions of these former advisors. In this way, I fear that public identification would wrongly and irreparably tarnish my scientific career. Given the sensitive and intimate nature of my experiences, I also fear personal reputational harm that would affect not only myself, but also my family.

12.     Dartmouth's objection to the use of pseudonyms has been highly upsetting to me. Although the college claims to stand behind its former students and specifically claimed to admire our courage in coming forward, I feel it is now acting to silence us. This motion says to us, "be fully exposed, risk everything, or be silent." If the institution that claims to stand behind me truly appreciated the continued pain and distress I endured during my time at Dartmouth and now as an alumna, it would recognize that this demand is traumatizing in and of itself.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge and belief.

Dated: May 21, 2019

*/s/ Jane Doe 3*
Jane Doe 3