UNITED STATES DISTRICT COURT
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,<br><br>*Plaintiffs, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendant.* | Hon. Landya B. McCafferty, U.S.D.J.<br><br>CASE NO. 1:18-cv-01070 (LM)<br><br>**DECLARATION OF DEBORAH K. MARCUSE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

I, Deborah K. Marcuse, hereby declare as follows:

1. I make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement.

2. I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3. I am an attorney duly admitted to practice law in New York, Maryland, Connecticut, the Commonwealth of Pennsylvania, and the District of Columbia. I am admitted *pro hac vice* in this matter.

4. I make this declaration in support of Plaintiffs' request that the Court (i) enter the Proposed Order granting Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement; (ii) preliminarily certify the proposed Class for settlement purposes under Rule 23(b)(3) of the Federal Rules of Civil Procedure; (iii) appoint Sanford Heisler Sharp, LLP as Class Counsel and Plaintiffs Rapuano, Chauhan, Brietzke, Brown, Courtney, Evans, Jane Doe, and Jane Doe 2 as Settlement Class Representatives; (iv) approve the substance, form, and manner of the

Notices of Class Action Settlement and Confidential Claim Form for mailing to all members of the Class; and (v) schedule a Final Approval Hearing.

5. Attached hereto as **Exhibit 1** is a true and correct copy of the Class Action Settlement Agreement fully executed on September 10, 2019.

6. Attached hereto as **Exhibit 2** is a proposed Class Notice and Confidential Claim Form for all Class Members *except* those who fall *solely* within Paragraph 2(a)(iv) of the Class Definition.

7. Attached hereto as **Exhibit 3** is a proposed Class Notice and Confidential Claim Form for all Class Members who fall solely within Paragraph 2(a)(iv) of the Class Definition.

8. Attached hereto as **Exhibit 4** is the resume of Maria C. Walsh, Esq.

9. Attached hereto as **Exhibit 5** is a Proposed Order Granting Preliminary Approval of the Proposed Class Action Settlement.

## I.     Counsel's Background

10. I am Managing Partner of the Baltimore office of Sanford Heisler Sharp, LLP ("SHS," "Sanford Heisler Sharp," or the "Firm") and co-Chair of the firm's Title VII Practice Group. I am class counsel in the above-captioned matter with David Sanford, Steve Kelly, Nicole Wiitala, and Austin Webbert.

11. I graduated from Yale Law School in 2008, and I am a member in good standing of the Connecticut bar since 2008, the New York and District of Columbia bars since 2010, the bar of the Commonwealth of Pennsylvania since 2016, and the Maryland bar since 2018.

12. Sanford Heisler Sharp has a high standing at the bar and a reputation for zealous and effective advocacy, as well as a wealth of experience in litigating class-action cases, and a thorough familiarity with the applicable law.

13. David W. Sanford has also submitted a declaration in support of Plaintiffs' Motion for Preliminary Approval of the Class Settlement, which sets forth SHS's extensive experience litigating class-action cases.

## II. Procedural and Litigation History

### A. Procedural History

14. On November 15, 2018, Plaintiffs Rapuano, Chauhan, Brietzke, Brown, Courtney, Evans, and Jane Doe filed a Class Action Complaint against Defendant Trustees of Dartmouth College in the United States District Court for the District of New Hampshire alleging class claims for hostile academic environment and gender discrimination under Title IX as well as breach of fiduciary duty and negligent supervision and retention under New Hampshire law. (See Dkt. 1.) That same day, Plaintiff Jane Doe also filed a Motion for Leave to Proceed Under Pseudonym (Dkt. 2) that was granted in part pursuant to an Endorsed Order dated November 30, 2018. Between December 7, 2018 and January 8, 2019, the original seven Plaintiffs (Rapuano, Chauhan, Brietzke, Brown, Courtney, Evans, and Jane Doe) filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). These Charges were also docketed with the New Hampshire Commission for Human Rights as complaints under the New Hampshire Law Against Discrimination. The EEOC issued Notice of Suit Rights letters on June 13, 2019.

