# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, AND JANE DOE 3,<br><br>        Plaintiffs,<br><br>    v.<br><br>TRUSTEES OF DARTMOUTH COLLEGE,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)       Civil Action No. 1:18-cv-01070-LM |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | DEFINITIONS ................................................................................................ | 4 |
| II. | SETTLEMENT CLASS ................................................................................... | 8 |
| III. | RELEASES ...................................................................................................... | 9 |
| | A. Discharge of All Released Claims ........................................................ | 9 |
| | B. Release of Unknown Claims ................................................................ | 10 |
| | C. Claims Relating to Settlement ............................................................ | 11 |
| | D. Plaintiffs' Representations Regarding Medicare Eligibility ............ | 11 |
| IV. | SETTLEMENT CONSIDERATION ............................................................. | 12 |
| | A. Monetary Payment ............................................................................. | 12 |
| | B. Prospective Commitment ................................................................... | 12 |
| V. | ATTORNEYS' FEES AND LITIGATION EXPENSES, SETTLEMENT ADMINISTRATION COSTS, AND SERVICE PAYMENTS.................... | 12 |
| VI. | PLAN OF ALLOCATION ............................................................................. | 13 |
| | A. Base Payment ..................................................................................... | 13 |
| | B. Supplemental Payment ...................................................................... | 13 |
| | C. Uncashed Checks and Unused Funds ................................................ | 15 |
| VII. | OBJECTIONS ................................................................................................ | 15 |
| VIII. | EXCLUSIONS ................................................................................................ | 15 |
| IX. | REQUEST FOR APPROVAL FROM COURT ............................................. | 16 |
| X. | WAIVER OR TERMINATION .................................................................... | 17 |
| XI. | EFFECTIVE DATE OF SETTLEMENT ...................................................... | 18 |
| XII. | NO ADMISSION OF WRONGDOING ...................................................... | 18 |
| XIII. | PUBLIC STATEMENTS ............................................................................... | 19 |
| XIV. | NON-DISPARAGEMENT ............................................................................ | 21 |
| XV. | USE OF PSEUDONYMS .............................................................................. | 21 |
| XVI. | MISCELLANEOUS PROVISIONS ............................................................. | 22 |

This Stipulation and Agreement of Settlement, dated as of September 10, 2019 (the "Agreement," or "Settlement"), is made and entered into by and among (i) the Plaintiffs, on behalf of themselves and each Settlement Class Member, by and through their undersigned counsel, and (ii) the Defendant, by and through its undersigned representative; and is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The Settlement is intended by the Parties to fully, finally, and forever compromise, settle, release, resolve, discharge, and dismiss with prejudice this Litigation (*i.e.*, the above-captioned action, 1:18-cv-01070-LM, pending in the U.S. District Court for the District of New Hampshire), and all Released Claims, subject to the terms and conditions stated in this Agreement and subject to Final approval of the Court.

**WHEREAS:**

A.     In April 2017, certain of the named Plaintiffs, in conjunction with other students, brought to the attention of the Dartmouth Administration conduct by three then-tenured professors (the "Three Former Professors") which was antithetical to the mission of Dartmouth College.

B.     The Three Former Professors were placed on leave, barred from campus during Title IX investigations and subsequent disciplinary proceedings initiated to revoke tenure; thereafter banned permanently from campus; and resigned or retired before the tenure revocation process could be concluded.

C.     On November 15, 2018, Plaintiffs Kristina Rapuano ("Dr. Rapuano"), Vassiki Chauhan ("Ms. Chauhan"), Sasha Brietzke ("Ms. Brietzke"), Annemarie Brown ("Dr. Brown"), Andrea Courtney ("Dr. Courtney"), Marissa Evans ("Ms. Evans"), and Jane Doe (collectively, the "Original Plaintiffs") commenced this action (the "Litigation") by filing a putative class action complaint against the Trustees of Dartmouth College (the "Defendant") in this Court asserting

1

claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and claims under New Hampshire common law for breach of fiduciary duty and negligent hiring and supervision.

D.      On January 15, 2019, Defendant filed its Answer, which set forth not only Dartmouth's legal positions and defenses, but also responded in detail to Plaintiffs' factual allegations.

E.      On February 11, 2019, the Parties submitted the Parties' Jointly Filed Proposed Discovery Plan, which the Court adopted with modifications on February 12, 2019.

F.      On April 15, 2019, the parties exchanged initial disclosures.

G.      On May 1, 2019, the Original Plaintiffs and two new plaintiffs—Jane Doe 2 and Jane Doe 3 (together, with the Original Plaintiffs, the "Plaintiffs")—filed a First Amended Complaint (the "Amended Complaint"). The Amended Complaint asserted the same claims as the original complaint, but it added claims on behalf of Jane Doe 2 and Jane Doe 3.

H.      Plaintiffs and Defendant conducted exhaustive investigations of the facts underlying Plaintiffs' allegations before and during this Litigation.

I.      In 2017, Dartmouth retained an independent investigator. Over the course of 11 months, she interviewed dozens of witnesses, reviewed electronic messages, collected records and prepared written reports concerning the conduct of the Three Former Professors who were alleged to have discriminated against and/or harassed female students.

J.      After being retained by the Original Plaintiffs, Plaintiffs' Counsel conducted their own factual investigation. They had access to many of the same materials as Dartmouth's investigator, and received copies of her written reports. Plaintiffs also spoke with additional witnesses who did not speak with Dartmouth's investigator.

K.      Defendant's motion to dismiss the Amended Complaint was due on May 29, 2019. Five days before that deadline, the parties jointly asked the Court to stay all deadlines so that they could participate in mediation. The Court granted the joint motion and stayed the case on May 28, 2019. The stay was to remain in effect until the later of (i) three days after the parties' mediation concluded, or (ii) July 31, 2019.

L.      The parties held three full days of mediation on July 24, 25, and 26. They were assisted on the first two days by the Honorable Robert Morrill (ret.) acting as mediator.

M.      On July 26, 2019 the parties jointly sought an extension of the stay, so that they could continue to focus on the negotiations. The Court granted the motion and extended the stay until August 5, 2019.

N.      On August 5, 2019, after additional extensive arm's-length negotiations and exchange of multiple proposals, the parties reached an agreement in principle to settle the Litigation, and memorialized their agreement in principle in a Term Sheet.

O.      Defendant has denied and continues to deny liability under the theories and causes of action alleged.  Defendant is entering into this Agreement to eliminate the burden, expense, inconvenience, uncertainty, distraction, and risk of further litigation, and to effectuate its desire to provide voluntary recompense for the *ultra vires* conduct of the Three Former Professors.

**NOW THEREFORE**, it is hereby stipulated and agreed, by and among the Parties, through their respective attorneys and representatives, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and other conditions set forth herein, in consideration of the benefits flowing to the Parties from the Settlement, that the Litigation, and all Released Claims shall be fully, finally, and forever compromised, settled, released, resolved,

discharged, and dismissed with prejudice against the Released Parties, upon and subject to the following terms and conditions:

## I.   **DEFINITIONS**

1.      As used in this Agreement, the following terms shall have the following meanings:

a.      "Alternative Judgment" means a form of final judgment that may be entered by the Court in a form other than the form of the Order and Final Judgment provided for in this Agreement, and which is acceptable to all Parties.

b.      "Claim" has the meaning set forth in Paragraph 3.

c.      "Claim Form" means a form proposed by Class Counsel and approved by the Court that will be distributed to Class Members pursuant to this Agreement and as ordered by the Court. The Claim Form will elicit information from the Class Members roughly corresponding with the factors set forth in Paragraph 19, below. Once the deadline for submission of Claim Forms by Class Members is past, all Claim Forms timely submitted, along with any accompanying documents, will be reviewed by the Independent Claims Expert to determine the allocation for each Class Member.

