# Exhibit A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **JANE DOE 2,** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | **Case No. 2014 CA 007644 B** |
| | : | **Case No. 2014 CA 008073 B** |
| v. | : | **Case No. 2015 CA 007814 B** |
| | : | **Calendar 12** |
| **THE GEORGETOWN SYNAGOGUE -** | : | **Judge Brian F. Holeman** |
| **KESHER ISRAEL CONGREGATION,** | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

This matter comes before the Court upon consideration of Plaintiffs' Consent Motion for

Final Approval of the Class Settlement, Attorneys' Fees, Costs, and Service Payments, filed on

October 17, 2018.  Further, the Court has reviewed exhibits annexed to this Motion, including

the Settlement Agreement and Release ("Settlement" or "Settlement Agreement") and supporting

declarations, as well as the pleadings, other court filings, and notes from proceedings in this case

to date, including the Status Hearing on the instant Motion, convened on October 22, 2018.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Factual Background and Procedural History are set forth in the Order of this Court

granting preliminary approval of the Class Settlement, and are incorporated herein by this

reference as though fully set forth.  (Order, Sept. 19, 2018 at 1-5.)

## II.   THE APPLICABLE LAW

The District of Columbia Official Code § 11-921, governs subject matter jurisdiction.  It

states:

> (a) Except as provided in subsection (b), the Superior Court has
> jurisdiction of any civil action or other matter (at law or in equity)
> brought in the District of Columbia. Such jurisdiction shall vest in
> the court as follows:

(1) Beginning on the effective date of the District of Columbia Court Reorganization Act of 1970, the court has jurisdiction of any civil action or other matter begun before such effective date in the District of Columbia Court of General Sessions, the Juvenile Court of the District of Columbia, or the District of Columbia Tax Court.

(2) Beginning on such effective date, the court has jurisdiction of any civil action or other matter, at law or in equity, which is begun in the Superior Court on or after such effective date and in which the amount in controversy does not exceed $50,000.

D.C. Code § 13-422 governs personal jurisdiction based upon enduring relationship.  It

states:

A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.

D.C. Code § 13-423 governs personal jurisdiction based upon conduct.  It states:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

. . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

The Superior Court Rules of Civil Procedure, Rule 23, governs class actions.  It states:

(a)  *Prerequisites***.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

   (1)  the class is so numerous that joinder of all members is impracticable;

   (2)  there are questions of law or fact common to the class;

   (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

   (4)  the representative parties will fairly and adequately protect the interests of the class.

(b)  *Types of class actions*. A class action may be maintained if Rule 23(a) is satisfied and if:

   (1)  prosecuting separate actions by or against individual class members would create a risk of:

      (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

      (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

   . . . .

(e)  *Settlement, voluntary dismissal, or compromise***.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

   (1)  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

   (2)  If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under Rule 23(e); the objection may be withdrawn only with the court's approval.

. . . .

(h) *Attorneys' fees and nontaxable costs*. In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of Rule 23(h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Rule 54 governs judgments and costs. It states, in pertinent part:

(b) *Judgment on multiple claims or involving multiple parties.* When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just

reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

. . . .

(d)  *Costs; attorneys' fees.*

(1) *Costs other than attorneys' fees.* Unless an applicable statute, these rules, or a court order provides otherwise, costs -- other than attorneys' fees -- should be allowed to the prevailing party. But costs against the United States, the District of Columbia, or officers and agencies of either may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

In order to satisfy class certification a party must meet the requirements of Rule 23(a) and at least one subdivision of Rule 23(b).

