UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

KRISTINA RAPUANO, VASSIKI CHAUHAN,
SASHA BRIETZKE, ANNEMARIE BROWN,
ANDREA COURTNEY, MARISSA EVANS,
JANE DOE, JANE DOE 2, and JANE DOE 3,

    *Plaintiffs, on behalf of themselves and all others similarly situated,*

    v.

TRUSTEES OF DARTMOUTH COLLEGE,

    *Defendant.*

Hon. Landya B. McCafferty, U.S.D.J.

CASE NO. 1:18-cv-01070 (LM)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF THE PROPOSED CLASS SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

I.    BACKGROUND...............................................................................................1

      A.  Factual Background ............................................................................1

      B.  History of Lawsuit ..............................................................................3

      C.  Preliminary Approval.........................................................................4

      D.  The Class Members' Overwhelmingly Favorable Response to the Settlement ...........6

II.   KEY TERMS OF THE SETTLEMENT .........................................................6

      A.  $14 Million Non-Reversionary Settlement Fund and Class Member Payments .........7

      B.  Comprehensive Programmatic Relief...............................................9

      C.  Service Awards..................................................................................10

      D.  Attorneys' Fees, Reimbursement of Litigation Expenses, and Settlement
          Administration Costs ........................................................................10

III.  TO EFFECTUATE THE SETTLEMENT, THE COURT SHOULD
      FINALIZE ITS CERTIFICATION OF THE RULE 23 SETTLEMENT
      CLASS ............................................................................................................10

      A.  The Elements of Rule 23(a) Are Satisfied ......................................11

          1.   Numerosity is Satisfied..........................................................11

          2.   Commonality is Satisfied.......................................................11

          3.   The Class Representatives' Claims are Typical of the Class ..........................12

          4.   Rule 23(a)(4) And Rule 23(g) Are Satisfied: The Class Representatives
               and Class Counsel Will Fairly and Adequately Protect the Class'
               Interests ................................................................................13

      B.  The Requirements of Rule 23(b)(3) Are Satisfied...........................14

          1.   Common Issues Predominate ................................................14

          2.   Class Settlement Is Superior to Alternative Methods of Adjudication.............16

IV.   THE COURT SHOULD APPROVE THE SETTLEMENT AS FAIR,
      REASONABLE, AND ADEQUATE UNDER RULE 23(e) .......................16

      A.  The Class Representatives and Class Counsel Have Adequately Represented
          the Class (Rule 23(e)(2)(A)) ...........................................................18

      B.  The Settlement Is the Product of Non-Collusive, Arm's-Length, and Well-
          Informed Negotiations (Rule 23(e)(2)(B))......................................19

i

C. The Proposed Settlement Provides Adequate Relief that Exceeds the Likely Result of Continued Litigation (Rule 23(e)(2)(C))....................................................21

    1. This is a Complex Litigation Involving Significant Risk; Litigation is Likely to Span Years and Require More than a Decade's Worth of Discovery (Rule 23(e)(2)(C)(i)) ....................................................................21

    2. The Proposed Settlement Exceeds the Likely Result of Continued Litigation ............................................................................................23

D. The Proposed Settlement Treats Class Members Equitably and Utilizes a Fair and Reasonable Allocation Plan That Strongly Supports Approval (Rule 23(e)(2)(D) and Rule 23(e)(2)(C)(ii)).........................................................25

E. Class Members' Overwhelming Support for the Settlement .....................................26

F. The Settlement's Provision for Attorneys' Fees is Reasonable, Fair, and Appropriate Under the Circumstances....................................................................27

V. CONCLUSION...........................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ......................................................16

*Applegate v. Formed Fiber Techs., LLC*, No. 2:10-CV-00473-GZS, 2012 WL 3065542
(D. Me. July 27, 2012) ...................................................................................................11

*Baugh v. Robert Morris Univ.*, No. 2:16-CV-00430, 2018 WL 5828834 (W.D. Pa.) .................25

*Bellifemine v. Sanofi-Aventis*, No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D.N.Y.
Aug. 6, 2010) ...................................................................................................................14

*Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788-JST, 2015 WL
12661922 (N.D. Cal. Aug. 28, 2015) ..............................................................................28

*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324 (D. Mass.) ..........................................17, 19, 24

*Bezdek v. Vibram USA Inc.,* 809 F.3d 78 (1st Cir. 2015) ...........................................................17

*Bremiller v. Cleveland Psychiatric Inst.*, 195 F.R.D. 1 (N.D. Ohio 2000) ................................13

*Briski v. Hersey*, No. C 17-02675, 2017 WL 4418866 (N.D. Cal. Oct. 5, 2017) .......................25

*Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195 (D.N.H. 2009) .................................15, 22

*Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59 (D. Mass. 1999) ..........................................19

*Clough v. Revenue Frontier, LLC*, No. 17-CV-411-PB, 2019 WL 2527300 (D.N.H.
June 19, 2019) ....................................................................................................11, 13, 14

*Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288 (D. Mass. 2011) .......................................13

*Crane v. Sexy Hair Concepts, LLC*, CIV. A. No. 17-10300-FDS, 2019 WL 2137136
(D. Mass. May 14, 2019) .................................................................................................19

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...........................................................19

*Doe #1 by Parent #1 v. N.Y.C. Dep't of Educ.*, No. 16-CV-1684 (NGG) (RLM), 2018
WL 3637962 (E.D.N.Y. July 31, 2018) ...........................................................................20

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) ................................................20

*Fox v. Pittsburg State Univ.*, No. 2:14-CV-02606, 2016 WL 11033455 (D. Kan.) .....................25

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................28

*García-Rubiera v. Calderón*, 570 F.3d 443 (1st Cir. 2009) .................................................11, 13

*Geis v. Walgreen Co.*, Civ. No. 07-4238, 2010 WL 11570447 (D.N.J. Sept. 30, 2010) .............28

*Gulbankian v. MW Mfrs., Inc.*, CIV. A. No. 10-10392-RWZ, 2014 WL 7384075 (D.
Mass. Dec. 29, 2014) ..................................................................................................18, 19

*Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan.
8, 2015) .......................................................................................................10, 18, 27

*Howard v. Cook Cty. Sheriff's Office*, No. 17 C 8146, 2020 WL 1848208 (N.D. Ill.
Apr. 12, 2020) .................................................................................................................12

*Hughes v. Regents of Univ. of Colorado*, 967 F. Supp. 431 (D. Colo. 1996) ..............................25

*In re Air Crash Disaster at Charlotte, N.C. on July 2, 1994*, 982 F. Supp. 1115 (D.S.C. 1997)......................................................................................................................................25

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320-PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) ...................21, 23, 27

*In re Gen. Motors Co. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)..................................................................................................................................28

*In re Lucent Tech., Sec. Litig.*, 327 F.Supp.2d 426 (D.N.J. 2004)..............................................28

*In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833 (D. Mass. Aug. 17, 2005)......................................................................................21

*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016)........................................................................................................................................20

*In re Nexium Antitrust Litigation*, 777 F.3d 9 (1st Cir. 2015)....................................................15

*In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) .......................9

*In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) .............................20

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ...................................................28

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007) ...............21, 26, 27

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001).................................................21

*Jane Doe 2 v. The Georgetown Synagogue et al.*, CIV. A. No. 2014 CAB 8073 (D.C. Super. Ct. 2018) .................................................................................................................18

*Jane Doe 30's Mother v. Bradley*, 64 A.3d 379 (Del. Super. Ct. 2012)........................21, 24, 26

*Johns Hopkins Hosp.*, 2014 WL 4147208.................................................................................26

*Lazar v. Pierce*, 757 F.2d 435 (1st Cir. 1985)............................................................................1

*LeGoff v. Trustees of Bos. Univ.*, 23 F. Supp. 2d 120 (D. Mass. 1998)......................................23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)...............................................20

*Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016)...........................................................................................................................17, 27

