# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

**KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,**

*Plaintiffs, on behalf of themselves and all others similarly situated,*

v.

**TRUSTEES OF DARTMOUTH COLLEGE,**

*Defendant.*

**Hon. Landya B. McCafferty, U.S.D.J.**

CASE NO. 1:18-cv-01070 (LM)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

## TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND ...................................................................1

II.   PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND EXPENSES.............2

    A.   The Application..............................................................................................2

        1.   Reasonable Attorneys' Fees ................................................................2

        2.   Reasonable Litigation Expenses............................................................2

        3.   Settlement Administration Expenses .....................................................3

III.  PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES
     SHOULD BE GRANTED .......................................................................................3

    A.   Class Counsel Secured $15,500,000 in Settlement Value for the Class. ........................4

    B.   Class Counsel's Request for 31.6% of the Fund Represents a Reasonable Percentage
       That is Customarily Awarded in this Circuit and Nationwide .......................................6

        1.   Courts in this Circuit and Nationwide Regularly Award One-Third (33.33%) of
          the Total Fund in Class Settlements Based on Individual Rights Violations. ...........6

        2.   Courts Recognize That Class Counsel in Discrimination Class Actions Are
          Entitled to a Higher Percentage Fee.......................................................8

        3.   The Requested Fee is Consistent with Contingency Fees Customarily Charged by
          Experienced Class Counsel ................................................................10

        4.   The First Circuit Has Not Established a Presumptive "Benchmark" for Attorneys'
          Fees in Common Fund Cases ..............................................................11

    C.   The Relevant Factors Support Counsel's Attorneys' Fees Application.........................12

        1.   Factor 1: The Size of the Fund and the Number of Persons Benefitted; Class
          Counsel Has Rendered an Exceptional Benefit for the 76 Class Members............13

        2.   Factor 2: Counsel for Both Parties are Highly Competent and Qualified ..............14

        3.   Factor 3: This Class Action is Extremely Complex................................16

        4.   Factor 4: The Risk of Non-Payment .....................................................17

        5.   Factor 5: Class Counsel Dedicated Significant Time and Labor to This Case ........18

          (i)    Class Counsel Thoroughly Investigated the Claims and Allegations
            in this Matter ..........................................................................18

          (ii)   Class Counsel Actively Litigated this Case ...........................................19

          (iii)  Class Counsel Committed Substantial Time and Resources to
            Reaching a Comprehensive Class Settlement and Obtaining Preliminary
            Approval ...............................................................................20

(iv)   Class Counsel's Significant Work After Preliminary Approval.............20

(v)   Over the Next Ten Years, Class Counsel Will Commit Additional Time and Resources to Monitoring the Settlement ........................................21

(vi)   Class Counsel's Expeditious Resolution of this Case Should Not Reduce the Fee Award...............................................................................21

6.   Factor 6: The Requested Award is Aligned with Awards in Comparable Cases.....23

7.   Factor 7: Public Policy Considerations ................................................................25

D.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee.............26

1.   A Lodestar Multiplier of 1.38 is Reasonable and Has Been Approved .................27

E.   Reaction of the Class .........................................................................................................27

IV.   PLAINTIFFS' APPLICATION FOR AN AWARD OF LITIGATION EXPENSES AND SETTLEMENT ADMINISTRATION COSTS SHOULD BE GRANTED.........28

V.   THE PLAINTIFFS ARE ENTITLED TO SERVICE AWARDS IN THE AMOUNTS REQUESTED ..............................................................................................................29

A.   Legal Standard ...................................................................................................................30

B.   The Service Awards are Amply Justified ...........................................................................31

1.   Courts Routinely Award Service Awards to Plaintiffs and Class Members Who Provide Substantial Assistance to the Litigation ..................................................31

2.   Plaintiffs Have Incurred Significant Personal Risk by Participating in this Action .......................................................................................................................32

3.   The Plaintiffs' Actions and Personal Sacrifices Have Resulted in a Significant Benefit to the Class..................................................................................................36

C.   Courts Have Often Awarded Service Awards in Amounts Similar to or Larger Than Those Applied for Here .............................................................................................37

D.   The Proposed Awards Are Reasonable and Appropriate in Proportion to the Class Fund as Well as to the Individual Settlement Benefits to the Class Members .............38

E.   The Class Members Have Approved the Service Awards ...........................................39

VI.   CONCLUSION..................................................................................................................39

## TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DL, 2011 WL 1883188 (E.D. Cal. May 17, 2011) ................................................................................................... 39

*Applegate v. Formed Fiber Techs., LLC*, No. CIV.A. 2:10-00473-GZS, 2013 WL 6162596 (D. Me. Nov. 21, 2013) .........................................................................7

*Aviles v. BAE Sys. Norfolk Ship Repair, Inc.*, No. 2:13-cv-00418 (AWA) (TEM) (E.D. Va. Feb. 10, 2016) .......................................................................................37

*Bacchi v. Massachusetts Mut. Life Ins. Co.*, C.A. No. CV 12-11280-DJC, 2017 WL 5177610 (D. Mass. Nov. 8, 2017) ........................................................................11

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)......................12

*Beck v. Boeing* Co., No. 00–CV–301P (W.D. Wash. Oct. 8, 2004) .............................38

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)................................9, 16

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir.1990) .....................................................................................17

*Bellifemine v. Sanofi-Aventis*, No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...................................................................................15, 32, 38

*Bennett v. Roark Capital Grp., Inc.*, No. 2:09-CV-00421-GZS, 2011 WL 1703447 (D. Me. May 4, 2011) ...................................................................................7, 11

*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).................................................................................................4, 12, 23

*Bilewicz v. FMR LLC*, No. CIV.A. 13-10636-DJC, 2014 WL 8332137 (D. Mass. Oct. 16, 2014) .................................................................................................7, 23

*Blanchard v. Bergeron,* 489 U.S. 87 (1989) .............................................................5

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ......................................................12

*Borders v. Wal-Mart Stores, Inc.*, No. 3:17-cv-00506-MJR-DGW (S.D. Ill. Apr. 29, 2020)...............................................................................................................24

*Burnthorne-Martinez v. Sephora USA, Inc.*, No. 4:16-CV-02843-YGR, 2018 WL 5310833 (N.D. Cal. May 16, 2018) ........................................................................12

*Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105 (D. Minn. Sept. 18, 2006) .................................................................10, 24

*Castro v. Sanofi Pasteur Inc.*, No. CV117178JMVMAH, 2017 WL 4776626 (D.N.J. Oct. 23, 2017).................................................................................................37, 39

*Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).......................................................................................12

*Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733 (D. Md. 2002)....................................................................................................26

*Curtis v. Scholarship Storage Inc.*, No. 2:14-cv-303-NT (D. Me. May 31, 2016) ........................ 7

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ................................................ 9, 25

*Diaz v. Scores Holding Co.*, No. 07 Civ. 8718 (THK), 2011 WL 6399468 (S.D.N.Y. July 11, 2011) .................................................................................................... 39

*Dickerson v. Novartis Corp.*, No. 1:15-CV-1980-GHW (S.D.N.Y. Dec. 2, 2016) ..................... 24

*Dominguez v. Galaxy Recycling Inc.*, No. CV 12-7521 (LDW), 2017 WL 2495406 (D.N.J. June 9, 2017) ............................................................................................ 28

*Erie Cty. Retirees Ass'n v. Cty. of Erie, Pennsylvania*, 192 F. Supp. 2d 369 (W.D. Pa. 2002) .................................................................................................. 10

*Fairway Med. Ctr., L.L.C. v. McGowan Enterprises, Inc.*, No. CV 16-3782, 2018 WL 1479222 (E.D. La. Mar. 27, 2018) ..................................................................... 37

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .................................................................................................. 4

*Flores v. Anjost Corp.*, No. 11 CIV. 1531 AT, 2014 WL 321831 (S.D.N.Y. Jan. 28, 2014) .................................................................................................. 38

*Fox v. Vice*, 563 U.S. 826 (2011) ................................................................................ 3

*Franco v. Ruiz Food Prods.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............................................................................................. 23

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .................................... 31, 34, 39

*Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ........................................................................................ 36

*Geis v. Walgreen Co.*, No. CV 07-4238 (KSH), 2010 WL 11570447 (D.N.J. Sept. 30, 2010) .................................................................................................. 26

*Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, C.A. No. 10-10588-FDS (D. Mass. May 12, 2014) ............................................................................................. 7, 23

*Gomes v. Extra Space Storage, Inc.*, No. 2:13-cv-929 (KSH) (CLW), 2017 WL 2999020 (D.N.J. July 13, 2017) ............................................................................................ 14

*Gordan v. Massachusetts Mut. Life Ins. Co.*, No. 13-CV-30184-MAP, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ................................................................... passim

*Hernandez v. C&S Wholesale Grocers, Inc.*, No. 06 cv 2675 (CLB)(MDF) (S.D.N.Y. July 31, 2008) ............................................................................................ 15

*Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) .................................................................................................. 28

*Hutchison v. Lenders Portal Direct, LLC*, No. 17-cv-02456, 2018 WL 3241255 (D.S.C., July 3, 2018) ............................................................................................ 26

*Huynh v. Hous. Auth. of Cty. of Santa Clara*, No. 14-CV-02367-LHK, 2017 WL 1050539 (N.D. Cal. Mar. 17, 2017) ..................................................................... 35

*In re Asacol Antitrust Litig.*, No. 1:15-CV-12730 (DJC), 2017 WL 11475275 (D. Mass. Dec. 7, 2017) ...................................................................................................passim

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......................22

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............................................................................................................16

*In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ...............................................................................passim

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)..............................................26

*In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) ...................................................................16, 17

*In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1635648 (E.D. Pa. Apr. 5, 2018) ............................................22, 37

*In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167 (D. Mass. 2014) ...........12, 14

*In re Number Nine Visual Tech. Corp. Sec. Litig.*, Master File No. 96-11207 (WGY) (Feb. 6, 2001) ...................................................................................................8

*In re Nx Networks Sec. Litig.*, C.A. No. 00-11850-JLT (D. Mass. Nov. 22, 2004).......................8

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005)....................................8, 24, 26, 27

*In re Revco Sec. Litig.*, No. 851, 89CV593, 1992 WL 118800, at *7 (N.D. Ohio May 6, 1992)..........................................................................................................38

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ......................................................26

*In re Sequoia Sys., Inc. Sec. Litig.*, No. 92-11431-WD, 1993 WL 616694 (D. Mass. Sept. 10, 1993) ................................................................................... 8, 21, 28, 29

*In re StockerYale, Inc. Sec. Litig.*, No. 1:05CV00177-SM, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) ..................................................................................................8, 21

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio) ......................................25

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995).......................................................................................13, 22, 26

*In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395 (D. Mass. 2008) ...............27

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007) ............12, 26, 27, 28

*In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155 (D. Mass. 2015) ..................................................................................................................27

*In re: Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319243 (S.D. Fla. Aug. 2, 2013)......................................................................4, 6

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)..........................................passim

*Jane Doe 2 v. The Georgetown Synagogue et al.*, Civ. No. 2014 CAB 8073 (D.C. Super. Ct. 2018) ....................................................................................................24

*Jane Doe 30's Mother v. Bradley*, 64 A.3d 379 (Del. Super. Ct. 2012) ........................... 16, 23, 29

*Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007-NR, 2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) ................................................................................... 11

*Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-CV-11390-RGS (D. Mass. Apr. 19, 2016) ........................................................................................................................... 6, 23, 29

*Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017) ........................................................................................... 30

