# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,**<br><br>*Plaintiffs, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendant.* | Hon. Landya B. McCafferty, U.S.D.J.<br><br>CASE NO. 1:18-cv-01070 (LM)<br><br>**DECLARATION OF DEBORAH K. MARCUSE IN SUPPORT OF (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT, AND (2) PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |

I, Deborah K. Marcuse, hereby declare as follows:

1. I make this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

2. I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3. I am an attorney duly admitted to practice law in the states of New York, Maryland, and Connecticut, the Commonwealth of Pennsylvania, and the District of Columbia. I am admitted *pro hac vice* in this matter.

4. Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation and Agreement of Settlement ("Class Action Settlement," "Class Settlement," "Agreement," or Settlement") fully executed on September 10, 2019.

5. Attached hereto as **Exhibit 2** is a Proposed Order Granting Final Approval of the Proposed Class Action Settlement.

6. Attached hereto as **Exhibit 3** is a Proposed Final Judgment.

7. Attached hereto as **Exhibit 4** is the Declaration of Kristina Rapuano in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

8. Attached hereto as **Exhibit 5** is the Declaration of Vassiki Chauhan in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

9. Attached hereto as **Exhibit 6** is the Declaration of Sasha Brietzke in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

10. Attached hereto as **Exhibit 7** is the Declaration of Annemarie Brown in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

11. Attached hereto as **Exhibit 8** is the Declaration of Andrea Courtney in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

12. Attached hereto as **Exhibit 9** is the Declaration of Marissa Evans in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

13. Attached hereto as **Exhibit 10** is the Declaration of Jane Doe in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

14. Attached hereto as **Exhibit 11** is the Declaration of Jane Doe 2 in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

15. Attached hereto as **Exhibit 12** is the Declaration of Jane Doe 3 in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

I. **Counsel's Background**

16. I am Managing Partner of the Baltimore office of Sanford Heisler Sharp, LLP ("SHS," "Sanford Heisler Sharp," or the "Firm") and co-Chair of the firm's Title VII Practice Group. I am class counsel in the above-captioned matter with David W. Sanford, Steven J. Kelly, Nicole E. Wiitala, and Austin L. Webbert.

17. I graduated from Yale Law School in 2008, and I am a member in good standing of the Connecticut bar since 2008, the New York and District of Columbia bars since 2010, the bar of the Commonwealth of Pennsylvania since 2016, and the Maryland bar since 2018.

18. Sanford Heisler Sharp has a high standing at the bar and a reputation for zealous and effective advocacy, as well as a wealth of experience in litigating class-action cases, and a thorough familiarity with the applicable law.

19. David W. Sanford has also submitted a declaration in support of Plaintiffs' Motion for Preliminary Approval of the Class Settlement, which sets forth SHS's extensive experience litigating class-action cases.

II. **Procedural and Litigation History**

A. **Procedural History**

20. On November 15, 2018, Plaintiffs Rapuano, Chauhan, Brietzke, Brown, Courtney, Evans, and Jane Doe filed a Class Action Complaint against Defendant Trustees of Dartmouth

3

College in the United States District Court for the District of New Hampshire alleging class claims for hostile academic environment and gender discrimination under Title IX, as well as breach of fiduciary duty and negligent supervision and retention under New Hampshire law. (See Dkt. 1.) That same day, Plaintiff Jane Doe also filed a Motion for Leave to Proceed Under Pseudonym (Dkt. 2) that was granted in part pursuant to an Endorsed Order dated November 30, 2018.

21. Between December 7, 2018 and January 8, 2019, the original seven Plaintiffs (Rapuano, Chauhan, Brietzke, Brown, Courtney, Evans, and Jane Doe) filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). These Charges were also docketed with the New Hampshire Commission for Human Rights as complaints under the New Hampshire Law Against Discrimination. The EEOC issued Notice of Suit Rights letters on June 13, 2019.

22. On January 15, 2019, Dartmouth filed its Answer and Affirmative Defenses. (*See* Dkt. 24.) Dartmouth denied any wrongdoing and denied any and all allegations of discrimination, harassment and retaliation. Dartmouth also asserted several affirmative defenses.

23. The Parties' Jointly Filed Proposed Discovery Plan pursuant to Federal Rule of Civil Procedure 26(f) was filed on February 11, 2019 (Dkt. 25) and approved by the Court with modifications in a February 12, 2019 Endorsed Order.

