# Exhibit 4

## UNITED STATES DISTRICT COURT
## THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,**<br><br>*Plaintiffs, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendant.* | **Hon. Landya B. McCafferty, U.S.D.J.**<br><br>CASE NO. 1:18-cv-01070 (LM)<br><br>**DECLARATION OF KRISTINA RAPUANO** |

I, Kristina Rapuano, hereby declare as follows:

1.      I make this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

2.      I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3.      I am a Plaintiff and a Class Representative in this lawsuit.

### The Steps I Have Taken to Protect the Interests of the Class and the Degree to Which the Class Has Benefitted from those Actions

4.      From the beginning when I joined the suit, I understood that as a Class Representative, I had a duty to ensure that the interests of all class members were protected and that I needed to make decisions with those interests in mind. I understood that this meant that I could not put my own interest before the interests of the Class, if ever there were a conflict between our interests. I also understood that I would be required to commit to providing meaningful assistance to our lawyers as the prosecution of this case moved forward.

1

5.      I believe I have fulfilled, and I continue to fulfill, my duties to the Class. I have been actively involved in the litigation of this case, as described more fully below, and have been in close contact with the attorneys representing the Class in order to monitor and contribute to this case since I joined.

6.      I believe that this settlement brings substantial benefits to the class.  The monetary component of the settlement enables class members to receive substantial compensation in a fair and equitable way without having to testify publicly, either in court or at a deposition, about their personal experiences. After having my own personal experiences scrutinized and examined in the public eye, I recognize the importance of class members not needing to testify publicly. Publicly sharing these experiences not only retraumatizes victims but also can cause further harm.

**The Amount of Time and Effort I Have Expended in this Action**

7.      Since I first became involved in this litigation in November 2017, I estimate that I have spent almost three hundred (300) hours performing actions that benefitted the Class at large, including participating in mediation and helping to craft a plan for Class-wide relief that I am confident will effect meaningful change at Dartmouth and provide meaningful redress for members of the Class. A summary of my activities is as follows:

a)      In the months leading up to the filing of the Complaint, I dedicated many hours to assisting with the investigation of the class action.  I carried out multiple full initial investigative interviews with Class Counsel and shared my knowledge of Dartmouth's culture and policies and practices. After my initial interview, my attorneys and I had many calls and exchanged many emails regarding my claims and the class claims.

b)      I helped my attorneys prepare the lengthy Class Action Complaint. I had numerous phone calls with my attorneys, reviewed drafts of the Complaint, and made edits to it before it was filed. I then reviewed the final product after the Complaint was filed.

c)      After the filing of the Complaint, I conferred with my attorneys to help them prepare my EEOC charge. I reviewed and edited this document before it was filed.

d)      I helped my attorneys prepare the First Amended Complaint and reviewed the final work product after it was filed.

e)      I spent a significant amount of time gathering and reviewing documents and other potential information about the case and my claims. I looked for documents in hard copy and in my emails, text messages, and other electronic files. I also turned over access to my personal email accounts and my cell phone—which I found extremely invasive—in the name of service to the Class. I also reviewed documents with my attorneys.

f)      I conferred with my attorneys regarding our initial disclosures, including making lists of witnesses and the locations of various documents. I also had conversations with my attorneys about this process.

g)      I prepared for, attended, and actively participated in three full days of mediation and settlement negotiations. I estimate that I spent almost one hundred (100) hours preparing for and participating in the mediation:

   (1)      To prepare for the mediation, I drafted and edited a victim impact statement, which was one of the more difficult steps for me during the entire litigation process; participated in extensive phone calls and conference calls with my attorneys leading up to the mediation;

3

reviewed the Mediation Statement; and worked on a programmatic relief proposal with my attorneys and my expert.

(2)     I travelled from Pittsburgh, PA to Boston (on July 23, 2019) and then back to New Haven, CT (on July 26, 2019) to attend the mediation.

