# Exhibit 6

UNITED STATES DISTRICT COURT
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,<br><br>*Plaintiffs, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendant.* | **Hon. Landya B. McCafferty, U.S.D.J.**<br><br>Case No. 1:18-cv-01070 (LM)<br><br>**DECLARATION OF SASHA BRIETZKE** |

I, Sasha Brietzke, hereby declare as follows:

1. I make this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

2. I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3. I am a Plaintiff and a Class Representative in this lawsuit.

**The Steps I Have Taken to Protect the Interests of the Class and the Degree to Which the Class Has Benefitted from those Actions**

4. From the beginning when I joined the suit, I understood that as a Class Representative, I had a duty to ensure that the interests of all class members were protected and that I needed to make decisions with those interests in mind. I understood that this meant that I could not put my own interest before the interests of the Class, if ever there were a conflict between our interests. I also understood that I would be required to commit to providing meaningful assistance to our lawyers as the prosecution of this case moved forward.

1

5. I believe I have fulfilled, and I continue to fulfill, my duties to the Class. I have been actively involved in the litigation of this case, as described more fully below, and have been in close contact with the attorneys representing the Class in order to monitor and contribute to this case since I joined.

6. I believe that this settlement brings substantial benefits to the class. The monetary component of the settlement enables class members to receive substantial compensation in a fair and equitable way without having to testify publicly, either in court or at a deposition, about their personal experiences. Recounting my narrative in a public forum—through court filings and media attention—has taken a personal toll (and a toll on my career aspirations) that I am grateful not everyone in the class will have to experience in order to receive justice. In addition, this settlement will help bring restorative justice and healing to the women in the class. In shedding light on the broader issue of sexual harassment in academia, I believe we have sparked a national conversation regarding abusive power dynamics and sexism that permeate our field. With this conversation, I hope meaningful policy and cultural reform takes place, so that women can not only survive, but thrive, and contribute valuable discoveries to the field.

**The Amount of Time and Effort I Have Expended in this Action**

7. Since I first became involved in this litigation in May 2018, I estimate that I have spent more than two hundred (200) hours performing actions that benefitted the Class at large, including participating in mediation and helping to craft a plan for Class-wide relief that I am confident will effect meaningful change at Dartmouth and provide meaningful redress for members of the Class. A summary of my activities is as follows:

a) In the months leading up to the filing of the Complaint, I dedicated many hours to assisting with the investigation of the class action. I carried out multiple full initial

2

        investigative interviews with Class Counsel and shared my knowledge of Dartmouth's culture and policies and practices. After my initial interview, my attorneys and I had many calls and exchanged many emails regarding my claims and the class claims.

b)     I helped my attorneys prepare the lengthy Class Action Complaint. I had numerous phone calls with my attorneys, reviewed drafts of the Complaint, and made edits to it before it was filed. I then reviewed the final work product after the Complaint was filed.

c)     After the filing of the Complaint, I conferred with my attorneys to help them prepare my EEOC charge. I reviewed and edited this document before it was filed.

d)     I helped my attorneys prepare the First Amended Complaint and reviewed the final work product after it was filed.

e)     I spent a significant amount of time gathering and reviewing documents and other potential information about the case and my claims. I looked for documents in hard copy and in my emails, text messages, and other electronic files. I also turned over access to my personal email accounts and my cell phone—which I found extremely invasive—in the name of service to the Class. I also reviewed documents with my attorneys.

f)     I conferred with my attorneys regarding our initial disclosures, including making lists of witnesses and the locations of various documents. I also had conversations with my attorneys about this process.

g)     I also prepared for, attended, and actively participated in three full days of mediation and settlement negotiations. I estimate that I spent almost one hundred (100) hours preparing for and participating in the mediation:

    (1)     To prepare for the mediation, I drafted and edited a victim impact statement which was re-traumatizing and emotionally tolling; participated in extensive phone calls and conference calls with my attorneys leading up to the mediation; reviewed the Mediation Statement; and worked on a programmatic relief proposal with my attorneys and my expert.

    (2)     I travelled from New Hampshire to Boston (on July 23, 2019) and then back again (on July 27, 2019) to attend the mediation.

    (3)     The mediation and settlement negotiations, which I participated in, took place on July 24-26, 2019 (three full days). I worked almost nonstop for these three days. The actual mediation sessions and negotiations totaled about thirty (30) hours (10 ½ hours on the first day, 9 ½ hours on the second day, and 10 hours on the third day).

    (4)     During the mediation, I also spent many hours meeting with my attorneys. We met the day before the mediation for several hours. We also met early before each day of negotiations. After each day of mediation concluded, I spent several hours meeting with my attorneys and/or my co-Plaintiffs, sometimes late into the night. I also spoke with our expert in preparation for the next day of negotiations.

