# Exhibit 8

**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,** | **Hon. Landya B. McCafferty, U.S.D.J.** |
| *Plaintiffs, on behalf of themselves and all others similarly situated,* | Case No. 1:18-cv-01070 (LM) |
| v. | |
| **TRUSTEES OF DARTMOUTH COLLEGE,** | **DECLARATION OF ANDREA COURTNEY** |
| *Defendant.* | |

I, Andrea Courtney, hereby declare as follows:

1.      I make this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

2.      I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3.      I am a Plaintiff and a Class Representative in this lawsuit.

**The Steps I Have Taken to Protect the Interests of the Class and the Degree to Which the Class Has Benefitted from those Actions**

4.      From the beginning when I joined the suit, I understood that as a Class Representative, I had a duty to ensure that the interests of all class members were protected and that I needed to make decisions with those interests in mind. I understood that this meant that I could not put my own interest before the interests of the Class, if ever there were a conflict between our interests. I also understood that I would be required to commit to providing meaningful assistance to our lawyers as the prosecution of this case moved forward.

5.      I believe I have fulfilled, and I continue to fulfill, my duties to the Class. I have been actively involved in the litigation of this case, as described more fully below, and have been in close contact with the attorneys representing the Class in order to monitor and contribute to this case since I joined.

6.      I believe that this settlement brings substantial benefits to the class.  The monetary component of the settlement enables class members to receive substantial compensation in a fair and equitable way without having to testify publicly, either in court or at a deposition, about their personal experiences.  From my personal experience as a plaintiff, I know that recounting my personal story for the public record and the media was stressful, vulnerable, and embarrassing, so I believe a substantial benefit to the class is not having to testify publicly about these experiences. I also believe that the closure this settlement brings is an additional benefit to the Class.  Though each class member has experienced very personal harm, there is shared experience across the class, and there is a closure that comes from having your experiences validated and recognized. Recognizing this case as a class action validates the deeply personal experiences of each person without requiring them to publicly relate their experiences.

7.      In addition, I believe that our class action lawsuit has also shined light on the prevalence of sexual harassment and misconduct in academia, which has initiated a national conversation about preventative measures and how to foster inclusive academic environments.

### The Amount of Time and Effort I Have Expended in this Action

8.      Since I first became involved in this litigation in August 2018, I estimate that I have spent more than two hundred (200) hours performing actions that benefitted the Class at large, including participating in mediation and helping to craft a plan for Class-wide relief that I am

confident will effect meaningful change at Dartmouth and provide meaningful redress for members of the Class. A summary of my activities is as follows:

a)      In the months leading up to the filing of the Complaint, I dedicated many hours to assisting with the investigation of the class action.  I carried out multiple full initial investigative interviews with Class Counsel and shared my knowledge of Dartmouth's culture and policies and practices. After my initial interview, my attorneys and I had many calls and exchanged many emails regarding my claims and the class claims.

b)      I helped my attorneys prepare the lengthy Class Action Complaint. I had numerous phone calls with my attorneys, reviewed drafts of the Complaint, and made edits to it before it was filed. I then reviewed the final work product after the Complaint was filed.

c)      After the filing of the Complaint, I conferred with my attorneys to help them prepare my EEOC charge. I reviewed and edited this document before it was filed.

d)      I helped my attorneys prepare the First Amended Complaint and reviewed the final work product after it was filed.

e)      I spent a significant amount of time gathering and reviewing documents and other potential information about the case and my claims.  I looked for documents in hard copy and in my emails, text messages, and other electronic files. I also turned over access to my personal email accounts and my cell phone—which I found extremely invasive—in the name of service to the Class. I also reviewed documents with my attorneys.

f)   I conferred with my attorneys regarding our initial disclosures, including making lists of witnesses and the locations of various documents.  I also had conversations with my attorneys about this process.

g)   I also prepared for, attended, and actively participated in three full days of mediation and settlement negotiations.  I estimate that I spent nearly one hundred (100) hours just preparing for and attending the mediation:

(1)   To prepare for the mediation, I drafted and edited a detailed victim impact statement which was distressing and emotionally draining to prepare; participated in extensive phone calls and conference calls with my attorneys leading up to the mediation; reviewed the Mediation Statement; and worked on a programmatic relief proposal with my attorneys and my expert.

