# Exhibit 9

## UNITED STATES DISTRICT COURT
## THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,** | **Hon. Landya B. McCafferty, U.S.D.J.** |
| *Plaintiffs, on behalf of themselves and all others similarly situated,* | CASE NO. 1:18-cv-01070 (LM) |
| v. | **DECLARATION OF MARISSA EVANS** |
| **TRUSTEES OF DARTMOUTH COLLEGE,** | |
| *Defendant.* | |

I, Marissa Evans, hereby declare as follows:

1.      I make this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

2.      I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3.      I am a Plaintiff and a Class Representative in this lawsuit.

**The Steps I Have Taken to Protect the Interests of the Class and the Degree to Which the Class Has Benefitted from those Actions**

4.      From the beginning when I joined the suit, I understood that as a Class Representative, I had a duty to ensure that the interests of all class members were protected and that I needed to make decisions with those interests in mind. I understood that this meant that I could not put my own interests before the interests of the Class, if ever there were a conflict between our interests. I also understood that I would be required to commit to providing meaningful assistance to our lawyers as the prosecution of this case moved forward.

5.      I believe I have fulfilled, and I continue to fulfill, my duties to the Class. I have been actively involved in the litigation of this case, as described more fully below, and have been in close contact with the attorneys representing the Class in order to monitor and contribute to this case since I joined.

6.      I believe that this settlement brings substantial benefits to the class. The monetary component of the settlement enables class members to receive substantial compensation in a fair and equitable way without having to testify publicly, either in court or at a deposition, about their personal experiences. Releasing the intimate details of my own sexual assault and harassment at the hands of the three former professors had debilitating effects on my mental and physical health. It forced me to relive the years of trauma and created a public record of those events that anyone with a search engine can access. If a settlement leads to the implementation of programmatic change (and significant compensation) without the need for other victims to sacrifice their own privacy and personal well-being, then that is ultimately the most beneficial option. By settling, we were able to make foundational changes and receive financial relief that could help alleviate the emotional and financial costs incurred over the course of several years. Now that the victims' voices have been heard, action has been taken, and compensation is available, we can all finally focus on healing.

### The Amount of Time and Effort I Have Expended in this Action

7.      Since I first became involved in this litigation in August 2018, I estimate that I have spent about two hundred (200) hours performing actions that benefitted the Class at large, including participating in mediation and helping to craft a plan for Class-wide relief that I am confident will effect meaningful change at Dartmouth and provide meaningful redress for members of the Class. A summary of my activities is as follows:

a)      In the months leading up to the filing of the Complaint, I dedicated many hours to assisting with the investigation of the class action.  I carried out multiple full initial investigative interviews with Class Counsel and shared my knowledge of Dartmouth's culture and policies and practices. After my initial interview, my attorneys and I had many calls and exchanged many emails regarding my claims and the class claims.

b)      I helped my attorneys prepare the lengthy Class Action Complaint. I had numerous phone calls with my attorneys, reviewed drafts of the Complaint, and made edits to it before it was filed. I then reviewed the final work product after the Complaint was filed.

c)      After the filing of the Complaint, I conferred with my attorneys to help them prepare my EEOC charge. I reviewed and edited this document before it was filed.

d)      I helped my attorneys prepare the First Amended Complaint and reviewed the final work product after it was filed.

e)      I spent a significant amount of time gathering and reviewing documents and other potential information about the case and my claims.  I looked for documents in hard copy and in my emails, text messages, and other electronic files. I also turned over access to my personal email accounts and my cell phone—which I found extremely invasive—in the name of service to the Class. I also reviewed documents with my attorneys.

f)      I conferred with my attorneys regarding our initial disclosures, including making lists of witnesses and the locations of various documents.  I also had conversations with my attorneys about this process.

g)      I also prepared for, attended, and actively participated in three full days of mediation and settlement negotiations.  I estimate that I spent close to one hundred (100) hours preparing for and participating in the mediation:

> (1)    To prepare for the mediation, I drafted and edited a victim impact statement which was extremely distressing; participated in extensive phone calls and conference calls with my attorneys leading up to the mediation; reviewed the Mediation Statement; and worked on a programmatic relief proposal with my attorneys and my expert.

