# Exhibit 11

UNITED STATES DISTRICT COURT
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3, <br><br>*Plaintiffs, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendant.* | **Hon. Landya B. McCafferty, U.S.D.J.**<br><br>CASE NO. 1:18-cv-01070 (LM)<br><br>**DECLARATION OF JANE DOE 2** |

I, Jane Doe 2, hereby declare as follows:

1. I make this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

2. I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3. I am a Plaintiff and a Class Representative in this lawsuit.

**The Steps I Have Taken to Protect the Interests of the Class and the Degree to Which the Class Has Benefitted from those Actions**

4. From the beginning when I joined the suit, I understood that as a Class Representative, I had a duty to ensure that the interests of all class members were protected and that I needed to make decisions with those interests in mind. I understood that this meant that I could not put my own interest before the interests of the Class, if ever there were a conflict between our interests. I also understood that I would be required to commit to providing meaningful assistance to our lawyers as the prosecution of this case moved forward.

1

5.	I believe I have fulfilled, and I continue to fulfill, my duties to the Class. I have been actively involved in the litigation of this case, as described more fully below, and have been in close contact with the attorneys representing the Class in order to monitor and contribute to this case since I joined.

6.	I believe that this settlement brings substantial benefits to the class. The monetary component of the settlement enables class members to receive substantial compensation in a fair and equitable way without having to testify publicly, either in court or at a deposition, about their personal experiences. I know from personal experience because of my involvement as a plaintiff that the ability to avoid in person testimony is a significant benefit. Not only is this a potentially career-jeopardizing event, but it would have been a tremendous emotional burden for the women involved. This case garnered a fair amount of media attention, and thus testimony in court would have subjected those involved to public scrutiny and ridicule. In addition, this settlement will bring closure to class members. Having the suffering of Class Members acknowledged and compensated will allow healing to begin and give Class Members the financial means to seek the professional care they need. On a larger scale, the media surrounding this case has been vast. The reach of the coverage has furthered the national conversation on the handling and mishandling of sexual assault, particularly as it pertains to higher education.

**The Amount of Time and Effort I Have Expended in this Action**

7.	Since I first became involved in this litigation in February 2019, I estimate that I have spent close to two hundred (200) hours performing actions that benefitted the Class at large, including participating in mediation and helping to craft a plan for Class-wide relief that I am confident will effect meaningful change at Dartmouth and provide meaningful redress for members of the Class. A summary of my activities is as follows:

a)     In the months leading up to the filing of the First Amended Complaint (which added me as a Plaintiff), I dedicated many hours to assisting with the investigation of the class action. I carried out multiple full initial investigative interviews with Class Counsel and shared my knowledge of Dartmouth's culture and policies and practices. After my initial interview, my attorneys and I had many calls and exchanged many emails regarding my claims and the class claims.

b)     I helped my attorneys prepare the First Amended Complaint. I had numerous phone calls with my attorneys, reviewed drafts of the First Amended Complaint, and made edits to it before it was filed. I then reviewed the final work product after the First Amended Complaint was filed.

c)     I spent a significant amount of time gathering and reviewing documents and other potential information about the case and my claims.  I looked for documents in hard copy and in my emails, text messages, and other electronic files. I also discussed various documents with my attorneys.

d)     I also conferred with my attorneys regarding our initial disclosures, including making lists of witnesses and the locations of various documents.  I also had conversations with my attorneys about this process.

e)     When Dartmouth opposed my use of a pseudonym, I assisted my attorneys with their response to Dartmouth's motion, including reviewing and editing my declaration and participating in several calls with my attorneys.

f)     I also prepared for, attended, and actively participated in three full days of mediation and settlement negotiations.  I estimate that I spent about one hundred (100) hours preparing for and participating in the mediation:

  (1) To prepare for the mediation, I drafted and edited a victim impact statement which was an emotionally demanding endeavor that provoked feelings of anxiety, depression, and re-traumatization; participated in extensive phone calls and conference calls with my attorneys leading up to the mediation; reviewed the Mediation Statement; and worked on a programmatic relief proposal with my attorneys and my expert.

  (2) I traveled from Rhode Island to Boston (on July 23, 2019) and then back again (on July 26, 2019) to attend the mediation.

  (3) The mediation and settlement negotiations, which I participated in, took place on July 24-26, 2019 (three full days).  I worked almost nonstop for these three days.  The actual mediation sessions and negotiations totaled about thirty (30) hours (10 ½ hours on the first day, 9 ½ hours on the second day, and 10 hours on the third day).

