# Exhibit 12

**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF NEW HAMPSHIRE**

**KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,**

*Plaintiffs, on behalf of themselves and all others similarly situated,*

v.

**TRUSTEES OF DARTMOUTH COLLEGE,**

*Defendant.*

**Hon. Landya B. McCafferty, U.S.D.J.**

CASE NO. 1:18-cv-01070 (LM)

**DECLARATION OF JANE DOE 3**

I, Jane Doe 3, hereby declare as follows:

1. I make this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

2. I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3. I am a Plaintiff in this lawsuit.

**The Steps I Have Taken to Protect the Interests of the Class and the Degree to Which the Class Has Benefitted from those Actions**

4. From the time I first joined the suit, I wanted to ensure that the interests of all class members were protected and made decisions with those interests in mind. I have been actively involved in the litigation of this case, as described more fully below, and have been in close contact with the attorneys representing the Class in order to monitor and contribute to this case since I joined.

5. I believe that this settlement brings substantial benefits to the class. The monetary component of the settlement enables class members to receive substantial compensation in a fair

and equitable way without having to testify publicly, either in court or at a deposition, about their personal experiences. Having struggled with this possibility personally, I know having to testify publicly would be painful and both personally and professionally damaging to many individuals in the class. The extent to which I had to put details of what happened to me in public documents was extremely difficult and stressful. The class action settlement has allowed others to receive benefit without taking on the burden of public exposure.

6. Nothing will erase the damage that the three former professors have done to me, the other plaintiffs, and the class members, but I am proud and thankful for the progress made via this settlement. The sexual assault, harassment, emotional abuse, and hostile environment I personally experienced as a result of the three former professors' conduct began nearly 17 years ago. I believe that my involvement in this case prompted and allowed for a broadening of the class definition to include individuals who experienced the hostile environment created by the three professors many years ago. As I know too well the pain and suffering of some did not stop even after leaving, and it is highly meaningful to me that some of these individuals were able to be included as class members. Being a part of this class may help bring closure to many individuals, and for those like me who have distanced themselves from that pain, this may allow the healing process to properly begin. Moreover, it is of utmost importance that this class action lawsuit has put a spotlight on issues of sexual assault and harassment in academia and has led academic institutions across the country to look closely into their own policies. This may prevent future students from having to suffer like we did.

**The Amount of Time and Effort I Have Expended in this Action**

7. Since I first became involved in this litigation in February 2019, I estimate that I have spent close to two hundred (200) hours performing actions that benefitted the Class at large,

including participating in mediation and helping to craft a plan for Class-wide relief that I am confident will effect meaningful change at Dartmouth and provide meaningful redress for members of the Class. A summary of my activities is as follows:

a) In the months leading up to the filing of the First Amended Complaint (which added me as a Plaintiff), I dedicated many hours to assisting with the investigation of the class action. I carried out multiple full initial investigative interviews with Class Counsel and shared my knowledge of Dartmouth's culture and policies and practices. I had several follow-up calls with my attorneys after my initial interview, and exchanged many emails with my attorneys regarding my claims and the class claims.

b) I helped my attorneys prepare the lengthy First Amended Complaint. I had numerous phone calls with my attorneys, reviewed drafts of the Complaint, and made edits to it before it was filed. I then reviewed the final work product after the Complaint was filed.

c) I spent a significant amount of time gathering and reviewing documents and other potential information about the case and my claims. I looked for documents in hard copy and in my emails, text messages, and other electronic files. I also reviewed documents with my attorneys.

d) I conferred with my attorneys regarding our initial disclosures, including making lists of witnesses and the locations of various documents. I also had conversations with my attorneys about this process.

e) When Dartmouth opposed my use of a pseudonym, I spent hours assisting my attorneys with their response to Dartmouth's motion, including reviewing and editing my declaration and participating in several calls with my attorneys.

f) I also prepared for, attended, and actively participated in three full days of mediation and settlement negotiations. I estimate that I spent close to one hundred (100) hours preparing for and participating in the mediation:

(1) To prepare for the mediation, I drafted and edited a victim impact statement which was a very painful and emotional process. It forced me to again relive everything I have gone through and brought my buried trauma and anguish to the surface; participated in extensive phone calls and conference calls with my attorneys leading up to the mediation; reviewed the Mediation Statement; and worked on a programmatic relief proposal with my attorneys and my expert.

