# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **KRISTINA RAPUANO, VASSIKI CHAUHAN, SASHA BRIETZKE, ANNEMARIE BROWN, ANDREA COURTNEY, MARISSA EVANS, JANE DOE, JANE DOE 2, and JANE DOE 3,**<br><br>*Plaintiffs, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>**TRUSTEES OF DARTMOUTH COLLEGE,**<br><br>*Defendant.* | Hon. Landya B. McCafferty, U.S.D.J.<br><br>CASE NO. 1:18-cv-01070 (LM)<br><br>**DECLARATION OF DAVID W. SANFORD IN SUPPORT OF (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT, AND (2) PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |

I, David W. Sanford, hereby declare as follows:

1.  I make this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

2.  I make this Declaration based upon personal knowledge. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3.  I am an attorney duly admitted to practice law in the District of Columbia, the State of Maryland, and the State of New York. I am admitted *pro hac vice* in this matter.

4.  I make this declaration in support of Plaintiffs' request that the Court (i) enter the Proposed Order granting Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards; and (ii) certify the proposed Class for settlement purposes under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

5.  Attached hereto as **Exhibit A** is a detailed statement of the litigation costs for which Sanford Heisler Sharp, LLP seeks reimbursement.

6. Attached hereto as **Exhibit B** is the Declaration of Charles G. Douglas, III in support of Plaintiffs' Motion for Final Approval of the Class Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

**I.** **Sanford Heisler Sharp, LLP's Background as Class Counsel**

7. I am founding partner and Chairman of Sanford Heisler Sharp, LLP ("Sanford Heisler Sharp," "Class Counsel," or "the Firm"). I am class counsel in the above-captioned matter with Deborah Marcuse, Steve Kelly, Nicole Wiitala, and Austin Webbert.

8. I graduated from Stanford Law School in 1995. I was a law clerk for Judge Gladys Kessler of the United States District Court for the District of Columbia from 1995 through 1996. I have been a member in good standing of the Maryland State Bar and the District of Columbia Bar since 1998, and the New York State Bar since February 25, 2019.

9. Since 2001, I have obtained approximately 35 class settlements in Title VII and wage and hour matters throughout the United States, and I am currently serving as lead counsel in numerous class, individual, and *qui tam* matters. I was lead class counsel and lead trial counsel in *Velez v. Novartis Pharmaceuticals Corp.*, No. 04-cv-9194 (S.D.N.Y), which resulted in the largest verdict in a Title VII discrimination class action in United States history.

10. I was inducted into the National Law Journal's Elite Trial Lawyers Hall of Fame and I am listed among the top 100 trial lawyers by the National Trial Lawyers. I was a 2018 Attorney of the Year Finalist for *The American Lawyer*; I was the 2018 Benchmark Litigation Employment Attorney of the Year; and I was recently inducted as a Fellow of the American Bar Foundation. I have been recognized as a "Top Employment Lawyer" by *American Lawyer*, *Corporate Counsel* and the *National Law Journal*. I have been recognized by *Law 360* as a "Titan of the Plaintiffs' Bar" (in 2018 and 2014) and an "Employment MVP" (in 2014, 2015, and 2018);

by *Chambers* as a Leader in the Field for Labor and Employment (in 2017, 2018, and 2019); by the *National Law Journal* as a 2018 Trailblazer Plaintiffs' Lawyer; and as a "Super Lawyer" in both Washington, D.C. and New York. Since 2006, I have been AV-rated by Martindale-Hubbell, which is the highest rating given to an attorney by judges and attorneys throughout the United States.

11. From its formation in 2004, and to date, Sanford Heisler Sharp has been significantly involved in civil rights and employment class action litigation. The Firm has served as counsel in numerous class actions around the United States, generating hundreds of millions of dollars in recoveries to class members.

12. Sanford Heisler Sharp attorneys have served as lead or co-lead counsel in approximately 50 class and collective actions, covering class members in most of the states in the union. These cases have been filed in over 20 federal and state jurisdictions across the United States, including New York, California, New Jersey, Illinois, Tennessee, Massachusetts, Connecticut, Alaska, Virginia, Kentucky, Georgia, Florida, and Washington D.C.