15. On January 15, 2019, Dartmouth filed its Answer and Affirmative Defenses. (*See* Dkt. 24.) Dartmouth denied any wrongdoing and denied any and all allegations of discrimination, harassment and retaliation. Dartmouth also asserted several affirmative defenses.

16. The Parties' Jointly Filed Proposed Discovery Plan pursuant to Federal Rule of Civil Procedure 26(f) was filed on February 11, 2019 (Dkt. 25) and approved by the Court with modifications in a February 12, 2019 Endorsed Order.

17. The Parties filed an Electronic Discovery Protocol on March 1, 2019 (Dkt. 27) that was So-Ordered by the Court on March 4, 2019 (Dkt. 26).

18. The Parties exchanged Initial Disclosures on April 15, 2019.

19. On May 1, 2019, Plaintiffs filed their First Amended Class Action Complaint ("FAC"). (*See* Dkt. 28.) The FAC joined Jane Doe 2 and Jane Doe 3 as Named Plaintiffs and included additional facts revealed in Plaintiffs' continuing investigation. Plaintiffs Jane Doe 2 and Jane Doe 3 filed Motions to Proceed Under Pseudonym that same day. (Dkts. 29-30.)

20. On May 14, 2019, Defendant filed a Consolidated Opposition to Plaintiff Jane Doe 2 and Jane Doe 3's Motions to Proceed Under Pseudonym. (*See* Dkt. 34.)

21. On May 21, 2019, Plaintiffs filed their Reply in Support of Jane Doe 2's and Jane Doe 3's Motions to Proceed Under Pseudonym. (*See* Dkts. 36-37.) Dartmouth filed a Conditional Notice of Intent to File a Surreply Memorandum on May 24, 2019. (Dkt. 38.)

22. On May 24, 2019, the Parties filed a Joint Motion for Stay Pending Mediation. (Dkt. 39.)

23. The Parties participated in two full days of private mediation on July 24, 2019 and July 25, 2019.

24. On August 6, 2019, the Parties filed a Joint Report Following Mediation and a Joint Motion to Extend Stay to Allow Submission of Settlement Documents, informing the Court that the Parties had reached a settlement agreement-in-principle (Dkt. 41).

25. On September 10, 2019, the Parties filed a Joint Submission of Proposed Class Action Settlement and Proposed Schedule for Briefing In Support Thereof (Dkt. 45) ("Parties' Proposed Briefing Schedule"), in which the Parties requested that the Court adopt the "process and schedule" set forth in the submission, which provided dates for the submission of "Plaintiffs'

Motion for Preliminary Approval of Proposed Class Action Settlement" and "Plaintiffs' Motion for Final Approval." (*Id*. at ¶¶ 1, 3.) The process set forth in the Parties' Proposed Briefing Schedule was consistent with other filings referencing Plaintiffs moving for preliminary and final approval of the proposed Settlement. (*See* Dkt. 45 ¶¶ 2, 27 (Stipulation and Agreement of Settlement); Dkt. 41 ¶ 3 (Joint Report Following Mediation and Joint Motion to Extend Stay to Allow Submission of Settlement Documents); Dkt. 46 (Plaintiffs' Assented-To Motion for Leave to Exceed the Page Limitation); September 19, 2019 Endorsed Order Granting Dkt.46).)

26.  The Court approved the Parties' Proposed Briefing Schedule (Dkt. 45) in an Endorsed Order dated September 16, 2019 ("Endorsed Order Granting Parties' Proposed Briefing Schedule").

27.  Dartmouth takes the position that the Court's Endorsed Order Granting Parties' Proposed Briefing Schedule gave leave for the motions seeking preliminary and final approval of the class action settlement to be filed by Plaintiffs (rather than as joint motions per Local Rule 23.1(b)(2)-(3)).

28.  In light of the Court's Endorsed Order Granting Parties' Proposed Briefing Schedule and Dartmouth's position regarding the import of that Order, Plaintiffs respectfully request leave from the Court to file this Motion and Memorandum of Law seeking preliminary approval of the proposed class action settlement to the extent the Court deems such approval necessary.