d.      "Settlement Administrator" means the firm retained by Plaintiffs' Counsel on behalf of the Settlement Class and acceptable to the Defendants, subject to approval of the Court, to provide all notices approved by the Court to Settlement Class Members and to administer the Settlement.

e.      "Independent Claims Expert" means a third-party neutral retained by Plaintiffs' Counsel on behalf of the Settlement Class, subject to approval of the Court.

f.      "Court" means the court or courts with jurisdiction over the above-captioned action, number 18-cv-01070-LM pending in the U.S. District Court for the District of New Hampshire.

g.      "Defendant" means the Trustees of Dartmouth College.

h.      "Class Settlement Amount" means Fourteen Million United States Dollars ($14,000,000.00), paid by or on behalf of the Defendant in connection with this Agreement.

i.      "Effective Date" means the first date when all of the conditions set forth below in Paragraph 33 have occurred.

j.      "Final," with respect to a court order, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on certiorari to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for certiorari from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought).

k.      "Final Approval Hearing" or "Fairness Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

l.      "Final Approval Order" means the order (substantially in the form attached as Exhibit C) to be requested from the Court, finally approving the Settlement.

m.      "Litigation" means the above-captioned action, 1:18-cv-01070 (LM), pending in the U.S. District Court for the District of New Hampshire.

n.      "Litigation Expenses" means the reasonable costs and expenses incurred by counsel for Plaintiffs in connection with commencing and prosecuting the Litigation for which Plaintiffs' Counsel intend to apply to the Court for payment from the Class Settlement Amount.

o.      "Notice" means the Notice of Proposed Settlement of Class Action, Fairness Hearing, and Right to Appear, which is to be sent to Settlement Class Members.

p.      "Notice and Administration Expenses" means the costs, fees, and expenses that are incurred in connection with providing notice to the Settlement Class, in connection with administering the Settlement, and in providing notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

q.      "Order and Final Judgment" or "Judgment" means the order of final judgment to be entered in the Action (substantially in the form attached as Exhibit D).

r.      "Parties" means (i) Plaintiffs on behalf of themselves and each Settlement Class Member and (ii) the Defendant.

s.      "Person" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, as well as each of their spouses, domestic partners, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assigns.

t.      "Plaintiffs" means Kristina Rapuano, Vassiki Chauhan, Sasha Brietzke, Annemarie Brown, Andrea Courtney, Marissa Evans, Jane Doe, Jane Doe 2, and Jane Doe 3.

u.      "Plaintiffs' Counsel" or "Class Counsel" means Sanford Heisler Sharp, LLP.

v.      "Plan of Allocation" means the proposed plan for allocating funds to Settlement Class Members, which, subject to approval of the Court, shall be substantially in the form described in Section VI.

w.      "Preliminary Approval Order" means the order (substantially in the form attached as Exhibit B) to be requested from the Court, preliminarily approving the Settlement, approving dissemination of the Notice, and scheduling the Final Approval Hearing.

x.      "Released Claims" means all claims released pursuant to Section III below.

y.      "Released Parties" has the meaning set forth in Paragraph 4.

z.      "Releasing Parties" has the meaning set forth in Paragraph 3.

aa.     "Settlement Class" means all of the individuals identified in Paragraph 2, considered collectively.

bb.      "Settlement Class Member" means any Person that is a member of the Settlement Class.

cc.     "Class Representatives" means Kristina Rapuano, Vassiki Chauhan, Sasha Brietzke, Annemarie Brown, Andrea Courtney, Marissa Evans, Jane Doe, and Jane Doe 2.

dd.     "Taxes" means any taxes due and payable with respect to the income earned by the Class Settlement Amount, including any interest or penalties thereon.

ee.    "Tax Expenses" means any expenses and costs incurred in connection with the payment of Taxes (including, without limitation, expenses of tax attorneys, accountants, and other advisors and expenses relating to the filing or failure to file all necessary or advisable tax returns).

## II.    **SETTLEMENT CLASS**

2.    Class Representatives will propose, and Defendant will take no position regarding, preliminary and final approval of this settlement involving a class composed of the following individuals:

a.    All current and former women graduate students at Dartmouth who meet any of the following criteria:

i.    Between April 1, 2012 and August 31, 2017 were graduate advisees of one of more of Todd Heatherton, William Kelley, and/or Paul Whalen (i.e., the "Three Former Professors");

ii.    Between April 1, 2012 and August 31, 2017 were teaching or research assistants for one or more of the Three Former Professors;

iii.    Were graduate students in the Psychological and Brain Sciences Department who, between April 1, 2012 and August 31, 2017, (i) co-authored at least one paper with one or more of the Three Former Professors based on research physically conducted in the lab during that time period, or (ii) co-authored at least three papers with one or more of the Three Former Professors; OR

iv.    Were graduate students in the Psychological and Brain Sciences Department between March 31, 2015 and August 31, 2017 who do not fit within categories (i)-(iii), but who will attest that they experienced dignitary, emotional,

educational and/or professional harm during this period as a result of the misconduct of one or more of the Three Former Professors.

b.      All current and former women undergraduate students at Dartmouth who, between April 1, 2012 and August 31, 2017, worked as research assistants for one or more of the Three Former Professors. As used herein, "research assistants" includes individuals working on an honors thesis or independent research study in one or more of the Three Former Professors' labs.

## III.   RELEASES

### A.      Discharge of All Released Claims

3.      Effective upon the Effective Date, Released Parties, as defined in the next paragraph, shall be released and forever discharged by Plaintiffs and all Settlement Class Members (the "Releasing Parties") from any and all causes of action (including those under Title VII, Title IX, breach of fiduciary duty, or negligent hiring and supervision), judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each a "Claim"), known or unknown, arising on or before the Effective Date, that are, were, or could have been asserted against any of the Released Parties by reason of or arising out of the same factual predicate as the claims that were or could have been asserted in the Litigation (namely the alleged conduct of the Three Former Professors and Defendant's alleged conduct and any related acts and omissions, including the 2017 Title IX investigation), whether any such Claim was or could have been asserted by any Releasing Party on her own behalf or on behalf of other Persons (collectively, "Released Claims").

4.      Released Parties means Defendant, and expressly includes its administrators, trustees, employees, insurers, representatives, and assigns. Notwithstanding any other provision in this Agreement, however, this Release shall not extend to claims or potential claims that any

9

Releasing Party may possess against the Three Professors, who were not parties to this Litigation, provided that such claims may proceed only against the Three Professors personally, and any potential liability that the Released Parties may have had, or arguably had, for such conduct is released.

### B.    Release of Unknown Claims

5.    The Releasing Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true, with respect to the claims being released pursuant to Paragraph 3 of this Agreement. Nevertheless, it is the intention of the Releasing Parties in executing this Agreement that they fully, finally, and forever settle and release all Released Claims which exist or might have existed (whether or not previously or currently asserted in any action or proceeding) against the Released Parties. To the fullest extent possible under applicable law, the Releasing Parties voluntarily waive and relinquish any and all rights to seek relief for unknown, unsuspected, or unanticipated Released Claims which the Releasing Parties may attempt to assert under any statutes or principles of law that limit the release of unknown, unsuspected, or unanticipated claims or damages, including but not limited to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

6.    By participating in this Settlement, Plaintiffs and the Settlement Class Members voluntarily and knowingly waive the rights described in California Civil Code § 1542, and elect to release all Released Claims that now exist in their favor, whether known or unknown.

### C.     Claims Relating to Settlement

7.     Notwithstanding any of the foregoing or any other provision, none of the Parties release any claims relating to the enforcement of this Agreement.