Numerosity is satisfied where the class is so numerous that joinder of all members is impracticable.  Super. Ct. R. Civ. P. 23(a)(1).  Plaintiffs do not need to provide the exact number of potential class members to satisfy this requirement.  *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999).[1]  Numerosity is presumed at 40 members.  *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003).  The Court may "draw reasonable inferences from the facts presented to find the requisite numerosity."  *Coleman v. District of Columbia,* 306 F.R.D. 68, 76 (D.D.C. 2015) (citing *McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161,

---

[1]     The Superior Court is not bound by the decisions of the federal district court.  *M.A.P. v. Ryan*, 285 A.2d 312 (D.C. 1971) (stating that the Court Reform Act declared that "[the] highest court of the District of Columbia is the District of Columbia Court of Appeals.").  However, the Superior Court will defer to non-conflicting federal authority on matters of procedural interpretation.  D.C. Code §11-946 (2018) (stating that the Superior Court "shall conduct its business according to the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure (except as otherwise provided in Title 23) unless it prescribes or adopts rules which modify those Rules."); *Sellars v. United States*, 401 A.2d 974, 978 (D.C. 1979) (stating that "local court rules of procedure which parallel the federal rules are to be construed in light of the meaning given to the latter.").

167 (1st Cir. 1987)).  Further, Plaintiffs must show that joinder is impracticable. *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013).  "Demonstrating impracticability of joinder 'does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.'" *Id.*  (citing *Cent. States SE. & SW. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-245 (2d Cir. 2007)).

Commonality is satisfied where there are common questions of law or fact to parties in the class.  Super. Ct. R. Civ. P. 23(a)(2).  It is not necessary that every member of the class share the same issue of law or fact.  *Bynum*, 214 F.R.D. at 33.  "The touchstone of the commonality inquiry is 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'"  *Coleman*, 306 F.R.D. at 82 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed.2d 374 (2011)).  "[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members."  *Id.*  Commonality is also satisfied where there is a common question of law or fact and the same evidence can be used by each member of the class to make a prima facie showing of liability.  *Julian Ford v. ChartOne, Inc.*, 908 A.2d 72, 85-86 (D.C. 2006).

Typicality is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Super. Ct. R. Civ. P. 23(a)(3).  Typicality focuses on whether the representative of the class suffered similar injury from the same cause of conduct that gives rise to the other class members' claims.  *Bynum*, 214 F.R.D. at 34; *Moore v. Napolitano*, 269 F. R. D. 21, 32 (D.D.C. 2010).  "Essentially, the class representative's claim is typical of the claims of the class if his or her claim and those of the class arise from the same event or pattern or practice and are based on the same legal theory."  *Julian Ford*, 908 A.2d at 86

(citing *Singer v. AT&T Corp.*, 185 F.R.D. 681, 689 (S.D. Fla. 1998)).   The purpose of typicality is to ensure that the class representative's claims are the same as other class members to safeguard their interests.   *Bynum*, 214 F.R.D. at 34.   Factual variations do not destroy typicality. *Id.*; *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 118-119 (D.D.C. 2017) (citing *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987)).

Adequacy of representation is satisfied where "the representative parties will fairly and adequately protect the interests of the class."   Super. Ct. R. Civ. P. 23(a)(4).   "Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interest of the class through qualified counsel."   *Julian Ford*, 908 A.2d at 86 (citing *Twelve John Does v. District of Columbia*, 326 App. D.C. 17, 21, 117 F.3d 571, 575 (1997)).   If the Court can conclude that by "pursuing their own interests vigorously the named representatives will necessarily raise all claims or defenses common to the class, representativeness will be satisfied."   *Id.* (citing *United States v. Trucking Emp'rs.*, 75 F.R.D. 682, 688 (D.D.C. 1997)).

An action that satisfies the prerequisites of Rule 23 (a) must also meet the requirements of one or more of the three subdivisions of subpart (b).   Certification under Rule 23(b)(1)(B), is "proper on the grounds that the claims made are numerous against a fund that is insufficient to satisfy all the claims."   *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999).   Every award made to a claimant reduces the total amount of funds available to other claimants until some claimants are unable "to obtain full satisfaction of their claims, while others are left with no recovery at all."   *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 16 (D.D.C. 2011).

To qualify for class certification on such a limited fund rationale, the Moving Plaintiffs must meet three criteria.   *Ortiz*, 527 U.S. at 838.   First, "the total of the aggregated liquidated

claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims." *Id.* at 839. Second, "the whole of the inadequate fund" must be dedicated "to the overwhelming claims." *Id.* Third, all claimants to the fund who are "identified by a common theory of recovery [must be] treated equitably among themselves." *Id.*; *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 16.