*Monthei v. Morton Bldgs., Inc.*, No. 4:01-CV-30510-WHA, 2003 WL 21212641 (S.D. Iowa Mar. 26, 2003)........................................................................................................25

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund,* 582 F.3d 30 (1st Cir.2009).........................................................................................17

*Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356 (D. Md. 2004).....................................12

*P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13 (1st Cir. 2014)...............................................17

*Pan v. Qualcomm Incorporated*, No. 16-cv-01885-JLS-DHB, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ................................................................................................................18

*Rapuano v. Trustees of Dartmouth Coll.*, No. 18-CV-1070-LM, 2020 WL 475630 (D.N.H. Jan. 29, 2020) ............................................................................................5

*Roberts v. TJX Companies, Inc.*, CIV. A. No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ....................................................................................23

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) .................................................18

*Stephens v. US Airways Grp., Inc.*, 102 F.Supp.3d 222 (D.D.C. 2015)......................28

*Thorsen v. Cty. of Nassau*, 722 F. Supp. 2d 277 (E.D.N.Y. 2010)..............................25

*Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...................................................................................... 14, 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..............................................11

*Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016).............................................................................................................18

*Wells v. Allstate Ins. Co.*, 557 F.Supp.2d 1 (D.D.C. 2008)........................................28

*Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650 (S.D. Ohio May 22, 2006)...........................................................................................................28

*Wright v. Stern*, 553 F.Supp.2d 337 (S.D.N.Y. 2008) ..............................................28

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230(GF), 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014)...........................................................................................................14

**Statutes**

20 U.S.C. §§ 1681......................................................................................................3

**Rules**

Fed. R. Civ. P. 23................................................................................................passim

**INTRODUCTION**

Plaintiffs Kristina Rapuano, Vassiki Chauhan, Sasha Brietzke, Annemarie Brown, Andrea Courtney, Marissa Evans, Jane Doe, Jane Doe 2, and Jane Doe 3 ("Plaintiffs") are current or former students in the Department of Psychological and Brain Sciences ("PBS" or "the Department") at Defendant Dartmouth College ("Dartmouth" or "Defendant") (collectively, "Parties"). Plaintiffs allege that Dartmouth systematically failed to protect them and other female students from the sexual predations of three tenured professors who were known serial harassers in violation of Title IX and New Hampshire common law.

The Court preliminarily approved the Parties' Class Action Settlement Agreement (the "Agreement") on January 29, 2020.  Under the terms of the proposed Settlement, Dartmouth will pay $14,000,000 to fund the monetary settlement of Plaintiffs' and the Class's claims in this case and will also undertake significant programmatic measures and reforms representing an additional monetary value of at least $1,500,000.

A detailed Court-approved Notice of Settlement of Class Action ("Notice") that outlined the Settlement terms at length was sent to ninety-two Class Members. ***The Class response has been overwhelming: Class Members resoundingly approve the Settlement.*** Not a single Class Member has objected to the Settlement.  In accordance with the "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved," *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985), this Court should endorse the Settlement and grant Plaintiffs' Motion for Final Approval of the Proposed Class Settlement.

## I.   BACKGROUND

### A.   Factual Background

The nine Plaintiffs are female scientists who are current or former students affiliated with Dartmouth's PBS Department, where they worked with former tenured professors Todd

Heatherton, William Kelley, and Paul Whalen (the "Three Former Professors" or the "Professors"). Plaintiffs allege that Dartmouth knowingly permitted these three prominent (and well-funded) professors to treat their female scholars as sex objects for years: leering at, groping, sexting, and even raping female students in the Department. (*See, e.g.,* ECF No. 28, First Amended Complaint ("FAC").) Plaintiffs allege that Dartmouth was long on notice of the Professors' misconduct, having received numerous complaints of pervasive sexual harassment and gender-based discrimination dating back to 2002, but failed to take appropriate action. (*Id.* ¶ 3.) Plaintiffs allege that they and other female students were harmed as a result.

As alleged in the Complaint:[1] In early April 2017, a group of female graduate students (including several Plaintiffs) contacted Dartmouth's Title IX office and detailed instances of sexual harassment and assault by the Professors. (*Id.* ¶ 4.) Dartmouth failed to adequately respond to these complaints, and as a result, the harassment continued unabated as students continued to work with or among the Professors for nearly four months. (*Id.* ¶ 5.) Over several months, approximately 27 complainants came forward to participate in the Title IX investigation. (*Id.* ¶ 6.) The Three Former Professors eventually resigned and/or retired in July 2018. (*Id.* ¶ 7.)

The Supplemental Briefing in Further Support of Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement details the common factual allegations applicable to the Class.  (*See* ECF No. 49 (Supplemental Briefing) at § I).  As an overview, Plaintiffs allege that all Class Members were subjected to the same conduct (constant sexual banter, sexual innuendo, and pressure to participate in a lewd drinking culture) by a small handful of actors: three tenured professors and certain high-ranking members of the administration who allegedly declined to stop

---

[1] *See also* ECF No. 49 (Supplemental Briefing in Further Support of Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement) at § I (detailing common factual allegations).

the misconduct.  The Plaintiffs allege that they, and the Class, endured the same sexually explicit

language and conduct by the Three Former Professors (*see* ECF No. 49 at § I(A)).  Dartmouth's

alleged failure to adequately respond to complaints affected all Class Members in the same way:

the hostile environment continued unabated throughout the class period (*id.* at § I(B)).  As a result,

the Plaintiffs allege that the Class Members all suffered the *same* injury: exposure to a highly

sexualized academic environment permeated with sexually offensive and degrading behavior that

was normalized by the Three Professors (*id.* at § I(C)).

B.      <u>History of Lawsuit</u>

On November 15, 2018, Plaintiffs Rapuano, Chauhan, Brietzke, Brown, Courtney, Evans,

and Jane Doe sued Dartmouth in the United States District Court for the District of New Hampshire

alleging class-based claims for hostile environment and gender discrimination under Title IX of

the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* ("Title IX") and breach of fiduciary

duty and negligent supervision and retention under New Hampshire law. (ECF No. 1.)[2]  On May

1, 2019, Plaintiffs filed their First Amended Complaint—adding two new Named Plaintiffs, Jane

Doe 2 and Jane Doe 3. (ECF No. 28.)  Plaintiffs are represented by Sanford Heisler Sharp, LLP

("Class Counsel") and Local Counsel Douglas, Leonard, & Garvey.  Defendant is represented by

Choate Hall & Stewart LLP.

To avoid unnecessary litigation, cost, and expense, the Parties agreed to engage in private

mediation. The Parties retained a well-known and experienced mediator familiar with New

Hampshire law, the Honorable Robert Morrill (Ret.), to assist them in their negotiations. The

---

[2] Between December 7, 2018 and January 8, 2019, the original seven Plaintiffs (Rapuano, Chauhan, Brietzke, Brown, Courtney, Evans, and Jane Doe) filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Marcuse Decl. ¶ 21.) These Charges were also docketed with the New Hampshire Commission for Human Rights as complaints under the New Hampshire Law Against Discrimination. (*Id.*) The EEOC issued Notice of Suit Rights letters on June 13, 2019. (*Id.*)

Parties participated in two full days of mediation before Judge Morrill on July 24, 2019 and July 25, 2019. (Declaration of Deborah K. Marcuse ("Marcuse Decl.") ¶ 37.) The negotiations continued in-person on July 26, 2019 and remotely by phone and email thereafter. (*Id.* ¶ 38.) On August 6, 2019, the Parties issued a joint press release announcing that a settlement had been reached on all material terms. (*Id.* ¶ 39.) The Settlement Agreement was dually executed by all Parties and filed with this Court on September 10, 2019. (*See also* ECF No. 45-1.)