*Liberte Capital Grp. v. Capwill*, No. 5:99 CV 818, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007) ..................................................................................................................... 38

*Lusby v. Gamestop Inc.*, No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) .......................................................................................................................... 23

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 22

*Matamoros et al v. Starbucks Corporation*, C.A. No. 08-10772-NMG (D. Mass. 2013) .......... 8, 24

*McCarthy v. Burkholder*, No. 75-136-C6, 1977 WL 21 (D. Kan. Apr. 19, 1977) ......................... 3

*McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) ............................................. 5, 35

*McKenzie Construction Inc. v. Maynard*, 758 F.2d 97 (3d Cir. 1985) ......................................... 22

*McReynolds v. Merrill Lynch & Co, Inc.*, No. 1:05-cv-06583 (N.D. Ill. Dec. 6, 2013) ............... 37

*Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ................................................................................................................... 17, 25

*Mooney v. Domino's Pizza, Inc.*, No. 1:14-CV-13723-IT, 2018 WL 10232918 (D. Mass. Jan. 23, 2018) ................................................................................................................ 27, 29

*O'Connor v. Dairy*, No. 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) ............. 7, 10

*Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ...................................................................................................................... 9, 16

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ) (JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............................................................................... 38

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ................................. 5

*Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015) ................................................... 4, 5

*Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399 (S.D. Tex. May. 7, 2008) ................................................................................................ 38

*Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963 (2d Cir. 1988) .......................................... 25

*Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 RLE, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .............................................................................................................. 38

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) ..................................... 9, 25, 30, 35

*Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ............................................................................................................ passim

*Rodriguez v. SGLC Inc.*, No. 2:08-CV-1971-MCE-KJN, 2014 WL 229221 (E.D. Cal. Jan. 17, 2014) ....................................................................................................... 39

*Sanchez v. Frito-Lay, Inc.*, No. 114CV00797DADBAM, 2019 WL 4828775 (E.D. Cal. Sept. 30, 2019) ...................................................................................................... 35

*Schultzen v. Woodbury Cent. Cmty. Sch. Dist.*, 187 F. Supp. 2d 1099 (N.D. Iowa 2002) .............. 3

*Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ..................................................................................... 7, 10, 30, 34

*Sheppard v. Consol. Edison Co. of New York, Inc.,* 2002 WL 2003206 (E.D.N.Y. Aug.1, 2002) ............................................................................................................................ 5

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821 - IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ............................................................................................... 23

*Sylvester v. Cigna Corp.*, 401 F. Supp. 2d 147 (D. Me. 2005) ................................................ 8, 29

*Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ....................................................................................................... 18, 36

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................................... 23

*Wallace v. Powell*, 288 F.R.D. 347 (M.D. Pa. 2012) ................................................................. 14

*Waters v. Cook's Pest Control, Inc.*, No. 2:07-CV-00394-LSC, 2012 WL 2923542 (N.D. Ala. July 17, 2012) ....................................................................................... 10, 11

*Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ............................................................................................................. 33

*Williamson v. Microsemi Corp.*, No. 5:14-CV-01827-LHK, 2015 WL 13650045 (N.D. Cal. Feb. 19, 2015) ...................................................................................................... 22

*Wright v. Stern,* 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 10

**Other Authorities**

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed.) ......................................................................................................................... 4

Jayne S. Ressler, *#worstplaintiffever: Popular Public Shaming and Pseudonymous Plaintiffs* .................................................................................................................... 33

*Principles of the Law of Aggregate Litigation*, THE AMERICAN LAW INSTITUTE ........................... 5

Wright & Miller, *Federal Practice & Procedure* ......................................................................... 9

**Rules**

FED. R. CIV. P. 23 ....................................................................................................................... 5

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs Kristina Rapuano, Vassiki Chauhan, Sasha Brietzke, Annemarie Brown, Andrea Courtney, Marissa Evans, Jane Doe, Jane Doe 2, and Jane Doe 3 ("Plaintiffs") are current or former students in the Department of Psychological and Brain Sciences ("PBS" or "the Department") at Defendant Dartmouth College ("Dartmouth" or "Defendant") (collectively, "Parties"). Plaintiffs allege that Dartmouth violated Title IX and New Hampshire common law when it systematically failed to protect them and other female students from the sexual predations of three tenured professors who were known serial harassers. After extensive arms' length negotiation, the Parties reached a Class Action Settlement (the "Agreement" or "Settlement") that requires Dartmouth to make a $14 million non-reversionary payment ("Settlement Payment Amount") and undertake significant programmatic measures and reforms representing an additional monetary value of at least $1,500,000. The Settlement provides that Class Counsel may seek up to 35% in attorneys' fees, reimbursement of litigation expenses and Settlement Administration costs, and service awards for the Plaintiffs ($75,000 each).

This Court preliminarily approved the Settlement on January 29, 2020 (*see* ECF No. 50), and a detailed Court-approved Notice of Settlement of Class Action ("Notice") that outlined the Settlement terms—including the awards of fees, costs, and service awards—was distributed to the Plaintiffs and the Class Members on February 12, 2020. ***The Class response has been overwhelming: Class Members resoundingly approve the Settlement.*** Not a single Class Member has objected to the Settlement.

Accordingly, Plaintiffs seek (1) reasonable attorneys' fees totaling $4,900,000, or 31.6% of the total value of the Settlement; (2) an award of costs in the amount of $125,756.42 for the reasonable litigation expenses that Counsel has incurred in the course of investigating, prosecuting, and settling this action; (3) a maximum of $109,217 for settlement administration fees and costs;

and (4) reasonable service awards of $75,000 for each of the nine Plaintiffs in recognition of their contributions to the case, their services to the Class Members, and the efforts, risks, and expenditures they undertook in this litigation.

## II.    PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

### A.    <u>The Application</u>

The Class Settlement provides that Class Counsel will seek (a) an award of attorneys' fees in an amount not to exceed 35% (or $4,900,000) of the Settlement Payment Amount, (b) reimbursement of litigation costs and expenses, and (c) settlement administration and Independent Claims Expert costs. (*See* Agreement ¶ 14.)  Significantly, no Class Member has objected to the fees and costs permitted by the Settlement, which were described in detail in the Class-wide Notice. (*See* Declaration of Sara Schwermer-Sween ("Schwermer-Sween Decl.") ¶ 15 and Exhibits A, B.) Accordingly, the Court should grant Plaintiffs' application for attorneys' fees and expenses.

### 1.    *Reasonable Attorneys' Fees*

Class Counsel seeks $4,900,000 (31.6% of the total Settlement value) in attorneys' fees. (Declaration of David D. Sanford ("Sanford Decl.") ¶ 23.)  This fee is reasonable in light of the complexity of the litigation, the high degree of risk assumed by Counsel, the amount of time and resources expended on the case, and the excellent result achieved for the Class.

### 2.    *Reasonable Litigation Expenses*

Class Counsel seeks reimbursement of $125,756.42 in reasonable and necessary litigation costs (including, *inter alia*, vendor and consultant costs incurred for data hosting and ESI discovery, mediation expenses, and expert fees) that were reasonably incurred in prosecuting this action on behalf of the Class Members. (*See* Sanford Decl.¶ 21 and Exhibit. A.)

### 3. *Settlement Administration Expenses*

Counsel seeks reimbursement of settlement administration and Independent Claims Expert costs which, collectively, will not exceed $109,217. (Sanford Decl.¶ 22.) This figure represents $24,217 in expenses incurred by Rust Consulting (the settlement administrator) and $85,000 in costs incurred by Maria C. Walsh, Esq. (ret.) (the Independent Claims Expert). (*Id.*)

## III. PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES SHOULD BE GRANTED

As discussed in detail below, the relevant considerations all support Class Counsel's fee request. ***First,*** this Court should determine Class Counsel's fee based on the total value of the Settlement that was obtained for the Class: no less than $15,500,000. (*See infra* Section III(A).) ***Second,*** Class Counsel requests a reasonable percentage of the total settlement recovery. (*See infra* Section III(B).) Courts in the First Circuit and nationwide routinely award attorneys one-third (33.33%)—or more—of the total fund in private attorney general class actions.[1] (*See infra* Section III(B)(1)-(2).) ***Third,*** the relevant factors support Class Counsel's fee request. (*See infra* Section III(C) (discussing seven factors considered by courts in the First Circuit). ***Fourth,*** a lodestar cross-check confirms the reasonableness of Class Counsel's fee request. (*See infra* Section III(D).) Class Counsel's aggregate lodestar exceeds $3,547,369; the requested fee award, which represents a multiplier of just **1.38**, is reasonable. ***Fifth,*** the reaction of the class supports Class Counsel's fee request. (*See infra* Section III(E).) Not a single class member has objected to the attorneys' fees provision of the Settlement.

---

[1] "When a plaintiff succeeds in remedying a civil rights violation, we have stated, [s]he serves as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quotations omitted). A "private attorney general" class action includes one brought under Title IX. *See Schultzen v. Woodbury Cent. Cmty. Sch. Dist.*, 187 F. Supp. 2d 1099, 1124–25 (N.D. Iowa 2002) (recognizing that private citizens act who enforce their rights under Title IX act as "private attorneys general"); *McCarthy v. Burkholder*, No. 75-136-C6, 1977 WL 21, at *5 (D. Kan. Apr. 19, 1977) (noting that Congress intended private citizens to enforce Title IX laws as "private attorneys general").

**A.     Class Counsel Secured $15,500,000 in Settlement Value for the Class.**

This Court should determine Class Counsel's fee based on the *total value* of the Settlement that was obtained for the class, which is no less than $15,500,000.  In addition to the $14,000,000 settlement fund, the Settlement provides for comprehensive programmatic relief that adds an estimated additional monetary value of $1,500,000.[2]   (Declaration of Deborah K. Marcuse ("Marcuse Decl.") ¶¶ 65-66.)   Class Counsel's fee request amounts to just **31.6%** of the $15,500,000 gross value of the Settlement.

It is well-established that the percentage of fund method of calculating fees "is based on a percentage of **the actual value to the class of any settlement fund plus the actual value of any nonmonetary relief.**"  Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed.); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *15 (S.D.N.Y. Sept. 9, 2015) ("In calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, **Courts include the value of both the monetary and non-monetary benefits conferred on the Class. Leading authorities agree, as do courts in this Circuit and nationwide**.") (citation omitted) (emphasis added); *Poertner v. Gillette Co.*, 618 F. App'x 624, 628–29 (11th Cir. 2015) (finding that the value of the non-monetary relief was "part of the settlement pie": "by including the value of the nonmonetary relief and cy pres award as part of the settlement pie, we conclude that the district court did not abuse its discretion"); *In re: Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319243, at *13–14 (S.D. Fla. Aug. 2, 2013) (awarding fees based on a percentage of the *total value* of the settlement: "When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund

---

[2] "Injunctive relief has been recognized as a meaningful component of a settlement agreement[.]" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 346–47 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

and award class counsel a percentage of the total fund."); *Sheppard v. Consol. Edison Co. of New York, Inc.,* 2002 WL 2003206, at *7 (E.D.N.Y. Aug.1, 2002) (awarding attorneys a percentage of the "total settlement," which included both the monetary relief and the value of the non-monetary relief).[3]

Dartmouth and Class Counsel agree that the programmatic relief has a monetary value of *at least* $1,500,000. (Marcuse Decl. ¶ 66.) Indeed, Dartmouth has, among other things, agreed to (1) provide an additional **$1,000,000** its Diversity Recruitment Fund (to support the hiring of diverse faculty, including those with an expertise in gender and racial discrimination and violence), ***and*** (2) either provide **$500,000** in support to WISE[4] or hire an additional WISE staff member on campus.[5] (*See* ECF No. 47-3 at 39-40.) In addition, Dartmouth has agreed to add two additional members to its External Advisory Committee, which will be tasked with assessing and recommending changes to Dartmouth's existing policies and advisory structures. (*Id.* at 39.) **"When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and**

---

[3] *See also* Advisory Committee Notes to FED. R. CIV. P. 23(h) ("At the same time, it is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fees award. *Cf. Blanchard v. Bergeron,* 489 U.S. 87, 95 (1989) (cautioning in an individual case against an 'undesirable emphasis' on 'the importance of the recovery of damages in civil rights litigation' that might 'shortchange efforts to seek effective injunctive or declaratory relief')); *Principles of the Law of Aggregate Litigation,* THE AMERICAN LAW INSTITUTE, Mar 1, 2010, § 3.13 ("[A] percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement."); *McCoy v. Health Net, Inc.,* 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (including the value of the injunctive relief for purposes of determining class counsel's fee); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1342–43 (S.D. Fla. 2007) ("[W]hen determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class.") (citing cases); *cf. Gordan v. Massachusetts Mut. Life Ins. Co.,* No. 13-CV-30184-MAP, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (granting class counsel's fee request for one-third of the $30 million settlement but emphasizing that the fee requested by counsel "represents much less than one-third of the *total* value of the settlement" given the "fundamental changes" that were implemented).