24. The Parties filed an Electronic Discovery Protocol on March 1, 2019 (ECF No. 26) that was So-Ordered by the Court on March 4, 2019 (ECF No. 27).

25. The Parties exchanged Initial Disclosures on April 15, 2019.

26. On May 1, 2019, Plaintiffs filed their First Amended Class Action Complaint ("FAC"). (*See* Dkt. 28.) The FAC joined Jane Doe 2 and Jane Doe 3 as Named Plaintiffs and

4

included additional facts revealed by Plaintiffs' continuing investigation. Plaintiffs Jane Doe 2 and Jane Doe 3 filed Motions to Proceed Under Pseudonym that same day. (Dkts. 29-30.)

27. On May 14, 2019, Defendant filed a Consolidated Opposition to Plaintiff Jane Doe 2 and Jane Doe 3's Motions to Proceed Under Pseudonym. (*See* Dkt. 34.)

28. On May 21, 2019, Plaintiffs filed their Reply in Support of Jane Doe 2's and Jane Doe 3's Motions to Proceed Under Pseudonym. (*See* Dkts. 36-37.) Dartmouth filed a Conditional Notice of Intent to File a Surreply Memorandum on May 24, 2019. (Dkt. 38.)

29. On May 24, 2019, the Parties filed a Joint Motion for Stay Pending Mediation. (Dkt. 39.)

30. The Parties participated in two full days of private mediation on July 24, 2019 and July 25, 2019. This was followed by an additional day of negotiations between the parties on July 26, 2019, without the mediator present.

31. On August 6, 2019, the Parties filed a Joint Report Following Mediation and a Joint Motion to Extend Stay to Allow Submission of Settlement Documents, informing the Court that the Parties had reached a settlement agreement-in-principle (Dkt. 41).

32. On September 25, 2019, Class Counsel filed Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement (Dkt. 47).

33. On October 17, 2019, this Court held a Class Settlement Preliminary Approval Hearing (Dkt. 48). At the conclusion of the hearing, the Court requested that the Plaintiffs submit supplemental briefing to address certain questions regarding commonality and predominance.

34. On October 31, 2019, Plaintiffs filed their Supplemental Briefing in Further Support of Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement (Dkt. 49).

35. On January 29, 2020, this Court granted Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement (Dkt. 50).

**B.     Mediation and Settlement Negotiations**

36. To avoid further unnecessary litigation, cost, and expense, the Parties agreed on approximately May 24, 2019 to engage in private mediation. The Parties retained the Honorable Robert Morrill (Ret.), a well-known and experienced mediator familiar with New Hampshire law, to assist them in their negotiations.

37. The Parties participated in two full days of mediation before Mediator Morrill on July 24, 2019 and July 25, 2019.

38. The Parties continued to negotiate in person on July 26, 2019, and remotely over the days that followed.

39. On August 6, 2019, the Parties issued a joint press release announcing that a settlement had been reached. (*See* https://sanfordheisler.com/press-release/joint-press-release-dartmouth-college-and-nine-current-and-former-dartmouth-students-announce-settlement-of-title-ix-class-action/ and https://news.dartmouth.edu/news/2019/08/college-and-plaintiffs-title-ix-lawsuit-settle-case.)

40. After the mediation, the Parties expended significant time negotiating and finalizing the details of the settlement. The Class Settlement was dually executed by all Parties and filed with this Court on September 10, 2019 (Dkt. 45-1).

**C.     Factual Investigation**

41. In the months leading up to the filing of this lawsuit, both Sanford Heisler Sharp and Dartmouth conducted extensive factual investigations of the underlying allegations in this action. (Ex. 1 ¶¶ I-J.)

42. In 2017, Dartmouth retained an independent investigator who, over the course of eleven months, interviewed dozens of witnesses, reviewed electronic messages, collected records, and prepared written reports concerning the conduct of Todd Heatherton, William Kelley, and Paul Whalen (the "Three Former Professors") who were alleged to have discriminated against and/or harassed female students.

43. Sanford Heisler Sharp had access to and extensively reviewed the final written Investigation Reports for the Three Former Professors, which collectively amounted to 299 pages summarizing information provided to the investigator by 27 reporting parties and 118 witnesses. Sanford Heisler Sharp also had access to and reviewed drafts (by the investigator), revisions (by the reporting parties and the Professors), and exhibits (submitted by the reporting parties and the Professors).