(3)     The mediation and settlement negotiations, which I participated in, took place on July 24-26, 2019 (three full days).  I worked almost nonstop for these three days.  The actual mediation sessions and negotiations totaled about thirty (30) hours (10 ½ hours on the first day, 9 ½ hours on the second day, and 10 hours on the third day).

(4)     During the mediation, I spent many hours meeting with my attorneys.  We met the day before the mediation for several hours. We also met early before each day of negotiations.  After each day of mediation concluded, I spent several hours meeting with my attorneys and/or my co-Plaintiffs, sometimes late into the night.  I also spoke with our expert in preparation for the next day of negotiations.

(5)     The programmatic relief portion of the settlement was extremely important to me.  Before the mediation, I spent many hours discussing programmatic relief with my attorneys, working with an expert, and researching in order to come up with a proposal that was meaningful and beneficial to the Class.

h)      After the mediation and negotiation sessions on July 24-26, 2019, settlement negotiations continued for several weeks.  I actively participated in these ongoing discussions with my attorneys and spent a significant amount of time working to finalize the settlement.

i)      I then reviewed the Settlement Agreement and related documents.

j)      I participated in regular conversations with my attorneys throughout the duration of this case, with calls often lasting over an hour and sometimes as often as several times a day. There were also substantial additional communications by way of frequent and regular email correspondence.

k)      I also met with my attorneys in person on five occasions (in addition to the day before the mediation).  I travelled to New York to meet with my attorneys on November 13-15, 2018; March 21, 2019; and March 22, 2019.

8.      Finally, one of the most significant services that I believe I contributed to the Class is that I agreed to be interviewed by several major media outlets covering the case.  I ordinarily would have declined to speak with a major news outlet about such an intimate topic, but I believed that it was my duty as a Class Representative to raise awareness about my experiences at Dartmouth and ensure that other members of the class knew about the existence of our class action and could stay informed.

### Duties to the Class Going Forward

9.      If the settlement is approved, all Plaintiffs will have an ongoing duty to monitor the programmatic relief with Class Counsel for several years.  The other Plaintiffs and I will work with Dartmouth in proposing nominees for the External Advisory Committee.  We will also meet with the External Advisory Committee to recommend strategies, resources, and/or sources of expertise, and to share any information in any format we believe might be relevant to the C3I

initiative.  We will also meet with the Provost to ensure continuing dialogue and feedback on the implementation of these programmatic measures.  I have already dedicated substantial time to these responsibilities, and I anticipate spending many more hours on these ongoing duties.

### Negative Effects, Risks, and Stresses of Participating in This Litigation

10.     Though I am proud of the work that we have done, participating as a Plaintiff in this action has come with many risks, burdens, and negative effects.

11.     The decision to come forward as a named Plaintiff in a publicly filed case was very difficult. I initially wanted to remain anonymous given the risks to my career and my personal life. I ultimately chose to use my real name because I did not want to feel silenced. I recognized that the lawsuit would have a greater impact if we spoke out about our experiences rather than feeling pressured to keep our silence. By using my name, I felt I had greater control over the situation by claiming my own narrative. However, I feared that coming forward with my name would have an impact on my new position as a postdoctoral fellow at Yale, and also worried about the negative attention it would bring to myself and my family.

12.     Given the close-knit nature of my field, I took substantial risks in my own career by stepping forward in this lawsuit.  Participating as a plaintiff in this case had a significant impact on my career. Even though I had just started a new position (May 2018), my ability to focus on work was extremely impaired due to my involvement in the lawsuit. Not only was I spending a significant amount of time per week preparing materials and engaging in discussions with my attorneys, but the emotional toll of this labor also had a major impact on my ability to be productive. I felt mentally and emotionally exhausted more often than not and struggled to perform even the minimum amount of work expected of me. As a consequence of my limited productivity, I have struggled to successfully secure grants, publish papers, and apply for jobs—despite being

highly productive and successful in my academic endeavors prior to filing the lawsuit. Grant funding, publications, and faculty applications are crucial aspects of academia. In order for me to continue in my field, I will need to work twice as hard as some of my colleagues in order to make up for productivity lost during this period of time.