    (5) The programmatic relief portion of the settlement was extremely important to me.  Before the mediation, I spent many hours discussing programmatic relief with my attorneys, working with an expert, and researching in order to come up with a proposal that was meaningful and beneficial to the Class.

h) After the mediation and negotiation sessions on July 24-26, 2019, settlement negotiations continued for several weeks.  I actively participated in these ongoing discussions with my attorneys and spent a significant amount of time working to finalize the settlement.

i) I then reviewed the Settlement Agreement and related documents.

j) I participated in regular conversations with my attorneys throughout the duration of this case, with calls often lasting over an hour and sometimes as often as several times a day. There were also substantial additional communications by way of frequent and regular email correspondence.

k) I also met with my attorneys in person on six occasions (in addition to the day before the mediation).  I travelled to New York to meet with my attorneys on November 13-15, 2018; March 21, 2019; and March 22, 2019.  In April 2018, I met with my attorneys in New Hampshire.

8. Finally, one of the most significant services that I believe I contributed to the Class is that I agreed to be interviewed by several major media outlets covering the case.  I ordinarily would have declined to speak with a major news outlet about such an intimate topic, but I believed that it was my duty as a Class Representative to raise awareness about my experiences at

5

Dartmouth and ensure that other members of the class knew about the existence of our class action and could stay informed.

### Duties to the Class Going Forward

9. If the settlement is approved, all Plaintiffs will have an ongoing duty to monitor the programmatic relief with Class Counsel for several years. The other Plaintiffs and I will work with Dartmouth in proposing nominees for the External Advisory Committee. We will also meet with the External Advisory Committee to recommend strategies, resources, and/or sources of expertise, and to share any information in any format we believe might be relevant to the C3I initiative. We will also meet with the Provost to ensure continuing dialogue and feedback on the implementation of these programmatic measures. I anticipate spending many hours on these ongoing duties, and I have already dedicated time to fulfilling these responsibilities.

### Negative Effects, Risks, and Stresses of Participating in This Litigation

10. Though I am proud of the work that we have done, participating as a Plaintiff in this action has come with many risks, burdens, and negative effects.

11. The decision to come forward as a named Plaintiff in a publicly filed case was very difficult. I was concerned about retaliation within my community, being threatened or doxed online, and general mental wellbeing. I was young in the field, and I did not want people to learn my name for anything other than my scientific contributions. However, I ultimately chose to use my real name because I did not want this issue to be ignored. I felt that my story would resonate with other women in academia, and I wanted us to collectively come together to change how women are treated at institutions. I wanted to show my face and use my voice to signal that *we* should not feel shame for others choosing to abuse their power.

12. Given the close-knit nature of my field, I took substantial risks in my own career by stepping forward in this lawsuit. The Three Former Professors were all highly established

researchers in my small sub-field, each with many professional contacts. In speaking up publicly as a person who was partly responsible in ending their careers, I risked severing professional ties with colleagues loyal to the Three Former Professors that could result in lost collaborations (e.g., research publications) or lost opportunities for next steps in my career (e.g., postdoctoral fellowship). Further, in being labelled as a whistleblower I risked my ability to be hired at an academic institution in the future.

13. Due to the time demands and emotional labor required to be a Plaintiff, I have not accomplished the amount of work that I had hoped to by this point in my career. I expected by now to have at least one or two published empirical papers, but I have not published anything in graduate school as a first author as of now. At times while working on the lawsuit, it has felt like I have had two full time jobs. There have been periods in which concentrating on science has felt trivial, or nearly impossible to do, given the weight of the lawsuit and its emotional impact on me.

14. This case was widely covered by major media outlets. The highly publicized nature of this lawsuit made participating as a Plaintiff extremely stressful, taxing, and difficult. A Google search of my name yields results describing, in detail, deeply personal accounts of the sexual harassment, assault, and trauma that I experienced.

15. I was attacked on social media for coming forward. I have been called a liar, manipulative, feminist with an agenda, man-hating, a "slut," among others. I have been accused of being cynically only after money as a reason for standing up for myself, my co-plaintiffs, and the class.

16. As a consequence of being a Plaintiff in the lawsuit, I have entered several fairly severe depressive episodes. I have experienced insomnia, nightmares, paranoia, panic attacks, and anxiety. Periods of intense stress regarding the lawsuit occurring concurrently with intense stress

regarding being a doctoral student (e.g., qualifying exams, deadlines) caused me to burn out many times. I was prescribed medication for symptoms I was dealing with post-filing.

17. Because I am still a graduate student at Dartmouth, my relationships with other students and members of the department has been strained because of the Plaintiffs' choice to bring this lawsuit. It has caused a rift in a community filled with individuals I care deeply about.

18. Despite these concerns, I decided to join this lawsuit and serve as a Class Representative to vindicate the rights of the other members of the class and serve as a resource for women who have experienced sexual harassment in academia.

## Approval of the Settlement

19. I was not promised any amount of money in connection with my support of this settlement or any prior settlement with Dartmouth. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the class. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the class. I authorized the proposed settlement of $14 million and programmatic relief with Dartmouth, and I believe that the proposed settlement is fair, adequate, and reasonable.

20. I also believe that the proposed allocation plan is fair, reasonable, and adequate, and does not impermissibly favor some class members over others.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 25, 2020               /s/ Sasha Brietzke
                                  Sasha Brietzke