(2)   To attend the mediation, I had to travel from San Francisco to Boston (on July 23, 2019) and then back again (on July 27, 2019).

(3)   The mediation and settlement negotiations, which I participated in, took place on July 24-26, 2019 (three full days).  I worked almost nonstop for these three days.  The actual mediation sessions and negotiations totaled about thirty (30) hours (10 ½ hours on the first day, 9 ½ hours on the second day, and 10 hours on the third day).

(4)   During the mediation, I also spent many hours meeting with my attorneys.  We met the day before the mediation for several hours.  We also met early before each day of negotiations.  After each day of mediation concluded, I spent several hours meeting with my

4

attorneys and/or my co-Plaintiffs, sometimes late into the night.  I also spoke with our expert in preparation for the next day of negotiations.

(5)     The programmatic relief portion of the settlement was extremely important to me.  Before the mediation, I spent many hours discussing programmatic relief with my attorneys, working with an expert, and researching in order to come up with a proposal that was meaningful and beneficial to the Class.

h)     After the mediation and negotiation sessions on July 24-26, 2019, settlement negotiations continued for several weeks.  I actively participated in these ongoing discussions with my attorneys and spent a significant amount of time working to finalize the settlement.

i)     I then reviewed the Settlement Agreement and related documents.

j)     I participated in regular conversations with my attorneys throughout the duration of this case, with calls often lasting over an hour and sometimes as often as several times a day. There were also substantial additional communications by way of frequent and regular email correspondence.

k)     I also met with my attorneys in person on five occasions (in addition to the day before the mediation).  I travelled to New York to meet with my attorneys on November 13-15, 2018; March 21, 2019; and March 22, 2019.

9.     Finally, one of the most significant services that I believe I contributed to the Class is that I agreed to be interviewed by several major media outlets covering the case.  I ordinarily would have declined to speak with a major news outlet about such an intimate topic, but I believed

that it was my duty as a Class Representative to raise awareness about my experiences at Dartmouth and ensure that other members of the class knew about the existence of our class action and could stay informed. I spent many, many hours preparing for media interviews and speaking with the media.

### Duties to the Class Going Forward

10.     If the settlement is approved, all Plaintiffs will have an ongoing duty to monitor the programmatic relief with Class Counsel for several years.  The other Plaintiffs and I will work with Dartmouth in proposing nominees for the External Advisory Committee.  We will also meet with the External Advisory Committee to recommend strategies, resources, and/or sources of expertise, and to share any information in any format we believe might be relevant to the C3I initiative.  We will also meet with the Provost to ensure continuing dialogue and feedback on the implementation of these programmatic measures.  I anticipate spending many hours on these ongoing duties.  I have already dedicated many hours to preparing for and participating in ongoing programmatic relief efforts.

### Negative Effects, Risks, and Stresses of Participating in This Litigation

11.     Though I am proud of the work that we have done, participating as a Plaintiff in this action has come with many risks, burdens, and negative effects.

12.     The decision to come forward as a named Plaintiff in a publicly filed case was very difficult.  By using my real name, I felt vulnerable to retaliation and personal and professional reputational harm.  I worried that I would receive negative attention, including threats, from the perpetrators, strangers, the media, family and friends, Dartmouth affiliates, and professional colleagues.  However, I ultimately chose to use my real name because I wanted to commit fully to the mission of the lawsuit and take control over the narrative.  I knew there would be an ongoing effort by the media and community to identify and contact unnamed plaintiffs. Rather than live in

fear of being identified against my will, I decided to get ahead of the speculation and take ownership over my story.