> (2)    I travelled from San Francisco to Boston (on July 23, 2019) and then home to New Jersey (on July 26, 2019) to attend the mediation.

> (3)    The mediation and settlement negotiations, which I participated in, took place on July 24-26, 2019 (three full days).  I worked almost nonstop for these three days.  The actual mediation sessions and negotiations totaled about thirty (30) hours (10 ½ hours on the first day, 9 ½ hours on the second day, and 10 hours on the third day).

> (4)    During the mediation, I also spent many hours meeting with my attorneys.  We met the day before the mediation for several hours. We also met early before each day of negotiations.  After each day of mediation concluded, I spent several hours meeting with my attorneys and/or my co-Plaintiffs, sometimes late into the night.  I also spoke with our expert in preparation for the next day of negotiations.

        (5)     The programmatic relief portion of the settlement was extremely important to me.  Before the mediation, I spent many hours discussing programmatic relief with my attorneys, working with an expert, and researching in order to come up with a proposal that was meaningful and beneficial to the Class.

h)     After the mediation and negotiation sessions on July 24-26, 2019, settlement negotiations continued for several weeks.  I actively participated in these ongoing discussions with my attorneys and spent a significant amount of time working to finalize the settlement.

i)     I then reviewed the Settlement Agreement and related documents.

j)     I participated in regular conversations with my attorneys throughout the duration of this case, with calls often lasting over an hour and sometimes as often as several times a day. There were also substantial additional communications by way of frequent and regular email correspondence.

k)     I also met with my attorneys in person on five occasions (in addition to the day before the mediation).  I travelled to New York to meet with my attorneys on November 13-15, 2018; March 21, 2019; and March 22, 2019.

8.     Finally, one of the most significant services that I believe I contributed to the Class is that I agreed to be interviewed by several major media outlets covering the case.  I ordinarily would have declined to speak with a major news outlet about such an intimate topic, but I believed that it was my duty as a Class Representative to raise awareness about my experiences at Dartmouth and ensure that other members of the class knew about the existence of our class action and could stay informed.

### Duties to the Class Going Forward

9.      If the settlement is approved, all Plaintiffs will have an ongoing duty to monitor the programmatic relief with Class Counsel for several years.  The other Plaintiffs and I will work with Dartmouth in proposing nominees for the External Advisory Committee.  We will also meet with the External Advisory Committee to recommend strategies, resources, and/or sources of expertise, and to share any information in any format we believe might be relevant to the C3I initiative.  We will also meet with the Provost to ensure continuing dialogue and feedback on the implementation of these programmatic measures.  I anticipate spending many hours on these ongoing duties.  I have already dedicated several hours to these duties.

### Negative Effects, Risks, and Stresses of Participating in This Litigation

10.      Though I am proud of the work that we have done, participating as a Plaintiff in this action has come with many risks, burdens, and negative effects.

11.      The decision to come forward as a named Plaintiff in a publicly filed case was very difficult.  I worried that my involvement could affect my personal relationships and my job and educational prospects. However, I ultimately chose to use my real name because I wanted to represent the women who did not feel they could come forward on their own, dismantle the shame and fear surrounding coming forward and reporting, and, hopefully, inspire the general public outside of Dartmouth College to evaluate and improve issues in their own communities.

12.      Given the close-knit nature of my field, I took substantial risks in my own career by stepping forward in this lawsuit.  Because I was a Plaintiff in a lawsuit against my former advisor, I am afraid that other professionals will be afraid to take a chance on me and may view me as a "troublemaker." I have not yet applied to graduate school, and my involvement in a case like this could jeopardize my chances of acceptance—or limit the professors who will be willing

to work with me. I have been advised by my current employers and close friends to avoid discussing the lawsuit in professional settings, even when asked.

13.     In such a competitive academic environment, it is a much safer choice for professors to choose a candidate who has not brought a lawsuit of this type against an academic institution. If it is perceived that I am more likely to engage in legal action and publicly vocalize issues within a department, I pose a greater risk to the reputation of that department. The public nature of the lawsuit could also bring unwanted attention to the lab or make it appear as though the lab is taking a political stance on our case by hiring/accepting me. In any case, learning explicit details about my mental health state and traumatic past undermines the chance for me to be evaluated solely based on my research experience.