  (4) During the mediation, I also spent many hours meeting with my attorneys.  We met the day before the mediation for several hours.  We also met early before each day of negotiations.  After each day of mediation concluded, I spent several hours meeting with my attorneys and/or my co-Plaintiffs, sometimes late into the night.  I also spoke with our expert in preparation for the next day of negotiations.

g) After the mediation and negotiation sessions on July 24-26, 2019, settlement negotiations continued for several weeks.  I actively participated in these ongoing

        discussions with my attorneys and spent a significant amount of time working to finalize the settlement.

h)    I then reviewed the Settlement Agreement and related documents.

i)    I participated in regular conversations with my attorneys throughout the duration of this case, with calls often lasting over an hour and sometimes as often as several times a day. There were also substantial additional communications by way of frequent and regular email correspondence.

### Duties to the Class Going Forward

8.    If the settlement is approved, all Plaintiffs will have an ongoing duty to monitor the programmatic relief with Class Counsel for several years. The other Plaintiffs and I will work with Dartmouth in proposing nominees for the External Advisory Committee. We will also meet with the External Advisory Committee to recommend strategies, resources, and/or sources of expertise, and to share any information in any format we believe might be relevant to the C3I initiative. We will also meet with the Provost to ensure continuing dialogue and feedback on the implementation of these programmatic measures. I anticipate spending many hours on these ongoing duties. I have already expended a number of hours to fulfilling these responsibilities.

### Negative Effects, Risks, and Stresses of Participating in This Litigation

9.    Though I am proud of the work that we have done, participating as a Plaintiff in this action has come with many risks, burdens, and negative effects.

10.    The decision to come forward as a Plaintiff in a publicly filed case was very difficult. I debated over the decision of legal involvement for years, and I spent months debating whether to join this specific case as a Plaintiff. I was extremely apprehensive about joining the suit and feared the personal and career repercussions. I also worried about the emotional toll it would take on me and my personal relationships. I feared I would be accused of slander, and that

5

my reputation would be irrevocably tarnished.  Further, I worried I would alienate myself from friends and family—most of whom were not previously aware of the circumstances surrounding my time at Dartmouth.  Many of my friends from Dartmouth are fiercely loyal to the college both financially and emotionally, and I worried I would lose their friendship due to my involvement in this case.  I also worried my employer would become aware of my involvement, and it would affect my standing at work and ability to obtain employment going forward.  However, I ultimately chose to join this lawsuit as a Plaintiff because I felt compelled to share my story in an attempt validate the claims of others and help provide some relief to the class members.

11.     Given the close-knit nature of my field, I took substantial risks in my own career by stepping forward in this lawsuit.  The allegations detailed in the lawsuit were of a highly personal and sexual nature.  Given the nature of the lawsuit, my affiliation with it posed concerning career risks.  I feared it would affect my relationship with my colleagues, employers, and my ability to obtain future employment.  As a physician, it is important that the doctor-patient relationship be professional and patient-focused.  Public identification of myself and the emotional distress caused by the sexual assault is highly stigmatizing and posed forever tarnishing that relationship.

12.     By joining this lawsuit as a Plaintiff and making my allegations public, I had to accept the risk that being a Plaintiff might negatively impact the likelihood that I can obtain board certification.  In order to obtain board certification, I must (among other things) prove my mental fitness to practice medicine.  I worried that the details of the psychological impact and trauma resulting from my experiences that were asserted in this lawsuit would be used against me: those responsible for awarding me board certification might learn of my allegations and deem me emotionally "unfit" to practice medicine.  This is an especially big risk because, as a resident physician, I am still completing my training and am not yet board certified—and becoming board-

6

certified is essential to the independent practice of medicine. Without board-certification, I will be unable to practice medicine independently and will be essentially un-hirable and left with crippling medical school debt.

13.    My participation as a Plaintiff in this case has been challenging emotionally. When I learned of Dartmouth's opposition to the use of pseudonyms, I became tearful and had a panic attack at work. Though I am ultimately very grateful to be involved in this lawsuit, it has been a tremendous source of anxiety and stress over the past two years. Being a Plaintiff has been an extremely stress-inducing process. I feel a constant background level of anxiety surrounding this case that ebbs and flows. It has required a fair amount of writing and reflecting on my experiences set forth in the lawsuit, which inevitably impacts my mental state and causes me to re-experience feelings of trauma, which causes anxiety and depression. I have sought counseling to cope with the emotional stress that has resulted from my participation as a Plaintiff in this lawsuit.

14.    Because of the time required and the emotional toll involved in being a Plaintiff, I have had to work twice as hard to remain focused at work and continue performing to the best of my abilities. In early 2019, I had to take the annual in-service exam required by my residency program. My residency program takes this exam quite seriously. Poor performance on this test results in probation, disqualification from moonlighting opportunities, and mandatory reading on top of already demanding clinical duties. The real harm, however, is unmeasurable. Even though the test has no association with clinical performance, a poor score biases supervising physicians against you. Because my in-service exam was taking place around the same time as the filing of the First Amended Complaint (which added me as a Plaintiff), I had to juggle the emotional and time-intensive demands of preparing the filing with studying and preparing for my very important in-service examination.