(2) I travelled from Rhode Island to Boston (on July 23, 2019) and then back again (on July 26, 2019) in order to attend the mediation.

(3) The mediation and settlement negotiations, which I participated in, took place on July 24-26, 2019 (three full days). I worked almost nonstop for these three days. The actual mediation sessions and negotiations totaled about thirty (30) hours (10 ½ hours on the first day, 9 ½ hours on the second day, and 10 hours on the third day).

(4) During the mediation, I also spent many hours meeting with my attorneys. We met the day before the mediation for several hours. We also met early before each day of negotiations. After each day

of mediation concluded, I spent several hours meeting with my attorneys and/or my co-Plaintiffs, sometimes late into the night. I also spoke with our expert in preparation for the next day of negotiations.

(5) The programmatic relief portion of the settlement was extremely important to me. Before the mediation, I spent many hours discussing programmatic relief with my attorneys, working with an expert, and researching in order to come up with a proposal that was meaningful and beneficial to the Class.

g) After the mediation and negotiation sessions on July 24-26, 2019, settlement negotiations continued for several weeks. I actively participated in these ongoing discussions with my attorneys and spent a significant amount of time working to finalize the settlement.

h) I then reviewed the Settlement Agreement and related documents.

i) I participated in regular conversations with my attorneys throughout the duration of this case, with calls often lasting over an hour and sometimes as often as several times a day. There were also substantial additional communications by way of frequent and regular email correspondence.

**Duties to the Class Going Forward**

8. If the settlement is approved, all Plaintiffs will have an ongoing duty to monitor the programmatic relief with Class Counsel for several years. The other Plaintiffs and I will work with Dartmouth in proposing nominees for the External Advisory Committee. We will also meet with the External Advisory Committee to recommend strategies, resources, and/or sources of expertise, and to share any information in any format we believe might be relevant to the C3I

initiative. We will meet with the Provost, as we have already done once, to ensure continuing dialogue and feedback on the implementation of these programmatic measures. I have already committed time to these responsibilities, and I anticipate spending many hours on these ongoing duties.

**Negative Effects, Risks, and Stresses of Participating in This Litigation**

9. Though I am proud of the work that we have done, participating as a Plaintiff in this action has come with many risks, burdens, and negative effects.

10. The decision to come forward as a Plaintiff in a publicly filed case was very difficult. I knew that being involved would be difficult, and despite mentally preparing myself, I did not fully realize the toll it would take on me. I feared personal and professional repercussions from the accused Professors and others. I worried that having to share my story would reopen wounds and feared it would negatively impact my relationship with my husband. However, I ultimately chose to be a Plaintiff because I felt like my involvement could potentially help the class and taking these steps would be the most effective way to enact the change needed to protect future generations of women.

11. Given the close-knit nature of my field, I took substantial risks in my own career by stepping forward in this lawsuit. Because of the details I needed to disclose publicly in order to be a Plaintiff, I feared (and still fear) that my identity is known to most in my field even though I used a pseudonym. Having highly personal details of my past exposed changes how individuals in my field may view me and my career. This is a considerable factor given how funding, promotions, and publications are all determined by peer review. Furthermore, there are a number of high-level individuals in the field who have not been supportive of the case and others who are

generally not supportive of individuals coming forward in this way. The risk I took coming forward jeopardizes what I have achieved thus far and what I could accomplish in my career.

12. Being a Plaintiff in this case has significantly impacted my productivity at work. For a multitude of hours, including three full days spent in mediation, I have had to neglect my work in order to fulfill my duties as a Plaintiff, at times having to get extensions on work deadlines and receive negative feedback in order to meet case-related deadlines. Mentally I have been consumed by the case, reliving my experiences, and worrying about future repercussions. I have found it very difficult to focus on my work while dealing with this preoccupation and my productivity has markedly suffered.

13. This case was widely covered by major media outlets. The highly publicized nature of this lawsuit made participating as a Plaintiff extremely stressful, taxing, and difficult. Furthermore, I believe the publicity surrounding the case motivated many people to try and identify the anonymous Plaintiffs. Even though I used a pseudonym, reporters still contacted me to the point that I had to screen all phone calls. Media coverage led to friends, family, students, and coworkers prying into my personal life and pressing for details. After Professor Dave Bucci's passing, a *New York Times* article in January 2020 even insinuated the lawsuit caused him to commit suicide, which caused considerable emotional distress and fueled social media's negative response.