13. Sanford Heisler Sharp has served as class counsel in numerous employment and wage-and-hour cases including: *Velez v. Novartis Pharmaceuticals Corp.*, No. 04-cv-9194 (S.D.N.Y); *Hernandez et al. v. C&S Wholesale Grocers, Inc.*, No. 7:06-CV-02675 (S.D.N.Y. 2008); and *Zolkos v. Scriptfleet, Inc.*, No, 12 Civ. 8230(GF), WL 7011819 (N.D. Ill. 2014). The Firm has also served as class counsel in *Rosenberg, et al. v. Ikon Office Solutions, Inc.*, No. 1:05-cv-09131-PAC (S.D.N.Y.) (pay, promotion, and other Title VII claims for a class of African American employees; certified settlement class); *Fogg v. Sessions* (pay, promotion, and assignment discrimination for a class of African American law enforcement and operational personnel with the U.S. marshals service dating back over twenty years; certified class beginning

from 1994-present); *Barrett v. Forrest Labs., Inc.,* No. 12-cv-5224 (S.D.N.Y.) (pay, promotion, and pregnancy discrimination for a class of female accounting professionals; certified settlement class); and *Wellens, et. al. v. Daiichi Sankyo, Inc.,* No. C 13-00581 (N.D. Cal.) (pay, promotion, and pregnancy discrimination claims for a class of female pharmaceutical sales representatives; conditionally certified national pay class).

14. Sanford Heisler Sharp's class actions have resulted in significant decisions, recoveries, and injunctive relief for class members, including the largest jury verdict ever awarded in an employment discrimination class action. The *Velez* case resulted in a jury verdict of $250 million in punitive damages awarded to more than 7,000 female sales representatives and $3.6 million compensatory damages awarded to 12 class members.

15. Sanford Heisler Sharp has been repeatedly recognized for its high-caliber representation of its clients and high standing at the bar. For example, at the final fairness hearing in *Velez,* the judge commented that the firm had achieved an "extraordinary" result: "This was a well prepared case. It was a brilliantly tried case by plaintiff's counsel . . . and it yielded a one-of-a-kind result, and that has led to a one-of-a-kind settlement."

16. At the final fairness hearing in *Jane Doe 2 v. The Georgetown Synagogue et al.*, Civil Action No. 2014 CAB 8073 (D.C. Super. Ct. 2018), at which the Court approved a $14.25 million class action settlement benefiting the victims of a rabbi who videotaped women without their knowledge or consent while they undressed at a Jewish ritual bath facility that he oversaw, the Court concluded the case by praising the work of counsel on the case, stating: "I commend you highly for the work that you've done, the skill that you've demonstrated, and for the significant outcome that has occurred as a result of those efforts." Sanford Heisler Sharp was Lead Class Counsel in the *Jane Doe 2* matter.

17. At the final fairness hearing in *Hernandez et al. v. C&S Wholesale Grocers, Inc.*, No. 7:06-CV-02675 (S.D.N.Y. 2008), the judge described the firm as "exceptionally able and experienced" and praised "the work that counsel have put in, not just in terms of the quantity, but what it was that counsel did, with obviously the tremendous amount of work . . ." and acknowledged a highly favorable result in "obviously a very complex dispute, both in terms of the law and in terms of the facts."

18. In *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 6230(GF), 2014 WL 7011819, at* 5 (N.D. Ill. Dec. 12, 2014), the court appointed Sanford Heisler Sharp, among other firms, as class counsel and preliminarily approved a class wage and hour settlement. In relevant part, the court ruled:

> Similarly, Sanford Heisler is very experienced in complex class and collective litigation, particularly in wage and hour cases, and has been repeatedly recognized for its skilled and effective representation. *See Stiller v. Costco,* No. 09 Civ. 2473, 2010 WL 5597272 (S.D.Cal. Dec. 13, 2010) ("Sanford, Wittels & Heisler, LLP [Sanford Heisler's former name] . . . [is] experienced in employment and wage-and-hour class action litigation."); *Velez v. Novartis Pharm. Corp.,* No. 04 Civ. 09194, 2010 WL 4877852, at *10 (S.D.N.Y. Nov. 30, 2010) ("Here, Class Counsel, Sanford Wittels & Heisler LLP, has just the sort of established record contemplated by the Rules."); *Bellifemine v. Sanofi–Aventis,* No. 07 Civ. 2207, 2010 WL 3119374, at *1 (S.D.N.Y. Aug. 6, 2010) (recognizing Sanford Heisler as having "an established record of competent and successful prosecution of large . . . class actions").