29.  Dartmouth does not oppose Plaintiffs' Motion for Preliminary Approval of the Proposed Class Action Settlement.

   **B.   Mediation and Settlement Negotiations**

5

30. To avoid further unnecessary litigation, cost, and expense, the Parties agreed on approximately May 24, 2019 to engage in private mediation. The Parties retained the Honorable Robert Morrill (Ret.), a well-known and experienced mediator familiar with New Hampshire law, to assist them in their negotiations.

31. The Parties participated in two full days of mediation before Mediator Morrill on July 24, 2019 and July 25, 2019.

32. The Parties continued to negotiate in person on July 26, 2019, and remotely over the days that followed.

33. On August 6, 2019, the Parties issued a joint press release announcing that a settlement had been reached. (*See* https://sanfordheisler.com/press-release/joint-press-release-dartmouth-college-and-nine-current-and-former-dartmouth-students-announce-settlement-of-title-ix-class-action/ and https://news.dartmouth.edu/news/2019/08/college-and-plaintiffs-title-ix-lawsuit-settle-case.)

34. Since the mediation, the Parties have expended significant time negotiating and finalizing the details of the settlement. The Settlement Agreement ("Settlement" or "Agreement") was dually executed by all Parties and filed with this Court on September 10, 2019 (Dkt. 45-1).

**C.  Factual Investigation**

35. In the months leading up to the filing of this lawsuit, both Sanford Heisler Sharp and Dartmouth conducted extensive factual investigations of the underlying allegations in this action. (Ex. 1 ¶¶ I-J.)

36. In 2017, Dartmouth retained an independent investigator who, over the course of eleven months, interviewed dozens of witnesses, reviewed electronic messages, collected records, and prepared written reports concerning the conduct of Todd Heatherton, William Kelley, and Paul

Whalen (the "Three Former Professors") who were alleged to have discriminated against and/or harassed female students.

37. Sanford Heisler Sharp had access to and extensively reviewed the final written Investigation Reports for the Three Former Professors, which collectively amounted to 299 pages summarizing information provided to the investigator by 27 reporting parties and 118 witnesses. Sanford Heisler Sharp also had access to and reviewed drafts (by the investigator), revisions (by the reporting parties and the Professors), and exhibits (submitted by the reporting parties and the Professors).

38. Sanford Heisler Sharp also conducted its own factual investigation. Specifically, Plaintiffs' counsel spoke with at least 36 witnesses with knowledge of the underlying allegations set forth in the Complaint; reviewed extensive records and documents provided by the Plaintiffs and witnesses; reviewed information received through Freedom of Information Act ("FOIA") requests to the U.S. Department of Education and the Office for Civil Rights; reviewed policy documents, handbooks, and other publicly available information on Dartmouth's website or located through internet searches; and researched related media articles and blog or social media postings.

39. The Parties exchanged further information through written correspondence; phone calls; in-person meetings; detailed mediation statements and exhibits submitted by the Plaintiffs; three full days of in-person negotiations; the exchange of initial disclosures; and the detailed Complaint (Dkt. 1), Answer (Dkt. 24), and First Amended Complaint (Dkt. 28) filed in this action.

### III. Introduction to the Proposed Settlement and Relief Sought by this Motion

40. The proposed Settlement provides for the Trustees of Dartmouth College to make a total non-reversionary settlement payment in the amount of $14,000,000 ("the Class Settlement

Amount"), and to undertake programmatic measures to settle and satisfy the "Released Claims" as that term is defined in the Settlement Agreement. (Ex. 1 (Agreement) § III.)

41. The Class Settlement Amount will be allocated for Base Payments and Supplemental Payments to Plaintiffs and the Class, Service Awards, attorneys' fees and costs, and the fees and costs of the Settlement Administrator and the Independent Claims Expert. (*Id*. §§ IV, V.)

42. The proposed Settlement is expected to benefit approximately ninety (90) current and former graduate and undergraduate students at Dartmouth.

43. After extensive analysis and deliberation, the Plaintiffs and Counsel agree that the Settlement described in the Agreement is fair, reasonable, and adequate.