### D.     Plaintiffs' Representations Regarding Medicare Eligibility

8.     Plaintiffs represent and warrant that Plaintiffs are not eligible for and/or enrolled in the Medicare program and were not enrolled at the time of the claim, accident, occurrence, act, error, omission, bodily injury, disease, loss, or damages that are subject to the release herein or anytime thereafter through the date of this Agreement. Plaintiffs represent and warrant that Medicare has not (pursuant to 42 U.S.C. § 1395y(b) and the corresponding regulations) made any conditional payments for medical services or items provided to Plaintiffs and arising from or relating to any claim, accident, occurrence, act, error, omission, bodily injury, disease, loss, or damages that are subject to the release herein.  The Parties agree that all representations and warranties made herein shall survive settlement.   Plaintiffs represent and warrant that the information provided to the Defendant, including Plaintiffs' name, gender, date of birth, Social Security Number and/or Medicare Health Insurance Claim Number, and information about conditional payments, is complete, accurate, and current as of the date of this Agreement.

9.      In consideration of the promises made by the Defendant in this Agreement, including but not limited to the Settlement Consideration to be paid by the Defendant pursuant to this Agreement, Plaintiffs agree that Plaintiffs shall be responsible for satisfying any future claims for reimbursement of conditional payments that may be asserted by Medicare, and that the Released Parties shall have no obligation to satisfy any such claims for reimbursement.

IV.     **SETTLEMENT CONSIDERATION**

   A.     **Monetary Payment**

   10.     The total settlement payment shall be in the amount of the Class Settlement Amount. The Class Settlement Amount shall constitute the only payment required by Defendant pursuant to the Settlement. No further payment from Defendant shall be required with respect to the Claims, including for Plaintiffs' attorneys' fees or costs, for the provision and administration of notice, or for any other purpose.

   11.     Within fourteen (14) days after the Effective Date, Plaintiffs' Counsel shall provide Defendant's counsel with wiring instructions and a Form W-9, and any other documents reasonably required by the Defendant to process the payment of the Class Settlement Amount, including completed Centers for Medicare & Medicaid Services reporting forms for the Named Plaintiffs.  Defendant will pay the Class Settlement Amount, by wire transfer or otherwise, within twenty-eight (28) days after the Effective Date.

   12.     Other than the obligation of Defendant to pay or cause to be paid the Class Settlement Amount, neither Defendant nor any other of the Released Parties shall have any obligation to make any other payment pursuant to this Agreement.

   B.     **Prospective Commitment**

   13.     In addition to the monetary payment described above, in compromise of this lawsuit Defendant further agrees that it will undertake the programmatic steps set forth in Exhibit A hereto.

V.     **ATTORNEYS' FEES AND LITIGATION EXPENSES, SETTLEMENT ADMINISTRATION COSTS, AND SERVICE PAYMENTS**

   14.     Plaintiffs' Counsel will seek, by motion, (a) reimbursement of litigation costs and expenses incurred in connection with this action, plus (b) an award of attorneys' fees in an amount not to exceed 35% of the Settlement Payment Amount. Plaintiff's Counsel will further seek a

distribution to the Settlement Administrator and the Independent Claims Expert of the reasonable costs associated with administering the settlement.

15.    Plaintiffs' Counsel will also seek, by motion, service payments to the Plaintiffs for their contributions to the litigation and their services to the class in amounts not to exceed $75,000 for each Plaintiff.

16.    Defendant takes no position with respect to the foregoing requests for attorneys' fees, litigation expenses, and service awards.

## VI.    PLAN OF ALLOCATION

17.    Plaintiffs will request that the Court approve the following Plan of Allocation of remaining settlement funds.

18.    Defendant takes no position with respect to the Plan of Allocation.

### A.    Base Payment

19.    Class Members who do not exclude themselves from the settlement will automatically receive a base payment of $1,000 each. Except for Class Members who solely come within Paragraph (2)(a)(iv) of the Settlement Class definition, Class Members do not need to submit a Claim Form to receive a base payment. Class Members who solely come within Paragraph (2)(a)(iv) of the Settlement Class definition will receive the base payment if they submit a Claim Form attesting that they experienced dignitary, emotional, educational and/or professional harm during the class period as a result of the misconduct of one or more of the Three Former Professors.

### B.    Supplemental Payment

20.    Class Members who submit a Claim Form are eligible for a supplemental payment to be determined by an Independent Claims Expert designated by the parties. Within 100 days following the Claim Forms submission deadline, the Independent Claims Expert will evaluate the Claim Forms to determine each Class Member's proportional *pro rata* share of the remaining

settlement funds. The Independent Claims Expert shall base the allocation on the information provided in each Claim Form—including all facts that pre- or post-date the class period—and all relevant supporting documentation submitted by the Class Members. In arriving at the distribution, the Independent Claims Expert shall consider the following factors: (a) the description of the severity of the alleged hostile environment (including but not limited to sexual harassment, sexual assault, and/or retaliation) suffered by the Class Member; (b) the description of the duration of the alleged hostile environment (including but not limited to sexual harassment, sexual assault, and/or retaliation) suffered by the Class Member; (c) the severity and duration of emotional distress alleged by the Class Member as a result of the hostile environment; (d) the degree to which the Class Member alleges that she suffered physical illness as a result of the hostile environment; (e) the degree to which the Class Member alleges she suffered functional impairment that impacted her studies, work and/or related activities as a result of the alleged hostile environment; (f) the degree to which the Class Member alleges she suffered impairment to her personal life, including familial, social and romantic relationships, as a result of the alleged hostile environment; (g) the degree to which the Class Member alleges that she suffered direct or indirect economic losses as a result of the alleged hostile environment, including (without limitation) medical and/or counseling expenses; (h) the degree to which the Class Member alleges that she will require future treatment as a result of the alleged hostile environment; and (i) the merits and overall likelihood of success of each Class Member's claims under Title IX.  The weight of each factor shall be left to the discretion of the Independent Claims Expert. In addition, the Independent Claims Expert will consider any documentation and/or evidence provided by the Class Member demonstrating the harm caused by the alleged hostile environment. With respect to factors (c) and (d), the Independent Claims Expert shall give greater weight to those Class Members who submit medical

or mental health records supporting their allegations of emotional distress or physical illness caused by the hostile environment. The Independent Claims Expert's allocation decision shall be discretionary, binding, and final and shall not be subject to review.

21.     All Claim Forms and supporting documentation are to be treated as strictly confidential and shall not be disclosed to anyone except the Independent Claims Expert. Class Members may request the guidance or assistance of Class Counsel or the Settlement Administrator in compiling and completing their submissions. Any further information provided to the Independent Claims Expert will also be kept strictly confidential.

### C.     Uncashed Checks and Unused Funds

22.     Any uncashed settlement distributions or other residual funds shall be handled as follows: If the total amount is $50,000 or greater, an additional distribution to Class Members will be made in accordance with the *pro rata* allocation determined by the Independent Claims Expert. If the total amount is less than $50,000, the Settlement Administrator shall make a distribution to a *cy pres* recipient selected by the parties. The *cy pres* beneficiary shall be an organization supporting and/or advocating for victims of sexual assault.

## VII.   OBJECTIONS

23.     Any Settlement Class Member wishing to object to the Agreement may do so only according to the process ordered by the Court.

24.     The Parties agree not to file any objection to this Agreement and to oppose any objection to this Agreement.

## VIII.   EXCLUSIONS

25.     Any Settlement Class Member wishing to exclude herself from the Settlement may do so only according to the process ordered by the Court. A Settlement Class Member's failure to

complete a Claim Form shall not allow a Settlement Class Member to exclude herself from the Settlement if she does not otherwise follow the process ordered by the Court.

26.     Unless otherwise ordered by the Court, any person who does not submit a timely request for exclusion as provided by the Court's order shall be bound by this Agreement. The deadline for submitting requests for exclusion shall be 7 calendar days prior to the Fairness Hearing.