Rule 23(e) controls class action settlements. The Court may approve a proposed settlement "after a hearing and on finding that it is fair, reasonable, and adequate." There is no set test for determining whether a proposed settlement is fair, reasonable, and adequate. However, the Court in addressing a class action settlement will typically "consider (1) whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, (2) whether it falls within the range of possible judicial approval, and (3) whether it has any obvious deficiency, such as granting unduly preferential treatment." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 194 (D.D.C. 2017) (citing *Richardson v. L'Oreal USA, Inc.*, 951 F.Supp.2d 104, 106-107 (D.D.C. 2013)).

The Court notes that there are five additional factors that are generally considered when it must decide whether the proposed settlement is fair, adequate, and reasonable: "(1) whether the settlement is the result of arms-length negotiations; (2) the terms of the settlement in relation to the strengths of plaintiffs' case; (3) the status of the litigation proceedings at the time of the settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 163 (D.D.C. 2014); *Livengood Feeds, Inc. v. Merck KGaA (in re Vitamins Antitrust Litig.)*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004).

Rule 23(e) requires that all class members be provided with adequate notice of the proposed settlement. The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Super. Ct. R. Civ. P. 23(e)(1).

Under Rule 23(h) the "[C]ourt may award reasonable attorneys['] fees and nontaxable costs that are authorized by law or by the parties' agreement.  Under the "'American Rule,' a party who prevails in litigation is not entitled to recover attorneys' fees from the losing party." *Passtou, Inc. v. Spring Valley Center*, 501 A.2d 8, 11 (D.C. 1985) (citation omitted).  However, there are exceptions to the American Rule as "[t]he common fund or benefit exception to the American Rule is fully recognized in the District of Columbia." *Id.* (citation omitted).  The "[c]ourts have applied the doctrine in a broad range of contexts in which one Plaintiffs' litigation efforts created a pool of money from which others benefitted, or merely conferred a non-monetary benefit on them." *Pearline Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 818 (D.C. 2009). "[P]ercentage-of-the-fund method is the appropriate mechanism for determining the attorneys['] fees award in common fund cases[, and may] range from fifteen to forty-five percent." *Stephens v. US Airways GRP., Inc.*, 102 F. Supp. 3d 222, 230 (D.D.C. 2015).  The Court, in evaluating fee requests, may consider:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (citation omitted).  The Court may "use the lodestar as a cross-check on the propriety of fees awarded under the percentage-of-the-fund method, sometimes adjusting the percentage or the award upward or downward accordingly."  *Id.*  "Courts may approve payment for expenses associated with administering the settlement where class members had notice that such expenses would be paid out of the settlement fund."  *Id.* at 232.  Further, "[i]t is common for courts to approve incentive awards in class-action litigations, especially when there is a common fund created to benefit the entire class."  *Little v. Wash. Metro. Area Transit Auth.*, 313 F. Supp. 3d

27, 35 (D.D.C. 2018).  The Court in deciding whether to grant service awards in class actions involving a common fund can evaluate "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class benefitted from those action[s], and the amount of time and effort the plaintiff expended in pursuing the litigation.'"  *Id.*  (citation omitted).

III.    **FINDINGS OF FACT**

1.      The Class members are females who were videorecorded by Defendant Bernard Freundel from July 1, 2005, through October 14, 2014, who disrobed in the National Capital Mikvah's ritual bath and/or associated facilities.  (Mem. of P. & A., Oct. 17, 2018 at 5.)

2.      Defendant Freundel was the supervising Rabbi for Defendant National Capital Mikvah and employed by Defendant the Georgetown Synagogue-Kesher Israel Congregation.  (Am. Compl. at 10.)

3.      Defendant Freundel resided in a home located at 3026 O Street, NW, Washington, D.C. 20007.  (*Id.* at 9.)

4.      The Georgetown Synagogue-Kesher Israel Congregation is an Orthodox Jewish Congregation located at 2801 N Street, NW, Washington, D.C. 20007.  (*Id.* at 10.)