After extensive analysis and deliberation, the Plaintiffs and their Counsel are of the opinion that the Settlement described in the Settlement Agreement is fair, reasonable, and adequate, and provides absent class members with the opportunity for substantial recovery while maintaining their anonymity and confidentiality. (Marcuse Decl. ¶ 84; Declaration of David W. Sanford ("Sanford Decl.") ¶ 33.) The Plaintiffs and their Counsel recognize that, in the absence of an approved settlement, they will face lengthy litigation that would consume considerable time and resources and present all Parties with ongoing risks and uncertainties. (Marcuse Decl. ¶ 86; Sanford Decl. ¶ 32.) Plaintiffs' Counsel and the Class Representatives believe that the Settlement serves the Class's best interest based on all the facts and circumstances, including: the risks of litigation; the uncertainty of class certification in the absence of settlement; the enormous costs associated with continued litigation; the time necessary to achieve a final resolution through trial and any appeals and the potential for significant delay therein; the complexity of Plaintiffs' claims; and the significant benefits accruing to the Class under the Settlement.  (Marcuse Decl. ¶ 84; Sanford Decl. ¶ 32.)

## C.  **Preliminary Approval**

Plaintiffs moved for preliminary approval of the Class Settlement Agreement on September 25, 2019 (*see* ECF No. 47).  This Court held a Class Settlement Preliminary Approval Hearing on October 17, 2019 (ECF No. 48).  As requested by the Court, Plaintiffs filed supplemental briefing

addressing the Court's concerns regarding commonality and predominance on October 31, 2019

(*see* ECF No. 49). On January 29, 2020, this Court granted Plaintiffs' Motion and preliminarily

approved the Settlement. (*See* ECF No. 50.)[3]  The Court preliminarily certified the following Class

for settlement purposes:

    A.  All current and former women graduate students at Dartmouth who meet any of the following criteria:

       (i)  between April 1, 2012 and August 31, 2017 were graduate advisees of one or more of Todd Heatherton, William Kelley, and/or Paul Whalen (i.e., the "Three Former Professors");

       (ii)  between April 1, 2012 and August 31, 2017 were teaching or research assistants for one or more of the Three Former Professors;

       (iii)  were graduate students in the Psychological and Brain Sciences Department who, between April 1, 2012 and August 31, 2017, (i) co-authored at least one paper with one or more of the Three Former Professors based on research physically conducted in the lab during that time period, or (ii) co-authored at least three papers with one or more of the Three Former Professors; OR

       (iv)  were graduate students in the Psychological and Brain Sciences Department between March 31, 2015 and August 31, 2017 who do not fit within categories (i)-(iii), but who will attest that they experienced dignitary, emotional, educational and/or professional harm during this period as a result of the misconduct of one or more of the Three Former Professors.

    B.  All current and former women undergraduate students at Dartmouth who, between April 1, 2012 and August 31, 2017, worked as research assistants for one or more of the Three Former Professors. As used herein, "research assistants" includes individuals working on an honors thesis or independent research study in one or more of the Three Former Professors' labs.

    (*See* ECF No. 50 at 10-11, 42; *see also* Agreement ¶ 2.)

Finally, the Court appointed Class Counsel (David W. Sanford, Deborah K. Marcuse,

Steven J. Kelley, Nicole E. Wiitala, and Austin L. Webbert of Sanford Heisler Sharp, LLP), a

Claims Administrator (Rust Consulting), the Class Representatives (Plaintiffs Kristina Rapuano,

Vassiki Chauhan, Sasha Brietzke, Annmarie Brown, Andrea Courtney, Marissa Evans, Jane Doe,

---

[3] The Court's Order granting Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement is also available at *Rapuano v. Trustees of Dartmouth Coll.*, No. 18-CV-1070-LM, 2020 WL 475630, at *14 (D.N.H. Jan. 29, 2020).

and Jane Doe 2), and an Independent Claims Expert (Maria C. Walsh, Esq.). (*See* ECF No. 50 at 40-41.) The Court also ordered the issuance of the class-wide Notices detailing the terms of the Settlement. (*Id.* at 42.)

### D. The Class Members' Overwhelmingly Favorable Response to the Settlement

Following preliminary approval, the Court-approved Notices were distributed to ninety-two (92) women who came within the Settlement Class definition. (*See* Declaration of Deborah K. Marcuse ("Marcuse Decl.") ¶ 49; Declaration of Sara Schwermer-Sween ("Schwermer-Sween Decl.") at ¶¶ 10-12.) The Notices comprehensively advised Class Members of the terms of the Settlement (including proposed attorneys' fees and costs and service payments), the method for computing payments, the claims that would be released, and their rights to object to or opt-out of the settlement as well as their right to appear at the final fairness hearing (with applicable deadlines and procedures for doing so). (*See* Schwermer-Sween Decl., Exhibits A and B.)

The Class firmly expressed support for the Settlement. Not a single individual objected to the Settlement. (Schwermer-Sween Decl. ¶ 15; Marcuse Decl. ¶ 57.) There have been only four exclusion requests, amounting to just 4.3% of the individuals who received a Notice. (Schwermer-Sween Decl. ¶ 14; Marcuse Decl. ¶ 57.) Given the Court's preliminary approval of the Settlement and the overwhelming endorsement of Class Members, the Settlement should be approved in its entirety.

## II.   KEY TERMS OF THE SETTLEMENT

Under the terms of the proposed Settlement, Dartmouth will pay $14,000,000 to fund the monetary settlement of Plaintiffs' and the Class's claims in this case (*infra* § II(A)) and will also undertake significant programmatic measures and reforms (*infra* § II(B)). The Settlement carries a total monetary value of at least $15,500,000 when the estimated monetary value of the programmatic relief is factored in.

## A.      $14 Million Non-Reversionary Settlement Fund and Class Member Payments

Under the proposed Settlement, Dartmouth will make a total non-reversionary payment of $14,000,000 ("Class Settlement Amount") to fund the settlement of all Plaintiffs' and Class Members' claims against Dartmouth, including all claims for attorneys' fees and costs. (*See* Agreement ¶ 10.) Class Members remain free to pursue separate claims against the Former Professors. (*Id.*¶ 4.)

Pursuant to the Settlement, Class Members are eligible to receive two types of payments: Base Payments and Supplemental Payments. (*See id.* ¶¶ 19-20.)

The Settlement allows individual Class Members to receive substantial monetary payments without undertaking undue burdens. The process for recovering payments is structured to enable Plaintiffs and Class Members to vindicate their rights while avoiding unnecessary deterrents to participation in the Settlement, such as requiring them to come forward publicly. (Marcuse Decl. ¶ 85.) This reduces the potential for re-traumatization and avoids unnecessary deterrents to participation in the Settlement.

*Base Payments*: Each Class Member is entitled to receive a base payment of $1,000. (Agreement ¶ 19.) Class Members who worked directly with the Former Professors are presumed to have suffered a baseline level of injury from exposure to the alleged hostile environment and will receive this payment automatically; students who did not work directly with the Former Professors are not considered to be Class Members unless they attest to experiencing harm.[4]

*Supplemental Payments*: Each of the twenty-nine (29) individuals who chose to complete a claim submission describing the alleged harm she suffered is eligible to receive a Supplemental

---

[4] Women who fall *solely* within Paragraph (2)(a)(iv) of the Class definition must attest to dignitary, emotional, educational and/or professional harm. To avoid confusion, these individuals received a separate Class Notice describing their rights and options in this matter. (*See* Schwermer-Sween Decl., Exhibit B.)

Payment (which is in addition to the Base Payment). (*Id*. ¶ 20; Marcuse Decl. ¶ 65.) **The average Supplemental Payment is nearly $<u>280,000</u> per person after all anticipated deductions for service awards, settlement administration expenses, attorneys' fees and costs, and the $1,000 base payment to all eligible individuals.** (Marcuse Decl. ¶ 69.)  The Independent Claims Expert ("Claims Expert") appointed by this Court, Maria C. Walsh, Esq. (ret.),[5] will determine the allocation of Supplemental Payments based on the information provided in each Class Member's written statement (including all facts that pre- or post-date the class period) and any supporting documentation that is provided. (Agreement ¶ 20.)[6]

The proposed Settlement allows women to maintain their anonymity and privacy by receiving compensation as absent class members rather than forcing them to file their own lawsuits publicly disclosing highly sensitive and personal allegations (that may involve sexual assault, sexual harassment, and extreme emotional distress) that will be intensely scrutinized by the media, the scientific community, and the public. Indeed, this case has already been the subject of extensive media coverage.  (*See* ECF No. 47-1 at § I(C).)