[4] WISE of the Upper Valley (https://wiseuv.org/) is a non-profit organization located in Lebanon, New Hampshire that is committed to ending gender-based violence through survivor-centered advocacy, prevention, education and mobilization for social change.

[5] This should be considered as part of the settlement fund. *See Poertner,* 618 F. App'x at 628-29 (holding that the trial court properly included the $6 million value of the defendants' charitable donation as part of the "common fund").

**award class counsel a percentage of the total fund."** *In re: Checking Account Overdraft Litig.*, 2013 WL 11319243, at *13.

Because the overall value of the Settlement can be reliably valued at $15,500,000, the Court should determine Class Counsel's fees based on a percentage of this total settlement fund. The resulting fee request—$4,900,000, or 31.6% of the total value—is well within the range of reasonableness.

### B.    Class Counsel's Request for 31.6% of the Fund Represents a Reasonable Percentage That is Customarily Awarded in this Circuit and Nationwide

Class Counsel's fee request for 31.6% of the total settlement fund is well within the range of reasonableness.  ***First,*** courts nationwide (including the First Circuit) regularly award one-third (33.33%)—or more—in private attorney general class actions (*infra* Section III(B)(1)).  ***Second,*** courts recognize that discrimination class actions warrant a higher than customary percentage of attorneys' fees (*infra* Section III(B)(2)).  ***Third,*** the requested fee (31.6%) matches—or is lower than—the customary contingency fee charged by experienced class counsel (*infra* Section III(B)(3)).  ***Finally,*** the First Circuit has not established a presumptive "benchmark" in common fund cases (*infra* Section III(B)(4)).

### 1.    *Courts in this Circuit and Nationwide Regularly Award One-Third (33.33%) of the Total Fund in Class Settlements Based on Individual Rights Violations.*

Class Counsel's fee request for 31.6% of the settlement fund is well within the range of reasonableness.  Indeed, **Courts in this Circuit routinely award one-third (33.33%) of the fund in private attorney general class actions.**  *See Gordan v. Massachusetts Mut. Life Ins. Co.*, No. 13-CV-30184-MAP, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (awarding one-third of $30.9 million settlement in ERISA class action); *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-CV-11390-RGS, ECF No. 220 at ¶ 17 (D. Mass. April 19, 2016) (awarding one-third of $10 million settlement in wage and hour class action); *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*,

C.A. No. 10-10588-FDS (ECF No. 409 at ¶ 12) (D. Mass. May 12, 2014) (awarding <u>one-third</u> of the <u>$10 million settlement</u> in ERISA class); *Bilewicz v. FMR LLC*, No. CIV.A. 13-10636-DJC, 2014 WL 8332137, at *6 (D. Mass. Oct. 16, 2014) (awarding <u>one-third</u> of the <u>$12 million settlement</u> in ERISA case "in light of the work performed by Plaintiffs' Counsel and the results achieved"); *see also O'Connor v. Dairy*, No. 2:14-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) (awarding <u>one-third</u> in wage and hour class action and noting that "[a] one-third contingent fee is common in class action wage-and-hour cases"); *Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding <u>one-third</u> in wage and hour class action); *Curtis v. Scholarship Storage Inc.*, No. 2:14-cv-303-NT, ECF No. 90 at 8, 9 (D. Me. May 31, 2016) (awarding <u>one-third</u> in wage and hour class action); *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) (awarding <u>one-third</u> in wage and hour class action: "I take judicial notice that contingent fees of one-third are common, another signal of the market. Finally, I observe that such a fee is consistent with wage-and-hour settlements") (citing cases); *Applegate v. Formed Fiber Techs., LLC*, No. CIV.A. 2:10-00473-GZS, 2013 WL 6162596, at *1 (D. Me. Nov. 21, 2013) (awarding <u>one-third</u> of the fund in WARN case); *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-CV-00421-GZS, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) (awarding <u>one-third</u> in WARN case and noting that "one-third fee awards are common in WARN cases and are necessary to encourage enforcement of the WARN Act by employees and their private counsel"; and, because the plaintiff signed a 40% contingency agreement, "less than what was initially bargained for by the class representative");

*Sylvester v. Cigna Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005) (awarding <u>one-third</u> of fund in ERISA case).[6]

Indeed, courts in this Circuit have awarded one-third in cases with significantly larger funds than this one. *See Matamoros et al v. Starbucks Corporation*, C.A. No. 08-10772-NMG (ECF No. 169) (D. Mass. 2013) (approving fee request for ***one-third*** of the ***$23.5 million settlement*** in a case alleging wage and hour violations); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving attorneys' fees amounting to ***one-third*** of the ***$67 million settlement*** and noting that **"the one-third percentage of fund fee is not unreasonable as matter of law."**) (emphasis added).

2. <u>*Courts Recognize That Class Counsel in Discrimination Class Actions Are Entitled to a Higher Percentage Fee*</u>

Further, discrimination class actions may merit higher percentage attorneys' fees because of the unique challenges the law imposes. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (**"The challenges inherent in this [discrimination] case support a high percentage fee award.** For instance, an early motion to dismiss by [defendants] raised complicated issues related to the application of Fed. R. Civ. P. 23 in civil rights cases.") (emphasis added). Indeed, **"<u>case law supports the proposition that the customary fee in civil rights cases should be enhanced</u> . . . civil rights and discrimination cases generally call for increases in attorneys' fees awards."** *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 328-29, 333 (W.D. Tex.

---

[6] Fees of one-third of the class fund are also common in other types of class actions. *See, e.g. In re Asacol Antitrust Litig.*, No. 1:15-CV-12730 (DJC), 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) (approving fee request for <u>one-third</u> of <u>$15 million settlement</u> in antitrust case); *In re StockerYale, Inc. Sec. Litig.*, No. 1:05CV00177-SM, 2007 WL 4589772, at *6–7 (D.N.H. Dec. 18, 2007) (awarding <u>33%</u> of fund in securities class action); *In re Nx Networks Sec. Litig.*, C.A. No. 00-11850-JLT (ECF No. 85) (D. Mass. Nov. 22, 2004) (one-third of $6.3 million settlement); *In re Number Nine Visual Tech. Corp. Sec. Litig.*, Master File No. 96-11207 (WGY) (ECF No. 101) (Feb. 6, 2001) (awarding 33 1/3%); *In re Sequoia Sys., Inc. Sec. Litig.*, No. 92-11431-WD, 1993 WL 616694, at *2 (D. Mass. Sept. 10, 1993) (awarding one-third in securities class)

2007) (recognizing that **"[t]he customary fee in civil rights and other socially valuable cases is often higher than in other cases.** While many categories of lawsuits are valued by our society, actions resulting in the erosion of discrimination and the preservation of civil rights are especially significant . . . **attorneys successfully challenging civil rights violations should be rewarded an enhanced customary fee.**") (emphasis added); *cf. Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2017 WL 3252212, at *12-13 (S.D. Cal. July 31, 2017) ("the issues in this case are complex insofar as successfully proving legally cognizable employment discrimination can often be difficult. And Counsel points to the fact that discrimination-based class actions are especially risky and usually require greater pre-suit discovery given the Supreme Court's recent 'heightening of the commonality standard....' . . . the lodestar cross-check of 3.5 in this case is reasonable, especially in light of the risks identified above regarding bringing a discrimination suit of this magnitude.") (citation omitted); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 480 (S.D.N.Y. 2013) ("In light of *Wal–Mart Stores, Inc. v. Dukes,* Class Counsel faced significant risk associated with class certification under Rule 23") (citation omitted); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) ("the result achieved was one that captured national attention and focused upon the importance of private attorneys general in enforcement of the proscriptions against racial discrimination in the workplace—a class action concern that has not received the same focus as have, for example, securities and products liability class actions"); *Ingram*, 200 F.R.D. at 696 ("The . . . risk that class action *discrimination* cases entail merit particular weight, since there is a corresponding public benefit in encouraging the private bar to devote resources to enforcing our nation's civil rights laws.").[7]

---

[7] *See also* Wright & Miller, *Federal Practice & Procedure,* 7B Fed. Prac. & Proc. Civ. § 1803.1 and n.31 (3d ed.) ("A number of courts have indicated the importance of encouraging private litigants to vindicate public wrongs by suggesting that the fees awarded should be particularly generous in those situations.") (citing, *inter alia*, discrimination and civil rights class actions).

The requested fee (31.6%) is significantly less than the fees that are often awarded in discrimination cases, which can exceed 35% of the total fund.  *See, e.g., Waters v. Cook's Pest Control, Inc.*, No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *19 (N.D. Ala. July 17, 2012) (approving 35% fee in discrimination class settlement); *Wright v. Stern,* 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008) (awarding $8 million in fees in employment discrimination case, representing over 38% of total relief, in addition to $999,999.79 in litigation expenses); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, at *1 (D. Minn. Sept. 18, 2006) (awarding 35.5% of the $15 million settlement fund in Title VII gender discrimination class action and emphasizing that "the requested fee is within the range established by other cases."); *Erie Cty. Retirees Ass'n v. Cty. of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 383 (W.D. Pa. 2002) (awarding 38% of total fund in age discrimination case).

3. *The Requested Fee is Consistent with Contingency Fees Customarily Charged by Experienced Class Counsel*

The requested fee is also aligned with the contingency fees typically charged by experienced counsel in complex litigation.  Class Counsel is a nationally renowned civil rights and employment firm with extensive experience in discrimination class actions.  (*See, e.g.*, Sanford Decl. ¶¶ 9-19.) It is customary for experienced counsel to charge contingency fees of one-third to 40 percent for cases resolved at this stage of the litigation (*id.* ¶ 23).  Class Counsel's request for 31.6% of the total gross value of the Settlement (taking into account the monetary value of the programmatic relief package) is even less than the customary range.  *See supra* Section III(B)(1)-(2) (fee awards of one-third or more are routinely granted); *see also O'Connor*, 2018 WL 3041388, at *4 (awarding one-third: "A one-third contingent fee is common in class action wage-and-hour cases"); *Scovil*, 2014 WL 1057079, at *5 (awarding one-third in FLSA case and noting that "contingent fees of one-third are common") (citing cases).