44. Sanford Heisler Sharp also conducted its own factual investigation. Specifically, Plaintiffs' counsel spoke with at least 36 witnesses with knowledge of the underlying allegations set forth in the Complaint; reviewed extensive records and documents provided by the Plaintiffs and witnesses; reviewed information received through Freedom of Information Act ("FOIA") requests to the U.S. Department of Education and the Office for Civil Rights; reviewed policy documents, handbooks, and other publicly available information on Dartmouth's website or located through internet searches; and researched related media articles and blog or social media posts.

45. The Parties exchanged further information through written correspondence; phone calls; in-person meetings; detailed mediation statements and exhibits submitted by the Plaintiffs; three full days of in-person negotiations; the exchange of initial disclosures; and the detailed Complaint (Dkt. 1), Answer (Dkt. 24), and First Amended Complaint (Dkt. 28) filed in this action.

### D.      Preliminary Approval and Notice to Class Members

46.     Plaintiffs moved for preliminary approval of the Class Settlement on September 25, 2019 (Dkt. 47) and filed supplemental briefing on October 31, 2019 at the request of the Court (Dkt. 49).

47.     On January 29, 2020, this Court granted Plaintiffs' Motion and preliminarily approved the Settlement. (*See* Dkt. 50.)

48.     The Court appointed David W. Sanford, Deborah K. Marcuse, Steven J. Kelley, Nicole E. Wiitala, and Austin L. Webbert of Sanford Heisler Sharp, LLP as Class Counsel (*see* Dkt. 50 at 40); appointed Kristina Rapuano, Vassiki Chauhan, Sasha Brietzke, Annmarie Brown, Andrea Courtney, Marissa Evans, Jane Doe, and Jane Doe 2 as Class Representatives (*id.*); appointed Maria C. Walsh to serve as the Independent Claims Expert (*id.*); appointed Rust Consulting as the Settlement Administrator (*id.* at 41); and ordered issuance of the class-wide Notices detailing the terms of the Settlement. (*id.* at 41; Dkts. 47-4, 47-5).

49.     The Court-approved Notice of Class Action Settlement (*see* Exhibits A and B to the Declaration of Sara Schwermer-Sween ("Schwermer-Sween Decl.")) was distributed to a total of ninety-two (92) current and former students.[1] The Notice comprehensively advised women of the terms of the Settlement, including the method of computing payments, the claims that would be released, and the provision for attorneys' fees, costs, and service awards.

50.     On February 12, 2020, Class Counsel sent a personalized Class Notice via First Class mail to ninety-one (91) individuals that had been identified through Dartmouth's records. A total of five (5) letters were returned as undeliverable. An updated mailing address was obtained for three (3) of these individuals, and a new Class Notice was sent via First Class Mail. Rust could

---

[1] This figure includes the ninety-one (91) individuals received the Class Notice on February 12, 2020 (*see infra* ¶ 50) and the additional one (1) individual who was identified as a Class Member on February 24, 2020 (*see infra* ¶ 52).

not obtain an updated address for the remaining two (2) individuals whose Notices were returned as undeliverable. (*See* Schwermer-Sween Decl. ¶ 10(i).) However, a Notice was successfully emailed to one (1) of those individuals. *Id.* Class Counsel attempted to contact both individuals through email, LinkedIn, and/or Facebook and did not receive a response.

51. On February 12, 2020, Rust sent a personalized Class Notice via email to the eighty-seven (87) individuals whose email addresses were contained in the Class List. Of the 87 emails sent, two (2) bounced back as invalid. An updated email address was obtained for one (1) of these individuals and a new notice was successfully sent. On February 12, 2020, Counsel sent a personalized Class Notice via First Class mail to each of the ninety-one (91) Class Members.

52. An additional Class Member was identified on or around February 24, 2020, and a personalized Class Notice was sent to the individual via email and First Class Mail.

53. As of this date, Rust has received twenty-nine (29) claim submissions. All twenty-nine (29) claim submissions were received on or before the claim submission deadline. (*See* Schwermer-Sween Decl. ¶ 16.)