13.     This case was widely covered by major media outlets.  The highly publicized nature of this lawsuit made participating as a Plaintiff extremely stressful, taxing, and difficult.  A google search of my name yields results describing, in detail, deeply personal accounts of the sexual harassment, assault, and trauma that I experienced.

14.     I was attacked on social media for coming forward.  Immediately following the lawsuit filing, I desperately worked to avoid negative comments and attacks on social media given the fragility of the context as well as my own mental state. However, this avoidance became more of a challenge after a faculty member in the Department committed suicide because the attacks re-escalated and became even more direct and personal. On Twitter, several Plaintiffs and I were publicly called "murderers." On Facebook I received direct messages such as "I hope you live with the knowledge that your actions directly contributed to a man taking his own life. But I mean...someone hugged you. That must have been so traumatizing. Definitely worth millions. You are a bad person." I also received a message that stated: "There will be blood on your hands for the rest of your life. I hope you can live with that."

15.     I experienced substantial personal consequences as a result of my participation in this lawsuit. Although the psychological effects of my experiences with the three former professors were significant on their own, engaging in litigation with Dartmouth as a Plaintiff brought about its own set of traumatic and challenging experiences. Mentally and emotionally, I felt drained and as though I was past my breaking point. The need to endlessly recount gruesome details of my

experiences in a very public way was a constant reminder of my trauma. Physically, I stopped taking care of myself—I felt ill most of the time and as a result barely ate. I had an extremely difficult time sleeping and was eventually prescribed a sleep aid after exhausting over-the-counter options. I experienced depression and anxiety as well as significant weight loss.  I experienced an increase in suicidal ideation. I found it extremely difficult to cope with the sudden influx of public attention given the personal nature of my experiences, and the weight of that feeling was debilitating.

16.     My participation in this lawsuit placed strain on my professional relationships with colleagues at Dartmouth as well as at Yale, my current institution. At Dartmouth, I have lost friends and collaborators—in particular after the suicide of the former Department Chair, David Bucci. He was an informal mentor to me during the College's Title IX investigation, even serving on my dissertation committee to ensure the successful completion of my PhD. The lawsuit not only damaged my relationship with him but also damaged my relationship with colleagues that placed blame for his death on the Plaintiffs. I have been unfriended and unfollowed by friends and colleagues on social media and have encountered silence from others. The negative effect of the lawsuit on my professional environment has far-reaching consequences. Success in academia is heavily dependent on one's professional network—including collaborators, colleagues, and mentors. My participation in this lawsuit has negatively impacted each of those in some way.

17.     In addition to the impact on my professional relationships, my involvement in the lawsuit also negatively affected my personal relationships. My decision to come forward as a Plaintiff significantly strained and contributed to the end of my five-year relationship. My participation in the lawsuit and its effects on my mental health also impacted my desire and ability

to socialize with friends and family, creating additional stress on my personal relationships and social support system.

18.     Despite these concerns, I decided to join this lawsuit and serve as a Class Representative because I wanted to end the cycle of abuse by the three former professors that had become so commonplace. Upon recognizing that other students were being harmed, I felt it necessary to come forward with my own story.   My primary goal in serving as a Class Representative was to shed light on the systemic patterns of abuse by the three former professors, to seek justice for all of the women affected, and to push for institutional changes that would prevent such abuses of power to persist in the future.

### **Approval of the Settlement**

19.     I was not promised any amount of money in connection with my support of this settlement or any prior settlement with Dartmouth. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the class.  I authorized the proposed settlement of $14 million and programmatic relief with Dartmouth, and I believe that the proposed settlement is fair, adequate, and reasonable.

20.     I also believe that the proposed allocation plan is fair, reasonable, and adequate, and does not impermissibly favor some class members over others.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 25, 2020                              */s/ Kristina Rapuano*
                                                 Kristina Rapuano

9