13.     Given the close-knit nature of my field, I took substantial risks in my own career by stepping forward in this lawsuit.  The perpetrators were extremely well-connected in my field, so speaking against them publicly put me at risk of losing potential professional connections and collaborators.  Worse, I risked being labeled as a "trouble-maker" for speaking out against professors in my own academic department and losing future job prospects to this reputation. Senior colleagues warned me to "put my head down and do science" or else risk being taken as not being serious about my science.  Others have accused the Plaintiffs (including me) of soiling the reputation of the university and department.  Colleagues with connections to the Dartmouth administration and faculty have publicly positioned themselves against the Plaintiffs, calling our credibility into question and pitting professional ties against us.

14.     As a result of my public involvement in this litigation, I have lost existing and potential scientific collaborations, authorship on ongoing projects, and professional references. Professional colleagues with whom I have collaborated have severed their professional ties with me.  I have lost key professional references.

15.     Participating as a plaintiff in a highly publicized lawsuit has been distressing, emotionally exhausting, and time consuming.  I have regularly sought therapy for stress and anxiety related to the demands of the legal process, the media coverage, and the personal and professional harm I have experienced as a result of being a plaintiff.  This emotional toll also negatively impacted my scientific productivity for years.  It often felt like I had two full-time jobs and did not have the time and energy to do both, and so my work productivity suffered.

16.     This case was widely covered by major media outlets.  The highly publicized nature of this lawsuit made participating as a Plaintiff extremely stressful, taxing, and difficult.  A google search of my name yields results describing, in detail, deeply personal accounts of the sexual harassment, assault, and trauma that I experienced.

17.     I was attacked on social media for coming forward.  Colleagues and strangers have questioned the motivations behind my participation in the lawsuit, suggesting I have participated for personal gain.  I have been publicly accused of slandering innocent Dartmouth faculty in a scorched-earth approach to justice.  When news broke of the suicide of a former colleague in October 2019, I was blamed for his death and accused of murder.  Some people have criticized the Plaintiffs for going too far, while others have criticized us for not going far enough.

18.     As a plaintiff I have felt extraordinarily vulnerable: I have felt a wealth of pride, but also extreme levels of stress, anxiety, shame, guilt, and grief.  Being a high-profiles case, the lawsuit has received substantial attention from the public and has already initiated many public conversations about sexual misconduct in academia and appropriate routes to justice. As a result of being a named plaintiff, I have been persistently vigilant of any news or public opinion about the case and the plaintiffs, and each criticism has felt personal.  It is a heart-breaking experience to invest so much of yourself in a fight for change, only to be told you could have done more or should have done less.

19.     Participating in the lawsuit has created a rift in my relationship with the Dartmouth community.  I care deeply about my graduate school community, but I no longer feel welcome there.  Many students and faculty have expressed their appreciation and support for the lawsuit, but others have cut social and professional ties.  Some have even made it difficult for me to sever

ties with the three former professors and to move on with my career.  Many people continue to blame the plaintiffs for the continued unrest in the Department.

20.     As a result of the stress, emotional strain, and the time it required, my participation in the lawsuit has placed emotional strain on my personal relationships with friends and family

21.     Despite these concerns, I decided to join this lawsuit and serve as a Class Representative because I wanted to bring justice for all the women involved and shine light on the misconduct and abuse perpetrated by the three former professors and across academia.  My primary goal in serving as a Class Representative was to bring justice and closure to the other women in the class and prevent something like this from happening again.

## **Approval of the Settlement**

22.     I was not promised any amount of money in connection with my support of this settlement or any prior settlement with Dartmouth. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the class.  I authorized the proposed settlement of $14 million and programmatic relief with Dartmouth, and I believe that the proposed settlement is fair, adequate, and reasonable.

23.     I also believe that the proposed allocation plan is fair, reasonable, and adequate, and does not impermissibly favor some class members over others.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 25, 2020                              */s/ Andrea Courtney*
                                                 Andrea Courtney