14.     The stress and emotional toll of participating in the lawsuit as a Plaintiff led to my medical withdrawal from the premedical post baccalaureate program that I was enrolled in during the fall of 2018. In the following months, my mental and physical health deteriorated to the point where it was recommended by medical professionals that I turn down the position I had been offered at Stanford University so that I could receive treatment. My continued involvement in the case throughout my year long position at Stanford required me to, at times, prioritize my responsibilities as a Class Representative over my employment.  I had to take off from work for a week to attend mediation, and at various points I spent dozens of hours (that could have been used to complete assignments for work) working on the case. I was overwhelmed by the added workload from the lawsuit, and the negative psychological impact elicited by repeatedly retelling traumatic memories and being subjected to social media attacks also caused severe feelings. This distracted me from my research and almost led to my termination from my job.

15.     This case was widely covered by major media outlets.  The highly publicized nature of this lawsuit made participating as a Plaintiff extremely stressful, taxing, and difficult.  A google search of my name yields results describing, in detail, deeply personal accounts of the sexual harassment, assault, and trauma that I experienced.

16.     I was attacked on social media for coming forward. There are streams of demeaning comments posted in response to the online news videos about our case.  We have been called "liars," "whores," "opportunistic little bitches." and other names along those same lines. One comment directed to me in particular said "Once a female is sexually abused, do they immediately turn into super butchy carpet munchers?" in reference to my appearance.

17.     After the death of the former Chair of the Department, the social media attacks were more vicious. Random people found my and the other Plaintiffs' twitter accounts on the internet and either posted directly on our pages or tagged us in posts. I was called "evil" and told I was "complicit in David Bucci's death" and "should be haunted forever by what I have done." The lawsuit was referred to as a "shakedown." The Plaintiffs were criticized by a Psychology professor at a prominent university for our "bull-dozing tactics." On one news article, commenters went so far as to say that we "Marxists" deserved to "be hung from lampposts."

18.     Being a Plaintiff in this lawsuit has taken a toll on my emotional and mental health. The stress of being a Plaintiff caused me to experience extreme depression and debilitating anxiety attacks (among other things).  I eventually saw a psychiatrist and began taking medication to cope. After the Plaintiffs (including me) were blamed for Dave Bucci's death on social media, I was so distressed that I took a week of bereavement leave from my job.  When I told my collaborator that I was taking bereavement leave as a result of what happened, we searched for free counseling resources together. When I returned from bereavement leave, I was still consumed by depression,

anxiety, and guilt.  I cried in my office most days and was barely able to accomplish any of my assigned tasks. I was stripped of any professionalism and dignity I felt I had in the office space. The unwarranted yet crippling guilt retraumatized me, which bled into my social relationships and my ability to perform at work.

19.     Being a Plaintiff has also had a profound effect on my relationship with my family. When I went to Dartmouth, I was an accomplished student and a track runner with several state titles and a national ranking.  I was actually the first person from my high school to ever be accepted into Dartmouth College.  My reputation was one my family was proud of. They never missed an opportunity to tell our friends and family about me or about how proud they were.  Now, no one in my family can talk about what happened to me at Dartmouth.  My family begged me not to follow through with the lawsuit because it would be "airing out my personal business to the world," and "those things should be kept quiet." Now, it is clear they are ashamed to talk about me to the same people they used to boast to.

20.     Despite these concerns, I decided to join this lawsuit and serve as a Class Representative to obtain justice for the other women in the class.

## **Approval of the Settlement**

21.     I was not promised any amount of money in connection with my support of this settlement or any prior settlement with Dartmouth. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the class.  I authorized the proposed settlement of $14 million and programmatic relief with Dartmouth, and I believe that the proposed settlement is fair, adequate, and reasonable.

22.     I also believe that the proposed allocation plan is fair, reasonable, and adequate, and does not impermissibly favor some class members over others.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated: May 25, 2020                           */s/ Marissa Evans*          
                                              Marissa Evans