15.     This case was widely covered by major media outlets. The highly publicized nature of this lawsuit made participating as a Plaintiff extremely stressful, taxing, and difficult. The social media coverage of this case has been far-reaching and taxing. It is difficult to predict media coverage, and often press for this case would surface at inconvenient and stressful times. In response to press coverage, I have received unwanted and overly personal inquiries from acquaintance, friends, family, and colleagues.

16.     When Dartmouth opposed the use of my pseudonym in this case, it quickly garnered significant media-attention and backlash. While some of this attention was positive, a large amount it was negative. I recall reading several commentaries on news stories that was extremely negative. Some characterized me as cowardly and depicted my actions unjust. It also became part of a public debate on a larger scale. Public figures such as Bernie Sanders and Elizabeth Warren offered their opinion on the matter. While I deeply appreciated the support, the fact that my desire to remain anonymous was, ironically, receiving national media attention, was a constant source of anxiety. The more media attention it received, the more fearful I became of public discovery of my name and the resulting harm to my career.

17.     My participation in this case has also caused a rift in my friendships with several people. Many of my friends and colleagues see Dartmouth not as an institution, but rather a family—thus, my decision to take legal action against the College is seen by some as a betrayal of family. Because my closest professional "mentors" from college were the three former professors involved in the lawsuit, I feel as though I have no remaining ties to mentors at Dartmouth and that I have permanently damaged my relationship to all things Dartmouth. It feels inappropriate for me to attend Dartmouth reunions, which are the main venues for reconnecting with my colleagues.

8

18. In regard to current relationships, when people inquire as to my time at Dartmouth or my relationships with the aforementioned professors, I feel uncomfortable disclosing the nature of my involvement in this case for fear of further alienating myself. Many of my supervising attending physicians also went to Dartmouth for their undergraduate degrees. It is something we typically bond over easily, but when they inquire as to my time there, I find it difficult to answer the question. If answer honestly, I risk alienating myself because I do not know where their allegiances lay. For example, on a recent overnight shift, my attending physician—one of my supervisors—learned I attended Dartmouth. He had heard about this case and asked if I knew any of the three former professors. There seemed to be no appropriate or safe way to answer this question. I also worry that when people learn of my affiliation with the Three Professors, they will assume that everything I achieved as an undergraduate and thereafter was a result of an inappropriate relationship with the Professors.

19. When I joined this case as a Plaintiff, I was in a serious relationship with someone I had been with for three and a half years. No one opposed my involvement in this case as much as my (now former) partner. When I told him that I was thinking about becoming a Plaintiff and my reasons for doing so, he questioned my motives, asking: "since when did you become a feminist?" He told me he was concerned about the stress my involvement would place not only on my emotional state but also on the health of our relationship. He was extremely apprehensive and instructed me not to discuss my involvement in the case with him at all. This put a huge strain on our relationship and was ultimately a contributing factor in the end of our more than four-year partnership approximately nine months after I joined this case as a Plaintiff.

20. My involvement in this case also forced me to disclose what happened to me to people I may not have otherwise told. For example, I had to tell my mother about this case for

9

emotional support. It has been very difficult for her to learn about the sexual assault of her child, and this has greatly affected our relationship. On the other hand, I have not been able to disclose my participation as a Plaintiff to other people close to me in order to preserve anonymity as a pseudonymous Plaintiff. Because my work as a Plaintiff has been such a large part of my life, being forced to hide that from the people I am closest with has created a large rift in many of my close relationships. I have not shared this with my father or any other family members, which inevitably has created a distance in our relationship.

21. Despite these concerns, I decided to join this lawsuit and serve as a Class Representative because I feel strongly that I owed it not only to myself but also to the other women to finally share my story in support of theirs to show this was not an isolated event, but rather years of a calculated pattern of behavior by the three former professors. My primary goal in serving as a Class Representative was to help provide some alleviation and closure to the women who have been sexually harassed and exploited by the three former professors.

## **Approval of the Settlement**

22. I was not promised any amount of money in connection with my support of this settlement or any prior settlement with Dartmouth. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the class. I authorized the proposed settlement of $14 million and programmatic relief with Dartmouth, and I believe that the proposed settlement is fair, adequate, and reasonable.

23. I also believe that the proposed allocation plan is fair, reasonable, and adequate, and does not impermissibly favor some class members over others.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 25, 2020                          */s/ Jane Doe 2*
                                                        Jane Doe 2