14. It has been difficult to see posts and comments about this case in social media. Although much of the coverage was positive, there were directed attacks at us as Plaintiffs. We were criticized for coming forward as survivors of sexual assault and harassment and criticized for pursuing a lawsuit. For reasons I cannot understand, people felt it necessary to claim that the Plaintiffs made "false accusations." We were blamed for the death of Professor Bucci and called

"murderers." It is impossible to not take these hateful words to heart, and it is impossible to dismiss the impact of this on the careers of all Plaintiffs in academia, as some of this negativity came directly from prominent individuals in the field. I have had to remove myself from social media outlets because of this.

15. Being a Plaintiff in this case has been an important and powerful experience in my life; however, it has taken a serious toll on my emotional, mental, and physical well-being. Since joining the case I have had increased anxiety and depression with significant sleep loss. I have struggled with ruminating negative thoughts and fears associated with coming forward and the potential harm that could bring to myself, my family, and my career. My disordered eating behaviors have worsened as well, as I tried to cope with the increased stress.

16. My relationships with students, coworkers, and colleagues have been impacted both personally and professionally because of my involvement in the case. To maintain my anonymity, I have had to avoid contact with anyone from Dartmouth, including my fellow former graduate students. This was particularly painful when Professor Bucci passed away. It was crushing to hear of his passing. Then to not be able to reach out to anyone about it because of my involvement in the case left me feeling helpless and alone. Students, coworkers, and colleagues have all confronted me about the case, which again, puts me in a very difficult position. In order to maintain some semblance of anonymity, I have tried not to respond. This has created an awkwardness in these relationships and has led me to avoid otherwise beneficial career opportunities in which the case may come up, such as conferences, teaching, and mentoring.

17. In my presence some of my coworkers have outwardly noted their disapproval of any individuals who choose to speak up about hostile environments in academia. In one pointed

comment I was warned, “nobody likes a whistleblower.” This perception has impacted me deeply and creates more fear that these high-powered coworkers now view me negatively.

18. My involvement in this case has had an impact on my personal relationships with family and friends as well. Due to the deeply personal and painful recounting of my experiences as a Plaintiff in this case I have had to lean heavily on my spouse for support. He has had to hear graphic details of my past, help me work through many resurfaced emotions, and deal with the exposure of the case as well. This has put a strain on our relationship that we now must work through. My spouse has been my sole source of support through this, as I have not been able to discuss my involvement in the case with anyone else. Staying silent in this way has impacted my relationship with my other family and friends. As noted, my family and friends asked about the case many times, but I was not in a position to respond. This led me to distance myself from some of my loved ones so as to avoid such questions. Not knowing what has been going on or the reasons for my emotional state, my parents have been concerned about me during this time.

19. Throughout this process I have been highly concerned about the risk of my identity being completely exposed. This was particularly true when Dartmouth opposed my use of a pseudonym after I joined the lawsuit as a Jane Doe, which caused me severe anxiety and stress. I was (and am) terrified by the thought of intimate details regarding my sexual history and emotional state being revealed to my colleagues, friends, family, and the media. I felt especially vulnerable in light of the public coverage this case has received, both from media outlets and social media users. I did not believe that I would be able to move forward as a Plaintiff if I was forced to use my real name. The fear of complete exposure has been hanging over my head and will continue to do so.

20. Despite these concerns, I decided to join this lawsuit and serve as a Plaintiff because I thought sharing my experiences would help the other Plaintiffs and the class as a whole receive justice. I felt it important that the pattern of damaging actions by the three former Professors, which began long before the seven original Plaintiffs ever arrived on campus, be recognized. My primary goal in serving as a Plaintiff was to help others who suffered similar experiences to my own.

21. Although I feel I will never be able to go back to the person I once was, I hope that my coming forward as a Plaintiff can help healing to begin and, more importantly, help prevent this from happening to others in the future—both at Dartmouth and in academia as a whole. That will make this all worth it.

**Approval of the Settlement**

22. I was not promised any amount of money in connection with my support of this settlement or any prior settlement with Dartmouth. My approval of this settlement is based on my view that, in light of the record and the risks, it is in the best interests of the class. I authorized the proposed settlement of $14 million and programmatic relief with Dartmouth, and I believe that the proposed settlement is fair, adequate, and reasonable.

23. I also believe that the proposed allocation plan is fair, reasonable, and adequate, and does not impermissibly favor some class members over others.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 26, 2020

*/s/ Jane Doe 3*
Jane Doe 3