19. The work that Sanford Heisler Sharp has performed in investigating, prosecuting, and settling this case demonstrates Class Counsel's skill and commitment to representing the interests of the Classes and the Collectives.

## II. Sanford Heisler Sharp's Attorneys' Fees and Costs

20. Consistent with the Settlement Agreement (Ex. 1 to the Declaration of Deborah K. Marcuse ("Marcuse Decl.") at ¶ 14), Class Counsel requests reimbursement of litigation costs and expenses.

5

21. Sanford Heisler Sharp seeks reimbursement of $125,756.42 in reasonable and necessary litigation costs incurred in prosecuting this action on behalf of the Class Members. These expenses are attributable to vendor and consultant costs incurred for data hosting and ESI discovery; mediation expenses; expert fees; filing fees; postage expenses incurred in the mailing of the Class Notice and the administrative complaints; expenses incurred during meetings with clients and/or opposing counsel; and media and press expenses. A detailed statement of the litigation costs for which Sanford Heisler Sharp seeks reimbursement is attached hereto as **Exhibit A**.

22. In addition, Class Counsel requests an award of costs incurred by the Settlement Administrator and Independent Claims Expert in administering the settlement from the Class Settlement Amount. These costs, collectively, will not exceed $109,217. Rust Consulting, Inc. (the Settlement Administrator) has agreed to cap its total costs at $24,217 provided that there is no significant change in the scope of work anticipated with administering the Settlement. Maria C. Walsh, Esq. (the Independent Claims Expert) has agreed to cap her total costs at $85,000.

23. Class Counsel also requests an award of attorneys' fees in the amount of $4,900,000 (31.6% of the total Settlement value, or 35% of the Settlement Payment Amount). This figure is significantly less than the 40% Class Counsel was entitled to seek pursuant to the retainer agreement that was executed by the Plaintiffs. It is customary for experienced counsel to charge contingency fees of one-third to 40 percent for cases resolved at this stage of the litigation.

24. Class Counsel has spent thousands of hours investigating, prosecuting, and resolving this class action, all on a contingency basis. Class Counsel's work in this matter included, *inter alia*:

    a. Investigating legal and factual allegations of gender discrimination, sexual harassment, sexual assault, and retaliation bias at Dartmouth;

    b.    Conducting an extensive factual investigation, including (i) interviewing at least 36 witnesses with knowledge of the underlying allegations set forth in the Complaint; (ii) reviewing extensive records and documents provided by the Plaintiffs and witnesses; (iii) requesting and reviewing information received through Freedom of Information Act ("FOIA") requests to the U.S. Department of Education and the Office for Civil Rights; (iv) reviewing policy documents, and handbooks; (v) reviewing other publicly available information on Dartmouth's website or located through internet searches; and (vi) researching related media articles and blog or social media postings;

    c.    Reviewing the final written Investigation Reports for the Three Former Professors (which collectively amounted to 299 pages summarizing information provided to the investigator by 27 reporting parties and 118 witnesses) as well as drafts (by the investigator), revisions (by the reporting parties and the Professors), and exhibits (submitted by the reporting parties and the Professors);

    d.    Drafting the 72-page Complaint (ECF No. 1), the 85-page First Amended Complaint (ECF No. 28); and seven (7) separate class charges of discrimination that were filed with the Equal Employment Opportunity Commission;

    e.    Briefing a motion to proceed under pseudonym that was opposed by Dartmouth;

    f.    Preparing other miscellaneous filings (*see, e.g.*, ECF Nos. 3-5, 12-18, 29-32, 39-42, 44-46, 53);

    g.    Drafting, editing, and negotiating the Parties' ESI Protocol and Joint Discovery Plan;

    h.    Preparing the Plaintiffs' Initial Disclosures, written discovery, and a confidentiality stipulation;

    i.    Working with a Title IX expert to investigate Plaintiffs' allegations and formulate a programmatic relief proposal;

    j.    Meet and confer sessions with opposing counsel;

k. Participating in two full days of mediation, followed by one full-day of in-person negotiations; participating in continuing settlement negotiations after the mediation; negotiating and preparing the Class Action Settlement Agreement and Class Notice and Claim Form;

l. Seeking and obtaining preliminary approval of the settlement, including supplemental briefing;

m. Securing and working with a Settlement Administrator and Independent Claims Expert to effectuate the Settlement; assisting the Plaintiffs and Class Members with the Settlement and their claims submissions

n. Participating in hundreds of calls with the Plaintiffs and class members regarding their claims, the litigation, the Settlement, and the claims submission (in addition to extensive written communication); and

o. Moving for final approval of the class settlement.