44. The process for recovering payments is structured to enable Plaintiffs and Class Members to vindicate their rights while avoiding unnecessary deterrents to participation in the Settlement by Class Members. If this matter were to proceed in litigation, Plaintiffs and Class Members would be subject to discovery and could be called to testify at trial. Their identities, and extremely sensitive and personal details relating to sexual abuse and trauma, would likely be publicly exposed and revisited in excruciating detail through litigation.

45. In arriving at this favorable resolution, Plaintiffs and their Counsel recognized that, in the absence of an approved settlement, they would face a long litigation course that would consume considerable time and resources and present all Parties with ongoing litigation risks and uncertainties. Plaintiffs and their Counsel also recognized the significant expense and both material and intangible burdens associated with protracted discovery, a lengthy trial, and potential appellate process, and further acknowledged that both certification of the class and success on the merits remain uncertain. Absent this settlement, Dartmouth would have contested the propriety of class

treatment both in response to a motion for certification and through trial. Dartmouth has maintained that the College acted lawfully at all times.

46. Therefore, Plaintiffs and their Counsel determined that the proposed Settlement is in the best interest of Plaintiffs and the Class based on all the facts and circumstances, including the risks of litigation; the uncertainty of class certification in the absence of settlement; the enormous costs associated with continued litigation; the time necessary to achieve a final resolution through trial and any appeals and the potential for significant delay therein; the complexity of Plaintiffs' claims; and the significant benefits accruing to the Class under the Settlement.

47. Counsel is unaware of any individual actions that have been instituted by class members.

48. The Plaintiffs have not entered into any agreement required to be identified under Federal Rule of Civil Procedure 23(e).

### IV. $14 Million Non-Reversionary Settlement Fund, Class Member Payments, and Programmatic Relief

49. The Settlement Class (Ex. 1 ¶ 2) is defined as:

A. All current and former women graduate students at Dartmouth who meet any of the following criteria:

i. Between April 1, 2012 and August 31, 2017 were graduate advisees of one or more of the Todd Heatherton, William Kelley, and/or Paul Whalen (i.e., the "Three Former Professors");

ii. Between April 1, 2012 and August 31, 2017 were teaching or research assistants for one or more of the Three Former Professors;

iii. Were graduate students in the Psychological and Brain Sciences Department who, between April 1, 2012 and August 31, 2017, (i) co-authored at least one paper with one or more of the Three Former Professors based on research physically conducted in the lab during that time period, or (ii) co-authored at least three papers with one or more of the Three Former Professors; OR

   iv. Were graduate students in the Psychological and Brain Sciences Department between March 31, 2015 and August 31, 2017 who do not fit within categories (i)-(iii), but who will attest that they experienced dignitary, emotional, educational and/or professional harm during this period as a result of the misconduct of one or more of the Three Former Professors.

  B. All current and former women undergraduate students at Dartmouth who, between April 1, 2012 and August 31, 2017, worked as research assistants for one or more of the Three Former Professors. As used herein, "research assistants" includes individuals working on an honors thesis or independent research study in one or more of the Three Former Professors' labs.

50.   Dartmouth has affirmed that Class Members are identifiable through available records.

51.   All Class Members who do not opt out of the Settlement ("Settlement Class Members") are entitled to receive a Base Payment of $1,000. (Ex. 1 ¶ 19.)

52.   Class Members who worked directly with the Former Professors are presumed to have suffered a baseline level of injury from exposure to the alleged hostile environment and will receive this payment automatically.

53.   Women who did not work directly with the Former Professors but rather fall solely within Paragraph (2)(a)(iv) of the Class Definition are not considered to be Class Members unless and until they submit a sworn attestation that they suffered dignitary, emotional, educational and/or professional harm as a result of the alleged hostile environment. Once these women have submitted such a sworn attestation, they, too, are entitled as Settlement Class Members to receive the base payment of $1000.