## IX.    REQUEST FOR APPROVAL FROM COURT

27.     Plaintiffs' Counsel shall seek preliminary approval of this Agreement from the Court no later than September 25, 2019 (unless another date is stipulated to by the Parties or ordered by the Court). In connection with the preliminary approval motion, Counsel shall move for the Court's approval of the Preliminary Approval Order, which shall be substantially in the form attached hereto as Exhibit B. The proposed Preliminary Approval Order, *inter alia*, sets the date for a Fairness Hearing and prescribes the method for giving notice of the Settlement to the Settlement Class.

28.     Not later than ten (10) days after the Settlement Agreement is filed in court in connection with the preliminary approval motion, Defendant shall provide notice of the proposed class action settlement to the appropriate state officials (i.e. each state attorney general) and the Attorney General of the United States pursuant to 28 U.S.C. § 1715, and the costs of such notice shall be paid from the Class Settlement Amount.

29.     At an appropriate time, Plaintiffs, by and through counsel, shall move the Court to enter the Final Approval Order, which will be substantially in the form of Exhibit C.

30.     The Settlement is expressly conditioned upon, among other things, the entry of a Judgment substantially in the form attached as Exhibit D. Plaintiffs, by and through counsel, shall move for entry of the Judgment, including, among other things, the releases described herein.

## X.    <u>WAIVER OR TERMINATION</u>

31.    Plaintiffs or Defendant shall have the option to terminate the Settlement in its entirety by providing written notice of their election to do so ("Termination Notice"), through counsel, to counsel for all other Parties hereto, within fourteen (14) calendar days of: (i) the Court's refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's refusal to enter the Judgment in any material respect or an alternative judgment acceptable to the Parties with respect to the Settlement; or (iii) the date upon which the Judgment or Alternative Judgment is vacated, modified, or reversed in any material respect by a final order of the United States Court of Appeals or the Supreme Court of the United States. Prior to final approval of the Settlement, Defendant shall have a further option, in its sole discretion, to terminate the Settlement in its entirety (in the same manner set forth above) if the number of Settlement Class Members who exclude themselves from the Class exceeds ten (10) percent of the total number of individuals who are provided notice. In the event the Settlement is terminated, the provisions of Section XII shall survive termination.

32.    Except as otherwise provided herein, in the event the Settlement is terminated in its entirety, the Settlement will be without prejudice, and none of its terms shall be effective or enforceable, except as specifically provided herein. Plaintiffs and Defendant shall be deemed to have reverted to their respective status in the Litigation as of August 6, 2019, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In such event, the fact and terms of the Term Sheet, this Agreement, or any aspect of the negotiations leading to this Agreement, shall not be admissible in this or other litigation and shall not be used by Plaintiffs or Defendant in any court filings, depositions, at trial, or otherwise.

## XI.  **EFFECTIVE DATE OF SETTLEMENT**

33.     The Effective Date of the Settlement shall be the first date when all of the following shall have occurred:

       a.      entry of the Preliminary Approval Order;

       b.      entry of the Final Approval Order following notice to the Class and a hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure;

       c.      entry of the Judgment, substantially in the form attached as Exhibit D, or entry of any Alternative Judgment; and

       d.      the Judgment or any Alternative Judgment has become Final.

34.     No settlement funds will be distributed to Class Members prior to the Effective Date. Should the Agreement be terminated or if the Effective Date does not come to pass, any funds distributed to the Settlement Administrator or Class Counsel prior to the Effective Date, together with any interest earnings or appreciation thereon, less any Taxes and Tax Expenses paid or due with respect to such income, and less Notice and Administration Expenses actually and reasonably incurred and paid or payable from the Class Settlement Amount, shall be returned to Defendant within fourteen (14) business days after written notification of such event in accordance with instructions provided by Defendant's Counsel to Plaintiffs' Counsel.

## XII.  **NO ADMISSION OF WRONGDOING**

35.     This Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity, or accuracy of any of the allegations, claims, or defenses of any other party in this case. By entering into this Agreement, Defendant does not admit or concede, expressly or impliedly, but rather expressly denies that it has in any way violated any state or federal law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. Neither the Court nor any other court has

made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in this case.

36.     Nothing in this Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Agreement, is intended by the Parties to, nor shall any of the foregoing, be introduced, be used, or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature as evidence that tends to prove the existence of any violation of state, federal or local law.

37.     This Agreement does not constitute, and shall not be construed against any Parties or Released Parties, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

38.     Notwithstanding the foregoing, the Parties, and their respective counsel, may file this Settlement Agreement and the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy. The Parties may file this Agreement and the Judgment in any action brought to enforce the terms of this Agreement and the Judgment.

## XIII.  **PUBLIC STATEMENTS**

39.     Plaintiffs and Defendant previously agreed to, and have issued, a mutually acceptable press release (the "Press Release") reflecting that they have resolved the Litigation to their mutual satisfaction on terms set forth herein, subject to the Court's approval.

40.     Plaintiffs and Defendant agree that neither they nor their counsel shall issue any other written or electronic press release, Internet posting, or announcement regarding the resolution of the Litigation, including claims to be the prevailing party. To the extent that any of Plaintiffs, Defendant, or counsel wishes to write, speak, or post about the resolution of the Litigation or the underlying controversy giving rise to the Litigation, Plaintiffs and Defendant agree that she/he/it is free to do so as long as such statements are consistent with the Press Release and this Settlement Agreement, including  paragraph 41 (the "Non-Disparagement Provision"). The Non-Disparagement Provision shall not extend to the Three Professors, and nothing in this Agreement is intended to, or shall, inhibit Plaintiffs' rights to discuss the Three Former Professors. Nothing in this paragraph shall be construed to prevent any party from making statements about conduct occurring after the execution of the Settlement Agreement or to prevent any party from making truthful statements to the Court in connection with the class approval process (provided, however, that Plaintiffs and Defendant agree to work cooperatively on their submissions to the Court in connection with the approval process). Should either Plaintiffs or Defendant believe in good faith that either has violated this provision or the Settlement Agreement including the non-disparagement provision, such party shall first seek to work through the concerns with the purportedly offending party. In the event that a resolution cannot be reached, the aggrieved party may seek enforcement by this Court and/or file suit in the U.S. District Court for the District of New Hampshire seeking injunctive relief and/or monetary damages. The prevailing party, as determined by the Court, shall be entitled to its reasonable attorneys' fees and costs (to be determined by the court) jointly and severally from the offending party or parties. Plaintiffs and Defendant waive the right to trial by jury with regard to such a suit. Nothing in this paragraph shall be construed to prevent any party from making written or oral public statements about the Three

Former Professors, who were not parties to the Litigation, are not parties to the Settlement Agreement, and are not covered by the Non-Disparagement Provision.

## XIV.   <u>NON-DISPARAGEMENT</u>

41.     Plaintiffs and Defendant agree that each shall refrain from disparaging the others in any written or oral public statement or posting. For purposes of this provision, to "disparage" shall mean (a) to speak or write of another party in a negative or belittling way, (b) to accuse or place blame upon another party for alleged conduct where the Court has made no finding of liability against such party, or (c) to publish or disseminate false and injurious statements that are derogatory of another party. To the extent that any statement is consistent with the Press Release, this Settlement Agreement, or a Court order, it shall in no event be considered to violate this provision. This provision is intended to protect each of Plaintiffs and Defendant and her or its employees, administrators, trustees, agents, attorneys and representatives. This provision expressly is not intended to protect Three Professors. This provision does not prevent the Plaintiffs or Defendant from making statements in the context of treatment to therapists, mental health providers, physicians or other health care providers; from cooperating with any law enforcement or regulatory investigation; from providing testimony to any court or public tribunal or from making statements based on conduct occurring after the execution of the Settlement Agreement.