5.      Defendant the National Capital Mikvah, Inc. owns and operates the Mikvah located at 1308 28th Street, NW, Washington, D.C. 20007.  (*Id.*)

6.      Defendant the Rabbinical Council of America has its principal place of business at 305 Seventh Avenue, 12th Floor, New York, NY 10001.  (*Id.*)

7.      Defendant the Beth Din of America has its principal place of business at 305 Seventh Avenue, 12th Floor, New York, NY 10001.  (*Id.*)

8.      Defendants the Rabbinical Council of America and the Beth Din of America established and oversee the religious court located in the District of Columbia, which

supervises, authorizes, and approves Orthodox conversions performed in the District of Columbia.  (Am. Compl. at 10.)

9.      Defendant Freundel videorecorded Plaintiffs who disrobed in the National Capital Mikvah's ritual bath and/or associated facilities.  (*Id.* at 6.)

10.     The videorecording by Defendant Freundel and the failure to act and/or omissions of the Defendants caused Plaintiffs' serious emotional distress and negative perceptions towards Judaism, the *mikvah*, and Jewish institutions.  (*Id.*)

11.     The Total Settlement Amount creates a non-reversionary fund of $14,250,000.00. (Mem. of P. & A. at 1.)

12.      The Total Settlement Amount will be used to make payments directly to Class Members, with the remainder of the Total Settlement Amount to be used for (a) fees and expenses for the Settlement Administrator and an Independent Claims Expert; (b) Court-awarded attorneys' fees and expenses; and (c) Court-awarded service payments to the Plaintiffs who brought and assisted in the litigation against the Settling Defendants.  (*Id.* at 3.)

13.      Notice of the Class Action Settlement has been provided by the Settlement Administrator who sent the long-form Notice and Registration Form to 772 potential Class Members via mail and/or email.   (*Id.* at 4.)

14.     The United States Attorney's Office of the District of Columbia has emailed the Notice and Registration Form to all persons on its contact list.  (*Id.*)

15.     The Settlement Administrator arranged for the publication of the short-form notice, which has appeared in the *Washington Post*, the *Washington Jewish Week*, the *Baltimore Jewish Times*, the *Baltimore Sun*, the *Jewish Week*, the *Forward*, *Kol HaBirah*, and the *Jerusalem Post*.  (*Id.*)

16.     The Settlement was publicized on websites maintained by the Settlement

Administrator, Sanford Heisler Sharp, and Chaikin, Sherman, Cammarata, & Siegel,

P.C., and to several non-profit organizations in the Washington, D.C. area. (Mem. of P. &

A. at 4-5.)

17.     The United States Attorney's Office of the District of Columbia confirmed that

Bernard Freundel videotaped over 150 Women, and over 140 Class Members have

submitted Registration Forms to participate in the Settlement.  (*Id.* at 6.)

18.     No conflicts between the Class Representatives and Class Members have arisen.

(*Id.* at 8.)

19.     The Defendants are religious institutions and, consequently, there are inadequate

funds from these institutions available for the purpose of satisfying these multiple claims.

(*Id.* at 9.)

20.      The consolidated cases have been pending for nearly four years, and the parties,

through experienced counsel, have used the majority of this time to debate their positions

and effectuate settlement through Mediation, facilitated by the stay of all proceedings

imposed by the Court.  (*Id.* at 12; Sanford Decl. at 2, 4-5.)

21.     There has been no objection to the Settlement Agreement made by any Class

Member.  (Mem. of P. & A. at 15.)

22.     The attorneys' fees have been calculated using the percentage-of-the-fund

method and the requested sum is $4,750,000.00, representing one-third of the Total

Settlement Amount.  (*Id.* at 17.)

23.     Litigation expenses and costs total $299,833.39, representing nearly four years of

associated legal services and over 5,400 hours.  (*Id.* at 25.)