Uncashed checks or other residual funds will be handled as follows: If the total amount is greater than $50,000, the Settlement Administrator will make a second distribution to Class Members in accordance with the *pro rata* allocation determined by the Independent Claims Expert; if less than $50,000, the unused funds will be paid to a *cy pres* recipient organization supporting

---

[5] Maria C. Walsh, Esq. (Ret.) has substantial experience in this area.  (*See* ECF No. 47-6 (Walsh Resume).) Prior to being retained, Judge Walsh performed a conflict check on all participants who submitted a Claim Form.

[6] The amount of each Supplemental Payment will be determined by the Claims Expert based on nine factors pertaining to the severity and duration of the hostile environment alleged by each Class Member (including the merits and overall likelihood of success of her claims) and the resulting harms, including emotional distress and physical sickness and/or physical injuries that she suffered; functional impairment that impacted her studies, work and/or related activities; impairment to her personal life (including familial, social, or romantic relationships); economic losses; and required future medical or mental health treatment. (Agreement ¶ 20.) Class Members also have the option of submitting additional supporting documentation to the Claims Expert. (*Id*.)

and/or advocating for victims of sexual assault. (Agreement ¶ 22.) "[C]ourts have allowed parties to establish cy pres funds when money remained from the defendant's payout after money for damages had been distributed to class members.  This situation often arises because some class members never claimed their share.  Among other solutions, courts have approved giving money unclaimed after payout to class members to charities related to the plaintiffs' injuries." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 34 (1st Cir. 2009) (citations omitted). **Plaintiffs propose the New Hampshire Coalition Against Domestic and Sexual Violence ("NHCADSV") as the *cy pres* recipient of any unused funds.**  The NHCADSV (https://www.nhcadsv.org/) is an organization that supports and advocates for victims of sexual violence.  The NHCADSV's mission is thus consistent with the injuries alleged (sexual assault, sexual harassment, and/or gender discrimination), the geographic location where the majority of the claims arose (Dartmouth's New Hampshire campus), and the purpose of this lawsuit.

### B.       Comprehensive Programmatic Relief

In addition to the monetary payment, Dartmouth will undertake the following measures that carry an additional monetary value of approximately $1,500,000:

- Dartmouth will provide an additional $1,000,000 to the Provost's Diversity Recruitment Fund and expand the allowable use of this fund to support the hiring of faculty with expertise in gender and racial discrimination and violence;

- Dartmouth will add two additional members to the External Advisory Committee ("EAC"), which is intended to provide the independent external oversight of the progress of the Campus Climate and Culture Initiative (C3I). Dartmouth and the Plaintiffs will jointly propose nominees for these positions. The EAC will be asked to recommend whether other mechanisms to solicit input and feedback from the broadest cross-section of the community are needed, and will be asked to recommend whether other advisory structures (e.g. a separate internal-external Advisory Board) would better advance the goals of C3I. The EAC and the Provost will participate in meetings with the Plaintiffs to receive recommendations and ensure continuing dialogue and feedback on the implementation of these programmatic measures.

- Within one year, Dartmouth, in connection with the EAC, will review its partnership with WISE and determine whether to (a) add an additional WISE staff on campus, or (b) as an alternative, provide $500,000 in support to WISE over a five year period.

(*See* Exhibit A to Agreement; *see also* Marcuse Decl. ¶¶ 65-66.)

**C.** **Service Awards**

Subject to Court approval, a Service Award of $75,000 for each of the nine Named Plaintiffs will be paid out of the Settlement Fund in recognition of the significant time and effort that she expended, the enormous benefit she provided to the Class, and the risks she incurred in coming forward to assert and pursue claims on behalf of the Class. (Marcuse Decl. ¶ 70-71; Agreement ¶ 15.)

**D.** **Attorneys' Fees, Reimbursement of Litigation Expenses, and Settlement Administration Costs**

The Class Settlement permits Class Counsel to seek (a) reimbursement of litigation costs and expenses, (b) up to 35% in attorneys' fees, and (c) settlement administration and Independent Claims Expert costs. (*See* Agreement ¶ 14.)

**III.** **TO EFFECTUATE THE SETTLEMENT, THE COURT SHOULD FINALIZE ITS CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS**

On January 29, 2020, the Court preliminarily certified the Class pursuant to Rule 23(b)(3) and found that "it will likely be able to certify the proposed class for the purposes of settlement only" pursuant to Rule 23(b)(3).  (*See* ECF No. 50 at 37.)  **Nothing has changed since the preliminary approval order that would alter the propriety of certification of the settlement Class.** Accordingly, the Court should grant final certification of the Class for settlement purposes. *See Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *13 (D. Mass. Jan. 8, 2015) (affirming determinations in preliminary approval of class and certifying class for settlement purposes).  Plaintiffs briefly reiterate the relevant analysis here.

### A.   The Elements of Rule 23(a) Are Satisfied

#### 1.   *Numerosity is Satisfied*

This Class includes seventy six (76) women.  (Marcuse Decl. ¶ 56.)  Numerosity is thus

satisfied.  *See Clough v. Revenue Frontier, LLC*, No. 17-CV-411-PB, 2019 WL 2527300, at *3

(D.N.H. June 19, 2019) ("No minimum number of plaintiffs is required to maintain a suit as a class

action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs

exceeds 40, the first prong of Rule 23(a) has been met.") (quoting *García-Rubiera v. Calderón*,

570 F.3d 443, 460 (1st Cir. 2009)).

#### 2.   *Commonality is Satisfied*

"Plaintiffs need only articulate a single common question to meet the commonality

requirement."  (ECF No. 50 at 19 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359

(2011)).)

As this Court previously determined, ***"whether the professors' sexualized comments and***

***conduct were severe, pervasive, and objectively offensive enough for a reasonable person to***

***consider the educational environment hostile"*** constitutes a common question. (*See* ECF No. 50

at 16-17.)  Plaintiffs allege that the Three Former Professors normalized a highly sexualized culture

in the Department through a pattern of behavior and conduct common to all Class Members. (*See*

ECF No. 49 at § I (setting forth common factual allegations). Class Members' exposure to this

environment "constitutes a common claimed injury."  *Brand v. Comcast Corp., Inc.*, 302 F.R.D.

201, 219 (N.D. Ill. 2014).[7]  As this Court found at the preliminary approval stage, "These

---

[7] Plaintiffs and the Class all share a common injury: exposure to a hostile environment.  Indeed, "A hostile work environment may be experienced differently from one person to the next, but it is nonetheless 'a single unlawful practice under Title VII."  *Id*. at 218; *see also Applegate v. Formed Fiber Techs., LLC*, No. 2:10-CV-00473-GZS, 2012 WL 3065542, at *6 (D. Me. July 27, 2012) ("Where class members have different degrees of injury or even where defenses might exist only as to particular individuals, commonality has been found for class certification.").

allegations raise the common question whether the professors' sexualized comments and conduct were severe, pervasive, and objectively offensive enough for a reasonable person to consider the educational environment hostile." (*See* ECF No. 50 at 16-17.)

Likewise, this Court found that "[w]hether these [previous complaints about the Three Former Professors] gave 'actual knowledge' of the harassment to an official 'who at a minimum ha[d] authority to address' the alleged harassment" and "whether Dartmouth responded with 'deliberate indifference' to knowledge of the existence of such sexual harassment" are both common questions. (*See id.* at 28.)