Class Counsel's fee request is well within the range of contingency fees typically charged by experienced counsel even if this Court construes Class Counsel as seeking 35% of the fund. *See, e.g.*, *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007-NR, 2019 WL 5394751, at *10 (W.D. Pa. Oct. 22, 2019) ("In private contingency fee cases, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery. A percentage fee of 35% falls right in the middle of this range, and so this factor favors approval.") (citations and quotations omitted); *Waters*, 2012 WL 2923542, at *16–17 (approving 35% fee in discrimination class action and noting that this percentage was "well within the customary fees charged for comparable service").

Importantly, Class Counsel is seeking significantly less than the 40% they are entitled to seek pursuant to the retainer agreement that was executed by the Plaintiffs. (Sanford Decl. ¶ 23). "Notably, the [Plaintiffs] in this matter signed a forty percent contingency agreement . . . the request for an award of one-third of the common fund reflects a fee that is customary and, in fact, less than what was initially bargained for by the [Plaintiffs]." *Bennett*, 2011 WL 1703447, at *2 (awarding one-third of the fund in WARN case).

4.  *The First Circuit Has Not Established a Presumptive "Benchmark" for Attorneys' Fees in Common Fund Cases*

As discussed above, courts in the First Circuit and nationwide routinely award more than 31.6% of the total fund in private attorney general class action settlements. (*See supra* Section III(B)(1).) Notably, **"[t]he First Circuit . . . did not establish a 'benchmark' percentage that is presumptively reasonable in common fund cases."** *Roberts*, 2016 WL 8677312, at *10 (awarding one-third of the common fund) (emphasis added); *see also Bacchi v. Massachusetts Mut. Life Ins. Co.*, C.A. No. CV 12-11280-DJC, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017)

(recognizing that **"the First Circuit has not set a presumptive benchmark for percentage of fund awards"**) (emphasis added).[8]

### C.    The Relevant Factors Support Counsel's Attorneys' Fees Application

It is well-settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  In analyzing an attorneys' fee request, "the touchstone of the inquiry is reasonableness." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015).  Courts in the First Circuit typically—but are not required to[9]—consider the following factors: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014).

Although courts have discretion to apply either the lodestar or percentage of the fund methods of calculating fees, the First Circuit has observed that the percentage of the fund method, which "permits the judge to focus on a showing that the fund conferring a benefit on the class

---

[8] Notably, even in the Ninth Circuit, which—unlike the First Circuit—has established a "benchmark," courts routinely award fees exceeding the benchmark. *See, e.g. Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (awarding one-third and holding that, ***"in most common fund cases, the award exceeds that [25%] benchmark."***) (quotation omitted) (emphasis added); *Burnthorne-Martinez v. Sephora USA, Inc.*, No. 4:16-CV-02843-YGR, 2018 WL 5310833, at *2 (N.D. Cal. May 16, 2018) (awarding one-third after considering the relevant factors: "While the [one-third fee request] is an upward departure from the Ninth Circuit's benchmark of 25% of the settlement fund, in most common fund cases, the award exceeds that benchmark[.]") (quotations omitted); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (awarding one-third in FLSA case even though "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage. ***The exact percentage awarded, however, varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark percentage***.") (citation and quotations omitted) (emphasis added).

[9] "[T]he First Circuit does not require courts to examine a fixed laundry list of factors." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265–66 (D.N.H. 2007).

resulted from the lawyers' efforts," is often preferable.  *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (noting that the percentage of fund method "is often less burdensome to administer than the lodestar method," "enhances efficiency," and "is result-oriented rather than process-oriented."); *see also, e.g.*, *Gordan*, 2016 WL 11272044, at *2 ("As held by the First Circuit, the 'percentage of fund' approach offers distinctive advantages . . . the First Circuit has stated that the use of the [percentage of fund] method in common fund cases is the prevailing praxis.  Indeed, there is a clear consensus among federal and state courts that the percentage of fund approach is the more efficient, better reasoned, and effective method.") (citations and quotations omitted).

1. *Factor 1: The Size of the Fund and the Number of Persons Benefitted; Class Counsel Has Rendered an Exceptional Benefit for the 76 Class Members*

The Settlement provides significant and immediate relief to the Class Members, including but not limited to (i) a $14 million non-reversionary payment that will benefit the 76 Class Members; *after all deductions for fees and expenses*, this represents an average class payment **in excess of $105,000 per person** and an average Supplemental Payment of almost **$280,000 per person** for the 29 individuals who submitted claim forms; (ii) a comprehensive programmatic relief package that carries an additional monetary value of at least $1,500,000; (iii) a class definition (dating back to 2012) that is broader than the three-year statute of limitations, thus allowing recovery for individuals who would likely otherwise be time-barred from bringing claims; (iv) allowing Class Members to recover compensation immediately rather than after years of protracted litigation; and (v) bringing the women closure and allowing them to recover compensation anonymously rather than being forced to publicly disclose sensitive details.  (*See, e.g.*, Marcuse Decl. ¶¶ 67-69, 85-86.)  These benefits to the Class are particularly exceptional in light of the risks involved with continued litigation (*see infra* Section III(C)(4)).

13

All of these factors confirm that the Settlement provides an excellent benefit to the Class. *See* ECF No. 48 (Transcript of Preliminary Approval Hearing) at 4:17-25 (recognizing the benefit of "allow[ing] the women victims to maintain anonymity and privacy as absent class members rather than forcing them to file their own lawsuits and publicly disclose sensitive and highly personal facts"; the "significant amount of money in terms of programmatic relief at Dartmouth"; and "closure and some sense of vindication while also avoiding litigation.").

While the settlement is an incredible recovery for the small class, it is *not* a "mega-fund" settlement.  "This is not what courts would consider a 'very large' settlement, which would be $100 million or higher. In those settlements, courts might decrease the attorneys' fees as the settlement fund increases because at that point the size of the fund is probably due to the number of class members and not to the attorneys' efforts. This is not such a case." *Gomes v. Extra Space Storage, Inc.*, No. 2:13-cv-929 (KSH) (CLW), 2017 WL 2999020, at *5 (D.N.J. July 13, 2017) (citations omitted); *cf. In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d at 170 ("In so-called 'megafund' cases, defined as those which yield settlement funds of over $100 million, some courts have adopted a practice of lowering the fee award percentage as the size of the settlement increases[.]") (emphasis added); *see also Wallace v. Powell*, 288 F.R.D. 347, 374 (M.D. Pa. 2012) (holding that a $17.750 million settlement "is not a 'mega-fund' that would dictate an award at the low end of the sliding scale.").

### 2. *Factor 2: Counsel for Both Parties are Highly Competent and Qualified*

Class Counsel is highly skilled and experienced in class action litigation, particularly in the gender discrimination context, and has achieved a number of exceptional results throughout the country over the last several years in similar cases.

Sanford Heisler Sharp's class actions have resulted in significant decisions, recoveries, and injunctive relief for class members, including the largest jury verdict ever awarded in an

employment discrimination class action. The *Velez v. Novartis Pharmaceuticals Corp.* case resulted in a jury verdict of $250 million in punitive damages awarded to nearly 7,000 female sales representatives and $3.36 million compensatory damages awarded to 12 class members.  Recently, Sanford Heisler Sharp served as Lead Class Counsel in the *Jane Doe 2 v. The Georgetown Synagogue et al.* matter that reached a $14.25 million class action settlement benefiting the victims of a rabbi who videotaped women without their knowledge or consent while they undressed at a Jewish ritual bath facility that he oversaw.  At the final fairness hearing, the court concluded the case by praising the work of counsel on the case, stating: "I commend you highly for the work that you've done, the skill that you've demonstrated, and for the significant outcome that has occurred as a result of those efforts."

Sanford Heisler Sharp has been recognized by courts for having "an established record of competent and successful prosecution of large . . . class actions."  *Bellifemine v. Sanofi-Aventis*, No. 07 Civ. 2207(JGK), 2010 WL 3119374 at *1 (S.D.N.Y. Aug. 6, 2010); *see also, e.g., Hernandez v. C&S Wholesale Grocers, Inc.*, No. 06 cv 2675 (CLB)(MDF) (S.D.N.Y. July 31, 2008) (describing Sanford Heisler Sharp as "exceptionally able and experienced" and praising "the work that counsel have put in, not just in terms of the quantity, but what it was that counsel did, with obviously the tremendous amount of work . . ." and acknowledged a highly favorable result in "obviously a very complex dispute, both in terms of the law and in terms of the facts").

Using this skill and knowledge, Class Counsel have spent more than 6,391 attorney and staff hours (Sanford Decl. ¶ 30) aggressively investigating and litigating this case and negotiating a highly favorable settlement through arm's length discussions during a private mediation.

Accordingly, this factor weighs heavily in favor of the requested fee.

### 3. *Factor 3: This Class Action is Extremely Complex*

This complex nature of this litigation favors the requested fee award.  Class actions based on a hostile environment theory under Title IX, such as this action, are exceedingly rare.  This class action is thus inherently "a complex case raising difficult and in some instances novel legal issues" as well as "thorny issues of fact." *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005); *see also Ingram*, 200 F.R.D. at 696 ("Historically, claims alleging systemic employment discrimination are difficult to win, and the undesirability of the type of litigation at issue is compounded by the fact that the defendant here is highly respected in the Atlanta area and possesses the financial resources to vigorously defend the action."); *Jane Doe 30's Mother v. Bradley*, 64 A.3d 379, 403 (Del. Super. Ct. 2012) (sex abuse class action "litigation was complex and challenging and class counsel met the challenge.").[10]

The complexity of this case is further underscored by the challenges Plaintiffs face in obtaining class certification in discrimination lawsuits after the *Dukes v. Walmart* Supreme Court decision.  *See Pan*, 2017 WL 3252212, at *12-13 ("the issues in this case are complex insofar as successfully proving legally cognizable employment discrimination can often be difficult . . . . discrimination-based class actions are especially risky and usually require greater pre-suit discovery given the Supreme Court's recent heightening of the commonality standard") (citation and quotations omitted); *Beckman*, 293 F.R.D. at 480 ( "In light of *Wal–Mart Stores, Inc. v.*

---

[10] "Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) (awarding *one-third* of the $27.8 million fund where the class action "concerned relatively uncharted territory" and "cannot be considered a garden variety securities class action": "**Cases of first impression generally require more time and effort on the attorney's part ... [counsel] should not be penalized for undertaking a case which may make new law, [but] appropriately compensated for accepting the challenge.**") (quotations and citation omitted) (emphasis added).

*Dukes,* Class Counsel faced significant risk associated with class certification under Rule 23") (citation omitted).

4.   *Factor 4: The Risk of Non-Payment*

"Many cases recognize that the risk assumed by an attorney is ***perhaps the foremost factor*** in determining an appropriate fee award."[11] *In re Lupron*, 2005 WL 2006833, at *4.

Class Counsel took this case on a pure contingency basis and committed substantial resources—thousands of hours of attorney and staff time—to investigating and litigating this action. In doing so, Class Counsel "bore the risk of the case being dismissed at the pretrial stage, of losing at trial, or of failing to prove damages." *Id.* at *4.   Indeed, Class Counsel recognizes that Plaintiffs face considerable risks in establishing class-wide liability, obtaining Rule 23 certification of the proposed class action (and opposing a motion for decertification or a Rule 26(f) petition), and establishing damages.  (Sanford Decl. ¶ 36; Marcuse Decl. ¶ 87.)  Class Counsel also assumed the risk of the significant delay associated with achieving a final resolution through trial and any appeals.  (*Id.*)  "[P]laintiffs in this action faced the not insignificant risk of not recovering any damages at all. Where, as here, lead counsel undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016); *see also Roberts*, 2016 WL 8677312, at *13 (awarding one-third and citing "the significant risk [class counsel] assumed in taking the case on a wholly contingent basis").