54. A total of seventy-three (73) individuals received the Class Notice attached as Exhibit A to the to the Declaration of Sara Schwermer-Sween. A total of nineteen (19) individuals received the Class Notice attached as Exhibit B to the to the Declaration of Sara Schwermer-Sween.[2]

55. Rust received a claim submission from seven (7) of the nineteen (19) individuals who fall solely within Paragraph 2(a)(iv) of the Class Definition (e.g. those who must submit a claim submission in order to receive compensation) and who therefore received the Class Notice

---

[2] Twenty (20) individuals initially received the Class Notice attached as Exhibit B. However, it was later determined that one (1) of these individuals should have received the Class Notice attached as Exhibit A. A revised Notice was sent to her.

attached as Exhibit B to the Declaration of Sara Schwermer-Sween. The remaining twelve (12) individuals who fall solely within Paragraph 2(a)(iv) of the Class Definition did not submit a written statement and required certification form as was required for a valid claim submission.

56. The Class is comprised of seventy-six (76) individuals, including the individuals who submitted claims pursuant to Paragraph 2(a)(iv) of the Class Definition.

57. Not a single individual objected to the Settlement. Just four (4) people (4.3% of the individuals who received the Class Notice) returned exclusion requests.

### III. Overview of the Terms of the Settlement

58. The Settlement Class (Ex. 1 ¶ 2) is defined as:

A. All current and former women graduate students at Dartmouth who meet any of the following criteria:
   i. Between April 1, 2012 and August 31, 2017 were graduate advisees of one or more of the Todd Heatherton, William Kelley, and/or Paul Whalen (i.e., the "Three Former Professors");
   ii. Between April 1, 2012 and August 31, 2017 were teaching or research assistants for one or more of the Three Former Professors;
   iii. Were graduate students in the Psychological and Brain Sciences Department who, between April 1, 2012 and August 31, 2017, (i) co-authored at least one paper with one or more of the Three Former Professors based on research physically conducted in the lab during that time period, or (ii) co-authored at least three papers with one or more of the Three Former Professors; OR
   iv. Were graduate students in the Psychological and Brain Sciences Department between March 31, 2015 and August 31, 2017 who do not fit within categories (i)-(iii), but who will attest that they experienced dignitary, emotional, educational and/or professional harm during this period as a result of the misconduct of one or more of the Three Former Professors.

B. All current and former women undergraduate students at Dartmouth who, between April 1, 2012 and August 31, 2017, worked as research assistants for one or more of the Three Former Professors. As used herein, "research assistants" includes individuals working on an honors thesis or independent research study in one or more of the Three Former Professors' labs.

59.     A total of ninety-two (92) current and former graduate and undergraduate students at Dartmouth received notice.

60.     The Class is comprised of seventy-six (76) individuals. Because twelve (12) of the noticed individuals who fall solely within Paragraph 2(a)(iv) of the Class Definition (i.e. those who must submit a claim submission in order to receive compensation and be counted as Class Members) did not submit claim submissions, they are not among those identified as Class Members.

61.     The proposed Settlement provides for the Trustees of Dartmouth College to make a total non-reversionary settlement payment in the amount of $14,000,000 ("the Class Settlement Amount"), and to undertake programmatic measures to settle and satisfy the "Released Claims" as that term is defined in the Settlement Agreement. (Ex. 1 (Agreement) § III.)

62.     The Class Settlement Amount will be allocated for Base Payments and Supplemental Payments to Plaintiffs and the Class, Service Awards, attorneys' fees and costs, and the fees and costs of the Settlement Administrator and the Independent Claims Expert. (*Id.* §§ IV, V.)

63.     All Class Members who do not opt out of the Settlement ("Settlement Class Members") are entitled to receive a Base Payment of $1,000. (Ex. 1 ¶ 19.)

64.     In addition to a Base Payment, Settlement Class Members who submit a Claim Form are also eligible to receive a supplemental payment to be determined by an Independent Claims Expert. (Ex. 1 ¶ 20.) The Independent Claims Expert will evaluate the Claim Forms (including all facts that pre- or post-date the class period) to determine each Class Member's proportional *pro rata* share of the remaining settlement funds. In arriving at the distribution, the Independent Claims Expert shall consider nine factors set forth in the Settlement Agreement, as

well as any documentation and/or evidence provided by each Settlement Class Member demonstrating the harm caused to the Settlement Class Member by the alleged hostile environment. (*Id.*) Where Settlement Class Members claim emotional distress or physical illness caused by the alleged hostile environment, the Independent Claims Expert shall give greater weight to the claims of those Settlement Class Members who submit medical or mental health records supporting such allegations. (*Id.*) All Claim Forms and supporting documentation shall be treated as strictly confidential and shall not be disclosed to anyone except the Independent Claims Expert. (*Id.* ¶ 21.) Settlement Class Members were permitted to request the guidance or assistance of Class Counsel and/or the Settlement Administrator in compiling and completing their submissions. (*Id.*)

65. In addition to the monetary payment, Dartmouth will also undertake programmatic steps. (*See* Exhibit A to the Settlement (Ex. 1).)