25. In addition, Class Counsel will—over the next decade—commit significant ongoing time and resources to this litigation. In accordance with the Settlement, one component of the programmatic relief agreed upon by the Parties will be implemented by Dartmouth over the next ten years. (*See* Agreement, Exhibit A). Class Counsel will review Dartmouth's implementation of the programmatic relief and pursue any alleged noncompliance with the terms of the Settlement. Moreover, Class Counsel will also be required to commit time and resources to administering the Settlement. Based on Class Counsel's experience in other cases, this ongoing work will likely involve hundreds of additional hours.

26. Since March 2018, Class Counsel has expended over **6,160 hours** on this matter, resulting in a lodestar of **$3,347,099.00.** The following chart reflects Sanford Heisler Sharp's hours and lodestar:

| NAME | HOURS | RATE | LODESTAR |
|---|---|---|---|
| David Sanford | 150.6 | 1200 | $180,720.00 |
| Jeremy Heisler | 8.0 | 1000 | $8,000.00 |

| Name | Hours | Rate | Total |
|---|---|---|---|
| Alexandra Harwin | 0.6 | 850 | $510.00 |
| Steve Kelly | 942.3 | 850 | $800,955.00 |
| Russell Kornblith | 2.6 | 850 | $2,210.00 |
| Deborah Marcuse | 512.7 | 850 | $435,795.00 |
| Andrew Melzer | 34.5 | 850 | $29,325.00 |
| Michael Palmer | 49.2 | 850 | $41,820.00 |
| Melinda Koster | 3.5 | 750 | $2,625.00 |
| David Tracey | 0.2 | 750 | $150.00 |
| Scott Sullivan | 67.5 | 725 | $48,937.50 |
| Nicole Wiitala | 1,875.05 | 500 | $937,525.00 |
| Cara Van Dorn | 22.5 | 475 | $10,687.50 |
| Austin Webbert | 675.8 | 475 | $321,005.00 |
| **Jonathan Hiles | 1.5 | 450 | $675.00 |
| Adán Martinez | 6.0 | 475 | $2,850.00 |
| **Hope Brinn | 82.0 | 300 | $24,600.00 |
| Anoop Kahlan | 22.1 | 300 | $6,630.00 |
| Alec Konstantin | 341.8 | 300 | $102,540.00 |
| **Mariel Brunman | 4.3 | 295 | $1,268.50 |
| Daniella Calderon | 2.2 | 295 | $649.00 |
| **Kristen Campbell | 3.6 | 295 | $1,062.00 |
| Nathan Cummings | 19.1 | 295 | $5,634.50 |
| **Abigail Kohn | 1.0 | 295 | $295.00 |
| Annie Rojas | 3.6 | 295 | $1,062.00 |
| **Claire Shennan | 19.1 | 295 | $1,209.50 |
| Sophie Tohl | 480.4 | 295 | $141,718.00 |
| Jackson Willis | 442.9 | 295 | $130,655.50 |
| **Arya Diwase | 378.5 | 275 | $104,087.50 |
| **Sophie Kosmacher | 1.5 | 275 | $412.5 |
| Jeremy Margolis | 0.7 | 275 | $192.50 |
| **Sonia Mahajan | 2.6 | 275 | $715.00 |
| Alisa Vithoontien | 0.6 | 275 | $165.00 |
| **Bardia Vaseghi | 1.5 | 275 | $412.50 |

> ** *former employee*

27. The preceding summary was prepared from detailed time records which are available at the request of the Court.

28. Using the firm's total lodestar divided by the total hours worked on the case, Sanford Heisler Sharp's average rate is approximately $543.00/hour.

29. Charles G. Douglas, III has submitted a declaration which sets forth Douglas, Leonard & Garvey, P.C.'s hours and lodestar expended on this matter. Since November 7, 2018, Douglas, Leonard & Garvey, P.C. has expended over 231.3 hours on this matter, resulting in a lodestar of $200,270.00. (*See* Declaration of Charles G. Douglas, III ("Douglas Decl.") ¶ 5.)