54.   In addition to a Base Payment, Settlement Class Members who submit a Claim Form are also eligible to receive a supplemental payment to be determined by an Independent Claims Expert. (Ex. 1 ¶ 20.) The Independent Claims Expert will evaluate the Claim Forms (including all facts that pre- or post-date the class period) to determine each Class Member's

proportional *pro rata* share of the remaining settlement funds. In arriving at the distribution, the Independent Claims Expert shall consider nine factors set forth in the Settlement Agreement, as well as any documentation and/or evidence provided by each Settlement Class Member demonstrating the harm caused to the Settlement Class Member by the alleged hostile environment. (*Id.*) Where Settlement Class Members claim emotional distress or physical illness caused by the alleged hostile environment, the Independent Claims Expert shall give greater weight to the claims of those Settlement Class Members who submit medical or mental health records supporting such allegations. (*Id.*) All Claim Forms and supporting documentation shall be treated as strictly confidential and shall not be disclosed to anyone except the Independent Claims Expert. (*Id.* ¶ 21.) Settlement Class Members may request the guidance or assistance of Class Counsel and/or the Settlement Administrator in compiling and completing their submissions. (*Id.*)

55. Class Counsel proposes that Maria C. Walsh, Esq., who has substantial experience in this area, serve in the role of Independent Claims Expert. Ms. Walsh's resume is attached hereto as Exhibit 6.

56. In addition to the monetary payment, Dartmouth will also undertake programmatic steps. (*See* Exhibit A to the Settlement (Ex. 1).)

57. The Parties estimate that the programmatic relief package carries an additional monetary value of approximately $1,500,000.

## V. Attorneys' Fees and Costs, Service Awards, and Payment to Settlement Administrator

58. Under the Settlement, and subject to the Court's approval, Class Counsel will seek reimbursement of litigation costs and expenses, including costs incurred by the Settlement Administrator and Independent Claims Expert in administering the settlement, from the Class Settlement Amount. Class Counsel estimates that these costs, combined, will not exceed $300,000.

Class Counsel has selected Rust Consulting to serve as the Settlement Administrator and Maria C. Walsh, Esq. to serve as the Independent Claims Expert. Rust has agreed to cap its total costs at $24,217 provided that there is no significant change in the scope of work anticipated with administering the Settlement. Ms. Walsh has agreed to cap her total costs at $85,000.

59. Under the Settlement, subject to the Court's approval, Class Counsel will request an award of attorneys' fees. The Parties have agreed that Class Counsel's request for attorneys' fees will not exceed 35% of the Total Settlement Amount. (Ex. 1 ¶ 14.) Plaintiffs' Counsel (Sanford Heisler Sharp, LLP and local counsel Douglas, Leonard, & Garvey, P.C.) have expended over 4,637 hours on this matter, and their current lodestar exceeds $2,642,000.

60. Under the Settlement, subject to the Court's approval, each Plaintiff will receive a Service Award in the amount of $75,000 to be paid from the Class Settlement Amount. The proposed Service Awards are designed to compensate Plaintiffs for their service in pursuing the class claims and ultimately in procuring the Settlement for the class. Plaintiffs have expended considerable time, effort, and resources on behalf of the Class by helping to plan and organize the litigation; consulting with Class Counsel to the benefit of their fellow Class Members; providing extensive and pertinent documents; providing information regarding Dartmouth's policies and practices; and assisting in settlement negotiations. Plaintiffs also incurred significant risk in lending their names and their deeply personal accounts of sexual harassment, assault, and trauma to this highly publicized action. All nine Plaintiffs participated in all three days of mediation—eight attended in person, and one attended by phone—and advocated vigorously for the interests of the class as a whole. Without their efforts and sacrifices, the Settlement could not have been achieved. The total amount allocated for service payments is less than 5% of the Total Settlement Amount.

## VI. The Proposed Form and Method of Notice of the Class Settlement

61. Under the Proposed Notice Plan, one Notice (Exhibit 2) will be distributed to the majority of Class Members. To prevent confusion and ensure that the Notice process is clear and easily understood, a separate Notice (Exhibit 3) will be distributed to individuals who fall solely within Paragraph 2(a)(iv) of the Class Definition and thus must submit a Claim Form to receive any compensation. (Ex. 1 ¶¶ 2(a)(iv).)

62. The Settlement Administrator shall distribute the Notice to all Class Members by United States first class mail. The Settlement Administrator may also distribute the Notice by email (to the extent email addresses are available). The Notice shall also be posted on the Claims Administrator's website.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Baltimore, Maryland
       September 25, 2019

_____
Deborah K. Marcuse