## XV.   <u>USE OF PSEUDONYMS</u>

42.     The Parties agree to file a joint motion requesting that the pseudonyms Jane Doe and Jane Doe 2 continue to be used in the public record of the Litigation, with their actual names filed under permanent seal with the Court, which shall retain jurisdiction with regard to any issues pertaining thereto; provided, however, that any putative or preliminarily approved Settlement Class Member may seek confidential access by motion to the Court for good cause to the actual names of Jane Doe and/or Jane Doe 2 in order to determine whether to exclude

herself from the Settlement or to object to the motion for approval of the Settlement. Any class member to whom the identity of any Jane Doe Plaintiff is disclosed must affirm that she will not disclose the identity of any Jane Doe Plaintiff to any other person. The Parties agree that Jane Doe 3 will be permitted to proceed under the existing pseudonym.

## XVI.  **MISCELLANEOUS PROVISIONS**

43.     The Parties agree that no Party was or is a "prevailing party" in the Litigation.

44.     All of the exhibits attached to this Agreement are material and integral parts hereof and are fully incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Agreement and the terms of any exhibit attached hereto, the terms of this Agreement shall govern.

45.     This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel or a representative for all of the Parties (or their successors-in-interest) materially and adversely affected by any such modification, amendment, or waiver.

46.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

47.     The Parties agree that the terms of the Settlement were negotiated at arm's length, in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

48.     The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

49.     Any allocation of compensation to Jane Doe 3 shall be from the Class Settlement Amount in accordance with Paragraph 19.

50.     This Agreement and its exhibits constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.

51.     This Agreement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature page transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures that are electronic, scanned, faxed, photographed, photocopied, and/or emailed shall be considered as valid as an original written signature.

52.     By entering into the Settlement, Plaintiffs represent and warrant that they have not assigned, hypothecated, conveyed, transferred, or otherwise granted or given any interest in the Released Claims, or any of them, to any other Person except as described in the attached exhibits.

53.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

54.     If any Party is required to give notice to the other Parties under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, e-mail, facsimile, or in person to the following:

For the Plaintiffs:

> Deborah K. Marcuse
> Steven J. Kelly
> SANFORD HEISLER SHARP, LLP
> 111 S. Calvert Street, Suite 1950
> Baltimore, MD 21202
> Facsimile: (410) 834-7425
> dmarcuse@sanfordheisler.com
> skelly@sanfordheisler.com

David W. Sanford
Nicole E. Wiitala
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
nwiitala@sanfordheisler.com

For the Defendant:

Sandhya Iyer
General Counsel
Office of the General Counsel
Dartmouth College
63 South Main, Suite 301
Hanover, NH 03755
Facsimile:  (603) 646-2447
Sandhya.L.Iyer@dartmouth.edu

- and –

Joan A. Lukey
Justin J. Wolosz
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02111
Facsimile:  (617) 248-4000
joan.lukey@choate.com
jwolosz@choate.com

55.     The administration, consummation, and enforcement of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders, providing for awards of attorneys' fees, and payment of Litigation Expenses, and enforcing the terms of this Agreement and the Settlement.

56.     The construction, interpretation, operation, effect, and validity of this Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of New

Hampshire without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

57.     This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of September 10, 2019.


Executed by the Parties on the dates indicated below.

_____
Kristina Rapuano
Dated:  September 9 , 2019


_____
Vassiki Chauhan
Dated:  September ___, 2019


_____
Sasha Brietzke
Dated:  September ___, 2019


_____
Annemarie Brown
Dated:  September ___, 2019


_____
Andrea Courtney
Dated:  September ___, 2019

Hampshire without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

57.     This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of September 10, 2019.


Executed by the Parties on the dates indicated below.

---
Kristina Rapuano
Dated:  September __, 2019


*Vassiki Chauhan (Sep 9, 2019)*
---
Vassiki Chauhan
Dated:  September 9 , 2019


---
Sasha Brietzke
Dated:  September __, 2019


---
Annemarie Brown
Dated:  September __, 2019


---
Andrea Courtney
Dated:  September __, 2019

Hampshire without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

57.    This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of September 10, 2019.

Executed by the Parties on the dates indicated below.

                                           _____
Kristina Rapuano
Dated:  September __, 2019


                                           _____
Vassiki Chauhan
Dated:  September __, 2019


                                           *S— R—*
Sasha Brietzke (Sep 9, 2019)
                                           _____
Sasha Brietzke
Dated:  September 9, 2019


                                           _____
Annemarie Brown
Dated:  September __, 2019


                                           _____
Andrea Courtney
Dated:  September __, 2019

Hampshire without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

57.     This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of September 10, 2019.

Executed by the Parties on the dates indicated below.

_____
Kristina Rapuano
Dated:  September __, 2019

_____
Vassiki Chauhan
Dated:  September __, 2019

_____
Sasha Brietzke
Dated:  September __, 2019

_____
Annemarie Brown
Dated:  September _9_, 2019

_____
Andrea Courtney
Dated:  September __, 2019

Hampshire without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

57.    This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed, by their duly authorized attorneys, as of September 10, 2019.

Executed by the Parties on the dates indicated below.

_____
Kristina Rapuano
Dated:  September __, 2019


_____
Vassiki Chauhan
Dated:  September __, 2019


_____
Sasha Brietzke
Dated:  September __, 2019


_____
Annemarie Brown
Dated:  September __, 2019

_____
Andrea Courtney (Sep 10, 2019)

Andrea Courtney
Dated:  September 10, 2019

_____
Marissa Evans (Sep 9, 2019)
Marissa Evans
Dated:  September 9 , 2019


_____
█████████ [Jane Doe]*
Dated:  September __, 2019


_____
██████████ [Jane Doe 2]*
Dated:  September __, 2019


_____
█████████ [Jane Doe 3]*
Dated:  September __, 2019


_____
The   Trustees   of   Dartmouth   College
Joseph J. Helble, Provost
Dated:  September __, 2019

* Names to be redacted for public filing, subject
to the provisions in Paragraph 42.

26

_____
Marissa Evans
Dated:  September __, 2019


_____
[Jane Doe]*
Dated:  September 9 , 2019


_____
[Jane Doe 2]*
Dated:  September __, 2019


_____
[Jane Doe 3]*
Dated:  September __, 2019


_____
The   Trustees   of   Dartmouth   College
Joseph J. Helble, Provost
Dated:  September __, 2019

* Names to be redacted for public filing, subject to the provisions in Paragraph 42.

26

_____
Marissa Evans
Dated:  September __, 2019


███████   [Jane Doe]*
_____
Dated:  September __, 2019


████████
████████   [Jane Doe 2]*
_____
Dated:  September _9_, 2019


███████   [Jane Doe 3]*
_____
Dated:  September __, 2019


_____
The    Trustees    of    Dartmouth    College
Joseph J. Helble, Provost
Dated:  September __, 2019

* Names to be redacted for public filing, subject
to the provisions in Paragraph 42.

26

_____

Marissa Evans
Dated:  September __, 2019


_____

████ [Jane Doe]*
Dated:  September __, 2019


_____

████████ [Jane Doe 2]*
Dated:  September __, 2019


_____

████████ Jane Doe 3]*
Dated:  September 9 , 2019


_____

The   Trustees   of   Dartmouth   College
Joseph J. Helble, Provost
Dated:  September __, 2019

* Names to be redacted for public filing, subject
to the provisions in Paragraph 42.

26

_____
Marissa Evans
Dated:  September ___, 2019


_____
██████████ [Jane Doe]*
Dated:  September ___, 2019


_____
██████████████ [Jane Doe 2]*
Dated:  September ___, 2019


_____
██████████████ [Jane Doe 3]*
Dated:  September ___, 2019

_____
The      Trustees      of      Dartmouth      College
Joseph J. Helble, Provost
Dated:  September _10_, 2019

* Names to be redacted for public filing, subject
to the provisions in Paragraph 42.