24.     The lodestar cross-check confirms that the requested attorneys' fees are reasonable, as the law firms of Sanford Heisler Sharp, LLP, Chaikin, Sherman, Cammarata, & Siegel, P.C., and Silverman, Thompson, Slutkin and White, LLC applied their billing rates in line with attorneys of comparable skill, experience, and reputation and the lodestar value of Plaintiffs' Counsel's time in this case to date totals nearly $3,700,000.00.  (*Id.* at 25-26; Sanford Decl. at 6-7; Silverman, Thompson, Slutkin and White LLC Decl. at 5-6.)

25.     No Class Members have objected to the attorneys' fees.  (Mem. of P. & A. at 19.)

26.     Plaintiffs' Counsel seeks service payments between $2,500.00 and $25,000.00, for a total amount of $180,000.00 for each of the Plaintiffs who brought claims against the Settling Defendants.  (*Id.* at 28; Sanford Decl. at 9.)

27.     No Class Members have objected to the service awards.  (*Id.* at 30.)

28.     Plaintiffs project that a total approaching $175,000.00 will be used for third-party administrative costs, such as expenses to administer the Settlement, and fees and costs for the Settlement Administrator and the Independent Claims Expert.  (*Id.* at 27.)

## IV.    CONCLUSIONS OF LAW

### A.     JURISDICTION

The Court has subject matter jurisdiction over this action under D.C. Code § 11-921, as the complaint arises out of Defendant Freundel's actions of videotaping Plaintiffs who disrobed at the National Capital Mikva's ritual bath in the District of Columbia.  The Court has personal jurisdiction over Defendant the Georgetown Synagogue-Kesher Israel Congregation  and Defendant National Capital Mikvah, Inc. under D.C. Code § 13-422, as both Defendants maintain their principal place of business in the District of Columbia.  The Court has personal jurisdiction over Defendant Freundel under D.C. Code § 13-422, as Defendant Freundel is

domiciled in the District of Columbia.  Further, the Court has personal jurisdiction over

Defendants the Rabbinical Council of America and the Beth Din of the United States of America

under D.C. Code § 13-423, as the tortious conduct committed arose out of Defendants

transaction of business, their acts and/or omissions, and their rendering of services in the District

of Columbia.

### B.    ADEQUACY OF NOTICE

The Court finds that the requirement of notice has been satisfied under Rule 23(e).

Notice to 772 Class Members was received through long-form Notice and Registration Forms.

Circulation of the Short-form Notice was circulated in the *Washington Post*, the *Washington*

*Jewish Week*, the *Baltimore Jewish Times*, the *Baltimore Sun*, the *Jewish Week*, the *Forward*,

*Kol HaBirah*, and the *Jerusalem Post*.  Notice was also circulated through websites maintained

by the Settlement Administrator and to several non-profit organizations in Washington, D.C.

Further, the United States Attorney's Office of the District of Columbia has already confirmed

that over 140 Class Members have submitted Registration Forms to participate in the Settlement.

### C.    FINAL CERTIFICATION OF THE PROPOSED CLASS

The Court finds that the requirements of numerosity, commonality, typicality, and

adequacy of representation are satisfied under Rule 23(a).  Numerosity has been satisfied as over

140 Class Members have submitted Registration Forms to participate in the Settlement.

Commonality has been satisfied as the Class Members share common questions of law or fact,

such as whether Defendant Freundel videotaped females without their consent and whether

Defendant Freundel acted as an agent or employee of any of the Defendants within the course

and scope of his employment.  Typicality is satisfied as Plaintiffs' claims or defenses were that

of the other members of the class and their injuries arose from the unauthorized and personally

invasive videorecording of the ritual bath in the National Capital Mikvah facility.  Adequacy of

representation is satisfied as there was no conflict between the representative party and class members, and counsel for Plaintiffs performed the required work on behalf of the Class Members.

The Court finds that certification is appropriate under Rule 23(b)(1)(B); the intended consequence is, in part, to reduce the risk of multiple individual adjudications and potential impediments to non-members or non-party members to protect their interests. The Court appreciates that the Defendants are religious institutions and, consequently, that there would be inadequate funds from these institutions available for the purpose of satisfying these multiple claims. The Court is satisfied that the funds, as addressed in the papers, would be dedicated to the claims, fees, and expenses related to the consolidated actions. The Court is further satisfied that the individual claimants, the members, would be treated equally here.