These common questions are more than sufficient to satisfy Rule 23(a)(2) for settlement purposes. *See Brand*, 302 F.R.D. at 219 ("there is a common question among [class members] about whether they heard [] offensive terms during the course of their employment to the extent that they constituted a hostile work environment."); *see also Howard v. Cook Cty. Sheriff's Office*, No. 17 C 8146, 2019 WL 3776939, at *7 (N.D. Ill. Aug. 12, 2019), *modified*, No. 17 C 8146, 2020 WL 1848208 (N.D. Ill. Apr. 12, 2020) (whether "ambient harassment" constituted a hostile work environment was a common question where there was evidence of "a highly sexualized atmosphere in which crude and offensive sexual behavior is common and employees see that it is normative"); *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 362 (D. Md. 2004) (certifying hostile work environment class: "defendants directed racially hostile speech at class members . . . the plaintiffs have made a sufficient showing of wide-spread and pervasive racial hostility at [the company] to satisfy the commonality requirement.").

3.    *The Class Representatives' Claims are Typical of the Class*

The "typicality" requirement in Rule 23(a)(3) is satisfied where the class representatives' claims "arise from the same event or practice or course of conduct that gives rise to the claims of

other class members, and are based on the same legal theory." *Clough*, 2019 WL 2527300, at *4

(quoting *García-Rubiera*, 570 F.3d at 460).

Courts have found typicality satisfied where a group of putative class members are exposed

to the systematic failures of an institution. *See Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288,

296-97 (D. Mass. 2011) (finding typicality met where entire class of children in custody of

department of children and families were exposed to unreasonable risk of harm); *Bremiller v.

Cleveland Psychiatric Inst.*, 195 F.R.D. 1, 21-22 (N.D. Ohio 2000) (finding typicality met where

representative plaintiff and class members experienced the same kind of sexual harassment that

employer failed to address).

Here, the Class Representatives and the absent Class Members allegedly "were exposed to

the same risk of harm (the professors' sexual harassment) by Dartmouth. And the class

representatives' and absent class members' claims all rely on the same legal theories and arise

from the same course of conduct: the professors' normalization of sexual harassment of female

students that Dartmouth facilitated through its inaction. These facts support a finding of typicality."

(*See* ECF No. 50 at 20-21); *see also Connor B.*, 272 F.R.D. at 296-97 (typicality met where all

class members were exposed to unreasonable risk of harm); *see also Brown v. Cook Cty.*, 332

F.R.D. 229, 241-42 (N.D. Ill. 2019) (typicality met when "the plaintiffs' claims all share the same

essential characteristics: they each allege that they were subject to a hostile work environment as

a result of the defendants' policies, which they say exacerbated—or at least failed to address—

[exhibitionist attacks] by detainees[.]").

4.      *Rule 23(a)(4) And Rule 23(g) Are Satisfied: The Class Representatives and
        Class Counsel Will Fairly and Adequately Protect the Class' Interests*

The adequacy requirement has two prongs: First, the interests of the representative party

should not conflict with the interests of any of the class members. *Clough*, 2019 WL 2527300, at

*4.  Second, class counsel should be "qualified, experienced and able to vigorously conduct the proposed litigation." *Id*.  Here, both Rule 23(a)(4) and Rule 23(g) are satisfied.  (*See* ECF No. 50 at 22-24 ("With respect to the first prong, the court has not identified any way in which the class representatives' interests conflict with those of the unnamed class members . . . Turning to the second prong of the adequacy inquiry, the court is convinced that proposed class counsel, Sanford Heisler Sharp, LLP, is eminently qualified to spearhead this class action settlement.").)

**_First_**, there are no conflicts between the Class Representatives and the Class. Throughout the pendency of this action, the Class Representatives have adequately and vigorously represented their fellow class members. (Marcuse Decl. ¶ 71.)  **_Second_**, Plaintiffs' Counsel, Sanford Heisler Sharp, LLP ("SHS") is highly experienced and well-versed in complex class litigation. (Sanford Decl. ¶¶ 9-19; ECF No. 47-9.) Courts across the country have recognized SHS's experience in complex class action litigation and its skilled and effective representation.[8]  Thus, Class Counsel "is qualified, experienced and able to vigorously conduct the proposed litigation." *Clough*, 2019 WL 2527300, at *4. Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied.

### B.   The Requirements of Rule 23(b)(3) Are Satisfied

1.   *Common Issues Predominate*

Rule 23(b)(3) "requires merely that common issues predominate, not that all issues be common to the class." *Clough*, 2019 WL 2527300, at *6.

---

[8] *See, e.g.*, *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *10 (S.D.N.Y. Nov. 30, 2010) (recognizing SHS as having "just the sort of established record contemplated by the Rules."); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230(GF), 2014 WL 7011819, at *5 (N.D. Ill. Dec. 12, 2014) ("Sanford Heisler is very experienced in complex class and collective litigation . . . and has been repeatedly recognized for its skilled and effective representation."); *Bellifemine v. Sanofi-Aventis*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *1 (S.D.N.Y. Aug. 6, 2010) (recognizing SHS as having "'an established record of 'competent and successful prosecution of large . . . class actions'") (citation omitted).

In the First Circuit (and elsewhere), courts "generally find the predominance requirement to be satisfied" where "common questions predominate regarding liability." *In re Nexium Antitrust Litigation*, 777 F.3d 9, 21 (1st Cir. 2015); *Brown*, 332 F.R.D. at 13 (predominance satisfied where "nearly all" of the elements of the cause of action were "subject to common resolution"). As this Court determined, the underlying elements of the Class' claims (e.g. the "actual knowledge" and "deliberate indifference" requirements) can be proven on a class-wide basis:

> with regard to "actual knowledge," plaintiffs allege that Dartmouth received multiple reports of sexual harassment by all three professors prior to the beginning of the class period in 2012. Whether these reports gave "actual knowledge" of the harassment to an official "who at a minimum ha[d] authority to address" the alleged harassment is a common question. Likewise, whether Dartmouth responded with "deliberate indifference" to knowledge of the existence of such sexual harassment is a common question. The timing of the reports of harassment on which plaintiffs rely is critical to the analysis. As noted above, all the reports of harassment were made prior to the class period. Consequently, whether Dartmouth reacted to those reports with deliberate indifference, by, for example, failing to investigate or conducting an inadequate investigation into the reports, will depend upon Dartmouth's conduct prior to the class period—making Dartmouth's conduct the same with respect to all class members.

(ECF No. 50 at 28-29 (citing *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 208 (D.N.H. 2009) (actual knowledge satisfied by prior complaints) and *Brown*, 332 F.R.D. at 13 (finding that whether employer responded to complaints of sexual harassment ineffectively constituted common question)).)

Thus, common questions of liability clearly predominate over individualized issues. While class members may have sustained different damages, this does not defeat predominance under First Circuit law. *See In re Nexium*, 777 F.3d at 21. Indeed, courts have found the predominance factor met and certified hostile work environment class cases on extremely similar showings. *See, e.g., Howard*, 2019 WL 3776939, at *7, 9; *Brand*, 302 F.R.D. at 224; *Brown*, 332 F.R.D. at 13 (the

"severity of the harassment underlying the hostile work environment allegations is subject to resolution in a single proceeding.").

This Court has already determined that "the predominance requirement of Rule 23(b)(3) is sufficiently met for preliminary certification of the class." (ECF No. 50 at 34-35.)  This Court should find that the predominance requirement is met for purposes of final approval for the same reasons predominance was satisfied at the preliminary approval stage.