---

[11] "A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *In re Lupron*, 2005 WL 2006833, at *4 (quoting *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir.1990)).

Moreover, the fee requested in this case comports with awards in similar "high risk" cases across the country. *See Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("A [2009] study surveying the award of attorneys' fees in class action settlements reviewed data on cases nationwide and found that the mean fee award for employment class action settlements . . . in cases that are 'high' risk **average 35.1 percent of total recovery**.") (emphasis added); *see also supra* Section III(B)(2). This was clearly a high-risk case whose outcome was unprecedented. Accordingly, the fee requested by Class Counsel is reasonable for a complex, "high risk" action such as this one.

5. *Factor 5: Class Counsel Dedicated Significant Time and Labor to This Case*

Since Class Counsel began investigating this matter in March 2018, Counsel has devoted over **6,391** hours to the successful pursuit of this matter. (Sanford Decl. ¶ 30.)  Class Counsel's dedication to this matter and expenditure of substantial time, effort, and resources (*see* Sanford Decl. ¶ 24; Marcuse Decl. ¶ 77) has brought this complex litigation to a successful resolution.

(i)   Class Counsel Thoroughly Investigated the Claims and Allegations in this Matter

Class Counsel extensively investigated legal and factual allegations of gender discrimination, sexual harassment, sexual assault, and retaliation bias at Dartmouth.  Indeed, as this Court recognized in preliminarily approving the Settlement, **"[b]efore reaching these proposed terms, both parties engaged in significant discovery."** (ECF No. 50 at 39.)  Class Counsel's work included, *inter alia*,  conducting an extensive factual investigation, including (i) interviewing at least 36 witnesses with knowledge of the underlying allegations set forth in the Complaint; (ii) reviewing extensive records and documents provided by the Plaintiffs and witnesses; (iii) requesting and reviewing information received through Freedom of Information Act ("FOIA") requests to the U.S. Department of Education and the Office for Civil Rights; (iv) reviewing policy

18

documents, and handbooks; (v) reviewing other publicly available information on Dartmouth's website or located through internet searches; and (vi) researching related media articles and blog or social media postings; reviewing the final written Investigation Reports for the Three Former Professors (which collectively amounted to 299 pages summarizing information provided to the investigator by 27 reporting parties and 118 witnesses) as well as drafts (by the investigator), revisions (by the reporting parties and the Professors), and exhibits (submitted by the reporting parties and the Professors).[12]  (*See* Marcuse Decl. ¶ 77(a)-(c); Sanford Decl. ¶¶ 24(a)-(c).)

(ii)    Class Counsel Actively Litigated this Case

In addition, Class Counsel drafted pleadings, administrative complaints, and discovery documents, and participated in motion practice.  Class Counsel drafted and filed the 72-page Complaint (ECF No. 1), the 85-page First Amended Complaint (ECF No. 28), and seven separate class charges of discrimination that were filed with the Equal Employment Opportunity Commission.  Class Counsel briefed a motion to proceed under pseudonym that was opposed by Dartmouth (*see* ECF Nos. 30-32, 35, 36); drafted, edited, and negotiated the Parties' Joint Discovery Plan (ECF No. 25) and ESI Protocol (ECF No. 26); prepared and served the Plaintiffs' Initial Disclosures; prepared written discovery; prepared a confidentiality stipulation; prepared other miscellaneous filings (*see, e.g.*, ECF No. 3-5, 12-18, 29-32, 39-42, 44-46, 53); and participated in meet and confer sessions with Dartmouth's counsel.  (*See* Marcuse Decl. ¶ 77(d)–(h), (j); Sanford Decl. ¶ 24(d)-(h), (j).)

---

[12] *See, e.g., Gordan*, 2016 WL 11272044, at *2 (awarding <u>one-third</u> of $30.9 million settlement where counsel "Class Counsel performed substantial work for almost an entire year before filing suit, investing hundreds of hours of attorney time investigating and developing the theories in this matter[,]" including, *inter alia*, "meeting with [potential class members], obtaining documents from public sources, reviewing and analyzing [relevant documents], building on expertise regarding industry practices, conducting extensive legal research, and fashioning the causes of action. The exceptional result in this case is the direct result of Class Counsel's unique expertise and outstanding effort.").

(iii)   Class Counsel Committed Substantial Time and Resources to Reaching a Comprehensive Class Settlement and Obtaining Preliminary Approval

Class Counsel also dedicated a significant amount of time to reaching a resolution of this matter.  Class Counsel worked with a Title IX expert to investigate Plaintiffs' allegations and formulate a programmatic relief proposal; participated in two full days of mediation, followed by one full-day of in-person negotiations and ongoing settlement negotiations after the mediation; negotiated and prepared the Class Action Settlement Agreement and the Class Notice and Claim Form; and secured and worked with a Settlement Administrator and Independent Claims Expert to effectuate the Settlement.  (*See* Marcuse Dec.  ¶ 77(i), (k), (m); Sanford Decl. ¶ 24(i), (k), (m).)

Class Counsel also successfully moved for Preliminary Approval of the Proposed Class Action Settlement (*see* ECF Nos. 47, 49).  Class Counsel provided this Court with lengthy briefing (including supplemental briefing), declarations, and exhibits in support of their Motion (*see* ECF No. 47, 49), and attended a hearing before this Court (ECF No. 48).

(iv)   Class Counsel's Significant Work After Preliminary Approval

After this Court granted Preliminary Approval (ECF No. 50), Class Counsel spent a substantial amount of time working with the Settlement Administrator and Independent Claims Expert and assisting the Plaintiffs and Class Members with the Settlement and their claims submissions.  (*See* Marcuse Decl. ¶ 77(m)-(n); Sanford Decl. ¶ 24(m)-(n).)  Throughout this litigation, Class Counsel has participated in hundreds of calls with the Plaintiffs and class members regarding their claims, the litigation, the Settlement, and the claims submission (in addition to extensive written communication).  (Marcuse Decl. ¶ 77(n); Sanford Decl. ¶ 24(n).)

Class Counsel has also committed substantial time and resources to the instant Motions for Final Approval of the Proposed Class Action Settlement and Attorneys' Fees, Costs, and Service Awards.  (Marcuse Decl. ¶ 77(o); Sanford Decl. ¶ 24(o).)

(v)   Over the Next Ten Years, Class Counsel Will Commit Additional Time and Resources to Monitoring the Settlement

Finally, Class Counsel will—**for the next decade**—commit significant ongoing time and resources to this litigation.  (Sanford Decl. ¶ 25; Marcuse Decl. ¶ 78.)  Class Counsel will, in the immediate future, be required to dedicate time and resources to administering the Settlement.  (*Id.*)  In addition, Class Counsel will review Dartmouth's implementation of the programmatic relief— one component of which, in accordance with the Settlement, will extend over ***ten years***—and pursue any alleged noncompliance with the programmatic terms of the Settlement. (*Id.*)  Based on Class Counsel's experience in other cases, this ongoing work will likely involve hundreds of additional hours.  (*Id.*)  The additional time that Class Counsel will expend in the future should be taken into account.  *See Roberts*, 2016 WL 8677312, at *13 (awarding one-third and noting that class counsel has "already committed, and anticipate continuing to commit, additional time to the administration of the claims.").

(vi)   Class Counsel's Expeditious Resolution of this Case Should Not Reduce the Fee Award

The timing of this settlement does not suggest a reduced percentage fee. *See Roberts*, 2016 WL 8677312, at *19-14 (awarding one-third of the total fund in FLSA case that settled shortly after pleading stage based on counsel's efforts and the risk assumed in taking the case on a contingency basis); *In re StockerYale, Inc. Sec. Litig.*, No. 1:05CV00177-SM, 2007 WL 4589772, at *6–7 (D.N.H. Dec. 18, 2007) (awarding 33%, or $1,122,000 in attorneys' fees despite lodestar value of just $521,985); *In re Sequoia Sys., Inc. Sec. Litig.*, No. 92-11431-WD, 1993 WL 616694, at *1 (D. Mass. Sept. 10, 1993) (awarding one-third despite a relatively low lodestar; finding that "the speed with which relatively complex litigation has been resolved" was "a function of the quality of the counsel involved, their ability to get to the core of the case, the jugular of the case promptly, and effect a prompt resolution.  That prompt resolution is a time value to the members of

21

the class themselves."). Indeed, as the First Circuit has explained, the "percentage of fund" method is preferable because it *avoids* acting as a "strong disincentive to early settlement" and instead rewards efficiency. *In re Thirteen Appeals*, 56 F.3d at 307.

It is axiomatic that Class Counsel should be rewarded rather than punished for efficiently reaching an excellent settlement that provides immediate benefits to the Class. *See, e.g.*, *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) (awarding <u>one-third</u> of $11.5 million fund: "such efficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of [Class Counsel's] representation here . . . '[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice.' In the context of a complex class action, early settlement has far reaching benefits in the judicial system.") (quoting *McKenzie Construction Inc. v. Maynard*, 758 F.2d 97, 101-2 (3d Cir. 1985) (citation omitted); *see also In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1635648, at *5-6 (E.D. Pa. Apr. 5, 2018) (awarding over $100 million in attorneys' fees in "mega-fund" case even where the settlement "was secured without formal discovery, with limited litigation of motions, and with no bellwether trials"; because class counsel "mastered the intricacies of this case," they were able to reach a "relatively quick resolution" that allowed class members to receive compensation "as quickly as possible"); *Williamson v. Microsemi Corp.*, No. 5:14-CV-01827-LHK, 2015 WL 13650045, at *2 (N.D. Cal. Feb. 19, 2015) (**"This Court will not . . . punish [attorneys] for resolving matters quickly, when such quick resolution is, as here, highly beneficial to the class. Indeed, if Class Counsel had not managed to resolve the case so quickly, the case might have bogged down in expensive and protracted litigation."**) (emphasis added); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011) (awarding 30% of a $410 million "mega-fund" settlement: "this is one of the

occasions when an early resolution may demonstrate that the parties and their counsel are well prepared and well aware of the strength and weaknesses of their positions and of the interests to be served by an amicable end to the case.") (quotations omitted).[13]

### 6. *Factor 6: The Requested Award is Aligned with Awards in Comparable Cases*

Courts in this Circuit routinely award one-third of the total fund in attorneys' fees.  (*See supra* Section III(B)(1) (citing fifteen cases in this Circuit awarding one-third in attorneys' fees).) Indeed, courts have approved fee awards of one-third in private attorney general class actions that settled for amounts comparable to the $14,000,000 settlement reached in this case, including:

- ***Lapan v. Dick's Sporting Goods, Inc.***, **No. 1:13-CV-11390-RGS (ECF No. 220 at ¶ 17) (D. Mass. Apr. 19, 2016)** (awarding one-third of $10 million settlement in FLSA case)

- ***Glass Dimensions, Inc. v. State Street Bank & Trust Co.***, **C.A. No. 10-10588-DFS (ECF No. 409 at ¶ 12) (D. Mass. May 12, 2014)** (awarding one-third of the $10 million settlement in ERISA class)

- ***Bilewicz v. FMR LLC***, **No. CIV.A. 13-10636-DJC, 2014 WL 8332137, at *6 (D. Mass. Oct. 16, 2014)** (awarding one-third of the $12 million settlement in ERISA case "in light of the work performed by Plaintiffs' Counsel and the results achieved")

Courts in the First Circuit have awarded a one-third percentage in attorneys' fees even where the total settlement *exceeds* the $14,000,000 achieved in this case.  *See, e.g.*, *In re Asacol Antitrust*

---

[13] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) ("We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."); *Bezdek*, 79 F. Supp. 3d at 351 (although the settlement was reached prior to discovery and motion practice, the court found that "plaintiffs' counsel engaged in intensive efforts to move the case forward to a favorable result for the class members, without incurring the additional expense and time of conducting depositions and expert discovery"); *see also Lusby v. Gamestop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *3 (N.D. Cal. Mar. 31, 2015) (approving approximately 33% fees award in a case settled less than one year after filing); *Franco v. Ruiz Food Prods.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *19-23 (E.D. Cal. Nov. 27, 2012) (approving 33% fee in case settled within 10 months of filing with approximately 1,346 hours invested); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821 - IEG (BLM), 2010 WL 2196104, at *8-9 (S.D. Cal. June 1, 2010) (approving one-third fee in case involving approximately 932.2 hours of time); *cf. Jane Doe 30's Mother*, 64 A.3d at 402 (awarding more than $27 million in attorneys' fees in "mega-fund" sex abuse class action where the settlement "marks a welcomed early end to litigation that, once fully activated, would have caused great distress to class members").