66. The Parties estimate that the programmatic relief package carries an additional monetary value of approximately $1,500,000.

### E. The Class Monetary Award Settlement Fund

67. The $14 million non-reversionary payment will benefit the 76 Class Members.

68. After all anticipated deductions for service awards, settlement administration expenses, and attorneys' fees and costs, the funds to be distributed to the Class Members would support an average award in excess of $105,000.

69. After all anticipated deductions for service awards, settlement administration expenses, and attorneys' fees and costs, and the $1,000 Base Payments to all eligible individuals, the remaining funds support an average Supplemental Payment of almost $280,000 per person for each of the twenty-nine (29) individuals who submitted a Claim Form.

### F. Service Awards

70. Subject to Court approval, each of the nine Plaintiffs will receive a Service Award in the amount of $75,000 to be paid from the Class Settlement Amount.

71. The proposed Service Awards are designed to compensate Plaintiffs for their service in pursuing the class claims and ultimately procuring the Settlement for the class. Throughout the pendency of this action, the Class Representatives have adequately and vigorously represented their fellow class members. Plaintiffs have expended considerable time, effort, and resources on behalf of the Class by helping to plan and organize the litigation; consulting with Class Counsel to the benefit of their fellow Class Members; providing a wealth of documents and information regarding relevant facts; and assisting in settlement negotiations. Plaintiffs also incurred significant risk in lending their names and their deeply personal accounts of sexual harassment, assault, and trauma to this highly publicized action. All nine Plaintiffs participated in all three days of mediation and in-person negotiation—eight attended in person, and one attended by phone—and advocated vigorously for the interests of the class as a whole. Without their efforts and sacrifices, the Settlement could not have been achieved. The total amount allocated for service payments is less than 5% of the Class Settlement Amount.

72. Plaintiffs Kristina Rapuano, Vassiki Chauhan, Sasha Brietzke, Annemarie Brown, Andrea Courtney, Marissa Evans, Jane Doe, Jane Doe 2, and Jane Doe 3 have each submitted a Declaration detailing the time, effort, and resources they have expended on behalf of the Class and the personal and professional risks and difficulties they have experienced as a result of their participation in this litigation. (*See* Exhibits 4-12.)

## IV. Attorneys' Fees, Costs, and Expenses

### A. Reimbursement of Litigation Costs and Expenses

13

73.     David W. Sanford has submitted a declaration which sets forth SHS's litigation expenses (Exhibit A to the Declaration of David W. Sanford ("Sanford Decl.")) in this matter.

74.     Class Counsel requests reimbursement of litigation costs and expenses totaling $125,756.42.

75.     In addition, Class Counsel requests an award of costs incurred by the Settlement Administrator and Independent Claims Expert in administering the settlement from the Class Settlement Amount. These costs, collectively, will not exceed $109,217. Rust Consulting, Inc. (the Settlement Administrator) has agreed to cap its total costs at $24,217 provided that there is no significant change in the scope of work anticipated with administering the Settlement. Maria C. Walsh, Esq. (the Independent Claims Expert) has agreed to cap her total costs at $85,000.

**B.     Attorneys' Fees**

76.     David W. Sanford has submitted a declaration which sets forth SHS's hours and lodestar expended on this matter (Sanford Decl. ¶ 26) and Douglas, Leonard & Garvey, P.C.'s hours and lodestar expended on this matter (*see* Sanford Decl., Exhibit B). Since March 2018, Class Counsel has expended over 6,160 hours on this matter, resulting in a lodestar of $ 3,347,099.00. (Sanford Decl. ¶ 26.) Since November 7, 2018, Douglas, Leonard & Garvey, P.C. has expended over 231.3 hours on this matter, resulting in a lodestar of $200,270.00 (Sanford Decl., Exhibit B at ¶ 5.) Collectively, Class Counsel and Douglas, Leonard & Garvey, P.C. have expended over 6,391 hours on this matter, resulting in a lodestar of $3,547,369.00. (Sanford Decl. ¶ 30.)