30. Collectively, Class Counsel and Douglas, Leonard & Garvey, P.C. have expended over **6,391 hours** on this matter, resulting in a lodestar of **$3,547,369.00**.

**III.     The Settlement is Fair and Reasonable and Should Be Approved**

31. Accompanying this Declaration is a Memorandum of Law that demonstrates why, under governing law, this Court should approve the proposed Settlement and grant the relief requested in the instant motion. For the reasons explained in the accompanying Memorandum of Law, the parties' proposed Settlement falls clearly within the range of approval.

32. After extensive analysis and deliberation, the Plaintiffs and Class Counsel are of the opinion that the Settlement described in the Settlement Agreement is fair, reasonable, and adequate. Class Counsel and the Plaintiffs believe that the Settlement serves the best interest of the Class based on all the facts and circumstances, including the risk of significant delay and the uncertainties surrounding class certification and liability. In reaching this conclusion, Class Counsel has considered, among other things, the risks of litigation; the uncertainty of class certification in the absence of settlement; the enormous costs associated with continued litigation;

the time necessary to achieve a final resolution through trial and any appeals and the potential for significant delay; the complexity of Plaintiffs' claims; and the vast benefits accruing to the Class under the Settlement.

33. The process for recovering payments is structured to enable Plaintiffs and Class Members to vindicate their rights while avoiding unnecessary deterrents to participation in the Settlement by Class Members. If this matter were to proceed in litigation, Plaintiffs and Class Members would be subject to discovery and could be called to testify at trial. Their identities, and extremely sensitive and personal details relating to sexual abuse and trauma, would likely be publicly exposed and revisited in excruciating detail through litigation. In addition, the class definition (dating back to 2012) expands beyond the three-year statute of limitations (as measured from the filing of the complaint), thus allowing recovery for individuals who would likely otherwise be time-barred from bringing claims.

34. Throughout the settlement process, Class Counsel has worked diligently to achieve a settlement that resolves class claims in this matter while providing fair treatment to the Class Members and preserving Class Members' rights. The final Class Action Settlement Agreement reflects these efforts and represents a fair, reasonable, and adequate compromise.

35. In arriving at this favorable resolution, Plaintiffs and Class Counsel recognized that, in the absence of an approved settlement, they would face a long litigation course that would consume considerable time and resources and present all Parties with ongoing litigation risks and uncertainties. Plaintiffs and Class Counsel also recognized the significant expense and both material and intangible burdens associated with protracted discovery, a lengthy trial, and potential appellate process, and further acknowledged that both certification of the class and success on the merits remain uncertain. Absent this settlement, Dartmouth would have contested the propriety of

class treatment both in response to a motion for certification and through trial. Dartmouth has maintained that the College acted lawfully at all times.

36. Plaintiffs face considerable risks in establishing class-wide liability and in obtaining certification of the proposed class and collective action. If liability is established, Plaintiffs will also have to establish damages. But for the Settlement, Defendants would strongly dispute the propriety of Rule 23 certification. Even if the Court were to grant certification, maintaining certification through trial could continue to present challenges. Defendants are likely to move for decertification and would likely file a Rule 26(f) petition, which would result in further expense and delay.

37. Class Members have overwhelmingly approved the Settlement. Out of the 92 individuals who received the Court-approved Notice, there were no objections to the Settlement, and only 4 individuals (comprising just 4.3% of potential Class Members who received the Notice) requested exclusion from the Settlement.

38. Therefore, Plaintiffs and their Counsel determined that the proposed Settlement is in the best interest of Plaintiffs and the Class based on all the facts and circumstances, including the risks of litigation; the uncertainty of class certification in the absence of settlement; the enormous costs associated with continued litigation; the time necessary to achieve a final resolution through trial and any appeals and the potential for significant delay therein; the complexity of Plaintiffs' claims; and the significant benefits accruing to the Class under the Settlement.

IV. **Class Counsel's Support of the Settlement**

39. Based on my experience in this type of litigation and thorough familiarity with the factual and legal issues in this case, the risks of litigation and potential recoverable damages, the

significant recovery obtained for Class Members, and the overwhelmingly positive response by the Class Members, I am confident that the Settlement is an excellent result for the Class and is in Class Members' best interest. I vehemently support the final approval of the Settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      May 26, 2020                    */s/ David W. Sanford*
                                                David W. Sanford