26

# EXHIBIT A

Settlement Agreement
Exhibit A

1.    Faculty

    o   Dartmouth appreciates the benefits of including a broad range of voices in
        conversations focused on building a safe and supportive environment for all.

    o   The Provost's Diversity Recruitment Fund (part of Inclusive Excellence and
        C3I) is an incentive fund that supports the deans in hiring diverse candidates
        regardless of field of research. This fund is a cost-sharing mechanism whereby
        the Provost provides resources that enable individual deans to accelerate the
        rate of hiring of talented faculty candidates at all levels, with a particular
        emphasis on junior faculty.

    o   As a good faith effort to broaden Dartmouth's scholarly base in this area,
        Dartmouth will expand the use of this fund to include supporting the hiring of
        candidates with expertise in gender and racial discrimination and violence at
        any level (i.e, junior or senior faculty).  Specifically,  Dartmouth will (a)
        provide an additional $ 1M total to this fund to be drawn upon over the next
        10 years, and (b) expand the allowable use of the Provost's Diversity
        Recruitment Fund to support the hiring of faculty with expertise in gender and
        racial discrimination and violence.

    o   Use of this funding, specifically data on hiring and retention of faculty
        scholars hired through this initiative, will be reported annually as part of C3I.

2.    External Advisory Committee

    o   Dartmouth's External Advisory Committee (EAC), established as part of the
        Campus Climate and Culture Initiative (C3I) that was launched in January
        2019, is intended to provide the independent external oversight of the progress
        of C3I, including by commenting on the adequacy of existing programmatic
        elements and the potential addition of others, and progress in hiring faculty,
        that the plaintiffs rightly note is an important element in honestly assessing
        progress and making programmatic changes as needed to ensure goals are
        ultimately met.

    o   Because of this mission, two current members of the EAC were appointed
        because of their professional expertise and specifically because they have no
        ties to Dartmouth.

    o   In the spirit of providing additional independent oversight, Dartmouth will
        add two additional members to the EAC, and will select individuals who have
        no connection, alumni or otherwise, to Dartmouth.

    o   Plaintiffs and Dartmouth will jointly propose nominees for these positions to
        the EAC.

    o   The EAC, as part of its annual review of progress in the C3I initiative, will be
        asked to assess Dartmouth's current policies and procedures, and recommend

changes as needed.  The EAC will also be asked to recommend whether other mechanisms to solicit input and feedback from the broadest cross-section of the community are needed, and will be asked to recommend whether other advisory structures (e.g, a separate internal-external Advisory Board) would better advance the goals of C3I.

o   Within the next six months, as part of an on-campus visit, the EAC shall participate in a meeting with the Plaintiffs, who may each choose whether to attend in person or remotely, and who may choose whether to submit a proposed agenda in advance.  The purpose of this meeting will be for the Plaintiffs to recommend strategies, resources, and/or sources of expertise, and to share any information in any format they believe might be relevant to C3I.

o   In addition, the Provost shall schedule a meeting with the Plaintiffs, before and/or after their meeting with the EAC, to ensure continuing dialogue and feedback on the implementation of these programmatic measures.

3.     WISE Partnership

- C3I as announced in January 2019 commits to reviewing and expanding, as needed, Dartmouth's partnership with WISE.  As part of that partnership, and to marshal the benefits of WISE and the College's Title IX Office's respective expertise and experience, Dartmouth in conjunction with the EAC will review the WISE partnership and determine within one year of this settlement whether (a) adding additional WISE staff on campus, or (b) as an alternative, providing $500 K (total) in support to WISE over a 5 year period, would be the preferable mechanism for advocacy and support.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, AND JANE DOE 3, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:18-cv-01070-LM |
| v. | ) ) | |
| TRUSTEES OF DARTMOUTH COLLEGE, | ) ) ) | |
| Defendant. | ) | |

## [PROPOSED] ORDER PRELIMINARILY APPROVING CLASS SETTLEMENT AND PROVIDING FOR NOTICE

WHEREAS:

A.  Plaintiffs Kristina Rapuano, Vassiki Chauhan, Sasha Brietzke, Annmarie Brown, Andrea Courtney, Marissa Evans, Jane Doe, Jane Doe 2 (collectively, the "Class Representatives"), and Jane Doe 3 (together, with the Class Representatives, the "Plaintiffs,"), on behalf of themselves and the Settlement Class, on the one hand, and the Trustees of Dartmouth College ("Defendant") on the other, have entered into a proposed settlement of the claims asserted in the above-captioned putative class action pending before the Court, No. 1:18-cv-01070-LM (the "Action" or the "Litigation"), the terms of which are set forth in the settlement agreement (the "Agreement" or the "Settlement"), which is subject to review under Rule 23 of the Federal Rules of Civil Procedure, and which, together with the Exhibits thereto, sets the terms and conditions of the proposed settlement of the claims asserted in the Litigation on the merits and dismissal of the litigation with prejudice;

B.  The Court, having considered the Agreement, the Exhibits thereto, the Plaintiffs' Motion for Preliminary Certification of Settlement Class and Preliminary Approval of Settlement, the Plaintiffs' proposed Notice of Pendency of Class Action and Proposed Settlement (the "Notice"), and submissions made relating thereto, finds that substantial and sufficient grounds exist for entering this Order; and

C.  The Class Representatives seek entry of this Order, which Defendant does not oppose.

NOW, THEREFORE, IT IS HEREBY ORDERED, that:

1.      The Court, for the purposes of this Order, adopts all the defined terms as set forth in the Agreement unless otherwise defined herein.

2.      Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and for the purposes of settlement only, the Action is hereby preliminarily certified as a class action composed of the following individuals:

a.      All current and former women graduate students at Dartmouth who meet any of the following criteria:

i.      Between April 1, 2012 and August 31, 2017 were graduate advisees of one of more of Todd Heatherton, William Kelley, and/or Paul Whalen (collectively "the Three Professors");

ii.     Between April 1, 2012 and August 31, 2017 were teaching or research assistants for one or more of the Three Professors;

iii.    Were graduate students in the Psychological and Brain Sciences Department who, between April 1, 2012 and August 31, 2017, (i) co-authored at least one paper with one or more of the Three Former Professors based on research

2

physically conducted in the lab during that time period, or (ii) co-authored at least three papers with one or more of the Three Former Professors; OR

iv.      Were graduate students in the Psychological and Brain Sciences Department between March 31, 2015 and August 31, 2017 who do not fit within categories (i)-(iii), but who will attest that they experienced dignitary, emotional, educational and/or professional harm during this period as a result of the misconduct of one or more of the Three Professors.

b.      All current and former women undergraduate students at Dartmouth who, between April 1, 2012 and August 31, 2017, worked as research assistants for one or more of the Three Former Professors. As used herein, "research assistants" includes individuals working on an honors thesis or independent research study in one or more of the Three Former Professors' labs.

3.      This Court finds, preliminary and for purposes of settlement only, that as to the Settlement Class, the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is sufficiently numerous that joinder of all members of the Settlement Class is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Class Representatives are typical of the claims of the Settlement Class they seek to represent; (d) the Class Representatives and Class Counsel fairly and adequately represent the interests of the Settlement Class; (e) questions of law and fact common to the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (f) a class action, considered in the context of the Settlement, is superior to other available methods for the fair and efficient adjudication of the Litigation.

4.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, preliminarily and for the purposes of settlement only, the Class Representatives are certified as the class representatives on behalf of the Settlement Class and Class Counsel is hereby appointed as the class counsel for the Settlement Class.

5.     The Court finds that the Agreement was the product of good faith, arm's-length negotiations and that the Agreement is fair and reasonable to the Settlement Class Members such that providing notice of the Settlement to Settlement Class Members and holding a Fairness Hearing are warranted.