### D. FINAL APPROVAL TO THE SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE

The Court finds that the Final Settlement is a fair, reasonable, and adequate result of arm's length negotiations. The Court appreciates that the case has lasted nearly four years with two years of mediation and negotiation. The Court also finds that the Total Settlement Amount falls within the range of possible judicial approval, and over the four years there has been sufficient litigation to support final approval. The Court is also satisfied with the reaction of the Class, as not a single Class Member has objected. The Court appreciates the experience of lead counsel in the Settlement Agreement. The Court is satisfied that there is no undue preferential treatment and that notice was adequate.

### E. THE APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE PAYMENTS

The Court finds that attorneys' fees and nontaxable costs are reasonable under Rule 23(h) and Rule 54(d). The Court finds that the percentage-of-the-fund method is appropriate in

determining the attorneys' fee award in common fund cases, and the Court has further cross-check the attached lodestar in determining the reasonableness of Plaintiffs' attorneys' fees.  The Court is satisfied that the requested sum of $4,750,000.00 in attorneys' fees and the sum of $299,833.39 for expenses incurred by the law firms are reasonable as compared to the funds in the Total Settlement Amount, no objections from Class Members pertaining to the attorneys' fees, the 5,400 hours worked by Plaintiffs' counsel, experience of counsel, the complexity of the litigation, the risk of nonpayment, and the awards in similar cases.

The Court finds that third-party costs are reasonable.  The amount of $175,000.00 is an appropriate amount for the orderly administration of the Settlement, such as costs for the provision of Notice and costs associated with calculating and issuing settlement payments to Class Members.  Further, the amount is appropriate for the fees and costs associated with the Settlement Administrator and the Independent Claims Expert.

Further, the Court is satisfied that the service payments to the Plaintiffs who brought claims against the settling Defendants are reasonable.   The Court finds that the amount of $180,000.00 is appropriate for the actions taken by Plaintiffs over the last four years, the degree to which Class Members benefitted from the Settlement Agreement, and the amount of time expended by Plaintiffs in pursuing this case.

**WHEREFORE**, it is this 24th day of October 2018, hereby

**ORDERED**, that Plaintiff's Consent Motion for Final Approval of the Class Settlement, Attorneys' Fees, Costs, and Service Payment is **GRANTED**; and it is further

**ORDERED**, that final certification of the following Class pursuant to D.C. Super. Ct. R. Civ. P. 23(b)(1) is **GRANTED**:

> All females whom the United States Attorney's Office for the District of Columbia has identified as having been videorecorded by Bernard Freundel from July 1, 2005, through October 14, 2014, and/or who otherwise disrobed, either partially or completely, in

the National Capital Mikvah's ritual bath and/or associated facilities, including the anteroom, changing rooms, showers, and/or bathroom (regardless of whether they were videorecorded), at any time from July 1, 2005 through October 14, 2014.

and it is further

**ORDERED**, that final approval to the Settlement pursuant to D.C. Super. Ct. R. Civ. P. 23(e) is **GRANTED**; and it is further

**ORDERED**, that each and every term of the Settlement Agreement is hereby adopted, incorporated, and made part of this Judgment as if fully set forth herein, and shall be effective, implemented, and enforced as provided in the Settlement Agreement; and it is further

**ORDERED**, that the effective Date of the Settlement is October 22, 2018; and it is further

**ORDERED**, that the parties to the Settlement (including Travelers), the Court-appointed Settlement Administrator (RG/2 Claims Administration LLC), and the Independent Claims Expert (Annie Steinberg, M.D.) shall administer the Settlement Agreement in accordance with its terms and provisions; and it is further

**ORDERED**, that in accordance with the Settlement Agreement, Travelers shall pay the Total Settlement Amount of $14,250,000.00 by no later than November 5, 2018; and it is further