2.   *Class Settlement Is Superior to Alternative Methods of Adjudication*

Under the factors set forth in Rule 23(b)(3), class treatment is superior to other methods of adjudication.  As this Court recognized, "a class action would achieve an efficient resolution of the class claims, avoiding unnecessary and duplicative litigation for all parties and the judicial system . . . Finally, a classwide resolution is particularly attractive here given the unlikelihood that individual class members would pursue individual suits. Indeed, some courts have recognized that class adjudication of sexual abuse claims is preferable to individual litigation because it encourages more victims to come forward and avoids re-traumatization."  (ECF No. 50 at 35-36.)  Notably, the manageability factor strongly favors class treatment because there is hardly a form of adjudication more manageable than a voluntary settlement. *Cf. Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

## IV.   THE COURT SHOULD APPROVE THE SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)

At the final approval stage, the fairness analysis is guided by Rule 23(e), which states that a district court should approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

16

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

    **(i)** the costs, risks, and delay of trial and appeal;

    **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

    **(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[9]   All of these factors "speak to the core question of the reasonableness of the settlement in light of the uncertainties of litigation." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015).   "[T]he ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund,* 582 F.3d 30, 44 (1st Cir.2009)).   The court performs this analysis in the shadow of the 'strong public policy in favor of settlements,'" particularly in the class action context. *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238, at *5 (D.R.I. Feb. 17, 2016) (citing *P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014)).

At the preliminary approval stage, this Court held that, "[g]iven the terms of the proposed settlement, the parties' discovery efforts, their arms-length negotiations, and the participation of experienced counsel, the court finds that it will likely be able to find the settlement proposal fair,

---

[9] There are no separate agreements required to be identified pursuant to Rule 23(e)(3).   (Marcuse Decl. ¶ 91.)

reasonable, and adequate." (ECF No. 50 at 40.) This Court should grant final approval and find the Settlement fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A))

As set forth above, Class Counsel and the Class Representatives have adequately and vigorously represented the Class. (*See supra* § III(A)(4).)

Sanford Heisler Sharp, LLP has extensive expertise litigating and settling gender discrimination class actions.[10] Thus, Counsel's recommendation that the Settlement is favorable to the Class is entitled to significant weight: "Plaintiffs and counsel have endorsed the proposed Settlement. Under such circumstances, the presumption of reasonableness is applicable and supports a finding approving the settlement." *Hill,* 2015 WL 127728 at *7 (granting final approval); *see also Gulbankian v. MW Mfrs., Inc.*, CIV. A. No. 10-10392-RWZ, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014) ("Class Counsel here are attorneys with extensive experience in consumer and building product class action litigation, and they insist that this Agreement is fair, reasonable and adequate. I give significant weight to this representation."); *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given

---

[10] *See, e.g., Jane Doe 2 v. The Georgetown Synagogue et al.*, CIV. A. No. 2014 CAB 8073 (D.C. Super. Ct. 2018) (the court concluded the case by praising the work of counsel on the case, stating, "I commend you highly for the work that you've done, the skill that you've demonstrated, and for the significant outcome that has occurred as a result of those efforts."); *Pan v. Qualcomm Incorporated*, No. 16-cv-01885-JLS-DHB, 2017 WL 3252212, at *5 (S.D. Cal. July 31, 2017) ("Counsel has significant class action litigation experience—especially regarding gender discrimination—in state and federal court."); *Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *2 (N.D. Cal. Feb. 11, 2016) ("The Court confirms its previous finding that the Settlement Agreement is the result of arms-length negotiations between experienced counsel representing the interests of Plaintiffs and Defendant, after thorough factual and legal investigation."); *Velez*, 2010 WL 4877852 at *10 ("[Sanford Heisler] has just the sort of established record contemplated by the Rules."); *id.* at *16 ("Both Parties were represented by experienced counsel with substantial experience in employment class action litigation. Class Counsel has been recognized by numerous courts for their work in securing similar class action settlements."); *see also* Sanford Decl. ¶¶ 9-19; ECF No. 47-9.

significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

B. **The Settlement Is the Product of Non-Collusive, Arm's-Length, and Well-Informed Negotiations (Rule 23(e)(2)(B))**

The Parties engaged in two full days of private mediation with the Honorable Robert Morrill (Ret.), an experienced and renowned mediator familiar with New Hampshire Law, to assist them in reaching the proposed Settlement. Following these mediation sessions, the Parties finalized the settlement though an additional day of in-person negotiations and other extensive communications. (Marcuse Decl. ¶¶ 40.) Where, as here, the Settlement is the product of mediation with an experienced mediator, there is a presumption of fairness and arm's length negotiations. *Crane v. Sexy Hair Concepts, LLC*, CIV. A. No. 17-10300-FDS, 2019 WL 2137136, at *2 (D. Mass. May 14, 2019) ("the Parties negotiated the Settlement fairly and honestly at arms' length and with the assistance of an experienced mediator and experienced counsel"); *Gulbankian*, 2014 WL 7384075 at *7 ("negotiations leading to this Agreement were conducted diligently and at arms length with the facilitation of a respected and experienced neutral mediator."); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (A "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

Moreover, the Parties reached this Settlement only after the exchange of sufficient information "to make an intelligent judgment about settlement." *Bezdek*, 79 F. Supp. 3d at 348. Indeed, as this Court recognized, "[b]efore reaching these proposed terms, both parties engaged in significant discovery." (ECF No. 50 at 39.)  The Parties exhaustively investigated the facts underlying Plaintiffs' allegations before and during this litigation. (Marcuse Decl. ¶¶ 41, 44, 77.)

19

Dartmouth retained an independent investigator who, over the course of 11 months, interviewed dozens of witnesses, reviewed electronic messages, collected records, and prepared written reports concerning the conduct of the Three Professors. (*Id.* ¶ 42.) Class Counsel, which conducted its own factual investigation, had access to many of the same materials as Dartmouth's investigator, and received copies of her written reports. (*Id.* ¶ 43.) Class Counsel reviewed the three investigative reports (totaling 299 pages in length) as well as drafts, revisions, and exhibits. (*Id.*)

Class Counsel also spoke with at least 36 witnesses and reviewed extensive records and documents provided by the Plaintiffs and witnesses; information received through Freedom of Information Act (FOIA) requests to the U.S. Department of Education and the Office for Civil Rights; policy documents, handbooks, and other publicly available information on Dartmouth's website or located through internet searches; and researched related media articles and blog or social media postings. (*Id.* ¶ 44.) The Parties exchanged further information through written correspondence; phone calls; in-person meetings; detailed mediation statements and exhibits submitted by the Plaintiffs; three full days of in-person negotiations; the exchange of initial disclosures; and the detailed Complaint, Answer, and First Amended Complaint filed in this action. (*Id.* ¶ 39.)[11]

---

[11] *See also Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019) ("courts have held that settlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.'") (citation omitted); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436–37 (3d Cir. 2016) ("significant informal discovery" was sufficient for class counsel to "assess the value" of the claims and negotiate a fair settlement); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("'formal discovery is not . . . necessary' . . . where the parties have sufficient information to make an informed decision about settlement."); *Doe #1 by Parent #1 v. N.Y.C. Dep't of Educ.*, No. 16-CV-1684 (NGG) (RLM), 2018 WL 3637962, at *10 (E.D.N.Y. July 31, 2018) ("Although the parties did not engage in formal discovery in this action, Plaintiffs' counsel represent that they nonetheless conducted a thorough investigation. . . . [T]he court is satisfied that the settlement was procedurally fair."); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (finding an initial presumption of fairness where the plaintiffs' counsel "conducted informal discovery" prior to filing the complaint and amended complaint and reviewed records provided by defendant).