*Litig.*, No. 1:15-CV-12730 (DJC), 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) (approving fee request for <u>one-third</u> of <u>$15 million settlement</u> in antitrust case); *Gordan*, 2016 WL 11272044, at *3 (awarding <u>one-third</u> of $30 million settlement); *Matamoros et al v. Starbucks Corp.*, No. 1:08-cv-10772 (ECF No. 169) (D. Mass. Aug. 16, 2013) (approving fee request for <u>one-third</u> of the <u>$23.5 million settlement</u> in a case alleging wage and hour violations); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 (approving attorneys' fees amounting to <u>one-third</u> of the <u>$67 million settlement</u> and noting that "the one-third percentage of fund fee is not unreasonable as matter of law.") (emphasis added).

Class Counsel's fee request for 31.6% of the total fund is less than what other courts have awarded cases Class Counsel regards as similar (e.g. those involving discrimination or sexual abuse) that were settled for comparable amounts.  Very recently, the court in ***Borders v. Wal-Mart Stores, Inc.*, No. 3:17-cv-00506-MJR-DGW (ECF No. 150 at ¶ 6) (S.D. Ill. Apr. 29, 2020)** awarded class counsel <u>one-third</u> (33.33%) of the <u>$14,000,000</u> common fund in a gender discrimination class action.  In ***Jane Doe 2 v. The Georgetown Synagogue et al.*, Civ. No. 2014 CAB 8073 (D.C. Super. Ct. 2018)**, the court awarded <u>33.3%</u> of the <u>$14,250,000</u> settlement fund reached on behalf of women who were videotaped by a Rabbi without their knowledge or consent while they undressed at a Jewish ritual bath that he oversaw.  (*See* ECF No. 49-1 at 17.)  In ***Carlson*, 2006 WL 2671105**, a <u>$15,000,000</u> settlement was reached in a Title VII gender discrimination class action.  Noting the "significant monetary relief" provided by the settlement, the court awarded <u>35.5%</u> (or $5,325,000) in attorneys' fees and emphasized that "the requested fee is within the range established by other cases."  *Id.* at *8.[14]

---

[14] *See also **Dickerson v. Novartis Corp.*, No. 1:15-CV-1980-GHW (ECF No. 120 at ¶ 7) (S.D.N.Y. Dec. 2, 2016)** (awarding <u>33.33%</u> of the $8 million settlement in a gender discrimination class under Title VII and the Equal Pay Act.) Indeed, courts across the country regularly award more than 31.6% of the common fund in discrimination cases (*see supra* Section III(B)(2)).

7.    *Factor 7: Public Policy Considerations*

Public policy considerations also favor Class Counsel's fee request.  There is a public interest in having experienced counsel undertake the risk of pursuing complex class actions to enforce civil rights and anti-discrimination laws.  *Cf. Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) (there is a "strong federal public policy favoring enforcement of the civil rights laws so important to the advancement of modern society"); *DeHoyos*, 240 F.R.D. at 328 ("While many categories of lawsuits are valued by our society, actions resulting in the erosion of discrimination and the preservation of civil rights are especially significant."); *Ingram*, 200 F.R.D. at 696 (race discrimination class action settlement: "Given the potential public policy impact of the settlement, counsel's undertaking of the risk of this litigation merits recognition in the fee award."); *Texaco*, 979 F. Supp. at 197 ("the result achieved was one that captured national attention and focused upon the importance of private attorneys general in enforcement of the proscriptions against racial discrimination in the workplace—a class action concern that has not received the same focus as have, for example, securities and products liability class actions").  This is particularly true where it is unlikely that the Class Members will pursue litigation on their own for economic or personal reasons.[15]

Moreover, courts in this Circuit have recognized that public policy supports rewarding Class Counsel for the time, expense, and risk involved in litigating complex matters, "especially where counsel's dogged efforts—undertaken on a wholly contingent basis—result in satisfactory resolution for the class." *Medoff*, 2016 WL 632238, at *9; *In re Tyco Int'l, Ltd. Multidistrict Litig.*,

---

[15] *See, e.g., In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio), *decision clarified,* 148 F. Supp. 2d 936 (S.D. Ohio 2001) (public policy supported $16.9 million fee award: "We believe that, without such a class action, small individual claimants would lack the resources to litigate a case of this magnitude. Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources.").

535 F. Supp. 2d 249, 270 (D.N.H. 2007) (finding that "countervailing public policy considerations weigh against any reduction of the [percentage of fund] award" where class counsel's "enormous expenditure of time, money, and effort" and "dogged effort" contributed to the favorable end result: "public policy favors granting counsel an award reflecting that effort."). "Without a fee that reflects the risk and effort involved in this litigation, future plaintiffs' attorneys might hesitate to be similarly aggressive and persistent when faced with a similarly complicated, risky case and similarly intransigent defendants." *In re Tyco*, 535 F. Supp. 2d at 270.

### D.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

Finally, a lodestar cross-check[16] confirms the reasonableness of Class Counsel's fee request. Class Counsel has devoted more than **6,391 hours** to prosecuting this litigation.[17]   (*See* Sanford Decl. ¶ 26 (Sanford Heisler Sharp has dedicated over 6,160 hours to this matter); ¶ 29 (Local Counsel has dedicated more than 231 hours to this matter).)   Class Counsel's aggregate lodestar exceeds **$3,547,369.** (Sanford Decl. ¶ 30.)

---

[16] "The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005).  However, "[a]s the First Circuit explained, the 'percentage of fund' approach is a useful approach, and may be especially helpful in certain cases when combined with the lodestar approach." *Mooney*, 2018 WL 10232918, at *1.

[17] This summary was prepared from detailed time records which are available at the request of the Court. (Sanford Decl. ¶ 27.)  For purposes of a lodestar cross-check, it is common for courts to review time summaries rather than the complete time records.  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) ("[I]t was not error for the District Court to rely on time summaries instead of reviewing actual time records."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("The district courts may rely on summaries submitted by the attorneys and need not review actual time records."); *Hutchison v. Lenders Portal Direct, LLC*, No. 17-cv-02456, 2018 WL 3241255, at *1, 3 (D.S.C., July 3, 2018) (granting plaintiff's requested attorneys' fees, noting that fee petition was "supported by affidavits of Plaintiff's counsel (including summaries of the work done and affirmation of counsel's regular rates)"); *Geis v. Walgreen Co.*, No. CV 07-4238 (KSH), 2010 WL 11570447, at *19 (D.N.J. Sept. 30, 2010) ("[T]he district court may rely on summaries submitted by the attorneys and need not review actual billing records."); *Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 749 (D. Md. 2002) (rejecting objection to summaries of time entries provided by party seeking attorneys' fees, noting that opposing party "provid[ed] no authority that such summaries are inappropriate" and that "courts have instructed counsel to the contrary"); *cf. In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (recognizing that the percentage of fund method is "less burdensome" because does not "forc[e] the judge to review the time records of a multitude of attorneys").

1.   *A Lodestar Multiplier of 1.38 is Reasonable and Has Been Approved*

The requested fee award represents a multiplier[18] of just **1.38**, which is well within the range of reasonableness.  Indeed, "[m]ultipliers of 2 and more have been found reasonable in common fund cases" in the First Circuit.  *Roberts*, 2016 WL 8677312, at *13 (holding that "a lodestar multiplier of nearly 2" is "reasonable in light of the counsel's efforts . . . and the significant risk they assumed in taking the case on a wholly contingent basis."); *Mooney v. Domino's Pizza, Inc.*, No. 1:14-CV-13723-IT, 2018 WL 10232918, at *1 (D. Mass. Jan. 23, 2018) ("Taking into account the additional time that class counsel have and will spend on settlement administration, the multiplier in this case is approximately **4.77**, which is within the bounds of reasonableness for a class action.") (emphasis added); *In re Tyco*, 535 F. Supp. 2d at 271 ("the resulting lodestar multiplier of 2.697 appropriately compensates counsel for the risk that they assumed in litigating the case.").[19]

Notably, Class Counsel's current lodestar (representing a multiplier of 1.38) does not take into account the hundreds of additional hours that will be dedicated to administering the Settlement and overseeing the implementation of the programmatic relief provided for in the Settlement over the next decade.  (Sanford Decl. ¶ 25; Marcuse Decl. ¶ 78.)

**E.     Reaction of the Class**

Finally, the reaction of the class also supports Class Counsel's fee request.  Significantly, ***not a single Class Member has objected to the provisions regarding attorneys' fees.***  (Marcuse

---

[18] A "lodestar multiplier is calculated by dividing the fee award by the lodestar amount."  *In re Tyco*, 535 F. Supp. 2d at 271 n.16.  "Multipliers are an accepted means of enhancing a lodestar appropriately to reflect, for example, the scale of the results achieved by prevailing counsel or the risks counsel took in pursuing contingent fees."  *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 165 (D. Mass. 2015) (citing cases).

[19] *See also In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 408 (D. Mass. 2008) ("the suggested multiplier of 1.97 is within the range that has been recognized as reasonable."); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 81–82 ("A multiplier of 2.02 is appropriate.") (citing cases).

Decl. ¶ 80.)  The lack of objections weighs heavily in favor of the requested fee.  *See Roberts*, 2016 WL 8677312, at *11 (awarding one-third of fund in attorneys' fees: "the Court has considered that no class members have objected to the Settlement generally, or to the attorneys' fee award in particular."); *In re Sequoia Sys*, 1993 WL 616694, at *1 (awarding one-third: "Influential, obviously, is the fact that the members of the class have not registered an objection"); *see also Dominguez v. Galaxy Recycling Inc.*, No. CV 12-7521 (LDW), 2017 WL 2495406, at *7 (D.N.J. June 9, 2017) (approving 37% of the total fund in FLSA case: "No class member has asserted any objection to the proposed fee award, and the Court consequently finds that this factor weighs in favor of approval.").