77.     Class Counsel has spent thousands of hours investigating, prosecuting, and resolving this class action, all on a contingency basis. Class Counsel's work in this matter included, *inter alia*:

a. Investigating legal and factual allegations of gender discrimination, sexual harassment, sexual assault, and retaliation bias at Dartmouth;

b. Conducting an extensive factual investigation, including (i) interviewing at least 36 witnesses with knowledge of the underlying allegations set forth in the Complaint; (ii) reviewing extensive records and documents provided by the Plaintiffs and witnesses; (iii) requesting and reviewing information received through Freedom of Information Act ("FOIA") requests to the U.S. Department of Education and the Office for Civil Rights; (iv) reviewing policy documents and handbooks; (v) reviewing other publicly available information on Dartmouth's website or located through internet searches; and (vi) researching related media articles and blog or social media postings;

c. Reviewing the final written Investigation Reports for the Three Former Professors (which collectively amounted to 299 pages summarizing information provided to the investigator by 27 reporting parties and 118 witnesses) as well as drafts (by the investigator), revisions (by the reporting parties and the Professors), and exhibits (submitted by the reporting parties and the Professors);

d. Drafting the 72-page Complaint (Dkt. 1), the 85-page First Amended Complaint (Dkt. 28); and seven (7) separate class charges of discrimination that were filed with the Equal Employment Opportunity Commission;

e. Briefing a motion to proceed under pseudonym that was opposed by Dartmouth;

f. Preparing other miscellaneous filings (*see, e.g.*, Dkts. 3-5, 12-18, 29-32, 39-42, 44-46, 53);

g. Drafting, editing, and negotiating the Parties' ESI Protocol and Joint Discovery Plan;

h. Preparing the Plaintiffs' Initial Disclosures, written discovery, and a confidentiality stipulation;

i. Working with a Title IX expert to investigate Plaintiffs' allegations and formulate a programmatic relief proposal;

15

      j.      Meet and confer sessions with opposing counsel;

      k.      Participating in two full days of mediation, followed by one full-day of in-person negotiations; participating in continuing settlement negotiations after the mediation; negotiating and preparing the Class Action Settlement Agreement and Class Notice and Claim Form;

      l.      Seeking and obtaining preliminary approval of the settlement, including supplemental briefing;

      m.      Securing and working with a Settlement Administrator and Independent Claims Expert to effectuate the Settlement; assisting the Plaintiffs and Class Members with the Settlement and their claims submissions

      n.      Participating in hundreds of calls with the Plaintiffs and class members regarding their claims, the litigation, the Settlement, and the claims submission (in addition to extensive written communication); and

      o.      Moving for final approval of the class settlement.

78. In addition, Class Counsel will—over the next decade—commit significant ongoing time and resources to this litigation. In accordance with the Settlement, one component of the programmatic relief agreed upon by the Parties will be implemented by Dartmouth over the next ten years. (*See* Agreement, Exhibit A). Class Counsel will review Dartmouth's implementation of the programmatic relief and pursue any alleged noncompliance with the terms of the Settlement. Moreover, Class Counsel will also be required to commit time and resources to administering the Settlement. Based on Class Counsel's experience in other cases, this ongoing work will likely involve hundreds of additional hours.

    **C.**    **The Class Members' Overwhelmingly Favorable Response to the Settlement**

79. The Court-approved Notice of Class Action Settlement (Dkts. 47-4 and 47-5) was distributed to a total of ninety-two (92) current and former students. The Notice comprehensively advised women of the terms of the Settlement, including the method of computing payments, the claims that would be released, and the provision for attorneys' fees, costs, and service awards.

Specifically, the Notice informed Class Members that Counsel would request the following payments to be paid out of the Class Settlement Amount: service awards in the amounts of $75,000 for each of the nine Plaintiffs; reimbursement of out-of-pocket litigation expenses in an amount not expected to exceed $300,000; reimbursement of settlement administration costs incurred by the Settlement Administrator and the Independent Claims Expert in an amount not to exceed $110,000; and up to 35% of the Class Settlement Amount in attorneys' fees.

80. Not a single individual objected to the Settlement.

81. Four (4) individuals returned timely exclusion requests, representing just 4.3% of the individuals who received the Class Notice.

82. The Class Members' nearly universal participation in the Settlement—with no objection to the service awards, attorneys' fees, costs, or any other aspect of the Settlement, even from the small number who chose not to participate—confirms the reasonableness of these requests.