6.     Accordingly, the Court preliminarily approves the Settlement on the terms set forth in the Agreement, subject to further consideration at the final approval hearing (the "Fairness Hearing") to be held before this Court on _____, 2019, at ___:___ _.m., at the United States District Court for the District of New Hampshire, 55 Pleasant Street, Concord, New Hampshire 03301, Courtroom __.  The purpose of the Fairness Hearing will be:

a.     to determine whether the proposed Agreement is fair, reasonable, and adequate and should be finally approved by the Court;

b.     to determine whether the Judgment, substantially in the form attached as Exhibit D to the Agreement, should be entered, dismissing the Litigation with prejudice, and forever releasing the Claims against the Released Parties as set forth in the Agreement;

c.     to determine whether the proposed Plan of Allocation for the Class Settlement Amount is fair and reasonable and should be approved by the Court;

d.     to determine whether the application by Class Counsel for an award of attorneys' fees and reimbursement of litigation expenses incurred should be approved; and

e.     to rule upon such other matters as the Court may deem appropriate

7.      Pending further order of the Court, all litigation activity, except that contemplated herein, in the Agreement, or in the Notice, remains enjoined and stayed and all hearings, deadlines, and other proceedings in this Litigation, excepting the Fairness Hearing, are hereby taken off the calendar.

8.      The Court approves the form, substance, and requirements of the Notice, and finds that the procedures established for publication, mailing, and distribution of such Notices substantially in the manner and form proposed by Class Counsel constitute the best notice practicable under the circumstances and are in full compliance with the notice requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.  Under no circumstances shall any Settlement Class Member be relieved from the terms of the Agreement, including the release provided for therein, based upon the contention or proof that such Settlement Class Member failed to receive adequate or actual notice.

9.      Class Counsel shall cause the Notice, substantially in the form attached hereto as Exhibit X, to be [insert mode of distribution] to all Settlement Class Members, on or before [ten (10)] business days after this Order is entered.  Defendant shall cooperate reasonably with Class Counsel in identifying Settlement Class Members.  The Notice shall also be posted on the Claims Administrator's website.

10.      Class Counsel shall, at or before the Fairness hearing, file with the Court proof of dissemination by [mail/email/text] of the Notice.

11.      The Court approves the selection of [insert] by Class Counsel as Claims Administrator.  The Court approves payment of the Claims' Administrators' reasonable fees and expenses to be taxed against the Class Settlement Amount.

12.     In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ("CAFA"), the Defendant will serve any documents required by the CAFA on the United States Attorney General and the Attorney Generals for the States where Settlement Class Members reside, unless such service is already completed at the time this Order is issued.

13.     Class Counsel shall submit its papers in support of final approval of the Agreement, the Plan of Allocation, and the application for attorneys' fees and reimbursement of litigation expenses and Class Representatives' request for a compensatory award by no later than [X] calendar days before the Fairness Hearing, and any reply papers in support thereof by no later than [X] calendar days before the Fairness hearing.

14.     Settlement Class Members shall be bound by all determinations and the judgment in this Litigation, whether favorable or unfavorable, unless such Person requests exclusion from the Settlement Class in a timely and proper manner.  A Settlement Class Member wishing to make such an exclusion request must do so in accordance with the procedures in the Class Notice and must do so by _____, which is sixty (60) days after the Notice Deadline. Such request for exclusion shall clearly indicate the name, address, and telephone number of the Person seeking exclusion, state that the sender requests to be excluded from the Settlement Class in the Litigation, and must be signed by such Person.  The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court.

15.     Any Settlement Class Member who has not requested exclusion from the Settlement Class may, no later than [X] days before the Fairness Hearing, serve by hand, U.S. mail, or by overnight delivery written objections setting forth the basis therefor, and copies of any supporting papers and briefs upon the Settlement Administrator [insert address], and Defendant's

6

Counsel, Joan A. Lukey, Choate, Hall & Stewart LLP, Two International Place, Boston MA, 02110.  Any Settlement Class Member who has submitted such a written objection in accordance with these terms may appear at the Fairness Hearing to show cause why the Agreement should not be approved as fair, reasonable, and adequate; why the Judgment should not be entered thereon; why the Plan of Allocation should not be approved as fair and reasonable; why Class Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses should not be granted; or why Class Representatives' application for service award(s) should be denied, provided, however, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Agreement, the Judgment to be entered approving the same, the Plan of Allocation, or the attorneys' fees and reimbursement of litigation expenses requested, unless she has submitted a written objection in accordance with the terms of this Order.

16.     Any objection must include (a) the full name, address, email address if available, and phone number of the objecting Settlement Class Member, (b) a written statement of all grounds for the objection accompanied by any legal support for the objection, (c) copies of any papers, briefs, or other documents upon which the objection is based, (d) a list of all persons who will be called to testify in support of the objection, (e) a statement of whether the objector intends to appear at the Fairness Hearing, and (f) a list of any other objections that the Settlement Class Member or her lawyer has made to any class action settlements submitted to any court in the United States in the previous five years.  Class Counsel will be responsible for promptly filing with the Court and serving on all parties any objections or comments received.

17.     Any Settlement Class Member who does not object in the manner prescribed above shall be deemed to have waived such objection and shall forever be foreclosed from making any

objection to the fairness, adequacy, or reasonableness of the Agreement, the Judgment to be entered approving the Agreement, the fairness and reasonableness of the Plan of Allocation, or the attorneys' fees and reimbursement of litigation expenses requested.  By objecting, or otherwise requesting to be heard at the Fairness Hearing, a Person shall be deemed to have submitted to the jurisdiction of the Court with respect to the Settlement.

18.     The Court preliminarily approves the Plan of Allocation set forth in the Settlement. Under this Plan, in the event the Agreement is effected in accordance with all the terms and conditions thereof, each Settlement Class Member will automatically receive a base award and will be eligible for a supplementary award by submitting a Claim Form to the Settlement Administrator. Individuals who come within subsection (a)(iv) of the class definition are not members of the Class and will not receive an award unless they attest to experiencing harm by submitting a Claim Form or equivalent written document.

19.     The administration of the proposed Agreement and the determination of all disputed questions of law and fact with respect to the validity of any claim or right of any Person to participate in the distribution of the Class Settlement Amount shall be under the jurisdiction of this Court.

20.     The Court expressly reserves the right (a) to adjourn or continue the Fairness Hearing without any further notice to Settlement Class Members other than an announcement at the Fairness Hearing, and (b) to approve the Agreement and/or the Plan of Allocation with modification without further notice to Settlement Class Members.

21.     This Order should not be construed as, or deemed to be, evidence of a presumption, implication, concession, or admission by Defendant concerning any alleged liability, fault, or wrongdoing, or the appropriateness of any measure of alleged loss or damages.

22.     In the event that the Agreement and Judgment do not become Final or the Agreement is terminated as provided in the Agreement, then this Preliminary Approval Order shall be rendered null and void to the extent provided by and in accordance with the Agreement, and shall be vacated to the extent provided by the Agreement, and, in such event:  (a) all Orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement; (b) the fact of the Agreement shall not be admissible in any trial of the Action and the parties to the Agreement shall be deemed to have reverted nunc pro tunc to their respective status in the Action immediately before [date], except for purposes of enforcing the relevant portions of the Agreement; and (c) within [X] days of entry of the Final order rendering the Agreement and Judgment non-Final or notice of the Agreement being terminated, all monies previously paid from the Class Settlement Amount, including interest but less any costs or expenses properly incurred and approved by the Court, shall be immediately returned to Defendant.  Under those circumstances, Class Counsel shall undertake to return those amounts to Defendant by taking all steps reasonably necessary to cause the monies to be repaid.

23.     The Court retains exclusive jurisdiction over the Litigation to consider all further matters arising out of or connected with the Agreement.