 **ORDERED**, that the Court-appointed Settlement Administrator shall: (1) distribute all settlement monies in accordance with the Settlement and as further directed herein; (2) issue Base Payments to Registered Class Members on November 26, 2018; and (3) issue the Confidential Claim Form to Registered Class Members on November 26, 2018; and it is further

**ORDERED**, that the Claim Form Deadline shall be January 25, 2019; and it is further

**ORDERED**, that Class Counsel shall have the authority to make minor modifications or additions to the Confidential Claim Form as requested by the Independent Claims Expert or as

otherwise necessary to promote accessibility, clarity, intelligibility, and/or reliability; and it is further

**ORDERED**, that the request for approval of service awards ranging from $2,500.00 to $25,000.00 and totaling $180,000.00, as set forth in the Settlement Agreement, is **GRANTED**; and it is further

**ORDERED**, that the Settlement Administrator shall issue these service payments as set forth in the Settlement Agreement; and it is further

**ORDERED**, that the Settlement Administrator shall pay from the Total Settlement Amount the sum of $4,750,00.00 for attorneys' fees and the sum of $299,833.39 for expenses to the law firms of Sanford Heisler Sharp, LLP, Chaikin, Sherman, Cammarata, & Siegel, P.C., and Silverman, Thompson, Slutkin and White, LLC, the fees to be divided among these law firms as set forth in the Settlement Agreement and expenses to be reimbursed to the law firms that incurred the expenses; and it is further

**ORDERED**, that the request for approval of payment from the Total Settlement Amount of fees and costs for the Court-appointed Settlement Administrator (including any third-party vendor with whom it contracts to perform services) and for the Court-appointed Independent Claims Expert (including any personnel working at her direction) consistent with the estimate of $175,000.00, is **GRANTED**; and it is further

**ORDERED**, that without affecting the finality of the Judgment, the Court hereby reserves exclusive and continuing jurisdiction and venue with respect to the consummation, implementation, enforcement, construction, interpretation, performance, and administration of the Settlement and this Judgment; and it is further

**ORDERED**, that the consolidated cases comprised of Case Nos. 2014 CA 008073 B and 2015 CA 000814 B, are hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED**, that there is **NO JUST REASON FOR DELAY** in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to D.C. Super. Ct. R. Civ. P. 54(b).

_____
BRIAN F. HOLEMAN
JUDGE

Copies e-served to:

David W. Sanford, Esquire
Jeremy Heisler, Esquire
Alexandra Harwin, Esquire
SANFORD HEISLER SHARP, LLP
1050 Avenue of the Americas, Suite 3100
New York, New York 10019
*Class Counsel*

Ira Sherman, Esquire
Joseph Cammarata, Esquire
Allan M. Siegel, Esquire
Matthew W. Tievsky, Esquire
CHAIKIN, SHERMAN, CAMMARATA & SIEGEL, P.C.
1232 17th Street, NW
Washington, DC 20036
*Co-Counsel for the Plaintiffs Jane Doe 2, et al.*

Andrew G. Slutkin, Esquire
Silverman, Thompson, Slutkin & White LLC
201 North Charles Street, suite 2600
Baltimore, Maryland 21201
*Co-Counsel for the Plaintiffs Jane Doe 2, et al.*

Paul Blankenstein, Esquire
Ashley S. Boizelle, Esquire
Amanda C. Machin, Esquire
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
*Counsel for Defendant Georgetown Synagogue – Kesher Israel Congregation*

Edward Clark Bacon, Esquire
Patricia Maureen Thornton, Esquire
BACON, THORNTON & PALMER, LLP
Capitol Office Park
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770
*Counsel for Defendant National Capital Mikvah, Inc.*

Evan T. Barr, Esquire
Samuel Groner, Esquire
Chelsea P. Azrak, Esquire
Anayansi Rodriguez, Esquire
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
*Counsel for Defendant The Rabbinical Council of America, Inc.*

Barry G. Felder, Esquire
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
*Counsel for Defendant The Beth Din of the United States of America, Inc.*

Jeffrey Harris, Esquire
RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP
1201 Connecticut Avenue, NW, Suite 200
Washington, DC 20036
*Counsel for Defendant Bernard Freundel*