## C.     The Proposed Settlement Provides Adequate Relief that Exceeds the Likely Result of Continued Litigation (Rule 23(e)(2)(C))

### 1.     *This is a Complex Litigation Involving Significant Risk; Litigation is Likely to Span Years and Require More than a Decade's Worth of Discovery (Rule 23(e)(2)(C)(i))*

The complexity, expense, and likely duration of this case clearly favors approval.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i) (at final approval, courts should take into account "the costs, risks, and delay of trial and appeal"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) (considering "risk, complexity, expense and duration of the case").  Actions such as this one, which is based on a hostile academic environment theory under Title IX, are unique— and thus an inherently complex and risky undertaking.  *See Tyco*, 535 F. Supp. 2d at 260 (finding this factor satisfied where it was "a risky case for both sides" due to "an uncertain legal environment" and a case theory that put plaintiffs "at the cutting edge of a rapidly changing" and "still-developing" area of law). Because "the law remains in flux," it is "by no means certain that [P]laintiffs would have prevailed if they had taken the case to trial and attempted to defend any favorable verdict on appeal."  *Id.*[12]

In addition, "[b]oth parties maintain that their claims or defenses would prevail at trial . . . Absent settlement, the parties could likely resolve these ongoing disputes only through additional motion practice, discovery, and, potentially, trial." *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320-PB, 2015 WL 7282543, at *11 (D.N.H. Nov. 16, 2015). Plaintiffs face considerable risks in establishing class-wide liability and

---

[12] *See also In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005); *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) ("("Historically, claims alleging systemic employment discrimination are difficult to win, and the undesirability of the type of litigation at issue is compounded by the fact that the defendant here is highly respected in the Atlanta area and possesses the financial resources to vigorously defend the action."); *Jane Doe 30's Mother v. Bradley*, 64 A.3d 379, 403 (Del. Super. Ct. 2012) (sex abuse class action "litigation was complex and challenging and class counsel met the challenge.").

in obtaining certification of the proposed class action. The Parties would have to litigate class certification (and likely decertification) motions, as well as dispositive motions. If liability is established, Plaintiffs would also have to establish damages. But for the Settlement, Defendant would strongly dispute the propriety of Rule 23 certification. (Sanford Decl. ¶ 36; Marcuse Decl. ¶ 87.) Even if the Court were to grant certification, maintaining certification through trial could continue to present challenges. (*Id.*). These facts strongly support preliminary approval of the Settlement.

In addition, discovery in this case would likely be protracted and enormously expensive and burdensome.  Plaintiffs allege that Dartmouth knew about the conduct of the Professors for well over a decade and received complaints about sexual misconduct as early as 2002. (*See* FAC ¶¶ 28-29; *see also id.* ¶¶ 31-34 (alleging additional complaints in 2003, 2004, 2005, and between 2006 and 2010).) Because the "actual knowledge" requirement under Title IX may be satisfied by prior complaints, *Brodeur*, 626 F. Supp. 2d at 208, Plaintiffs would seek—and may be entitled to—discovery going back to 2002. Moreover, the vast number of witnesses, reporting parties, administrators, faculty, and staff alleged to have knowledge of the events giving rise to this litigation would require the Parties to take and defend dozens of depositions and collect and review documents from dozens of custodians. The Parties would also be required to incur significant expert costs. The scope of discovery would likely drive this litigation to continue for several years while multiplying the costs for all Parties.

Here, absent settlement, "the parties would need to propound and respond to discovery requests, take time-consuming depositions, and engage in motion practice related to class certification and summary judgment, all before preparing for what would likely be a lengthy trial. The proposed Settlement avoids the significant time and expense that they would incur preparing

this case for trial on the merits." *Roberts v. TJX Companies, Inc.*, CIV. A. No. 13-cv-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016). Thus, the risk, complexity, expense, and duration all weigh in favor of approving the proposed Settlement.

2. <u>*The Proposed Settlement Exceeds the Likely Result of Continued Litigation*</u>

Another consideration at the final approval stage is whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C) (enumerating four factors for consideration). Where, as here, a proposed settlement "provides a benefit equal to, or greater than, what class members would likely achieve through continued litigation," this factor *per se* supports settlement approval. *In re Colgate-Palmolive*, 2015 WL 7282543, at *10.

**<u>First</u>**, and very notably, the Settlement includes a class definition dating back to <u>2012</u>, which is broader than what the statute of limitations would normally allow. *See* Settlement ¶ 2; *LeGoff v. Trustees of Bos. Univ.*, 23 F. Supp. 2d 120, 127 (D. Mass. 1998) (three-year statute of limitations under Title IX). Without this Settlement, it is virtually guaranteed that many individuals with claims that are otherwise outside the statute of limitations will not be entitled to *any* relief.

**<u>Second</u>**, the Settlement allows Class Members to receive significant monetary payments. For example, if the Court approves all anticipated deductions (e.g. fees, costs, settlement administration expenses, and service awards), the average class payment **exceeds <u>$105,000</u> per person**. The average Supplemental Payment for each of the twenty-nine individuals who submitted a claim form is nearly **<u>$280,000</u> per person** after all anticipated deductions for fees, costs, service awards, and Base Payments. These payments are especially significant because, as discussed above, the Plaintiffs and Class face great risks and obstacles in proving liability and damages. *See supra* § IV(C)(1). There would be no guarantee of a more favorable outcome. Indeed, the "added cost of litigation, combined with the risks inherent in pursuing [the] claim[s] .

. . demonstrate palpable uncertainty that a more favorable result could be obtained through litigation." *Bezdek*, 79 F. Supp. 3d at 345.

**_Third_**, the settlement allows Class Members to obtain a recovery without having to publicly disclose their identities or extremely sensitive and personal details relating to sexual abuse and trauma.. In a case such as this, "the emotional costs of litigation cannot be ignored. The victims in this case are young, impressionable and already traumatized. Further litigation would exacerbate the trauma and very likely blow the lid off the patient confidentiality that has been so carefully maintained and protected throughout the litigation thus far. This settlement allows the victims to avoid paying these devastating costs." *Jane Doe 30's Mother*, 64 A.3d at 395-96.  (Marcuse Decl. ¶ 85; Nov. 30, 2018 Endorsed Order limiting the use of a pseudonym to pretrial proceedings.)

**_Fourth_**, the programmatic relief provided by the Settlement strongly supports approval. "Injunctive relief has been recognized as a meaningful component of a settlement agreement." *Bezdek*, 79 F. Supp. 3d at 346. Under the Settlement, Dartmouth must undertake steps to increase its efforts to hire diverse faculty (including by committing an additional $1,000,000 to a recruitment fund); ensure a continuing dialogue with Plaintiffs and members of the Dartmouth community to facilitate the creation of a safe and inclusive campus; and include an additional WISE staff member on campus or provide $500,000 to WISE. (*See* Exhibit A to Agreement.) This programmatic relief carries an additional monetary value of approximately $1,500,000. (Marcuse Decl. ¶ 66.)

**_Finally_**, the Settlement provides considerable relief to the Class Members that will be distributed in a matter of months, rather than after years of further litigation and appeals. While the range of possible awards cannot be determined with certainty, the Class' recovery here is highly substantial in relation to the potential damages at trial. This is particularly true in light of the risks

involved with continued litigation. (*See supra* § IV(C)(1).) Even if Plaintiffs prevailed over a long course of litigation and established class-wide liability, damages would be sharply disputed. Cases involving emotional distress damages have returned widely varying verdicts and are especially hard to predict. *See, e.g.*, *Thorsen v. Cty. of Nassau*, 722 F. Supp. 2d 277, 293 (E.D.N.Y. 2010) (recognizing the "wide range" of awards); *In re Air Crash Disaster at Charlotte, N.C. on July 2, 1994*, 982 F. Supp. 1115, 1129 (D.S.C. 1997) ("damages for emotional distress are perhaps the most difficult damages to quantify"); *Briski v. Hersey*, No. C 17-02675, 2017 WL 4418866, at *4 (N.D. Cal. Oct. 5, 2017) ("awards for emotional damages [can] span a wide range"); *Monthei v. Morton Bldgs., Inc.*, No. 4:01-CV-30510-WHA, 2003 WL 21212641, at *10 (S.D. Iowa Mar. 26, 2003) ("the case law can be plumbed to find a wide range of emotional distress verdicts").[13]

This Court has already recognized the substantial benefits this Settlement brings to the Class.  (*See* ECF No. 48 (Transcript of Preliminary Approval Hearing) at 4:17-25 (recognizing the benefit of "allow[ing] the women victims to maintain anonymity and privacy as absent class members rather than forcing them to file their own lawsuits and publicly disclose sensitive and highly personal facts"; the "significant amount of money in terms of programmatic relief at Dartmouth"; and "closure and some sense of vindication while also avoiding litigation.").)  This factor thus weighs in favor of final approval.