## IV.   PLAINTIFFS' APPLICATION FOR AN AWARD OF LITIGATION EXPENSES AND SETTLEMENT ADMINISTRATION COSTS SHOULD BE GRANTED

Class Counsel seeks reimbursement of **$125,756.42** in reasonable and necessary litigation costs incurred in prosecuting this action on behalf of the Class Members. (Sanford Decl.¶ 21 and Exhibit A.)  These expenses are attributable to vendor and consultant costs incurred for data hosting and ESI discovery; mediation expenses; expert fees; filing fees; postage expenses incurred in the mailing of the Class Notice and the administrative complaints; expenses incurred during meetings with clients and/or opposing counsel; and media and press expenses.  (*Id.*)  These costs were reasonably incurred in prosecuting this action on behalf of the Class Members and should be approved by the Court. (*Id.*)  "Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation."  *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *20 (D. Mass. Jan. 8, 2015); *see also In re Tyco*, 535 F. Supp. 2d at 274 (awarding litigation expenses).

Class Counsel requests that the Court award a maximum of **$24,217** to the Settlement Administrator and a maximum of **$85,000** to the Independent Claims Expert, Maria C. Walsh, Esq.

(ret.), for their fees and costs in administering the settlement. (Sanford Decl. at ¶ 22.)  These are reasonable expenses that should be reimbursed.  *See Mooney*, 2018 WL 10232918, at *1-2 (awarding settlement administration expenses out of the common fund); *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-CV-11390-RGS (ECF No. 220 at p.2 and ¶ 17) (D. Mass. Apr. 19, 2016) (same); *Sylvester*, 401 F. Supp. 2d at 151 (same); *In re Sequoia Sys.*, 1993 WL 616694, at *3 (same); *Jane Doe 30's Mother*, 64 A.3d at 401 (awarding reimbursement of costs incurred by the independent claims expert).

The Class Notices advised Class Members that Class Counsel would seek to recover a maximum of $300,000 in litigation expenses and settlement administration costs.  (*See* Schwermer-Sween Decl., Exhibits A and B at ¶ 15.)   No Class Member objected to the provision for reimbursement of litigation expenses and settlement administration costs.  (Marcuse Decl. ¶ 80.) Class Counsel's request for reimbursement of $234,973.42) in litigation expenses and settlement administration costs is even less than the amount set forth in the Class Notices.  Class Counsel's request for reimbursement of litigation costs and settlement administration costs should therefore be approved.

## V.  THE PLAINTIFFS ARE ENTITLED TO SERVICE AWARDS IN THE AMOUNTS REQUESTED

The Settlement states that Plaintiffs will seek service awards of $75,000 to each of the nine Plaintiffs.  (Agreement ¶ 15.)  Aggregated, the proposed awards amount to approximately 4.8% of the $14,000,000 Settlement Payment Amount, or 4.3% of the $15,500,000 gross value of the Settlement.  These service awards are fair and reasonable recognition for the time and effort the recipients expended for the benefit of the Class and the risks they assumed by initiating the litigation and publicly representing the Class.  Further, the awards are not excessive in light of both the overall Settlement Fund and the average individual monetary benefits to the Class Members.

A.    **Legal Standard**

"Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *In re Asacol Antitrust Litig.*, 2017 WL 11475275, at *4 (awarding $100,000 service award for each plaintiff). As the court recognized in *Lauture v. A.C. Moore Arts & Crafts, Inc.*,

> Plaintiffs in class . . . actions play a crucial role in bringing justice to those who may otherwise have no access to judicial enforcement of their rights . . . Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit. . . . Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain. Accordingly, incentive awards are commonly awarded to those who serve the interests of the class.

No. 17-CV-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (quotations omitted). Here, Plaintiffs have invested an enormous amount of time and made substantial personal and professional sacrifices to achieve the Settlement, which will provide substantial benefit to class members, both immediately and going forward.

Moreover, it is well-established that higher service awards are particularly justified in discrimination actions:

> **there is a fundamental distinction between litigation based on claims of racial, gender or other discrimination, and securities-based litigation . . . or antitrust suits**—the primary reported instances in which incentive awards have been sought. In securities cases, it is rare that the plaintiff—usually a shareholder who has little continuing contact with the defendant—is exposed to or can establish personal risk by reason of his or her having prosecuted the suit. **In discrimination-based litigation, the plaintiff is frequently a present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril.**

*Texaco*, 979 F. Supp. at 201 (approving service awards up to $85,000) (emphasis added); *see also Scovil*, 2014 WL 1057079, at *6 (recognizing that plaintiffs in discrimination cases face "the fear

and risk of retaliation and embarrassment in the workplace, on top of the time and administrative

commitment that is commonly shared in all cases, employment or not."); *Frank v. Eastman Kodak*

*Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (awarding 8.4% of the total fund in service awards and

noting that "such awards are particularly appropriate in the employment context . . . the plaintiff is

often a former or current employee of the defendant, and thus, by lending his name to the litigation,

he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer

or co-workers.").

    **B.**    **The Service Awards are Amply Justified**

        1.  *Courts Routinely Award Service Awards to Plaintiffs and Class Members Who Provide Substantial Assistance to the Litigation*

As set forth in their Declarations,[20] Plaintiffs have expended considerable time, effort, and

resources on behalf of the Class.  (*See* Rapuano Decl. ¶ 7 (estimating a total of 300 hours expended

in this action); Chauhan Decl. ¶ 9 (estimating a total of 200 hours expended); Brietzke Decl. ¶ 7

(estimating a total of 200 hours expended); Brown Decl. ¶ 8 (estimating a total of 300 hours

expended); Courtney Decl. ¶ 8 (estimating a total of 200 hours expended); Evans Decl. ¶ 7

(estimating a total of 200 hours expended); Jane Doe Decl. ¶ 7 (estimating a total of 300 hours

expended); Jane Doe 2 Decl. ¶ 7 (estimating a total of 200 hours expended); Jane Doe 3 Decl. ¶ 7

(estimating a total of 200 hours expended).)

Plaintiffs have dedicated a significant amount of time helping to plan and organize the

litigation; consulting with Class Counsel to the benefit of their fellow Class Members; providing

---

[20] Each of the nine Plaintiffs submitted a Declaration detailing their entitlement to Service Awards.  *See* Marcuse Decl., Exhibit 4 (Declaration of Kristina Rapuano ("Rapuano Decl.")); Exhibit 5 (Declaration of Vassiki Chauhan ("Chauhan Decl.")); Exhibit 6 (Declaration of Sasha Brietzke ("Brietzke Decl.")); Exhibit 7 (Declaration of Annemarie Brown ("Brown Decl.")); Exhibit 8 (Declaration of Andrea Courtney ("Courtney Decl.")); Exhibit 9 (Declaration of Marissa Evans ("Evans Decl.")); Exhibit 10 (Declaration of Jane Doe ("Jane Doe Decl.")); Exhibit 11 (Declaration of Jane Doe 2 ("Jane Doe 2 Decl.")); and Exhibit 12 (Declaration of Jane Doe 3 ("Jane Doe 3 Decl.")).

extensive pertinent documents; providing information regarding Dartmouth's policies and practices; assisting in settlement negotiations; and participating in three days of mediation and settlement negotiations. (Marcuse Decl. ¶ 71.) The anticipated Service Awards are reasonable in light of the Plaintiffs' significant contributions and incentive payments awarded in other cases (*see infra* Section V(C)).

The requested Service Awards are justified in light of the Plaintiffs' contributions to this litigation and the time and effort expended reaching a favorable resolution. *See, e.g., In re Asacol Antitrust Litig.*, 2017 WL 11475275, at *4 (awarding $100,000 to each plaintiff where they "ably served as class representatives in this matter, incurring time and expense in discovery and monitoring of the litigation on behalf of the Class, leading to a successful resolution of the matter."); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (awarding between $100,000 and $140,000 where the plaintiffs were "actively involved in the litigation by maintaining close contact with Class Counsel and providing advice regarding the settlements" and plaintiffs "spent hundreds of hours working on this case"); *Bellifemine*, 2010 WL 3119374, at *7 (awarding $75,000 to each of the Named Plaintiffs due to their "willingness to devote their time and energy to this civil rights representative action" and "the overall benefit conferred on the Class."); *Ingram*, 200 F.R.D. at 694 (awarding $300,000 in service awards where the plaintiffs "directly participated in the mediation process and vigorously asserted the interests of the class" and "[a] "great deal of evidence has been presented to the Court regarding the unique and extraordinary contribution these four individuals made to the investigation, prosecution, and settlement of this case").

2. *Plaintiffs Have Incurred Significant Personal Risk by Participating in this Action*

The Service Awards are amply justified where, as here, the Plaintiffs "took risks, bore

hardships, and made sacrifices that absent class members did not." *Ingram*, 200 F.R.D. at 694 (approving $300,000 service award).  This is particularly true given the highly sensitive and personal details that were exposed during the course of this public litigation that was covered widely by the media.

> ***First***, Plaintiffs incurred significant risk in coming forward and describing deeply personal accounts of sexual harassment, assault, and trauma in this highly publicized action.  Each of the Plaintiffs was subjected to intense media scrutiny for participating in this case.  **"An incentive award is particularly appropriate where class representatives have attracted significant media attention and notoriety as a result of the litigation, and experienced personal difficulties as a result."** *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *36 (C.D. Cal. Nov. 23, 2013); *see also In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *17 (awarding $120,000 service award where class representative "received considerable media coverage, with his picture appearing in the *New York Times*. [He] will likely have an even more difficult time becoming employed in the tech industry again. Accordingly, the Court finds that [he] is entitled to a heightened award in this case.").[21]

As set forth in their Declarations,[22] the Plaintiffs have been the target of vicious attacks on public forums throughout this litigation.  On social media, the Plaintiffs were publicly called "liars," "whores," "sluts," "opportunistic little bitches," "manipulative," "feminist[s] with an agenda," "man-hating," "nasty," "disgusting," "laughable," "shameful," a "fraud," an "imposter," and "the opposite of a victim."  They were accused of "spreading [their] legs to 'alleged' predators for years"

---

[21] *See also* Jayne S. Ressler, *#worstplaintiffever: Popular Public Shaming and Pseudonymous Plaintiffs*, 84 Tenn. L. Rev. 779, 802-03, 808 (2017) (explaining that a "plaintiff's identity and her claim can swiftly be revealed to millions of people"; internet shaming is like "being forced to wear a digital scarlet letter or being branded or tattooed.").

[22] (*See, e.g.*, Rapuano Decl. ¶ 14; Chauhan Decl. ¶¶ 19-20; Brietzke Decl. ¶ 15; Brown Decl. ¶ 16; Courtney Decl. ¶ 17; Evans Decl. ¶ 16; Jane Doe Decl. ¶ 15; Jane Doe 2 Decl. ¶¶ 15-16; Jane Doe 3 Decl. ¶ 14.)

and only bringing this lawsuit "for the money."  The Plaintiffs were also blamed for the death of their colleague and called "murderers" with "blood on [their] hands" who should "burn in hell." One prominent professor in the field claimed that the Plaintiffs "should be deeply ashamed of their scorched earth tactics . . . [and] contributing to [their colleague's] suicide."

**_Second_**, the Plaintiffs have assumed the substantial risk of harm to their careers as a result of their participation in this lawsuit.  As detailed in their Declarations,[23] the Plaintiffs, have, among other things, lost existing and potential scientific collaborations, authorship on ongoing projects, and professional references.  They have assumed the risk that, as plaintiffs in a highly publicized class action, they will face tremendous difficulty obtaining employment at another academic institution.  Because the Plaintiffs dedicated significant time and labor to prosecuting this action, they had less time to dedicate to their studies and professional careers—which has delayed their progress and made it difficult for them to secure grants, publish papers, and apply for jobs.