V. **The Settlement is Fair and Reasonable and Should Be Approved**

83. Accompanying this Declaration is a Memorandum of Law that demonstrates why, under governing law, this Court should approve the proposed Settlement and grant the relief requested in the instant motion. For the reasons explained in the accompanying Memorandum of Law, the parties' proposed Settlement falls clearly within the range of approval.

84. After extensive analysis and deliberation, the Parties and Class Counsel are of the opinion that the Settlement described in the Settlement Agreement is fair, reasonable, and adequate. Class Counsel and the Plaintiffs believe that the Settlement serves the best interest of the Class based on all the facts and circumstances, including the risk of significant delay and the uncertainties surrounding class certification and liability. In reaching this conclusion, Class

Counsel has considered, among other things, the risks of litigation (including the risks of establishing Dartmouth's liability and the costs incurred by Class Members), the time necessary to achieve a final resolution through trial and any appeals, the complexity of Plaintiffs' claims and Dartmouth's defenses, and the benefits accruing to the Class under the Settlement.

85. The process for recovering payments is structured to enable Plaintiffs and Class Members to vindicate their rights while avoiding unnecessary deterrents to participation in the Settlement by Class Members. If this matter were to proceed in litigation, Plaintiffs and Class Members would be subject to discovery and could be called to testify at trial. Their identities, and extremely sensitive and personal details relating to sexual abuse and trauma, would likely be publicly exposed and revisited in excruciating detail through litigation. In addition, the class definition (dating back to 2012) expands beyond the three-year statute of limitations (as measured from the filing of the complaint), thus allowing recovery for individuals who would likely otherwise be time-barred from bringing claims.

86. Throughout the settlement process, Class Counsel has worked diligently to achieve a settlement that resolves class claims in this matter while providing fair treatment to the Class Members and preserving Class Members' rights. The final Class Action Settlement Agreement reflects these efforts and represents a fair, reasonable, and adequate compromise. In arriving at this favorable resolution, Plaintiffs and their Counsel recognized that, in the absence of an approved settlement, they would face a long litigation course that would consume considerable time and resources and present all Parties with ongoing litigation risks and uncertainties. Plaintiffs and their Counsel also recognized the significant expense and both material and intangible burdens associated with protracted discovery, a lengthy trial, and potential appellate process, and further acknowledged that both certification of the class and success on the merits remain uncertain.

Absent this settlement, Dartmouth would have contested the propriety of class treatment both in response to a motion for certification and through trial. Dartmouth has maintained that the College acted lawfully at all times.

87. Plaintiffs face considerable risks in establishing class-wide liability and in obtaining certification of the proposed class action. If liability is established, Plaintiffs will also have to establish damages. But for the Settlement, Defendants would strongly dispute the propriety of Rule 23 certification. Even if the Court were to grant certification, maintaining certification through trial could continue to present challenges. Defendants are likely to move for decertification and would likely file a Rule 26(f) petition, which would result in further expense and delay.

88. Class Members have overwhelmingly approved the Settlement. Out of the ninety-two (92) individuals who received the Court-approved Notice, there were no objections to the Settlement, and only four individuals requested exclusion from the Settlement.

89. Therefore, Plaintiffs and their Counsel determined that the proposed Settlement is in the best interest of Plaintiffs and the Class based on all the facts and circumstances, including the risks of litigation; the uncertainty of class certification in the absence of settlement; the enormous costs associated with continued litigation; the time necessary to achieve a final resolution through trial and any appeals and the potential for significant delay therein; the complexity of Plaintiffs' claims; and the significant benefits accruing to the Class under the Settlement.

90. Counsel is unaware of any individual actions that have been instituted by class members.

91. The Plaintiffs have not entered into any agreement apart from the proposed Settlement required to be identified under Federal Rule of Civil Procedure 23(e).

92.     Dartmouth takes no position with respect to Plaintiffs' Motion for Final Approval of the Class Settlement or Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

## VI.     Class Counsel's Support of the Settlement

93.     Based on my experience in this type of litigation and my thorough familiarity with the factual and legal issues in this case, the risks of litigation and potential recoverable damages, the significant recovery obtained for Class Members, and the overwhelmingly positive response by the Class Members, I am confident that that this Settlement is an excellent result for the Class and is in Class Members' best interest. I strongly and unreservedly support the final approval of the Settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Baltimore, Maryland
       May 26, 2020                           */s/ Deborah K. Marcuse*
                                              Deborah K. Marcuse