_____
Honorable Landya B. McCafferty
United States District Chief Judge
Date:  _____

9

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, AND JANE DOE 3,             )<br>            )<br>Plaintiffs,      )<br>            )<br>v.            )<br>            )<br>TRUSTEES OF DARTMOUTH COLLEGE,            )<br>            )<br>Defendant.    )   | Civil Action No. 1:18-cv-01070-LM |

**[PROPOSED] <u>FINAL ORDER APPROVING CLASS ACTION SETTLEMENT</u>**

On \_\_\_, the parties reached a settlement agreement, subject to the approval of the Court, as a result of intensive, non-collusive, arm's-length negotiations.

On \_\_, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement.

On \_\_, Defendant served the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715.

On \_\_, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order").

On \_\_, the Claims Administrator sent the Notice of Proposed Settlement of Class Action (the "Notice") as ordered.

On \_\_, the Court held a fairness hearing regarding the parties' class action settlement.

1. Having considered Plaintiffs' motion, the Court hereby grants final approval of the Agreement.

2. Any term with initial capitalization that is not defined in this Order shall have the meaning provided in the Agreement.

3. The Court confirms that it has jurisdiction over this matter and the parties to it.

4. The Court hereby affirms its findings in its Preliminary Approval Order, that, for purposes of settlement only, the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Named Plaintiffs are typical of the claims of the Settlement Class Members; (d) the Named Plaintiffs and Class Counsel have and will fairly and adequately represent the interests of the Settlement Class Members; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affectingly only individual Settlement Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5. For purposes of settlement only, the Court further affirms its determinations in the Preliminary Approval Order and finally certifies, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Action as a class action, composed of the following individuals:

    a. All current and former women graduate students at Dartmouth who meet any of the following criteria:

i.   Between April 1, 2012 and August 31, 2017 were graduate advisees of one of more of Todd Heatherton, William Kelley, and/or Paul Whalen (collectively "the Three Professors");

ii.  Between April 1, 2012 and August 31, 2017 were teaching or research assistants for one or more of the Three Professors;

iii. Were graduate students in the Psychological and Brain Sciences Department who, between April 1, 2012 and August 31, 2017, (i) co-authored at least one paper with one or more of the Three Former Professors based on research physically conducted in the lab during that time period, or (ii) co-authored at least three papers with one or more of the Three Former Professors; OR

iv.  Were graduate students in the Psychological and Brain Sciences Department between March 31, 2015 and August 31, 2017 who do not fit within categories (i)-(iii), but who will attest that they experienced dignitary, emotional, educational and/or professional harm during this period as a result of the misconduct of one or more of the Three Professors.

b.  All current and former women undergraduate students at Dartmouth who, between April 1, 2012 and August 31, 2017, worked as research assistants for one or more of the Three Former Professors. As used herein, "research assistants" includes individuals working on an honors thesis or independent research study in one or more of the Three Former Professors' labs.

6.  This Court finally approves the terms of the Agreement and the Plan of Allocation, the material terms of which include, but are not limited to:

    a.  Defendant will pay the Class Settlement Amount in the manner set forth in the Settlement Agreement;

    b.  Defendant will implement the programmatic relief described in exhibit [X] to the Agreement.

    c.  Class Counsel will receive attorneys' fees of [X] from the Class Settlement Amount;

    d.  Class Counsel's litigation expenses, as well as expenses for administration of the settlement and sending of notice pursuant to CAFA will be deducted from the Class Settlement Amount;

    e.  The Plaintiffs will receive service awards of $75,000 for their contributions to the litigation and their services to the Class, including incurring the risks and burdens of litigation on behalf of the Class Members;

    f.  The remainder of the Class Settlement Amount will be distributed to Settlement Class Members as detailed in the Plan of Allocation;

    g.  Settlement Class Members who did not exclude themselves are bound by the terms of the Agreement, including all releases therein, and their claims are dismissed with prejudice.

7.  The Court finds that the Notice, and the distribution thereof, satisfied the requirements of due process and Federal Rule of Civil Procedure 23(e), that it was the best practicable under the circumstances, and that it constitutes due and sufficient notice to all persons entitled to notice of the Agreement.

8.  The Court similarly finds that the Notice was adequate and gave all Settlement Class Members sufficient information to enable them to make informed decisions as to the parties' proposed settlement, and the right to object to, or opt-out of it.

9.  The Court also finds that the parties' settlement, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the Settlement Class Members.

10. The Court further finds that the Settlement Class Members were given a fair and reasonable opportunity to object to the settlement.  X Settlement Class Members objected to the settlement.  And the Settlement Class Members who made valid and timely requests for exclusion are excluded from the Settlement Class and are not bound by this order.  There are X such persons, and they are listed on attached Exhibit A.

11. This Order is binding on all Settlement Class Members, except those individuals who validly and timely excluded themselves from the Settlement Class and the Agreement.

12. This action is dismissed with prejudice as to all other issues and as to all parties and claims.

13. Effective upon the Effective Date, the Released Parties, as defined in the next paragraph, shall be released and forever discharged by Plaintiffs and all Settlement Class Members (except those individuals who validly and timely excluded themselves from the Settlement Class and the Agreement) from any and all causes of action, judgments, liens, indebtedness, costs, damages, penalties, expenses, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever

kind or character (each a "Claim"), known or unknown, arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of or arising out of the same factual predicate as the claims that were or could have been asserted in the Litigation (namely the alleged conduct of the Three Former Professors and Defendant's alleged conduct and any related acts and omissions, including the 2017 Title IX investigation), whether any such Claim was or could have been asserted by any Releasing Party on her own behalf or on behalf of other Persons.

14. Released Parties means Defendant, and expressly includes its administrators, trustees, employees, insurers, representatives, and assigns. The Release does not extend to claims or potential claims that any Releasing Party may possess against the Three Professors, provided that such claims may proceed only against the Three Professors personally, and any potential liability that the Released Parties may have had, or arguably had, individually or jointly and severally, for such conduct is released.

15. This Order does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity, or accuracy of any of the allegations, claims, or defenses of any other party in this case. The Court has made no findings and expresses no opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in this case.

16. Plaintiffs, including but not limited to the Class Representatives, and all Settlement Class Members, and anyone who acts or purports to act on their behalf, shall not

bring, assert, or prosecute any claims, actions, or causes of action that assert any of the released Claims against any of the Released Parties.

17. The Court retains continuing and exclusive jurisdiction over the parties and all matters relating to this case, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this Order.


_____
Honorable Landya B. McCafferty
United States District Judge
Date: _____

# EXHIBIT D

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, AND JANE DOE 3, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:18-cv-01070-LM |
| v. | ) ) | |
| TRUSTEES OF DARTMOUTH COLLEGE, | ) ) ) | |
| Defendant. | ) | |

## [PROPOSED] <u>FINAL JUDGMENT</u>

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58, the following Final Judgment is hereby entered.  Any term with initial capitalization that is not defined in this Final Judgment shall have the meaning provided in the Settlement Agreement (ECF No. __).

Pursuant to and in accordance with the Final Order Approving Class Action Settlement (ECF No. __), which is incorporated herein by reference, it is:

ORDERED that the Court approves the parties' class action settlement.

FURTHER ORDERED that the Court approves the Settlement Agreement (ECF No. __).

FURTHER ORDERED that Defendant will pay $14,000,000, the Class Settlement Amount, in the manner set forth in the Settlement Agreement.

FURTHER ORDERED that the Claims Administrator shall distribute the Class Settlement Amount as detailed in the Plan of Allocation.

FURTHER ORDERED that the Court retains continuing and exclusive jurisdiction over the parties and all matters relating to this matter, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this Final Judgment.

FOR THE COURT:
_____, CLERK
Date:  _____