### D. The Proposed Settlement Treats Class Members Equitably and Utilizes a Fair and Reasonable Allocation Plan That Strongly Supports Approval (Rule 23(e)(2)(D) and Rule 23(e)(2)(C)(ii))

The proposed allocation plan and method of distributing relief treats Class Members

---

[13] While Plaintiffs are unaware of similar class actions that have proceeded to trial, jury verdicts for *individual* plaintiffs provide some guidance. *See, e.g.*, *Fox v. Pittsburg State Univ.*, No. 2:14-CV-02606, 2016 WL 11033455 (D. Kan.) (jury verdict of $100,000 on individual plaintiff's Title IX claims); *Baugh v. Robert Morris Univ.*, No. 2:16-CV-00430, 2018 WL 5828834 (W.D. Pa.) (jury verdict of back pay and $100,000 punitive damages for individual plaintiff alleging Title IX claims); *Hughes v. Regents of Univ. of Colorado*, 967 F. Supp. 431, 439 (D. Colo. 1996) (emotional distress damages verdict in Title VII employment discrimination case reduced to $50,000 on remittitur).

equitably relative to each other and does not impermissibly favor some members over others. *See* Fed. R. Civ. P. 23(e)(2)(D). Indeed, as this Court noted at the preliminary approval stage, "**[t]his claims process ensures that all class members receive some recompense and establishes a reasonable and confidential mechanism for apportioning additional compensation according to relative harm suffered.**" (ECF No. 50 at 39 (emphasis added).)

The plan distributes compensation to class members in a manner that is equitable and far less invasive than protracted litigation. (*See, e.g.*, *supra* § II(A).) An experienced third-party neutral will apply a common set of criteria to Class Members' confidential submissions and distribute the settlement funds as she sees fit. (Agreement ¶¶ 20-21.) This independent evaluation process ensures that "the apportionment of relief among class members takes appropriate account of differences among their claims." Advisory Committee Notes to Rule 23(e)(2)(D).

Courts regularly approve analogous class action settlements utilizing a similar allocation plan and claims process. *See Jane Doe 30's Mother*, 64 A.3d at 388-89 (approving sex abuse settlement with a similar claims process: class members submitted a claim form; a claims administrator then determined each class member's equitable *pro rata* share based on the information provided and after considering five factors); *Johns Hopkins Hosp.*, 2014 WL 4147208 (claims adjudicator allocated varied settlement payments to class members after making an independent assessment of the information provided through a claims process).

### E.    Class Members' Overwhelming Support for the Settlement

Final approval is warranted where, as here, "[t]he reaction of the class to the settlement has been almost entirely positive." *Tyco*, 535 F. Supp. 2d at 261. Here, the Class Members have overwhelmingly affirmed the Court's judgment at preliminary approval that the amended settlement is fair, reasonable, and adequate. Out of the ninety-two Notices sent, there have been **zero objections** and only four exclusion requests. (Marcuse Decl. ¶ 88; Schwermer-Sween Decl.

¶¶ 14-15.) In endorsing the Settlement, Class Members had easy access to information regarding the Settlement, including a summary of the settlement terms and an explanation of the claims being released. (Schwermer-Sween Decl., Exhibit A.) Class Members' unqualified response to the Notice demonstrates their support for the Settlement, including the benefits to the Class, the service awards, and proposed attorney's fees and costs.

The lack of objections supports a finding that the Settlement is fair, reasonable, and adequate, and should be approved. *See In re Colgate-Palmolive*, 2015 WL 7282543 at *12 ("There have been four objections to the proposed Settlement Agreement . . . I note here, however, that this small number of objections itself counts in favor of approving the proposed settlement."); *In re Tyco Int'l*, 535 F. Supp. 2d at 261 (noting the positive reaction of the class and granting final approval); *see also Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (finding the reaction of the class supported final approval where two objections were received: "the lack of any serious objection to the settlement agreement from members of the class weighs in favor of approving the settlement"); *Hill*, 2015 WL 127728 at *8 (the reaction of the class supported final approval where "[n]ot only were a *de minimis* number of objections received, but none challenged the amount of the Settlement.").

**F.    The Settlement's Provision for Attorneys' Fees is Reasonable, Fair, and Appropriate Under the Circumstances**

Finally, "the terms of [the] proposed award of attorney's fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), do not undermine the adequacy of the relief provided to the Class.  Significantly, **no class member has objected to Plaintiffs' attorneys' fee request.**  (Marcuse Decl. ¶ 82.)

As discussed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (filed concurrently with this Motion), Plaintiffs' request for attorneys' fees is reasonable, fair, and appropriate under the circumstances.  Class Counsel seeks $4,900,000 in attorneys' fees, or 31.6%

of the total value of the Settlement.  (Sanford Decl. ¶ 23.)  This percentage is within the established

norms of class litigation.  *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass.

2005) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund.") (citation

omitted); *see also* Memorandum of Law in Support of Pl.'s Mot. for Attorneys' Fees, Costs, and

Service Awards at Section III (citing cases for the proposition that Class Counsel's fee request for

31.6% of the total value represents a reasonable percentage in the First Circuit and nationwide).[14]

## V.   CONCLUSION

The Settlement Agreement is fair, adequate and reasonable and meets the criteria for

approval of class action settlements. The Settlement Agreement is the product of arm's-length

negotiation between Counsel for the Parties, and the benefits of the settlement outweigh the

uncertainty and added time and expense that continued litigation of this matter would entail.

Plaintiffs therefore respectfully request that the Court grant Plaintiffs' application for final

approval of the Settlement Class and enter the Proposed Order Granting Final Approval of the

Proposed Class Action Settlement and the Proposed Final Judgment attached as Exhibits 2 and 3

to the Declaration of Deborah K. Marcuse.

---

[14] *See also, e.g., In re Gen. Motors Co. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (recognizing that fee awards generally range up to 45% of the settlement); *Stephens v. US Airways Grp., Inc.*, 102 F.Supp.3d 222, 230 (D.D.C. 2015) (granting requested fee of 38% of total settlement); *Wells v. Allstate Ins. Co.*, 557 F.Supp.2d 1, 7 (D.D.C. 2008) (awarding fee amounting to 45% of total recovery); *In re Lucent Tech., Sec. Litig.*, 327 F.Supp.2d 426, 442 (D.N.J. 2004) (observing that "the customary contingent fee would likely range between 30% and 40% of the recovery."); *Geis v. Walgreen Co.*, Civ. No. 07-4238, 2010 WL 11570447, at *20 (D.N.J. Sept. 30, 2010) (awarding 43% of the value of the recovery); *Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) (granting request for 38-1/3% fee, in addition to costs, "solidly within the typical 20 to 50 percent range."); *Wright v. Stern*, 553 F.Supp.2d 337, 347 (S.D.N.Y. 2008) (awarding $8 million fee, representing over 38% of total relief, in addition to $999,999.79 in litigation expenses); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188-89 (W.D.N.Y. 2005) (awarding 38.26% of fund in wage and hour action); *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788-JST, 2015 WL 12661922, at *9 (N.D. Cal. Aug. 28, 2015) (noting that a fee of 37.5% of the gross settlement "falls within the range of possible approval").

Dated:  May 26, 2020

Respectfully submitted,

*/s/ Deborah K. Marcuse*
Deborah K. Marcuse (admitted *pro hac vice*)
Steven J. Kelly (admitted *pro hac vice*)
Austin L. Webbert (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com
skelly@sanfordheisler.com
awebbert@sanfordheisler.com

David W. Sanford (admitted *pro hac vice*)
Nicole E. Wiitala (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
nwiitala@sanfordheisler.com

*-- and --*

Charles G. Douglas, III (NH Bar #669)
**DOUGLAS, LEONARD & GARVEY, P.C.**
14 South Street, Suite 5
Concord, NH 03301
Telephone: (603) 224-1988
Fax: (603) 229-1988
chuck@nhlawoffice.com

*Attorneys for Plaintiffs and the Proposed Class*

29