The Service Awards requested are reasonable in light of these risks.  *See, e.g.*, *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *17 (awarding between <u>$100,000</u> and <u>$140,000</u> where the plaintiffs "risked significant workplace retaliation by serving as a named plaintiff in this high-profile lawsuit. At the very least, it is likely that Plaintiffs . . . may be viewed as 'troublemakers' within the [] industry."); *Scovil*, 2014 WL 1057079, at *6 (higher service awards justified due to "the fear and risk of retaliation and embarrassment in the workplace"); *Frank*, 228 F.R.D. at 187 (awarding 8.4% of the total fund in service awards and noting that, in employment cases, "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse

---

[23] (*See, e.g.*, Rapuano Decl. ¶¶ 12, 16; Chauhan Decl. ¶¶ 15, 17; Brietzke Decl. ¶¶ 12-13; Brown Decl. ¶¶ 13-14; Courtney Decl. ¶¶ 13-14; Evans Decl. ¶¶ 12-13; Jane Doe Decl. ¶¶ 11-13; Jane Doe 2 Decl. ¶¶ 11-12, 14; Jane Doe 3 Decl. ¶¶ 11-12.)

actions by the employer or co-workers."); *Texaco*, 979 F. Supp. at 187–88, 202 ("Fear of retaliation in this context . . . ranges from hostility to threats to job assignment changes which may be initiated against the Plaintiffs by others in the lower echelons of the company, whose loyalty is offended by the disruption caused by the litigation . . . Indeed, several plaintiffs claim that, following commencement of the litigation, they were subjected to retaliatory action by . . . supervisors and employees, ranging from hostility to threats to assignment changes").

***Third*,** the Plaintiffs have experienced considerable emotional distress and personal difficulties because of their decision to publicly participate in this class action.[24]  As a result of the demands of the legal process, the media coverage, and the personal and professional harm they suffered, the Plaintiffs have (among other things) sought therapy for stress and anxiety; taken medical leave from work; experienced an increase in suicidal ideation; and/or suffered from debilitating re-traumatization as they were forced to recount their experiences over and over again.

This warrants the service awards sought.  *See, e.g.*, *Sanchez v. Frito-Lay, Inc.*, No. 114CV00797DADBAM, 2019 WL 4828775, at *10 (E.D. Cal. Sept. 30, 2019) (granting request for service award and recognizing that "the named plaintiff has . . . undergone emotional and mental stress"); *Huynh v. Hous. Auth. of Cty. of Santa Clara*, No. 14-CV-02367-LHK, 2017 WL 1050539, at *8 (N.D. Cal. Mar. 17, 2017) (granting request for service awards and emphasizing that "the named Plaintiffs disclosed potentially embarrassing details regarding physical and mental disabilities and financial status"); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 479–80 (D.N.J. 2008) (granting request for service award and noting that "it is also important to acknowledge" that the plaintiffs "sacrificed personal and medical privacy for the good of the class.");*Gaudin v. Saxon*

---

[24] (*See, e.g.*, Rapuano Decl. ¶¶ 15, 17; Chauhan Decl. ¶¶ 21, 23; Brietzke Decl. ¶ 16; Brown Decl. ¶¶ 17-19; Courtney Decl. ¶¶ 18-20; Evans Decl. ¶¶ 18-19; Jane Doe Decl. ¶¶ 16-18; Jane Doe 2 Decl. ¶¶ 17-20; Jane Doe 3 Decl. ¶¶ 15, 18-19.)

*Mortg. Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) (granting request for a service award "approximately 14 times the average class member award" and noting that the award was appropriate because, *inter alia*, the plaintiff "endured stress caused by the litigation").

Here, the Plaintiffs have "exposed themselves to professional risk and emotional upheaval, overcoming fears of possible scorn of friends and colleagues and, in some cases, the displeasure of family members." *Velez*, 2010 WL 4877852, at *4 (awarding each named plaintiff between $125,000 and $150,000 in service awards). The Service Awards sought are reasonable and should be approved.

3. *The Plaintiffs' Actions and Personal Sacrifices Have Resulted in a Significant Benefit to the Class*

"In addition to the services they have provided and the risks they have incurred, the magnitude of the relief the [Plaintiffs] obtained on behalf of the class warrants a substantial incentive award." *Ingram*, 200 F.R.D. at 694 (awarding $300,000 service award and noting that the plaintiffs fulfilled the class's interests in "effecting fundamental change" and "in receiving fair amends for injuries allegedly suffered"; "Rewarding such efforts creates the proper incentives for individuals to come forward and undertake the arduous efforts needed to challenge alleged discrimination on a class-wide level[.]") Here, the Plaintiffs' sacrifices and contributions have resulted in a significant and immediate benefit to the Class.

The $15.5 gross settlement amount (including a $14 million non-reversionary payment) will benefit approximately 76 Class Members—some of whom would otherwise be unable to recover due to the statute of limitations. (Marcuse Decl. ¶ 85.) The average class payment is more than $105,000 per person after all anticipated deductions for fees, costs, and service awards. (*Id.* ¶ 68.) The recovery is even more significant for the 29 individuals who submitted claim forms: the

average supplemental payment is almost $280,000 per person after all anticipated deductions for fees, costs, and service awards.  (*Id.* ¶ 69.)  And the Class will be able to recover this compensation without having to testify publicly about their deeply personal experiences.  Moreover, the Plaintiffs have negotiated comprehensive programmatic relief that will require an ongoing time commitment from them.   (*See* Exhibit A to the Agreement.)   These benefits to the Class are particularly exceptional in light of the risks involved with continued litigation (*see supra* Section III(C)(3)-(4)).

The requested Service Awards are thus reasonable and warranted in light of the substantial benefits to the Class.  *See In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *17 (awarding between $100,000 and $140,000 where the class "received a substantial benefit" as a result of the plaintiff's sacrifices).

### C.   Courts Have Often Awarded Service Awards in Amounts Similar to or Larger Than Those Applied for Here

The amounts sought here are well within or below the range of awards approved as reasonable. Indeed, many courts have awarded Service Awards equal to—or even greater than— the awards sought here.  *See In re Asacol Antitrust Litig.*, 2017 WL 11475275, at *4 (approving service awards of $100,000 for each of the four class representatives); *see also Castro v. Sanofi Pasteur Inc.*, No. CV117178JMVMAH, 2017 WL 4776626, at *10 (D.N.J. Oct. 23, 2017) (approving service award of $100,000 each); *Fairway Med. Ctr., L.L.C. v. McGowan Enterprises, Inc.*, No. CV 16-3782, 2018 WL 1479222, at *3 (E.D. La. Mar. 27, 2018) (approving $75,000 service award); *In re Nat'l Football League Players' Concussion Injury Litig.*, 2018 WL 1635648, at *10 (approving $100,000 service awards); *Aviles v. BAE Sys. Norfolk Ship Repair, Inc.*, No. 2:13-cv-00418 (AWA) (TEM) (ECF No. 111 at ¶ 7) (E.D. Va. Feb. 10, 2016) (awarding $120,000 service awards in hostile work environment class action settlement); *McReynolds v. Merrill Lynch & Co, Inc.*, No. 1:05-cv-06583 (ECF No. 615) (N.D. Ill. Dec. 6, 2013) (approving $250,000 service award

in race discrimination class action); *Bellifemine*, 2010 WL 3119374, at *7 (awarding $75,000 to plaintiffs for "the time and energy that they have devoted to this case, and the benefit conferred on the Class."); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *17 (awarding $120,000 service award to plaintiff subjected to "considerable media coverage" and $80,000 to each of the remaining plaintiffs); *Liberte Capital Grp. v. Capwill*, No. 5:99 CV 818, 2007 WL 2492461, at *1-3 (N.D. Ohio Aug. 29, 2007) (stating that "[i]ncentive awards, where appropriate, generally range from a few thousand dollars to $85,000," and awarding $97,134 and $95,172 to two class representatives); *Beck v. Boeing Co.,* No. 2:00-cv-00301 (ECF No. 1067 at ¶ 9) (W.D. Wash. Oct. 8, 2004) (approving award of $100,000 to each of twelve plaintiffs); *Ingram*, 200 F.R.D. at 694 (approving $300,000 awards for each of four plaintiffs in a discrimination case, noting they participated directly in mediation, achieved outstanding settlement, and "took risks, bore hardships, and made sacrifices that absent class members did not"); *In re Revco Sec. Litig.*, No. 851, 89CV593, 1992 WL 118800, at *7 (N.D. Ohio May 6, 1992) (awarding $200,000 for serving as class representative).

###### D. The Proposed Awards Are Reasonable and Appropriate in Proportion to the Class Fund as Well as to the Individual Settlement Benefits to the Class Members

Collectively, the total amount sought in Service Awards amounts to less **than 5%** of the Total Settlement Amount.  Courts regularly award Service Awards that amount to well over 5% of the total fund. *See, e.g.*, *Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 RLE, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (totaling 16.67% of the fund); *Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *3 (S.D. Tex. May 7, 2008) (totaling 14.4% of the fund); *Flores v. Anjost Corp.*, No. 11 CIV. 1531 AT, 2014 WL 321831, at *9-10  (S.D.N.Y. Jan. 28, 2014) (totaling 11.9% of fund); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ) (JCF), 2010 WL 532960, at *1-2 (S.D.N.Y. Feb. 9, 2010) (totaling about 11% of

the fund); *Frank*, 228 F.R.D. at 187-88 (totaling <u>8.4%</u> of total settlement fund); *Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DL, 2011 WL 1883188, at *10-11 (E.D. Cal. May 17, 2011) (totaling approximately <u>7.5%</u> of fund); *Rodriguez v. SGLC Inc.*, No. 2:08-CV-1971-MCE-KJN, 2014 WL 229221, at *2 (E.D. Cal. Jan. 17, 2014) (service awards totaling <u>7%</u> of fund); *Diaz v. Scores Holding Co.*, No. 07 Civ. 8718 (THK), 2011 WL 6399468, at *3-4 (S.D.N.Y. July 11, 2011) (totaling <u>6.67%</u> of fund).

The service awards sought are substantially less than the average Class Member recovery (more than $105,000 after all deductions) and the average Supplemental Payment for each of the individuals who chose to complete a claim submission (almost $280,000 per person after all deductions).  (*See* Marcuse Decl. ¶ 69.)

### E.    The Class Members Have Approved the Service Awards

Significantly, none of the Class Members have voiced any objection to the proposed service awards. *See, e.g.*, *Castro*, 2017 WL 4776626, at *10 (awarding service awards to the class representatives in the amount of $100,000 each and noting the lack of objections to the requested award). This is a strong indication that Class Members value the efforts and sacrifices of the Plaintiffs on their behalf. This factor weighs strongly in favor of approving the requested payments.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' application for final approval of (1) attorneys' fees and litigation expenses, (2) settlement administration costs; and (3) service awards to the Plaintiffs.

Dated:  May 26, 2020                          Respectfully submitted,

_/s/ Deborah K. Marcuse_____
Deborah K. Marcuse (admitted *pro hac vice*)
Steven J. Kelly (admitted *pro hac vice*)

Austin L. Webbert (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com
skelly@sanfordheisler.com
awebbert@sanfordheisler.com

David W. Sanford (admitted *pro hac vice*)
Nicole E. Wiitala (admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
nwiitala@sanfordheisler.com

*-- and --*

Charles G. Douglas, III (NH Bar #669)
**DOUGLAS, LEONARD & GARVEY, P.C.**
14 South Street, Suite 5
Concord, NH 03301
Telephone: (603) 224-1988
Fax: (603) 229-1988
chuck@nhlawoffice.com

*Attorneys for Plaintiffs and the Proposed Class*